# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### ATTORNEYS AT LAW

NEW YORK  ●  CALIFORNIA  ●  ILLINOIS  ●  LOUISIANA  ●  DELAWARE

MICHAEL D. BLATCHLEY
(212) 554-1281
michaelb@blbglaw.com

December 23, 2021

**VIA ECF**
Barbara Beatty, Deputy Courtroom Clerk
  to the Honorable Douglas P. Woodlock
United States District Court for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

Re:  *In re Boston Scientific Corp. Sec. Litig.*, No. 20-cv-12225-DPW

Dear Ms. Beatty:

We represent Lead Plaintiff and write to inform the Court of a decision from the First Circuit Court of Appeals that further supports denial of Defendants' pending motion to dismiss.

In *Construction Industry and Laborers Joint Pension Trust v. Carbonite, Inc.*, 2021 WL 6062622 (1st Cir. Dec. 22, 2021) ("*Carbonite*"), attached as Exhibit A, the First Circuit reversed dismissal of Section 10(b) claims arising out of alleged misstatements concerning the commercial viability of a data back-up product ("VME") that was discontinued at the end of the class period—just like the Lotus Edge in this case. In *Carbonite*, the court held actionable statements that, with VME, the company had "put something out that we think is just completely competitive and just a super strong product" and "improves our performance for backing up virtual environments" in light of allegations that, in truth, VME did not work, employees reported that the product was not running properly, and that it resulted in corrupted files. *Id.* at *2-3. The court rejected arguments that these statements were inactionable opinions or forward-looking statements about the product's "future potential" (*id.* at *4)—arguments that track those Defendants make here. Instead, the court held that these statements were factual, present-tense statements or actionable opinions that contained embedded false statements of fact. *Id.* The First Circuit also had "no trouble finding" defendants' statements about "VME's ability to perform" were material. *Id.* at *5.

Here, Defendants' false statements about the Lotus Edge were even more plainly factual and present-tense than those upheld in *Carbonite*, and just as material. For example, Defendants here falsely represented that Lotus was a "key growth driver," that the launch was "going extremely well," and that sales and re-order rates were "strong," "very high," and growing. ¶¶159, 251, 308. But former employees reported these statements were "deceiving" because, in truth, sales were less than half of repeatedly reduced internal targets, "there was no organic growth," internal documents showed only a handful of accounts were reordering at all (¶131), and

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Douglas P. Woodlock
December 23, 2021
Page 2

Defendants later admitted that actual sales were half analysts' estimates—facts that are strikingly similar to those found sufficient in *Carbonite*.  ¶¶137, 145-47, 183.[1]

Likewise, Defendants falsely claimed that Lotus had superior "ease of use," was "not a complicated device," and Defendants were "very confident" in its performance (¶¶226, 258, 269, 276, 309) when, in truth, it was the "most complicated device on the planet," involved 35 steps (when competitor devices had two), and surgeons refused to adopt it because of its complexity. ¶¶107-14.  Moreover, Defendants falsely claimed the launch was focused on patient safety and the "exact work" required to train surgeons (¶¶84, 244, 248) when, in truth, it was "clinically unsafe" because of a lack of training that was a fraction of what the Company and its competitors required for "super easy" devices.  ¶¶107-13, 122-29.  As in *Carbonite*, Defendants' statements "plainly implied" Lotus was performing better than it actually did.  2021 WL 6062622, at *4.  And Defendants here told investors that the Lotus was "on track" to meet its publicly-announced goal to open 150 accounts—and falsely claimed to have surpassed that goal—but later admitted that, in truth, there were actually only "sub-100" accounts.  ¶¶187, 245-46, 260-61, 279-80.  As in *Carbonite*, Defendants' effort to retrospectively assert that these false statements were somehow forward-looking "does not make it so." 2021 WL 6062622, at *4; *cf.* ECF No. 54 at 31-33.

The *Carbonite* court also rejected scienter arguments that mirror Defendants' here.  For example, in *Carbonite*, the court held that scienter was supported by the fact that the product had received "two specific plugs" from management, which created the inference that the executives "would have paid some attention to the product's status."  *Id.* at *6.  Here, Lotus was discussed in detail by Defendants with dozens of "plugs" on at least 24 conference calls during the Class Period. ¶¶226-323.  Further, like in *Carbonite*, there is no chance management was "somehow in the dark" about Lotus's true status (2021 WL 6062622, at *6) in light of the facts, among others, that Defendants (i) closely tracked its poor performance (¶¶136, 202-04), (ii) convened an emergency companywide meeting over Thanksgiving because the launch was in crisis (¶¶137, 208), (iii) shut down a key manufacturing facility because there were "zero orders" (¶146), (iv) were "throwing money" at trying to develop a replacement (¶¶124, 211), and (v) admitted they decided to shut down Lotus at "sub-100" accounts after telling investors they had reached 150.  ¶187.

Last, like in *Carbonite*, Defendants ask the Court to ignore these facts in urging the inference that Defendants somehow believed Lotus "was fixable."  2021 WL 6062622, at *7; ECF No. 54 at 27.  But just like in *Carbonite*, Defendants' statements claiming that Lotus had achieved 150 accounts (when it had not), was "easy to use" (when it was not), and would remain a "growth driver" (when it was being shut down) were not "projections of hoped-for future performance" but "flat-out claims about the product as it then stood."  2021 WL 6062622, at *7.

Respectfully submitted,

Michael D. Blatchley

cc:      All counsel of record (via ECF)

---

[1] All references to "¶__" are to Lead Plaintiff's Amended Complaint.  ECF No. 44.