UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MARIANO ERRICHIELLO, Individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. 20-12225-DPW |
| Plaintiffs, | ) | |
| v. | ) ) | |
| BOSTON SCIENTIFIC CORPORATION, MICHAEL F. MAHONEY, JOSEPH M. FITZGERALD, and DANIEL J. BRENNAN, | ) ) ) ) | |
| Defendants. | ) ) | |

BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

SCHEDULING CONFERENCE

January 23, 2023
10:53 a.m.

John J. Moakley United States Courthouse
Courtroom No. 1
One Courthouse Way
Boston, Massachusetts  02210

Kelly Mortellite, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

APPEARANCES:

On behalf of Plaintiff Union Asset Management Holding AG:
Salvatore J. Graziano
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, NY 10020
212-554-1538

Michael Dains Blatchley
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, NY 10020
212-554-1400
Michaelb@blbglaw.com

Peter K. Levitt
Donnelly, Conroy & Gelhaar, LLP
Suite 1600
260 Franklin Street
Boston, MA 02110
617-720-2880
Pkl@dcglaw.com

On behalf of Defendant Boston Scientific Corporation:
James R. Carroll
Alisha Quintana Nanda
Skadden, Arps, Slate, Meagher & Flom LLP
500 Boylston Street
Boston, MA 02116
617-573-4800
Alisha.Nanda@skadden.com
James.Carroll@skadden.com

P R O C E E D I N G S

(The following proceedings were held in open court before the Douglas P. Woodlock, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, One Courthouse Way, Courtroom 1, Boston, Massachusetts, on January 23, 2023.)

(Case called to order.)

THE CLERK:  If counsel that will be speaking can identify themselves for the record, please.

MR. GRAZIANO:  Good morning, Your Honor.  Salvatore Graziano from Berstein Litowitz for the plaintiffs.

THE COURT:  I'm sorry, I didn't --

MR. GRAZIANO:  Salvatore Graziano for the plaintiffs.

MR. CARROLL:  Your Honor, James Carroll for Boston Scientific and the individual defendants.

THE COURT:  All right.  Well, let me focus on the difference between the parties over what the schedule is going to be.  And of course it turns on whether or not there should be additional kinds of adjustments to the customary discovery in areas like this, in cases generally.

And I guess, Mr. Graziano, I look at this and say what was the motion to dismiss exercised for if not to narrow this? We have one defendant, named defendant.  He's the company.

MR. GRAZIANO:  I think Your Honor has substantially

narrowed the case. I mean, there is no question about it.

THE COURT: Right. So I guess I don't see what we're talking about when we or what you're talking about when you talk about this extraordinary increase in the number of interrogatories, requests for production, requests for admissions, depositions, that sort of thing. I don't know why they're necessary, given the narrowed case. That's what I'm getting at.

MR. GRAZIANO: So I think on the one hand, the company and the individual defendant will enjoy the benefits of that narrow decision because they will have a small case to defend against.

On the other hand, we as the plaintiffs I think are going to face broad defenses to that small case, and that's what worries us. It is a complicated scientific device. The statements are about whether or not the product remains a key growth driver. They may say, well, look at all the history, look at the 12 months, look at how we were doing, the two-valve strategy makes.

THE COURT: Well, I mean, it works both ways. I understand the anxious apprehensions on your part. On the other hand, if they do that, they increase the discovery. If they come back with assertions that there are additional matters not fully developed here, I suppose I could make adjustments in the schedule. I don't see a reason to make

adjustments to the schedule based on my immersion in the materials here.

As you saw, I spent a fair amount of time on that and tried to figure it out.  You know, if there's an approach that seems to me to be not consistent with what pleading in securities cases is supposed to do, I mean, its office is supposed to do, then I can deal with it differently.

But Mr. Carroll, what do you see as your defenses here, full range of your defenses?

MR. CARROLL:  Your Honor, I think the principal defenses will be that the statements made were truthful when made based upon the information at the time.  And it seems to me the key focus of the discovery would be decisions leading up very close in time to the decision to make the announcement that was made in November about LOTUS.

The court obviously can't accept my factual representation on that, but I will tell you that happened relatively near in time to the decision being announced. That's what I think the facts are going to be focused on, and the plaintiffs will soon find out when that analysis began and how it proceeded all in a very condensed period of time.

That I think is the core of the issue that remains in the case, and the core of the defense will be to prove that the statements were truthful when made.

THE COURT:  Well, I have more than lingering -- having

heard that, more than lingering apprehensions myself about what's going to happen and whether or not this is simply going to be spinning it out even longer to get to the resolution of the case.

So let me go through the schedule.  I don't see any reason why we can't get class certification done on the schedule that the defendants have outlined here.  It doesn't seem to me that there's much going on here that needs further attention.  Is there, Mr. Graziano?  Apart from --

MR. GRAZIANO:  I don't see a big disconnect on class certification.  I will point out, I don't know what they intend to do with regard to loss causation.  And because of recent Supreme Court jurisprudence, the Goldman Sachs case, you know, they are permitted to argue there was no price impact in this case because essentially there was no loss causation.  That may require a little bit more time; I don't know that.  And I don't want to make this more confusing, but generally speaking we like short schedules.

THE COURT:  I'm sorry?

MR. GRAZIANO:  We like short schedules.  That's generally good for us, so I don't want to be confusing about this.

THE COURT:  I've never thought that categorical views about schedules were necessarily helpful to adjusting them appropriately or parties' strategic interests.  Their strategic

interests are whatever their strategic interest are, perceived interests are. Mine are to try to narrow the case and get it ready for trial in fairness, fairness to the parties or I should say for summary judgment but fairness to the parties. So how much on loss causation?

MR. CARROLL: I don't know yet, Your Honor.

THE COURT: What do you mean you don't know? Come on.

MR. CARROLL: Well, what I mean by that is we haven't yet thoroughly analyzed with the help of an expert whether that's what we're going to rely on. It doesn't look like that's what it's going to be, but I don't want to waive any rights to argue a loss causation argument with respect to class certification.

THE COURT: When are you going to identify your loss causation expert?

MR. CARROLL: We've begun that work.

THE COURT: Even the longest journey begins with the first step. When is your journey going to be completed?

MR. CARROLL: I would expect we would know whether we would be making that argument by the end of February at the latest.

THE COURT: So what I guess I'm going to say is the defendant's experts with respect to class certification will be done by whatever the date is the last business day in February. That includes of course loss causation experts.

THE CLERK:  28th.

THE COURT:  28th.  And that should, I think, provide adequate opportunity to focus on the class certification issues according to the defendant's schedule.  That is, I permit you to do depositions, do whatever you want to do.

MR. GRAZIANO:  Right.  And to be clear, it's extremely helpful because they may choose not to rebut the presumption, the basic presumption by doing that, but we'll know at the end of February, which is incredibly helpful.

The issue I want to flag is the argument would be the corrected disclosure has nothing to do with the case, and we, by that point, hopefully will have the underlying corporate documents that tie into that decision.

THE COURT:  It looks like you're supposed to.

MR. GRAZIANO:  Yes, I agree.  So it should be fine.  Thank you, Your Honor.

THE COURT:  Okay.  So I'm not sure that I want to go beyond that in a schedule at this point because I am concerned.  I want to do it in bits and pieces on it.  I want to get to the core of it as quickly as possible, but I would encourage both sides to focus carefully on the kind of discovery that they have in mind because I'm going to keep my hands on it pretty tightly.

The more general expert disclosures here, at least on the part of the defendant, I want to keep at June 30.  So keep

that in mind, Mr. Carroll.  That's just what it's going to be. I'll think about whether I have to make adjustments for the plaintiffs under those circumstances.

But the way in which the schedule works at this point is that, with the exception of the last day to join parties and amend pleadings -- that's something I want to talk about in just a second -- I'm essentially taking the defendant's schedule through the completion of fact discovery on June 23, and the expert disclosures on June 30.

Now, the number of depositions and so on we can talk about.  You'll have a chance to figure out what's going on here, Mr. Graziano, before then.  I think that what I would like to do is have a discussion that would be as a kind of scheduling status conference.  Is the 14th, April 14 a Monday? Is that what it is, Barbara?

MR. GRAZIANO:  That's a Friday, Your Honor.

THE COURT:  That's a Friday.  So let's just take, the parties will file a status report, and we'll pick it up for status conference that following week.

Do we have that following week, Barbara?  How about the 18th at 3:00, April 18th at 3:00?

MR. CARROLL:  Very good, Your Honor.

MR. GRAZIANO:  That is fine, Your Honor.

THE COURT:  Ms. Beatty tells me I have the morning open, too.  I don't know, Mr. Graziano, if that's problematic

for you, makes it more difficult to travel and so on.

MR. GRAZIANO:  We would prefer the afternoon.

THE COURT:  Okay.  We'll do it at 3:00.  Okay?

I think I want to take it bite by bite here.  I think everybody tells me that they're always interested in prompt resolution of cases and sometimes they are in the long run.  I am.  But who am I?  So I'll try to figure out where we are at that point.

I encourage you, because I'll be asking questions in a particularized way, to demonstrate your bona fides and your interests in the prompt resolution of the case, including taking advantage of the discovery opportunities that exist already.  Okay?

Anything else we need to talk about at this point?

MR. GRAZIANO:  Nothing else, Your Honor.

MR. CARROLL:  Thank you, Your Honor.

THE COURT:  Okay.  So we'll see you on the 18th.

MR. CARROLL:  3:00 p.m.

THE COURT:  Yes.  Thanks very much.  We will be in recess.

(Adjourned, 11:07 a.m.)

CERTIFICATE OF OFFICIAL REPORTER


I, Kelly Mortellite, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter to the best of my skill and ability.

Dated this 25th day of February, 2023.


/s/ Kelly Mortellite

_____

Kelly Mortellite, RMR, CRR

Official Court Reporter