**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re BOSTON SCIENTIFIC CORPORATION SECURITIES LITIGATION | Master File No. 1:20-cv-12225-DPW <br><br> CLASS ACTION |

**AGREED ESI PROTOCOL ORDER**

The parties in the above-captioned action have agreed to the terms of this Agreed ESI Protocol Order as set forth below; accordingly, it is ORDERED:

This protocol describes the specifications for the production and use of electronically stored information, such as emails, electronic documents, hard copy documents (which will be converted to an appropriate electronic format as set forth below), text messages, instant messages and chat formats, audio and video files (including voicemail recordings), and any relevant structured data sources ("ESI").

## 1.    DEFINITIONS

Definitions will be construed according to the Federal Rules of Civil Procedure and The Sedona Conference Glossary:  eDiscovery & Digital Information Management (Fifth Edition), *available at* https://thesedonaconference.org/publication/The_Sedona_Conference_Glossary (last accessed February 1, 2023).

## 2.    SEARCH METHODOLOGY

The parties agree that they will meet and confer regarding the search terms, custodians, and date ranges ("Search Criteria") that a Producing Party plans to use to identify ESI responsive to document requests if applicable.  The parties also agree to employ reasonable sampling/testing procedures to validate any applied search terms or any agreed-upon automated review methodology. The parties are required to engage in transparent and sincere negotiations regarding appropriate search terms and custodians for the discovery of ESI that is responsive to document requests and other discovery.  These discussions have already begun, and will continue throughout discovery.  If good faith negotiations do not resolve all ESI questions, the parties will bring any remaining disputes to the Court for resolution.

**3.    CUSTODIANS**

The parties will meet and confer to identify their respective custodians and data sources.

**4.    DOCUMENT PROCESSING**

4.1    <u>Hidden Data</u>.  The parties will, during processing, force on the following:

      i.    track changes (absent special circumstances, the TIFF images should show all track changes in markup form);

      ii.    hidden columns or rows (noting that hidden columns or rows exist in native Excel files is sufficient);

      iii.    hidden text or worksheets;

      iv.    hidden slides in native PowerPoint presentations; and

      v.    comments (these should be visible on the TIFF images of the documents).

4.2    Upon request by the receiving party, the producing party must produce native copies of any documents containing hidden data.

**5.    DATA CULLING**

5.1    <u>Duplicates</u>.  The parties will use industry standard hash values to de-duplicate documents.  The parties will apply de-duplication on a family basis.  The parties will de-duplicate across custodians ("global de-duplication").  With respect to global de-duplication, the Load File will contain a metadata field ("All Custodians") identifying all custodians who possessed exact copies of the document.  The parties will not de-duplicate loose electronic documents against email attachments.  The parties will not count a document containing handwritten notes, highlighting, or any other markings as a duplicate of a non-marked or annotated version of the same document.

5.2    <u>Date Range</u>.  The parties will meet and confer regarding the start date and end date to be applied to limit documents.  The parties' discussion of date range will include the issue of

whether, if any of the fields Date Sent, Date Received, Date Created, and/or Date Last Modified fall within the or a specific date range, a document will be included.

5.3    Search Terms.  The parties will meet and confer regarding the search terms to be applied to limit documents.  If any family member hits on a search term, the entire family must be included for review purposes.  To the extent one or more documents in any family are responsive to any document request, the entire family must be produced, with the exception that privileged material and personal identifying information (PII) may be redacted or withheld.  The parties must run optical character recognition ("OCR") conversion on non-searchable PDF files and other stand-alone files and email attachments that do not have searchable text in order to make them searchable before running the searches.  The parties further agree that applying the agreed-upon search terms to a given party's collection of ESI does not by itself satisfy that party's obligations in responding to specific discovery requests; there may be categories of documents requiring collection other than by application of search terms, including without limitation documents that cannot be effectively searched following OCR conversion.

5.4    The parties agree that search terms, custodians, data sources and/or date ranges may need to be adjusted or supplemented as discovery proceeds.  The parties will meet and confer in a timely fashion regarding any additional search terms, custodians, data sources and/or date ranges.

**6.    PRODUCTION**

6.1    Media.  Productions will be produced via FTP site or other secure file transfer site.  If a delivery is too large, the production will be delivered via an external hard drive using overnight delivery.  The production media should be labeled with:

   i.  the producing party's name;

   ii.  the case name and number;

iii.    the production volume; and

iv.    the Bates number range.

6.2    _Production Format_.  All files shall be produced as tagged image file format ("TIFF") images accompanied with an image load file, a data load file, and document-level searchable text.  Responsive native files will also be produced pursuant to Section 6.3 below.

i.    Image Requirements.  A TIFF image converted from native file shall be produced as follows:

1.    All images shall be group 4 black and white 300 dpi TIFF files named according to Bates number (although a party may request a document be produced in color if required to understand its content);

2.    Requested color images will be produced in JPG format;

3.    Hidden content, tracked changes or edits, comments, and other similar information viewable within the native file shall also be imaged so that such content is viewable on the image;

4.    Bates numbers and confidentiality designations shall be branded to the images so that the numbers and designations print;

5.    If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production;

6.    Images shall be single page TIFFs (one TIFF file for each page); and

7.    Each TIFF image should be assigned a Bates number that is unique and maintains a constant length across the entire document production (i.e., padded to the same number of characters).

ii.   Data Load File Requirements.   The parties will produce a Relativity-compatible .dat load file with standard Concordance delimiters with each production volume.   The data load file will contain all fields listed on Appendix A with a header row describing each field to the extent they exist and are reasonably available. The parties will also produce an Opticon-compatible .opt file to provide paths to individual Bates-numbered TIFF and JPG files.

1.   The parties are not obligated to produce metadata from a document if metadata does not exist or if the metadata is not machine extractable, except that the parties will produce custodian metadata for hard-copy documents to the extent that a custodian is reasonably known or can be assigned.

iii.   Extracted and OCR Text Requirements.   The parties will provide electronically extracted text for ESI.  The parties will provide OCR text for documents that do not contain electronically extractable text, for redacted documents, and for hard-copy documents.

1.   The parties will provide document text as separate, document-level text files not embedded in the metadata load file; and

2.   The parties will name each text file with the unique Bates number of the first page of the corresponding document, followed by the extension "txt."

6.3   Native Production.  The parties will produce presentations (i.e., PowerPoint), Excel and/or CSV spreadsheets, audio files, and video files in native form to the extent these files are

responsive and possessed by the producing party in native form.  With the exception of PowerPoint files, which will also be produced as TIFF images, the parties will replace the TIFF image of Excel and/or CSV spreadsheets, audio files, and video files with a document placeholder containing a unique Bates number and language sufficient to convey that the document was produced in native form, along with any applicable Protective Order designation.  The text file will contain the extracted text of the native file.  Should any TIFF images not be legible, the parties will work together to provide native versions of such documents on a case-by-case basis.

      i.     The parties will name each native file with the unique Bates number of the first page of the corresponding document, followed by the appropriate extension ("xls," "csv," or "ppt", etc.);

      ii.     The parties will provide a path to each native file in the data load file;

      iii.     When redaction is necessary, a redacted full TIFF version may be produced instead;

      iv.     When documents of file types such as audio files, DWG files, AutoCAD files, Access databases, Microsoft Project files, Log files, and the like cannot be converted to image files or cannot be converted without undue burden and/or expense, such documents may be produced in native format with placeholders; and

      v.     The requirements of Paragraph 6.2(ii) apply equally to all documents produced in native format.

6.4    <u>Other Files</u>.  The parties will meet and confer to discuss a suitable production format for any document types not addressed herein, including, but not limited to, text messages, Bloomberg or Slack chats, audio files, and messages from other platforms.

6.5     <u>Bates Numbering</u>. The Bates number and any confidentiality designation should be electronically branded on each produced TIFF image of ESI. For documents produced in native format, the Bates number and confidentiality designation should be electronically branded on the document placeholder.

6.6     <u>Prior Productions</u>. Notwithstanding the above, documents previously produced to a third party in any other proceeding, investigation, or inquiry concerning the Lotus Edge and already formatted for production can be produced in the manner they were previously produced to the third party (although also Bates stamped for production in this case).  The producing party shall also provide any information concerning production formatting and/or specifications to the extent needed by the receiving party to process, use, or interpret the previously produced documents.

6.7     <u>Productions from Databases, Structured Data, or Risk Analysis Platforms</u>.  To the extent a response to discovery requires production of ESI contained in a database, structured data, or similar platform, the parties agree that the producing party will promptly explain to the requesting party the contents and structure of the database, structured data, or platform, and the parties will then promptly meet and confer as needed to develop a method of obtaining and producing discoverable information from the database, structured data, or platform.

**7.     CONFIDENTIALITY**

Confidentiality of documents produced will be designated in accordance with the Protective Order entered in the above-captioned case.

**8.     PRIVILEGE**

8.1     <u>Privilege Log</u>.  The parties will provide a privilege log that complies with Rule 26 for any document withheld in whole or in part (i.e., redacted) based upon a claim of privilege on a rolling basis.  The parties further agree to meet and confer regarding the production of a privilege

log prior to any deposition(s) as necessary.  The log will be produced in Excel format and detail the following for each document:

    i.      BEGBATES (if applicable);

    ii.     ENDBATES (if applicable);

    iii.    Custodian;

    iv.     Date Sort;

    v.      EM – Time Sent (if applicable);

    vi.     EM – Time Received (if applicable);

    vii.    Author;

    viii.   From;

    ix.     To;

    x.      CC;

    xi.     BCC;

    xii.    Privilege Claim Asserted (e.g., attorney-client privilege and/or work product); and

    xiii.   a sufficient description of document or communication at issue that will allow the receiving Party and the Court to assess the claim of privilege.

8.2     Concurrent with their production of privilege logs, the parties shall produce a list identifying any legal personnel listed on the privilege log, the personnel's professional status (i.e., lawyer or paralegal), the name of the business entity to which the legal personnel were affiliated as of the time of the withheld communication, and the party that the legal personnel represented.

8.3     A party is required to include only one entry on the privilege log to: (i) identify each withheld e-mail string that constitutes an uninterrupted dialogue between or among

individuals[1] (an "E-mail Chain"); and (ii) identify each family (*i.e.*, parent email and attachments) fully withheld for privilege.

      8.4      Privilege logs must be provided in Microsoft Excel format.

      8.5      Communications exclusively between a party or its representative(s) and its counsel in this action created on or after December 16, 2020 need not be logged.  Similarly, work product created after December 16, 2020 by counsel in this action, an agent of counsel in the action, or a party at the direction of its counsel, need not be logged.

---

[1] An "uninterrupted dialogue between or among individuals" means a dialogue between an identical group of individuals throughout the E-Mail Chain. If at any point in an E-Mail Chain or dialogue, one or more individuals are either removed or added, the dialogue is no longer uninterrupted for the purposes of this section.

SO STIPULATED AND AGREED.

Dated: February 28, 2023                    Respectfully submitted,

**SKADDEN, ARPS, SLATE, MEAGHER**          **BERNSTEIN LITOWITZ BERGER &**
**& FLOM LLP**                             **GROSSMANN LLP**
*/s/ James R. Carroll*                      */s/ Michael D. Blatchley*
James R. Carroll (BBO #554426)              Michael D. Blatchley
Alisha Q. Nanda (BBO #657266)               Salvatore Graziano
Yaw A. Anim (BBO #569512)                   Mark Lebovitch
500 Boylston Street                         Alexander T. Payne
Boston, Massachusetts 02116                 1251 Avenue of the Americas, 44th Floor
Telephone: (617) 573-4800                   New York, NY 10020
Facsimile: (617) 573-4822                   Telephone: (212) 554-1400
james.carroll@skadden.com                   Facsimile: (212) 554-1444
alisha.nanda@skadden.com                    michaelb@blbglaw.com
yaw.anim@skadden.com                        salvatore@blbglaw.com
                                            markl@blblgaw.com
                                            alex.payne@blbglaw.com
*Counsel for Defendants Boston Scientific*
*Corporation and Michael F. Mahoney*
                                            *Lead Counsel for Lead Plaintiff and the Class*


                                            **DONNELLY, CONROY & GELHAAR LLP**
                                            T. Christopher Donnelly (BBO #129930)
                                            Peter E. Gelhaar (BBO #18830)
                                            Peter K. Levitt (BBO #565761)
                                            260 Franklin Street, Suite 1600
                                            Boston, Massachusetts 02110
                                            Telephone: (617) 720-2880
                                            Facsimile: (617) 720-3554
                                            tcd@dcglaw.com
                                            peg@dcglaw.com
                                            pkl@dcglaw.com

                                            *Liaison Counsel for Lead Plaintiff*


        SO ORDERED:


Dated:   March 7, 2023                      */s/ Douglas P. Woodlock*
         Boston, Massachusetts
                                                Hon. Douglas P. WOODLOCK
                                                United States District Judge


-10-

**Appendix A**

| Field Name | Description |
| --- | --- |
| BatesBegin | The first page of the document |
| BatesEnd | The last page of the document |
| AttachBegin | The first page/doc of the first parent of an attachment family. (e.g., ABC000001). |
| AttachEnd | The last page/doc of the last attachment. (e.g., ABC000019). |
| Custodian | Custodian name |
| Date Sort | Family date field |
| All Custodians | All custodians of a globally deduplicated document separated by semicolons (e.g., Doe, John; Roe, Robert). |
| Tag - Confidentiality | The text demonstrating the confidential level of the document (e.g., Confidential, Highly Confidential, etc.) |
| EM - Subject | E-mail subject |
| EM - To | The values in the original "To" field for emails. |
| EM - From | The values in the original "From" field for emails. |
| EM - CC | The values in the original "CC" field for emails. |
| EM - BCC | The values in the original "BCC" field for emails. |
| EM – Time Sent | Time the e-mail was sent in Eastern Standard Time |
| EM - Date Sent | Date the e-mail was sent |
| EM - Date Received | Date the e-mail was received |
| EM – Time Received | Time the e-mail was received in Eastern Standard Time |
| File - Title | Title field value extracted from the metadata of the native file |
| File - Document Type | A reference to the application that created the file, for example "Word Document" or "Excel Spreadsheet" |
| File - File Name | Original file name |

| Field Name | Description |
|---|---|
| File - File Path | The path the original native file (excluding name and file extension) |
| File - File Size | File size of the native file in bytes. |
| File - Date Created | Date the file was created (not applicable to e-mails that were sent or received) |
| File - Date Modified | Date the file was last modified (not applicable to e-mails that were sent or received) |
| Extracted Text Path | File path to the extracted text/OCR file, or the extracted/OCR file link (e.g. ABC001\Text\001\ABC000001.txt) |
| Has Hidden Excel Column | Shows if there is a hidden column in an Excel file |
| Has Hidden Excel Row | Shows if there is a hidden row in an Excel file |
| Has Hidden Excel Sheet | Shows if there is a hidden sheet in an Excel file |
| Has Hidden PowerPoint Slides | Shows if there is a hidden slide in a PowerPoint presentation |
| Native File Path | File path to the native file, or the native file link (e.g., ABC001\Native\001\ABC000001.xls) |
| MD5Hash | Unique "fingerprint" that exists for every document. This identifier is used for identification of exact duplicate documents. |
| Social media / cell phones – Participants | The participants of the text/chat, either by name or phone number (or both). |
| Social media / cell phones – Type | The type of message (e.g., text, chat, or other). |
| Social media / cell phones – Text/Chat Group | Allows grouping of all chats/texts from the same string together. |
| Social media / cell phones – Sender | The sender of the text/chat. |
| Social media / cell phones – Recipients | The recipient(s) of the text/chat. |
| Social media / cell phones – Name | The name associated with the social media account. |