UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

)
)
IN RE BOSTON SCIENTIFIC CORPORATION        )        Civil Action
SECURITIES LITIGATION                      )        No. 20-12225-DPW
)

_____

BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

VIDEOCONFERENCE

April 18, 2023

John J. Moakley United States Courthouse
Courtroom No. 1
One Courthouse Way
Boston, Massachusetts  02210

Kelly Mortellite, RMR, CRR
Official Court Reporter
One Courthouse Way, Room 3200
Boston, Massachusetts  02210
mortellite@gmail.com

APPEARANCES:

Counsel on behalf of Union Asset Management Holding:
Michael Dains Blatchley
Salvatore J. Graziano
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, NY 10020
212-554-1400
Michaelb@blbglaw.com
Salvatore@blbglaw.com

Counsel on behalf of Boston Scientific:
Alisha Quintana Nanda
Skadden, Arps, Slate, Meagher & Flom LLP
500 Boylston Street
Boston, MA 02116
617-573-4800
Alisha.Nanda@skadden.com

James R. Carroll
Skadden, Arps, Slate, Meagher & Flom LLP
500 Boylston Street
Boston, MA 02116
617-573-4800
James.Carroll@skadden.com

P R O C E E D I N G S

(Case called to order.)

THE COURT:  Well, I want to start with the not surprisingly but disappointing joint status report here, but I suppose predictably so.  I'll start with what doesn't seem to be contested, which is the filing of the class certification motion on April 21.  Are we on track on that?

MR. GRAZIANO:  Good afternoon.  Salvator Graziano for the plaintiffs.  Yes, Your Honor, we are.

THE COURT:  Okay.  So let's backtrack from that.  I assume that you've had depositions in connection with it?

MR. GRAZIANO:  Not yet.  The defendants and we are scheduling a deposition of the lead plaintiff, and we anticipate that would happen in May before the opposition --

THE COURT:  So no depositions have been taken with respect to the class certification motion?

MR. GRAZIANO:  Correct, Your Honor.

THE COURT:  Okay.  So now I'm presented with a rather remarkable set of alternatives.  You'd like an extra two months than plaintiffs would for the various basic discovery, and the defendants would like to shrink that period of time for expert discovery.

Now, I suppose there's a way of holding the balance true, which is to say you've got the schedule you've got.  And I guess I'd say I'll look and see what you do with it.  But my

own view, I guess, is that that was not an unreasonable schedule. The parties should have met it. If there's been fooling around here, it will come out at some point. The party, or parties who have been fooling around will find there will be adjustments associated with that activity.

But, you know, I look at this, and I don't know what I'm supposed to say as a result of this. That you continue in negotiation, that's good, makes sense. But what do you expect me to do with a joint status report like this?

MR. GRAZIANO: Your Honor, it's Sal Graziano for the plaintiffs. I want to take an opportunity to point out why I think going the way we've asked is actually going to be a lot less intrusive and burdensome for the Court because the alternative, as Your Honor has said, is we're just going to have to file a motion to compel on a number of items, and we're pretty close to working it out with the other side.

And I can be very specific. They've agreed to additional search terms. We're talking about additional custodians. We basically agreed to a broader time period. And all of these things I think would be immediately withdrawn from them, and what would happen, instead of a two-month schedule -- and I want to talk about why it's two months -- but what would happen instead is we'd have the status quo, but we have competing motions for the Court that the Court would have to resolve. And I am not concerned about that because I think the

motions will prove that we are in the right here, but it is going to be a lot of work for something that I think we can work out.

Now, why the two months?  They said to us they need until the end of May to produce the documents that we've agreed to.  If we can move the schedule --

THE COURT:  Let me stop there.  Is that the case, Mr. Carroll, or whoever is going to speak for you?

MR. CARROLL:  James Carroll.  It is not the case, Your Honor.  May I explain?

THE COURT:  Well, no.  I just wanted to get a sense of what your position was.  I had a sense of what it was.

So Mr. Graziano's I guess hope is not necessarily going to be fulfilled.

MR. GRAZIANO:  Well, Your Honor, I mean, we have written correspondence with them.  I'm not saying this all off the top of my head.  I know what they told us.  We have met and conferred with them at every opening, and they said they needed the time.  They also said to us on April 4 that it's going to double the amount of documents we have.  We can start doing the depositions now, but the documents are literally going to double.  So it seems like we didn't -- we'll have to depose their people again.  We can go down that road.  We can file motions to compel from the Court.

THE COURT:  Mr. Graziano, one of the things that's a

little disturbing is that the position that's taken is go our way or we'll flood you with motions.

MR. GRAZIANO:  Your Honor --

THE COURT:  Just a moment.  And that is not a particularly persuasive point of view.  So I'll hear you, Mr. Carroll, on what else you're going to do.  Anything?

MR. CARROLL:  Your Honor, we have been engaging and are willing to make some additional productions to look at some additional search terms, but the understanding in doing that was to try and avoid expensive motion practice, not to expand the time period to allow for more requests, which is what the plaintiffs seek.

THE COURT:  Let's talk about the time period in two ways.  One, what I'll call the pre-class period, and the second, the post-class period.  It looks to me like you're permitting a little bit of relaxation with respect to the pre-class period.  Am I correct about that or not?

MR. CARROLL:  You are.

THE COURT:  Okay.  And so why can't you permit another two weeks past the post-class period?

MR. CARROLL:  If we can do that and avoid disputes, we will.

THE COURT:  So there we are on that one. Mr. Graziano, what else?

MR. GRAZIANO:  On that one, they had agreed, and I

think they are agreeing again today, to take discovery through December 30.  The next one that I think they already agreed to, they went through discovery using one search term.  We've never seen discovery in a case like this with one search term.  We've talked to them, and I think we've agreed to six more.

THE COURT:  I'll stop with that.  Mr. Carroll, have you agreed to six more?

MR. CARROLL:  We have agreed to do so if we could do it and avoid the disputes, yes.

THE COURT:  Come on.  Both of you guys are just being foolish about this.  This is stupid stubborn, and we are taking up a great deal of your client's time, but I guess your clients are happy enough to have you chew at each other's ankles this way.  I'm not.  I've got a few things to do in other cases as well, and to be confronted with this sort of thing is just borderline intolerable.

So I guess I will just have to say this.  Number one, that you go to December 30 now.  That's what has been indicated for the time period.  You expand the search terms as you've indicated you will, that is Boston Scientific has, and we're keeping the same dates.

MR. GRAZIANO:  Your Honor, just a couple more points, and I know it's taxing the Court's time --

THE COURT:  Taxing my time?  I like to use my time productively, and you're not using my time productively.

MR. GRAZIANO:  And I apologize about that.  I am also trying to make progress today, and I didn't mean it to sound like a threatening way we'll move to compel.  I recognize how that may have come across.  That's not what I was saying.  What I was saying was we've tried to work it out, we've tried very hard.

We know for a fact the individual, Mr. Mahoney, was communicating via text messages.  We know he was using his personal gmail.  They won't search either one of those.  He had been talking to analysts using his gmail account.  It sounds like it's going to be a motion unless they agree.  We're only going to be getting relevant messages from his texts and his gmail, but that's how he was communicating.

THE COURT:  Mr. Carroll.

MR. CARROLL:  The decisions made with respect to termination of the Lotus program were not made over text messages or gmail.  Indeed we've already produced the elaborate decisionmaking process, which is very well documented, to the plaintiffs in one of our first productions.

THE COURT:  What's the resistance of permitting gmail, the gmail account?

MR. CARROLL:  We know from the custodial work that we've done they weren't using it in connection with the decision, so that's -- the resistance is it's just a waste of time and money.

THE COURT:  How would you show that if I said after getting a motion, let's see it?

MR. CARROLL:  If Your Honor -- I could submit it by way -- I could submit by way of an affidavit what the individual's practices were to demonstrate how they used it and show Your Honor actually the record of the decisions that were made and how they did those.

THE COURT:  I guess I'm going to say that you've got to turn over the gmail.

MR. CARROLL:  We'll search it, Your Honor, if that's the order.

THE COURT:  That's my instruction, that's absolutely right.  What's next?

MR. GRAZIANO:  Well, there was also text messaging going on between Mr. Mahoney and Mr. Fitzgerald, and these are the two key people in this situation.  So we think the text messages are just as important.  I think they are readily searchable.  It's not very extensive.

THE COURT:  Mr. Carroll.

MR. CARROLL:  So first, this hasn't been raised in the meet and confers before, so we haven't spoken about this.

THE COURT:  Okay.  Let's stop with that. Mr. Graziano, if I look at the meet and confers, will I see, "We want text messages"?

MR. GRAZIANO:  I call on my colleague, Mr. Blatchley,

he's nodding his head yes.

MR. BLATCHLEY:  Yes, it's been raised.  It's in the correspondence.

THE COURT:  Okay.  So I'll make this a test of manhood.  If it's in the meet and confer, you lose, Mr. Carroll.  If it's not in the meet and confer, you lose, Mr. Graziano and Mr. Blatchley.  And you will have established for me who is credible and who isn't.

MR. CARROLL:  Your Honor -- sorry.

THE COURT:  Are you ready for it?

MR. CARROLL:  Might I say something, Your Honor?

THE COURT:  Yes.

MR. CARROLL:  Thank you.  I'm told that the gmail has never been surfaced in a meet and confer, but there was indeed a request to text messaging.  So I need to amend my prior assertion.

THE COURT:  So when do I get to rely on what you say in these conversations?  I mean, it's just a kind of say whatever you feel like saying to the judge, not be prepared with respect to those matters?

I mean, I have to tell you that this is illustrative of the meet and confer that wasn't, joint status efforts that weren't and a case that's been put in considerable amount of delay, illustrated, as I've said, at the back end by the crushing of the previous schedule for experts, as if the quid

pro quo is they asked for two months more, you ask for two months less without any tailoring to the circumstances of the case.

Now, I've gone through this process with some care on my own to try to figure out what's going on. I ask questions not just off the seat of my pants but to test the bona fides. Someone is flunking. Both of you probably are. So I'm back to where I was before, which is to say, you've got the schedule you've got.

MR. GRAZIANO: Well, Your Honor --

THE COURT: I'm sorry, Mr. Graziano. You've got the schedule you want. They may have to end up paying for the costs of imposing these additions or maybe they'll be more reasonable. But what you have both called for is something that's not capable of immediate resolution or any resolution at this point.

So I'll see what the class certification has to say here. I understand that you haven't even taken a deposition for it, haven't undertaken to take depositions. Why you wouldn't seek depositions earlier, I have no idea, but you didn't. And so both of you have been playing a go-for-broke game, and sorting through it is very difficult under these circumstances, so difficult that I don't propose to do it at this point. But it will come back to haunt both of you I think that you've taken this approach.

So the short of it is, I think I'm back to where I started. I hope that you negotiate some more. I hope that you're able to work out something that is agreeable between you, but you haven't. And so you have the schedule that you've had before, and I'll review the class certification motions. I'll look at whatever motions to compel and expand the discovery as are filed, and they will receive a kind of hospitality which they deserve.

So I'm not sure what else we need to talk about today. You've got a schedule. You've had one for some time. You haven't met it. And now you're going to stick with it until there's some persuasive reason to do otherwise. That includes, by the way, the expert discovery, which almost laughably has been constricted by the defendant's response.

MR. CARROLL: Your Honor, may I make an inquiry in that regard?

THE COURT: Yes.

MR. CARROLL: Because I am afraid I do not fully understand. What our proposal was was all the dates the Court had set up until the end of the expert disclosure deadline and then a series of dates for rebuttals, completion of depositions following after that. When Your Honor --

THE COURT: When I look at this -- just a moment. Maybe I missed this. Your new modified expert disclosure deadline is June 30, isn't it?

MR. CARROLL:  That's the date, Your Honor, that the Court previously adopted.

THE COURT:  Right.  The next one after that is the rebuttal expert disclosures.  That's August 18.

MR. CARROLL:  Yes.

THE COURT:  All right.  And is that the one I imposed?

MR. CARROLL:  No, Your Honor.  That's what we had suggested.

THE COURT:  Right, okay.  And is that two months shorter than the previous one?

MR. CARROLL:  I don't believe there was a previous one, Your Honor.

THE COURT:  I'm not so sure.  But in any event, I look at the deadlines that I'm working off on page 2 and 3 of the joint filing.  So it has the deadlines that are set up on the left-hand side.  They've been passed through to June 23, I think, that's the certification response.  Then we have completion of document production, and now the plaintiffs want May 31.  We have the deadline for written discovery.  Now the plaintiffs want June 14.  We have completion of all fact discovery, and the plaintiffs want August 23.  We have expert disclosures, and the plaintiffs want August 30.  We look at the modified deadline to serve discovery requests, and the defendants are talking about April 14, I believe, aren't you?

MR. CARROLL:  Yes, all the dates we suggested are the

prior dates.

THE COURT:  I guess I perhaps misunderstand that.  I understood that the prior date for modifying the deadline -- for the deadline to provide expert disclosure, ultimate expert disclosure, was August 30.

MR. CARROLL:  No, Your Honor.  June 30, respectfully, Your Honor.

THE COURT:  Okay.  And so the point -- you say that and I'll take that as it is because I'm trying to go through what the parties submit to me.  And I look at rebuttal expert disclosure, which, as I understand it, you're telling me that this is what was done before.  It is before the modified expert disclosure.

MR. CARROLL:  No, Your Honor.  I'm sorry.  In the joint status report in paragraph 4, there is a listing of those dates the Court had previously ordered.

THE COURT:  Right.

MR. CARROLL:  And we've just asked to stick with all of those dates.  For proceeding subsequent to the matters as to which the Court had previously ordered, we have suggested the series of dates starting with August 18 for rebuttal expert reports and therefore.  We've never sought to shorten any date set by the Court.  We've only attempted to build on top of the dates the Court previously set.

THE COURT:  Okay.  I guess I haven't fully understood

this.  So now I'll have to look at it even more carefully.

Mr. Graziano, is this listing simply a response to the further development of the case that they have in light of their position to your changing it?

MR. GRAZIANO:  I'm not sure I follow the question.

THE COURT:  Okay.  Let's go through this again.  I'm going to be sure that I get it right.  Are we all on board that expert disclosures right now are to be done by June 30?

MR. CARROLL:  Yes, Your Honor.

MR. GRAZIANO:  Yes, Your Honor.

THE COURT:  And you would like to see them on August 30, is that it?

MR. GRAZIANO:  Yes.  What we did, Your Honor, was we are just pointing out that all the deadlines would keep, but finishing document production -- finishing document production by March 31.  They told us it's not going to happen.  March 31 is in the past.  They need more time.

So we are teeing the days off in exactly the same math, the same 84 intervals from May 31 to March 31.  If they tell us they can get it done by May 1, we can see by May 1.  But they've missed that deadline.  It's not our doing.  We've done everything we can to meet the deadline.  It's passed, it's gone.  And the documents they're going to give us are going to double in size.

We would like to negotiate this, as Your Honor

suggested, we'd like avoid motions to compel.  We are pretty close, but we're not going to meet March 31.  We can't go back in time and have those documents by that deadline.

THE COURT:  Why do you have to go back in time entirely?

MR. GRAZIANO:  Because we had March 31 so that we'd have a chance to get the documents and then meet the rest of the schedule.  It's really prejudicial for them to give us the documents at the end of May and then expect our experts to be ready by the end of June with all the other dates that were previously set.  That's the prejudice we're suffering under.  We didn't miss March 31.  They did.

THE COURT:  What's to tell me I'm not going to see the same thing on May 31, same discussion?

MR. GRAZIANO:  I can't imagine.  I think we will make every effort.  But, you know, I think the schedule was too tight to begin with, and we did have that battle the last time we were before Your Honor.  And unfortunately -- I know they disagree.  I know they disagree.  But they've also agreed to double the size of their production.  So they really shouldn't have it both ways here.

THE COURT:  Well, I guess here is where I will end up on this.  I will entertain as of June 14 any objections to the document production that the defendants have provided, additional time to discuss it and to determine whether or not

there's been meaningful responsiveness.

So you can file whatever motions you want to file, Mr. Graziano, on that date.  Of particular importance to me is going to be the question of meet and confer, whether this was simply a matter of periodically coming up with something.  Mr. Carroll has, for example, come up with text messages not being part of meet and confer, except that they were, and that the gmail was for a meet and confer, except that it wasn't.  Well, we'll find out.

But this is something that I've tried to work out in terms of incentive structures.  The plaintiff should want to get its case moving along.  And apparently the plaintiff wants to have its case drag along.  The defendant perhaps recognizing resources is prepared to let it go as long as possible.  And I simply want to get this case in a posture for resolution at the next stage, which is the summary judgment stage.

So I'll look forward to receiving the class certification motion, which will give me some idea of what's going on.  I will entertain no earlier than June 14 motions to compel, motions to expand the document production and written discovery with a view toward determining whether or not the completion of fact discovery has to be extended and adjustments have to be made, including adjustments by recalculation of the costs of discovery.

I don't know any other way, frankly, listening to this

discussion and trying to understand what it was that the parties were in fact doing.  So I hope that that's clear enough, if not satisfactory.  Is it?

MR. GRAZIANO:  Your Honor, we understand.  We will endeavor to see if we can just negotiate this with them.  I just want to be clear, we did ask for personal email in the written correspondence.  It's there.

THE COURT:  I'm going find that out if there's a discussion about this that says they have been less than candid in response, but that's the way I'm going to look at it.

MR. GRAZIANO:  Thank you, Your Honor.

THE COURT:  Mr. Carroll, you understand what I'm looking for here?  I thought you did before, but maybe not, before this joint proposal or joint statement was filed.

MR. CARROLL:  Yes, Your Honor.

THE COURT:  Okay.  So I really do expect there to be movement on this, and if there isn't, I'll have to deal with it as trench warfare, but I will.  Anything else?

MR. GRAZIANO:  We have nothing else, Your Honor. Thank you.

THE COURT:  Mr. Carroll, anything else?

MR. CARROLL:  No, thank you, Your Honor.

THE COURT:  All right.  So we will be in recess, and we'll see how this plays out and go from there.  Thank you very much.        (Adjourned, 3:32 p.m.)

CERTIFICATE OF OFFICIAL REPORTER


I, Kelly Mortellite, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing transcript is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter to the best of my skill and ability.

Dated this  24th day of April, 2023.


/s/ Kelly Mortellite

_____

Kelly Mortellite, RMR, CRR

Official Court Reporter