REDACTED VERSION FOR PUBLIC FILING

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re BOSTON SCIENTIFIC CORPORATION :
SECURITIES LITIGATION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This Document Relates To:

ALL ACTIONS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: Master File No.: No. 1:20-cv-12225-DPW

: **ORAL ARGUMENT REQUESTED**

:

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

James R. Carroll
Alisha Q. Nanda
Yaw A. Anim
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800

*Counsel for Defendants*
*Boston Scientific Corporation,*
*Michael F. Mahoney, Joseph M. Fitzgerald,*
*Daniel J. Brennan, Shawn McCarthy,*
*Ian Meredith, Kevin Ballinger and*
*Susan Vissers Lisa*

Dated: May 26, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

RELEVANT FACTUAL BACKGROUND ............................................................................. 2

    A.    The Lotus Launch Commenced In April 2019,
           But Was Ultimately Terminated In November 2020 ............................................. 2

    B.    Union Purchased Boston Scientific Shares During
           The Putative Class Period For Reasons Not Related To Lotus .............................. 3

    C.    After Boston Scientific's November 17, 2020 Alleged Corrective
           Disclosure, Lead Plaintiff Purchased Additional Boston Scientific Shares ........... 5

LEGAL STANDARD .............................................................................................................. 6

ARGUMENT ........................................................................................................................... 8

I.      UNION IS SUBJECT TO UNIQUE RELIANCE DEFENSES THAT
        WILL BECOME A FOCUS OF THIS DISPUTE, AND THUS FAILS TO MEET
        THE TYPICALITY AND ADEQUACY REQUIREMENTS OF RULE 23(a) ................ 8

    A.    Courts Deny Class Certification Where The
           Proposed Class Representative Is Subject To Unique Defenses ............................ 8

    B.    Union Continued To Purchase Boston Scientific
           Stock *After* Learning The "Truth" About Lotus, And Is
           Therefore Subject To The Unique Defense That It Did Not Rely On Any
           Alleged Misrepresentations Concerning Lotus In Making Its Purchases ............... 8

    C.    Union Is Subject To The Unique Defense
           That It Is Facilitating Lawyer-Driven Litigation ................................................. 13

    D.    Union Is Subject To The Unique Defense That
           There Are "Perceived Inconsistencies" In Union's Litigation Positions ............... 15

II.     PLAINTIFF HAS PROVIDED NO EVIDENCE THAT IT
        SUFFERED LOSSES DURING THE CLASS PERIOD AND
        SO HAS NOT ESTABLISHED TYPICALITY OR ADEQUACY ................................. 16

CONCLUSION ...................................................................................................................... 18

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Bartok v. Hometown America, LLC,*
    No. 21-10790-LTS, 2022 WL 970079 (D. Mass. Mar. 30, 2022) ...............................7, 17

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) .................................................................................................................9

*Beck v. Status Game Corp.,*
    No. 89 Civ. 2923 (DNE), 1995 WL 422067 (S.D.N.Y. July 14, 1995) ...............................8

*In re Boston Scientific Corp. Securities Litigation,*
    686 F.3d 21 (1st Cir. 2012) ................................................................................................156

*In re Boston Scientific Corp. Securities Litigation,*
    604 F. Supp. 2d 275 (D. Mass. 2009) .................................................................................16

*Catzin v. Thank You & Good Luck Corp.,*
    No. 15-cv-7109 (KBF), 2016 WL 11779675 (S.D.N.Y. Oct. 3, 2016) .............................15

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013) ...............................................................................................................6, 7

*Dura Pharmaceuticals, Inc. v. Broudo,*
    544 U.S. 336 (2005) ..............................................................................................................15

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    903 F.2d 176 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v.*
    *Baker,* 582 U.S. 23 (2017) .................................................................................................8

*George v. China Automotive Systems, Inc.,*
    No. 11 Civ. 7533(KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013) ...............................9

*Grace v. Perception Technology Corp.,*
    128 F.R.D. 165 (D. Mass. 1989) ..........................................................................................7

*Halliburton Co. v. Erica P. John Fund, Inc.,*
    573 U.S. 258 (2014) ..............................................................................................................9

*Hilsinger Co. v. Kleen Concepts, LLC,*
    No. 14-14714-FDS, 2017 WL 3841468 (D. Mass. Sept. 1, 2017) ....................................18

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and*
    *Securitization, LLC,*
    616 F. Supp. 2d 461 (S.D.N.Y. 2009) ................................................................................14

*In re Bally Manufacturing Securities Corp. Litigation,*
    141 F.R.D. 262 (N.D. Ill. 1992)) .................................................................................13, 14

*In re Frontier Insurance Group, Inc. Securities Litigation,*
    172 F.R.D. 31 (E.D.N.Y. 1997) ........................................................................................12

*In re Kosmos Energy Ltd. Securities Litigation,*
    299 F.R.D. 133 (N.D. Tex. 2014) ................................................................................13, 14

*Pugliese v. Government Employees Insurance Co.*
    No. 21-cv-11629-DJC, 2022 WL 1129341 (D. Mass. Apr. 15, 2022) ..............................18

*Rocco v. Nam Tai Electronics, Inc.,*
    245 F.R.D. 131 (S.D.N.Y. 2007) .....................................................................................12

*Rolex Employees Retirement Trust v. Mentor Graphics Corp.,*
    136 F.R.D. 658 (D. Or. 1991) ................................................................................10, 11, 12

*In re Safeguard Scientifics,*
    216 F.R.D. 577 (E.D. Pa. 2003) .........................................................................................9

*Savino v. Computer Credit, Inc.,*
    164 F.3d 81 (2d Cir. 1998) ...............................................................................................15

## STATUTES & RULES

Fed. R. Civ. P. 23 ................................................................................................ *passim*

## PRELIMINARY STATEMENT

███████████ These are the emphatic words that the internal analyst at Lead Plaintiff Union Asset Management Holdings AG used █████████████████████████ ████████████████████████████████ after the supposed fraud relating to Boston Scientific's Lotus Edge was revealed on November 17, 2020.  And Union ██████████████ ██████

In the three months after the alleged corrective disclosure, Union purchased ████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ And Union ████████████████████████████████████████ ████████████████████████████████████████████ ██████████████ while touting itself as a "champion" of "good and responsible corporate governance." ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████

None of this is surprising.  Based on the documents Union has produced concerning its Boston Scientific investments, as well as the deposition testimony of Union's designee concerning Union's decision to invest in Boston Scientific, Union's internal analyst covering Boston Scientific ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ Based on that same evidence, ████████████████████████████████

██████████████████████ Not only do these undisputed facts undermine Union's claims that it was defrauded, they expose unique defenses that Defendants will make a focus of this litigation. All of this makes Union an atypical and inadequate class representative. Other district courts have denied class certification in directly analogous circumstances.

Beyond those unique defenses, this Court should deny class certification for a second, independent reason. It is Union's burden to show that its asserted claims are typical of those belonging to the putative class. Yet Union has failed to put forth *any* evidence that it suffered any loss in connection with its investments in Boston Scientific during the class period, Although Plaintiff submitted a damages analysis at the lead plaintiff stage (for a different class period), and retained a damages expert in support of class certification, Union has not offered any evidence, under any method, demonstrating that it suffered any actual losses during the proposed class period. On this evidentiary record, Plaintiff's motion fails.

## RELEVANT FACTUAL BACKGROUND

### A.   The Lotus Launch Commenced In April 2019, But Was Ultimately Terminated In November 2020

Boston Scientific is a Marlborough-based developer, manufacturer and marketer of medical devices that are used in a broad range of interventional medical specialties, including Lotus, a transcatheter aortic valve replacement device that is delivered via a minimally invasive procedure and that was approved by the Food and Drug Administration ("FDA") for patients who suffer from a form of heart disease called aortic stenosis. (AC ¶¶ 2, 28.)[1] On April 23, 2019, Boston Scientific publicly announced the FDA's premarket approval of Lotus. (*Id.* ¶ 86.) The next day, Boston Scientific announced a controlled launch of Lotus in the United States.

---

[1]    "AC" and "Complaint" refer to the Amended Consolidated Complaint, ECF No. 44.

2

(*Id.* ¶ 87.) Boston Scientific was optimistic about Lotus's potential as "a differentiated valve that will be sought after by physicians and operators, both as a workhorse valve as well as a valve that can be counted on to provide superior outcomes in complex cases." (*Id.*)

Notwithstanding its initial optimism about the chances for Lotus's commercial success, on November 17, 2020, Boston Scientific issued a press release announcing that it had initiated a global, voluntary recall of all unused Lotus devices and had decided to retire the Lotus product platform. (AC ¶ 181.) A special conference call was held that day on which Mr. Mahoney noted that "[t]he LOTUS chapter ha[d] been a difficult one for the company" and that the decision to recall and retire Lotus was arrived at "[a]fter much analysis and careful consideration." (*Id.* ¶ 182.) Mr. Fitzgerald explained that "the manufacturing challenges, the clinical support challenges, the repeatability, the scalability [and] the overall COGS profile" factored into the decision. (*Id.* ¶ 185.) That day, Boston Scientific's stock dropped by about 8% from the prior day's close. (*Id.* ¶ 192.)

**B.    Union Purchased Boston Scientific Shares During
The Putative Class Period For Reasons Not Related To Lotus**

Union is the parent holding company of Union Investment Group, a Germany-based asset manager for retail and institutional clients with more than €292 billion in assets under management. (AC ¶ 27.) According to its website, Union is "an active investor that champions good and responsible corporate governance for the benefit of [its] customers."[2] Union "ensure[s] that [its] actions are responsible and that [its] investment strategies are transparent and verifiable," and "ensure[s] and demand[s] that the companies in which [it]

---

[2]    *See* http://www.union-investment.it/home/About-us.html (last visited May 26, 2023).

invests follow the rules of responsible corporate governance."[3]  Union describes its approach to equity investing as follows:

> [I]nvesting in global equity markets implies that you are making a decision to own a stake in a company.  Before making such an important decision, we believe to be a successful investor and fiduciary, one should fully understand the company, its business model, competitive market position, the strength of its management, its financials amongst other aspects to make an informed decision.  Although we believe quantitative screening and methods can be useful, we strongly believe that owning a company demands more and detailed fundamental analysis and due diligence is essential.[4]

Throughout the putative class period, various Union funds executed purchases of Boston Scientific shares.  (Ex. 1.)[5]  The portfolio managers who managed those funds provided several reasons why they decided to invest in Boston Scientific during the class period.  (Ex. 2, Deposition of Jochen Riechwald, dated May 16, 2023 ("Riechwald Dep Tr.") 57:2-75:4.)

Among those reasons were  (*Id.*, Riechwald Dep. Tr. 30:6-21, 58:17-59:5, 60:13-23.) (*See id.*, Riechwald Dep. Tr. 75:9-14

---

[3]    *Id.*

[4]    Union Investment Group, *Investing in "Fundamental Business" Momentum Using Behavioural Finance to Ride the Momentum Wave, available at* http://www.union-investment.it/home/Competencies/Asset-Classes/Equities.html.

[5]    "Ex. __" references refer to documents attached to the Transmittal Declaration of Yaw A. Anim, submitted herewith.

4

████████ *see also id.*, Riechwald Dep. Tr. 58:3-75:4 ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████ Exs. 3-6.)

C.    **After Boston Scientific's November 17, 2020 Alleged Corrective Disclosure, Lead Plaintiff Purchased Additional Boston Scientific Shares**

Following the alleged corrective disclosure on November 17, 2020, when Boston Scientific announced that it had decided to withdraw Lotus from the market, ████████████

████████████████████████████████████████████

- ████████████████████████████████████████
  ██████████████████████████████ (Ex. 7)████████
  ████████████████████████ (Ex. 1.)

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  (*Id.*)

- ████████████████████████████████████████████
  (*Id.*)

- ████████████████████████████████████████████
  ████████████████████████████ (Ex. 8)████
  ████████████████████ (Ex. 1.)

- ████████████████████████████████████████████
  ████ (*Id.*)

- ████████████████████████████████████████████
  ████ (*Id.*)

- ████████████████████████████████████████████
  (*Id.*)

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████ (Ex. 1.)

- In sum, in the two and a half months following the alleged corrective disclosures concerning Lotus, ████████████████████████████████████

████████████████████ notwithstanding Union's stated policy of investing only in companies that are good corporate actors.

Additionally, Union's internal analyst covering Boston Scientific, Sebastian Buch,  (Ex. 2, Riechwald Dep. Tr. 210:5-15.) For example, ████████████████████

████████████████████ (Ex. 9.) Buch ████████████████████

████████████████████ (Ex. 2, Riechwald Dep. Tr. at 213:16-217:16; Ex. 5.) Buch further noted ████████████████████

(Ex. 5.) ████████████████████

## LEGAL STANDARD

Because "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only' . . . a party seeking to maintain a class action 'must affirmatively demonstrate [its] compliance' with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (reversing affirmance of certification) (citations omitted). As its brief in support of its motion for class certification acknowledges (Mot. at 8), Union bears the

burden of proving that it satisfies each of the four elements of Rule 23(a) – (i) numerosity, (ii) typicality, (iii) commonality, and (iv) adequacy – as well as the predominance and superiority requirements of Rule 23(b)(3).

Importantly, Rule 23 does not outline a "mere pleading standard": "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,'" and that Rule 23(b)(3)'s predominance criterion – which is "even more demanding than Rule 23(a)" – has been demonstrated. *Comcast*, 569 U.S. at 33-34 (citation omitted); *see also Bartok v. Hometown Am., LLC*, No. 21-10790-LTS, 2022 WL 970079, at *3 (D. Mass. Mar. 30, 2022) (denying certification where record was insufficiently developed for the court to perform the requisite "rigorous analysis" of Rule 23 requirements). This analysis may require the court "to probe behind the pleadings" on issues that "overlap with the merits of the plaintiff's underlying claim." *Comcast*, 569 U.S. at 33-34 (citation omitted). Indeed, "district courts have broad discretion when determining issues of class certification." *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989). If after performing that rigorous analysis, this Court finds that Union failed to meet its burden with respect to *any* of the elements of Rule 23(a) or Rule 23(b)(3), certification must be denied.[6]

Union's motion should be denied for the reasons discussed below, any one of which would be an independently sufficient basis for denying certification.

---

[6] Because a failure to prove any one of those requirements is independently fatal to Union's motion, this memorandum addresses those areas where the motion is most clearly deficient. Defendants do not concede the correctness of Union's other contentions.

7

## ARGUMENT

I.    **UNION IS SUBJECT TO UNIQUE RELIANCE DEFENSES THAT WILL BECOME A FOCUS OF THIS DISPUTE, AND THUS FAILS TO MEET THE TYPICALITY AND ADEQUACY REQUIREMENTS OF RULE 23(A)**

    A.    **Courts Deny Class Certification Where The Proposed Class Representative Is Subject To Unique Defenses**

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," because "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (affirming order denying certification), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017). At the class certification stage, "it does not matter whether a unique defense ultimately will prove meritorious," but the pertinent inquiry is whether the party seeking to serve as class representative "will 'be required to devote considerable time to rebut' the unique defense." *Beck v. Status Game Corp.*, No. 89 Civ. 2923 (DNE), 1995 WL 422067, at *4 (S.D.N.Y. July 14, 1995) (citation omitted) (denying certification). As explained below, the record here shows that Union is subject to unique defenses that render class certification improper.

    B.    **Union Continued To Purchase Boston Scientific Stock *After* Learning The "Truth" About Lotus, And Is Therefore Subject To The Unique Defense That It Did Not Rely On Any Alleged Misrepresentations Concerning Lotus In Making Its Purchases**

Union seeks to represent a class of investors who were purportedly "harmed" in "a like manner." (Mot. at 2.) In so doing, Union argues that it is entitled to rely on the "fraud-on-the-market" theory set forth in *Basic Inc. v. Levinson*, where the Supreme Court held that in certain circumstances, a securities fraud plaintiff can establish a rebuttable presumption that it relied on the integrity of the market price of a security in making its purchase. *Basic*, 485 U.S. at

8

247. But the presumption articulated in *Basic* is not conclusive: "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Id.* at 248. For instance, if a defendant can show "that a plaintiff would have bought or sold the stock even had he been aware that the stock's price was tainted by fraud, then the presumption of reliance would not apply." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 269 (2014) (vacating judgment that affirmed certification).

The court's decision in *George v. China Automotive Systems, Inc.*, No. 11 Civ. 7533(KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013) is instructive. There, the plaintiff sought to certify a class of purchasers of defendant's common stock, call options, and sellers of put options, who were allegedly harmed by numerous allegedly false and misleading statements about defendant's accounting for certain convertible notes that it had issued. 2013 WL 3357170, at *1. There, like here, the "named plaintiffs continued to make purchases of the securities at issue following the alleged 'truthful' disclosure." *Id.* at *6. The court further observed:

> A named plaintiff who has engaged in a post-disclosure purchase is subject to the defense that the alleged misstatements or omissions were not really a factor in the purchasing decision but rather that other investment considerations drove the decision. Defendants may assert that the disclosure of the fraud was irrelevant to the named plaintiffs as demonstrated by their pattern of continued purchasing. In fact, defendants have stated an intention to aggressively pursue this line of inquiry. This will require that each of the named plaintiffs expend considerable time on unique defenses – precisely the situation the case law does not condone.

*Id.* The court concluded that "[g]iven their factual circumstances, these three named plaintiffs are neither typical nor adequate. As such, they cannot represent the class, and therefore class certification must be denied on these bases alone." *Id.* at *7.

Similarly instructive is the court's decision in *Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658 (D. Or. 1991). In that case, the plaintiff sought to

9

certify a class of all purchasers of defendant's common stock who were allegedly harmed by certain misstatements about defendant's financial performance. *Id.* at 661. There, as here, the plaintiff "continued to trade in the stock in [defendant] after he learned of the alleged misrepresentations." *Id.* at 663. Noting that "[t]he existence of a defense unique to the named plaintiff is relevant to the certification decision," and that "[t]he certification of a class is questionable where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff," the court determined that "[t]he fact that [the plaintiff] continued to trade in the stock in [defendant] after he learned of the alleged misrepresentations of defendants severs the link between the alleged misrepresentations of defendants and the stock purchases made by [the plaintiff] and acts to rebut the presumption that [the plaintiff] relied on the alleged misrepresentations in making his purchases." *Id.* at 663-64. The court therefore denied the plaintiff's motion for class certification, concluding that the plaintiff "may ultimately devote great effort toward the arguable defenses that arise from these facts" and that "there is [therefore] a substantial likelihood that if [the plaintiff] is named as the representative of the proposed class, defenses unique to [the plaintiff] could become the focus of the litigation to the detriment of the class." *Id.* at 664.

The same result should hold here. Discovery in this case shows ███████████

████████████████████████████████████████████████████████████

█████████████████████████████████████ severing the rebuttable presumption of any purported connection between Boston Scientific's alleged misrepresentations and Union's purchases, and rendering Union an atypical and inadequate class representative because it will need to devote considerable time to rebut that unique defense.

10

Following Boston Scientific's alleged corrective disclosure on November 17, 2020 and the filing of this lawsuit on December 4, 2020 accusing Boston Scientific and its senior management of securities fraud, Union's internal analyst ██████████████████████

██████████████████████████████████████████████████████

████████ (Exs. 1, 5.) The discovery record further shows ████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ (*See supra* at 4-5.)

Moreover, Union's corporate representative ████████████████████

██████████████████████████████████████████████████████

(Ex. 2, Riechwald Dep. Tr. 76:2-6; *see also id.*, Riechwald Dep. Tr. 58:3-75:4 ████████

██████████████████████████████████████████████████████

████████████████████████████████████████ Union cannot adequately represent the typical claim of a Boston Scientific shareholder under such circumstances. As the *George* court held, "[a] named plaintiff who has engaged in a post-disclosure purchase is subject to the defense that the alleged misstatements or omissions were really not a factor in the purchasing decision but rather that other investment considerations drove the decision," and thus that plaintiff is "neither typical nor adequate." 2013 WL 3357170, at *6-7 (denying certification on the basis of post-disclosure purchases); *accord Rolex*, 136 F.R.D. at 664 (same); *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (same); *In re Safeguard Scis.*, 216 F.R.D. 577, 582 (E.D. Pa. 2003) (same).[7]

---

[7]    To be sure, some courts have reached the opposite conclusion in other cases where defendants argued that plaintiffs were subject to a unique defense based on post-disclosure stock purchases, but in those cases, the stock purchases were made as a result of a specified, underlying investment strategy – including to recoup losses from earlier purchases. *See, e.g., In*



Union may try ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ (*See* Ex. 2, Riechwald Dep. Tr. 132:15-22 ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* Riechwald Dep. Tr. 133:6-14

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ That suggestion is belied by the internal Union documents that ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 7.)

Further, Union has consistently alleged and argued in its submissions in this case that the "truth" about Lotus was disclosed on November 17, 2020, and cannot now distance itself from that position without undermining the claims it asserts for the purported class. For example, in its brief in support of its motion to be appointed lead plaintiff, Union asserted that

---

re *Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 42 (E.D.N.Y. 1997) ("The fact that [plaintiff] attempted to recoup her losses by continuing to purchase Frontier stock after the disclosure of the alleged misrepresentations has no bearing on whether or not she relied on the integrity of the market during the class period."); *In re Bally Mfg. Sec. Corp. Litig.*, 141 F.R.D. 262, 269 (N.D. Ill. 1992) (same). In contrast, here, Union has not cited any investment strategy that it employed that would specifically account for its post-November 17 purchases of Boston Scientific stock, particularly where it publicly states that "strength of [] management" is a factor in investment decisions. Rather, the record evidence shows that Union's view of Boston Scientific remained unchanged and unaffected by the withdrawal of Lotus from the market.

"[t]he truth emerged on November 17, 2020, when Boston Scientific announced a global recall of all unused inventory of the Lotus Edge due to 'complexities associated with the product delivery system.'" (ECF No. 18, Memorandum Of Law In Support Of The Motion Of Union Asset Management Holding AG For Appointment As Lead Plaintiff, Approval Of Its Selection Of Counsel, And Consolidation Of Related Actions ("Lead Pl. Mot."), at 5.)  In its Complaint, Union also alleged that "[i]nvestor and analyst reaction [to the November 17, 2020 disclosure] was *immediate and severe*," and that "[a]s a result of the disclosure," "Boston Scientific's stock price declined by \$3.00 per share, or approximately 8%" on November 17, 2020.  (AC ¶¶ 188, 192 (emphasis added).)  In any event, this lawsuit accusing Boston Scientific of securities fraud was publicly filed on December 4, 2020, and ██████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████ (Ex. 2, Riechwald Dep. Tr. 44:8-10; *see also* Part C, *supra*.)

### C.    Union Is Subject To The Unique Defense That It Is Facilitating Lawyer-Driven Litigation

Union's inconsistency on this issue highlights another unique defense that Union may be subject to – that this litigation is being driven by Union's counsel with little participation or oversight by Union.  *See In re Kosmos Energy Ltd. Secs. Litig.*, 299 F.R.D. 133 (N.D. Tex. 2014) (denying certification and noting that "courts deciding class certification motions in *securities* cases must take into account 'Congress's emphatic command' in the PSLRA and ensure that class representatives are informed, able individuals who are themselves – and not the lawyers – actually directing the litigation").

13

Union's corporate representative

Union has retained BLBG in at least seven securities fraud actions over the last seven years, and among those cases that have settled, BLBG has been awarded attorney's fees generally totaling 20% of the settlement amounts. (*See* Ex. 2, Riechwald Dep. Tr. 146:4-149:25.)[8] (*Id.*, Riechwald Dep. Tr. 46:24-47:4.) Indeed, according to Union's corporate representative,

(*Id.*, Riechwald Dep. Tr. 42:18-44:16.)

(*Id.*, Riechwald Dep. Tr. 46:19-47:4.) Courts have found the existence of monitoring agreements sufficient grounds to deny certification. *See, e.g.*, *In re Kosmos*, 299 F.R.D. at 149 (noting that the fact that the case was identified through counsel's monitoring service "strongly suggests that this is a lawyer and not a client-driven suit"); *Iron Workers Local No. 25 Pension Fund v.*

---

[8]    For example, in another pending securities fraud action in which Union is serving as lead plaintiff and is represented by BLBG, that court has preliminarily approved a settlement of $450 million and an award of attorney's fees to BLBG of 20% of the settlement amount (or $90 million). *See In re Kraft Heinz Secs. Litig.*, No. 19-cv-01399 (N.D. Ill.) (ECF Nos. 475, 578). *See also Hefler v. Wells Fargo & Co.*, No. 16-05479 (N.D. Cal.) (ECF Nos. 238-39, 252) (approving $480 million settlement and 20% attorney's fee award ($96 million) to BLBG and two other firms); *In re Cognizant Tech. Solutions Corp. Secs. Litig.*, No. 16-6509 (D.N.J.) (ECF No. 184) (approving $95 million settlement and 20% attorney's fee award (about $19 million) to BLBG).

*Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009) (same, and noting that the "practice fosters the very tendencies toward lawyer-driven litigation that the PSLRA was designed to curtail").

Far from being defrauded (or believing that it was), Union faces a unique defense that it is facilitating lawyer-driven litigation which Congress enacted the PSLRA to curb. *See In re Boston Sci. Corp. Sec. Litig.*, 686 F.3d 21, 29-30 (1st Cir. 2012) (PSLRA was "enacted to curb frivolous, lawyer-driven litigation"). What is most likely is that Union is using the securities laws as "a partial downside insurance policy." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 348 (2005).

### D.    Union Is Subject To The Unique Defense That There Are "Perceived Inconsistencies" In Union's Litigation Positions

Courts deny class certification where, as here, there are "perceived inconsistencies" in a class representative's litigation positions. *See Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998). For example, in *Savino*, the Second Circuit affirmed the district court's denial of certification where the lead plaintiff submitted contradictory pleadings and testimony about facts "that form[ed] the very basis for his lawsuit," which "surely would create serious concerns as to his credibility at trial." 164 F.3d at 87; *see also Catzin v. Thank You & Good Luck Corp.*, No. 15-cv-7109 (KBF), 2016 WL 11779675, at *5 (S.D.N.Y. Oct. 3, 2016) (lead plaintiff "failed to carry her burden of showing that she would be an adequate class representative" based on contradictory positions taken in the course of litigation).

Here, as noted above (*see supra* at 12-13), Union has taken an irreconcilable position regarding when it actually learned the "truth" about Lotus, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ In addition and separately, Union has taken irreconcilable positions concerning its investment strategy and its claim that it

15

has been defrauded by Boston Scientific. Union touts itself as a "successful investor and fiduciary" that aims to "fully understand" all facets of the companies in which it invests, including their "business model" and "strength of [their] management," and "ensure[s] and demand[s] that the companies in which [it] invests follow the rules of corporate governance." (*See supra* at 3-4.)

Union's corporate representative, however,



(*See* Ex. 2, Riechwald Dep. Tr. 178:7-12.) He agreed that Union

(*Id.*, Riechwald Dep. Tr. 178:7-179:10.) Union simply cannot explain away these contradictory and irreconcilable positions concerning facts that form "the very basis" for this action.

Because Union is subject to unique defenses that will become the focus of the merits phase of the litigation, Union is not an appropriate class representative and Union's motion should be denied.

## II. PLAINTIFF HAS PROVIDED NO EVIDENCE THAT IT SUFFERED LOSSES DURING THE CLASS PERIOD AND SO HAS NOT ESTABLISHED TYPICALITY OR ADEQUACY

As Union acknowledges, in order to meet the typicality requirement, Union must show that "its injuries arise from the same events or course of conduct as do the injuries of the class." (Mot. at 10 (quoting *In re Boston Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 282 (D.

16

Mass. 2009)).) *See also In re Boston Sci.*, 604 F. Supp. 2d at 282 (finding typicality where plaintiff "purchased Boston Scientific stock at a time when the price was alleged to have been artificially inflated due to defendants' misleading statements, *and was subsequently harmed* by the drop in stock price" (emphasis added)). Union's corporate representative ▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉ (Ex. 2, Riechwald Dep. Tr. 125:9-15.)

Such a showing necessarily requires that Union provide some evidence that it was actually injured during the class period. However, while Union asserts in its brief that it incurred "substantial losses in Boston Scientific during the Class Period," it fails to offer any evidence or analysis to show that those losses actually occurred. (*See* Mot. at 10-11.) This failing is particularly stark given Union's submission of a report by a purported damages expert, Chad Coffman. Although Coffman claims that damages can be calculated on a class-wide basis, he did not even calculate Union's own losses here. (*See* ECF No. 93-2, at 36-39 (describing generally how damages are calculated in securities cases but failing to quantify any damages purportedly suffered by Union).) This is not sufficient to carry Union's burden at the class certification stage. Union can no longer rely on assertions, but instead must present evidence to support its contention that class certification is appropriate. *See Bartok*, 2022 WL 970079, at *3 (denying certification where evidentiary record not sufficiently developed to permit "rigorous analysis" required under Rule 23).

This failure of proof is even more glaring, because Union demonstrated that it was aware of the importance of establishing its damages in connection with its motion to be appointed lead plaintiff, which included an analysis of the purported damages Union incurred

17

during the originally proposed class period. (*See* ECF 24-3, Exhibit C to Declaration of T. Christopher Donnelly.) Union's corporate representative ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ (Ex. 2, Riechwald Dep. Tr. 122:12-123:11.)

This disregard for the Rule 23 requirements should not be rewarded, and Union's motion for class certification should be denied based on Union's failure to carry its burden to establish injuries during the Class Period.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff's Motion For Class Certification should be denied with prejudice.[9]

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendants respectfully request oral argument on this Motion.

---

[9] To the extent that Plaintiff attempts to redress any evidentiary deficiencies on reply, those efforts should be rejected, as "courts are generally disinclined to accept new evidence in reply briefs." *Pugliese v. Govt. Emps. Ins. Co.*, No. 21-cv-11629-DJC, 2022 WL 1129341, at * n.1 (D. Mass. Apr. 15, 2022) *see also Hilsinger Co. v. Kleen Concepts, LLC*, No. 14-14714-FDS, 2017 WL 3841468, at *7 (D. Mass. Sept. 1, 2017) ("It is well-settled that it is generally inappropriate for a moving party to advance new arguments and supporting facts in a reply brief. . . . Parties are required to raise all of their arguments in their opening brief to prevent 'sandbagging' of the nonmoving party and to provide opposing counsel the chance to respond.") (citations and alteration omitted).

18

Dated:  May 26, 2023
       Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Alisha Q. Nanda (BBO #657266)
Yaw A. Anim (BBO #569512)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
yaw.anim@skadden.com

*Counsel for Defendants*
*Boston Scientific Corporation,*
*Michael F. Mahoney, Joseph M. Fitzgerald,*
*Daniel J. Brennan, Shawn McCarthy, Ian*
*Meredith, Kevin Ballinger and Susan Vissers Lisa*

19