**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE BOSTON SCIENTIFIC CORPORATION SECURITIES LITIGATION | Master File No.: 1:20-cv-12225-DPW **ORAL ARGUMENT REQUESTED** |

## LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   ARGUMENT............................................................................................................3

      A.    The Law Governing Defendants' "Unique Defense" Challenge.............................3

      B.    Union's Post-Class Period Purchases Raise No Unique Defense...........................4

      C.    Union's Involvement In This Litigation Raises No Unique Defense......................7

      D.    Union Provided Accurate, Unrebutted Evidence Of Its Class Period Losses..........9

III.  CONCLUSION.........................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ark. Tchr. Ret. Sys. v. Insulet Corp.*,
  177 F. Supp. 3d 618 (D. Mass. 2016) ...................................................................................5

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988).............................................................................................................4

*Beck v. Status Game Corp.*,
  1995 WL 422067 (S.D.N.Y. July 14, 1995) .......................................................................3

*Berg v. Guthart*,
  2014 WL 3749780 (N.D. Cal. July 30, 2014)......................................................................8

*Bezdek v. Vibram USA Inc.*,
  79 F. Supp. 3d 324 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015)..................................8

*Catzin v. Thank You & Good Luck Corp.*,
  2016 WL 11779675 (S.D.N.Y. Oct. 3, 2016) .....................................................................7

*In re Celexa & Lexapro Mktg. & Sales Prac. Litig.*,
  325 F.R.D. 529 (D. Mass. 2017)..........................................................................................4

*City of Livonia Emps.' Ret. Sys. V. Wyeth*,
  284 F.R.D. 173 (S.D.N.Y. 2012) .........................................................................................5

*In re Countrywide Fin. Corp. Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009) ......................................................................................5, 6

*In re Credit Suisse-AOL Sec. Litig.*,
  253 F.R.D. 17 (D. Mass. 2008).............................................................................................3

*Feder v. Elec. Data Sys. Corp.*,
  429 F.3d 125 (5th Cir. 2005) ................................................................................................6

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990).................................................................................................3

*George v. China Automotive Systems*,
  2013 WL 3357170 (S.D.N.Y. July 3, 2013) .......................................................................6

*Hallet v. Li & Fung Ltd.*,
  1997 WL 621111 (S.D.N.Y. Oct. 6, 1997)..........................................................................4

*Haseman v. Gerber Products Co.*,
  2019 WL 2250687 (E.D.N.Y. 2019), *report and recommendation adopted as
  modified by* 331 F.R.D. 239 (E.D.N.Y. 2019) ....................................................................7

*Iron Workers Local 25 Pension Fund v. Credit-Based Asset Servicing &*
    *Securitization, LLC*,
    616 F. Supp. 2d 461 (S.D.N.Y. 2009)........................................................................9

*In re Kosmos Energy*,
    299 F.R.D. 133 (N.D. Tex. 2014) ..............................................................................9

*Lapin v. Goldman Sachs & Co.*,
    254 F.R.D. 168 (S.D.N.Y. 2008) ..............................................................................4

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
    716 F.3d 229 (1st Cir. 2013).....................................................................................7

*Med. Soc. of the State of New York v. UnitedHealth Grp. Inc.*,
    332 F.R.D. 138 (S.D.N.Y. 2019) ..............................................................................4

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. 2008) ..........................................................................1, 5

*In re Moody's Corp.*,
    274 F.R.D. 480 (S.D.N.Y. 2011) ..............................................................................5

*In re Myriad Genetics, Inc. Sec. Litig.*,
    2021 WL 5882259 (D. Utah Dec. 13, 2021)..............................................................9

*Pearlstein v. BlackBerry Ltd.*,
    2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ..............................................................6

*Pelletier v. Endo Int'l PLC*,
    338 F.R.D. 446 (E.D. Pa. 2021).................................................................................6

*In re Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016) ..............................................................................5

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012) ................................................................................5

*Pub. Ret. Sys. of Miss. v. Mohawk Indus., Inc.*,
    2022 WL 17920570 (N.D. Ga. Nov. 28, 2022) ......................................................8, 9

*Ret. Sys. v. Wyeth*,
    284 F.R.D. 173 (S.D.N.Y. 2012) ..............................................................................5

*Rolex Emps. Ret. Trust v. Mentor Graphics Corp.*,
    136 F.R.D. 658 (D. Or. 1991).....................................................................................6

*Savino v. Comput. Credit, Inc.*,
    164 F.3d 81 (2d Cir. 1998).........................................................................................7

*Swack v. Credit Suisse First Boston*,
   230 F.R.D. 250 (D. Mass. 2005)................................................................................1, 3, 9

*In re Symbol Techs., Inc. Sec. Litig.*,
   2015 WL 3915477 (E.D.N.Y. June 25, 2015) ........................................................5

**STATUTES AND RULES**

Fed. R. Civ. P. 23 ....................................................................................................1, 3, 10

Private Securities Litigation Reform Act of 1995 ........................................................10

Lead Plaintiff Union Asset Management Holding AG ("Union") respectfully submits this reply in support of its motion for class certification (the "Motion") in response to arguments raised for the first time by Defendants in their opposition brief (the "Opposition" or "Opp.").

## I.    PRELIMINARY STATEMENT

The Motion demonstrated that Union, its counsel, and the proposed Class satisfied each element of Rule 23(a) (numerosity, commonalty, typicality, and adequacy) and 23(b)(3) (predominance of common issues). Defendants do not contest that the Class satisfies numerosity and commonality and that common issues of liability and damages predominate. The Opposition focuses on only one question: do Union's investments in Boston Scientific common stock and oversight of this litigation raise "unique defenses" sufficient to defeat the typicality and adequacy elements of Rule 23(a)?[1] The answer is no. As demonstrated in the Motion, Union's sworn certification and declaration, sworn testimony, and documents—all presented to Defendants prior to their Opposition—show that Union is typical of other Class Members and has, and will continue to, adequately represent the Class's interests.

This Court has held that "the mere fact that a putative class representative—whose claims arise from the same course of events and are based upon the same legal theory as the other members of the proposed class—is subject to a unique defense does not render her atypical for purposes of 23(a) unless that defense threatens to become the focus of litigation thereby prejudicing the absent class members." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 264 (D. Mass. 2005) (Woodlock, J.). Each of Defendants' purported "unique defenses" are factually incorrect and, even

---

[1] Defendants state in a footnote that they "do not concede the correctness of Union's other contentions" concerning satisfaction of Rule 23. Opp. at 7 n.6. Whether they "concede" those elements is irrelevant; they do not challenge them and thus have waived challenges to them. *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 137 (S.D.N.Y. 2008) (argument raised for the first time at oral argument after class certification briefing was waived).

if they had merit, pose no prejudice to absent class members sufficient to defeat certification.

Defendants first argue that Union's post-Class Period purchases of Boston Scientific common stock—after the Lotus recall was announced and artificial inflation was removed from the stock price—and Union's failure to implement a never before heard of policy forbidding *any* investments in *any* companies alleged to have acted fraudulently in the past, creates a unique defense that severs the fraud-on-the-market presumption afforded to Section 10(b) plaintiffs. Opp. at 8-13, 15-16. Not only would such a defense not be unique to Union, but court after court in this Circuit and others have flatly rejected this argument. *Infra*, at 4-7.

Defendants next argue that Union, a sophisticated institutional investor that has successfully recovered over $1 billion on behalf of injured investors over the past several years, and that maintains a dedicated in-house attorney staff to oversee securities litigation and a five-person Class Action Committee to determine whether and when to pursue a lead role in any potential securities class action, is subject to a unique defense of "facilitating lawyer-driven litigation" because it has a monitoring agreement with Lead Counsel through which counsel may alert Union of potential fraud impacting its investment portfolio. Opp. at 13-15. Union's sworn statements and documents directly refute Defendants' baseless argument. Moreover, courts have consistently held that the existence of such monitoring agreements is consistent with adequate class representation. *Infra*, at 8-9.

Finally, Defendants claim that Union "has provided no evidence that it suffered losses during the Class Period," and therefore has failed to establish that it is a Class Member. Opp. at 16-18. Defendants' argument is counterfactual and not credible. Union: (a) provided evidence of all of its Class Period transactions on February 2, 2021 (ECF Nos. 24-2, 24-3); (b) declared under penalty of perjury on April 20, 2023 that Union "suffered substantial losses" on its Class Period investments in Boston Scientific common stock (ECF No. 93-1); (c) testified under oath at a

deposition that ██████████████████████████████████████████████

(Opp. Ex. 2, at 123:20-124:6); and (d) produced ███████████████████████

██████████████████████████████████████████████ (*e.g.*, Opp.

Ex. 1). As a result, Defendants were fully apprised of ***numerous*** forms of evidence substantiating

Union's Class Period losses. Defendants cite no authority for its demand for an exact accounting

of Union's losses and, in any event, Defendants had all information necessary to calculate Union's

Class Period losses, something they likely did do and then ignored. *Infra*, at 9-10.

## II.    ARGUMENT

### A.    The Law Governing Defendants' "Unique Defense" Challenge

The mere fact that Union—whose claims arise from the same course of events and are

based upon the same legal theory as the other members of the Class—may be subject to unique

defenses does not render them atypical for purposes of Rule 23(a) unless those unique defenses

threaten to become the focus of the litigation. *See Swack*, 230 F.R.D. at 264. "The primary focus

of the typicality analysis is the functional 'question of whether the putative class representative

can fairly and adequately pursue the interests of the absent class members without being

sidetracked by her own particular concerns.'" *In re Credit Suisse-AOL Sec. Litig.*, 253 F.R.D. 17,

23 (D. Mass. 2008) (quoting *Swack*, 230 F.R.D. at 264); *see also Gary Plastic Packaging Corp. v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[I]t is settled that

the mere existence of individualized factual questions with respect to the class representative's

claim will not bar class certification.") (cited by Defendants in the Opposition).

Citing an outdated and out-of-circuit case (and avoiding all mention of this Court's

prevailing *Swack* opinion), Defendants attempt to escape any scrutiny of the merits of their "unique

defenses" by suggesting that the "merit[]" of any defense they choose to assert "does not matter."

Opp. at 8 (citing *Beck v. Status Game Corp.*, 1995 WL 422067, at *4 (S.D.N.Y. July 14, 1995)).

Defendants are wrong, and they may not assert any "groundless, far-fetched defense" to avoid certification. *Hallet v. Li & Fung Ltd.*, 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997); *Med. Soc. of the State of New York v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 151 (S.D.N.Y. 2019) (same); *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008) (same).

Determining whether a unique defense will require Union to devote such "considerable" time requires more than Defendants' mere say-so. Instead, Defendants must show, as they cannot here, that Union does not share the "essential characteristics" of the class. *In re Celexa & Lexapro Mktg. & Sales Prac. Litig.*, 325 F.R.D. 529, 536 (D. Mass. 2017) (typicality found because even though defendants argued unique defenses "based upon the unique medical histories" of named plaintiffs' children, "the focus of the litigation will be the alleged injury").

**B.    Union's Post-Class Period Purchases Raise No Unique Defense.**

Union purchased 1,082,046 shares of Boston Scientific common stock during the 8.5-week Class Period for a total of over $41.5 million, and suffered significant losses on those investments. *See* Opp. Ex. 1 ( █████████████████████████████████████ ); ECF No. 24-2 at 3-8 (same). Union and the Class are entitled to rely on a presumption of reliance with respect to those investments because Boston Scientific stock trades in an efficient market, and thus the fraud-on-the-market presumption set forth in *Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988) applies. Motion at 13. While Union's motivation for purchasing Boston Scientific stock during the Class Period is entirely irrelevant, testimony and documents produced by Union ████████████ ███████████████████████████████████████████████████████████ ██████████████████████. *See, e.g.*, Opp. Ex. 2, at 28:6-25; 30:14-21; 65:10-66:24; 69:10-17. Therefore, while not relevant, Defendants' assertion that Union's portfolio managers did not identify Lotus as a reason for these purchases (Opp. at 11) is misleading, at best.

Unable to challenge the *Basic* presumption on Union's Class Period purchases, Defendants

argue that Union's purchase of shares in the weeks following the corrective disclosure announcing the recall and the end of the Class Period somehow "severs" the fraud-on-the-market presumption. Opp. at 8-11. Courts have repeatedly rejected this argument. Union's purchases after the November 17, 2020 corrective disclosure do not give rise to a unique defense, as such post-disclosure purchases have "no bearing on whether or not [the class representative] relied on the integrity of the market during the class period." *Monster Worldwide*, 251 F.R.D. at 135; *see also, e.g.*, *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 360 (S.D.N.Y. 2016) (same); *Ark. Tchr. Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 625 (D. Mass. 2016) ("The fact that an investor has purchased shares after a partial corrective disclosure does not necessarily make that investor an atypical or inadequate class representative."); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602 (C.D. Cal. 2009) (post-disclosure purchases are typical and not unique to any single class member). Courts correctly note that post-disclosure purchases at a low price is a "common investment strategy." *In re Moody's Corp.*, 274 F.R.D. 480, 488 (S.D.N.Y. 2011). Union's internal analyst ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████ Opp. Ex. 5; Opp. at 6.[2]

There is simply no evidence that defenses concerning Union's individual reliance would "distract [it] from the work of representing the class as a whole." *In re Symbol Techs., Inc. Sec. Litig.*, 2015 WL 3915477, at *4 (E.D.N.Y. June 25, 2015) (citation omitted). Moreover, it is

---

[2] Further invalidating Defendants' argument are the facts that Union possessed no non-public information and made no disproportionate post-disclosure purchases. *City of Livonia Emps.' Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 178-79 (S.D.N.Y. 2012). ██████████████████████ ██████████████████████████████████████. Opp. Ex. 1 ( ████████████████████████

███████████ ); *see In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 46 n.5 (S.D.N.Y. 2012) (post-disclosure purchases "representing approximately 44%" of class period purchases not atypical).

axiomatic that Union was not alone in continuing to purchase shares after the recall, rendering this defense, as weak as it is, far from unique. *See Countrywide*, 273 F.R.D. at 602 (defense not unique).

The out-of-Circuit cases Defendants cite in support of their post-Class Period purchase argument are inapposite, and their conclusions have been repeatedly questioned by other courts in those Districts and by Circuit courts that have rejected them.  For example, in *George v. China Automotive Systems*, 2013 WL 3357170 (S.D.N.Y. July 3, 2013), the individual investor plaintiffs failed to establish an efficient market and could not invoke the fraud-on-the-market presumption—something Defendants do not challenge here—and were in-and-out traders who allegedly profited from the fraud, an argument Defendants do not and cannot argue applies to Union.  Similarly, in *Rolex Employees Retirement Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658 (D. Or. 1991), the court certified the class but found that one proposed class representative was subject to unique defenses of estoppel and waiver due to his post-class period trading, something that Defendants have not argued here. In any event, these cases and Defendants' other authorities have been soundly rejected. *See also Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 138 (5th Cir. 2005) (describing *Rolex* as "generally not accepted" and rejecting argument that a representative cannot make purchases after fraud is disclosed).[3]

Equally uncompelling and unsupported is Defendants' argument that ███████████

███████████████████████████████████████████████

██████ or that a Union investment manager (but not Union's internal counsel) may not have realized that Boston Scientific had intentionally defrauded Union in the immediate wake of the recall is in any way inconsistent with Union's litigation strategy of prosecuting securities fraud.

---

[3] *See also Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *9-10 (S.D.N.Y. Jan. 26, 2021) (rejecting typicality defenses based on post-disclosure purchases); *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 476 (E.D. Pa. 2021) ("[*Safeguard Scientifics*] is in the minority, as most courts have held that post-disclosure purchases are consistent with a buyer's reliance on the market.").

Opp. at 15-16. Indeed, Defendants' insistence that Union must show ██████████████

██████████████████████████████████████████, Opp. at 12, imposes

a requirement with no basis in the law. *See* Motion to Dismiss Opinion, ECF No. 74 at 76-77

(quoting *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 237-38 (1st Cir. 2013) (plaintiffs

must only show that a corrective disclosure revealed "the pertinent truth that was previously

concealed or obscured by the company's fraud")). ████████████████████████

██████████████████████████████, Opp. at 12 (citing Ex. 2,

Riechwald Dep. Tr. 132:15-22), is typical, and entirely consistent with the fact that the November

17 corrective disclosure revealed the "pertinent truth" of Lotus's poor performance.[4] At bottom,

Defendants' supposed "inconsistencies" are tangential to any element of Union's claims in this

case, and could not possibly become the focus of merits litigation.

### C.    Union's Involvement In This Litigation Raises No Unique Defense.

Defendants' claim that "this litigation is being driven by Union's counsel with little

participation or oversight by Union" (Opp. at 13-15) is wrong. Indeed, it is disproven by

documentary and testimonial evidence in this Action, all readily known to Defendants.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[4] "Inconsistencies" in litigation strategy pose no bar to class certification unless such purported inconsistencies go to the "heart of the action" and have no plausible "innocent" explanation—which is not the case here. *Haseman v. Gerber Products Co.*, 2019 WL 2250687, at *8 (E.D.N.Y. 2019), *report and recommendation adopted as modified by* 331 F.R.D. 239 (E.D.N.Y. 2019). The two cases Defendants cite require that any "perceived inconsistencies" must "form[] the very basis for [the] lawsuit," and in any event are inapposite to this case. *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (plaintiff's "differing accounts" about letters "form[ed] the very basis for his lawsuit" and raised "credibility" concerns); *Catzin v. Thank You & Good Luck Corp.*, 2016 WL 11779675, at *5 (S.D.N.Y. Oct. 3, 2016) (plaintiff suing for failure to pay minimum wage gave inconsistent testimony about receipt of minimum wage).

████████████████████████████████████████████████████████

████████████████████████████████. Opp. Ex. 2 at 42:14-44:5; 141:14-25. Pursuant to that

agreement, ██████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████. *Id.* at 41:18-42:21. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████. Opp. Ex. 2 at 87:11-14.

Union has closely directed and overseen this litigation, █████████████████████

████████████████████████████████████████████████████████ and

participating in discovery. *See* ECF No. 93-1 at ¶¶4-7; Opp. Ex. 2 at 116:2-18; *see also* Mot. at 11.

The evidence demonstrates that Union is not only an adequate Lead Plaintiff, but an exemplary one. This is only amplified by the fact that, as Defendants point out, Union has secured the recovery of over $1 billion in just the past few years. Opp. at 14 n.8.[5]

In support of its "lawyer-driven litigation" trope, Defendants cite only to Union's monitoring agreement with Lead Counsel. Courts across the country have "rejected the notion that the existence of a portfolio monitoring agreement with counsel renders a plaintiff unsuitable to represent the interests of a class." *Berg v. Guthart*, 2014 WL 3749780, at *4 (N.D. Cal. July 30, 2014). Indeed, several courts recently concluded that a similar monitoring agreement between Lead Counsel here and a plaintiff had no impact on adequacy, especially when the plaintiff, like Union, "made an independent determination whether it wanted to pursue this litigation." *Pub.*

---

[5] Attorneys' fees of 20% of the settlement value demonstrates, not disproves, adequacy given that a 20% fee is lower than fees sought and awarded in this District. *See, e.g., Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349–50 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("Within the First Circuit, courts generally award fees in the range of 20-30%, with 25% as the benchmark.").

*Emps.' Ret. Sys. of Miss. v. Mohawk Indus., Inc.*, 2022 WL 17920570, at \*6 (N.D. Ga. Nov. 28, 2022); *In re Myriad Genetics, Inc. Sec. Litig.*, 2021 WL 5882259, at \*4 (D. Utah Dec. 13, 2021) (same). *Myriad* distinguished the only two cases cited by Defendants—*Iron Workers Local 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009) and *In re Kosmos Energy*, 299 F.R.D. 133 (N.D. Tex. 2014)—holding that the agreements in those cases were problematic because the monitoring firm was guaranteed to bring recommended securities litigation without an independent solicitation process, a situation not present here. *Myriad*, 2021 WL 5882259, at \*4.

### D.   Union Provided Accurate, Unrebutted Evidence Of Its Class Period Losses

Defendants tellingly do not claim that Union suffered no losses from Class Period investments in Boston Scientific. They claim only that Union did not submit sufficient "evidence that it suffered losses during the Class Period." Opp. at 16-18. This is nonsense.

*First*, Union previously submitted in sworn filings with the Court on February 2, 2021, a list of transactions in Boston Scientific during a longer, original class period, as well as a calculation of losses for that class period using standard "LIFO" accounting, showing that Union lost approximately $51.48 million under the original class period. ECF No. 24-2; ECF No. 24-3. These documents equally demonstrate Union's losses in the shorter Class Period sustained by the Court because all Class Period transactions are listed, and application of the same loss calculation methodologies utilized in the Lead Plaintiff motion, show losses of over $3 million. Defendants could have easily calculated Union's losses using the same data and methodologies submitted on February 2, 2021. *See* Declaration of Chad Coffman, CFA, attached as Exhibit A to the accompanying Declaration of Lauren A. Ormsbee, ¶3. Defendants likely did calculate losses, and therefore do not affirmatively argue that Union suffered no losses.

*Second*, on April 20, 2023, Union's representatives submitted a sworn declaration in

support of the Motion stating plainly that Union suffered losses during the sustained Class Period. ECF No. 93-1, ¶3. This sworn statement, which Defendants make no mention of at all in the Opposition, is uncontroverted evidence that Union suffered losses, like all Class members. *Third*,

████████████████████████████████████████████████████████████████████

██████████████████████████████████. Opp. Ex. 2 at 123:20-124:6.

*Finally*, Union produced clear trading and holdings records to Defendants (that were repeatedly referenced by Defendants) further demonstrating its financial losses incurred from Class Period transactions. Specifically, ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

*See* Opp. Ex. 1. ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████.

While largely duplicative of the data submitted two years earlier in connection with the Lead Plaintiff motion, *supra*, this data incontrovertibly demonstrates Union's losses.

There is no requirement that Union provide Defendants with an exact accounting loss calculation in connection with certification, and Defendants cite to none. Indeed, a PSLRA certification like the one submitted here in 2021 is sufficient evidence of loss at the class stage, and Union had provided considerable additional evidence. No further evidence is required to find Union typical and adequate. Defendants have knowingly misrepresented evidence in this case, and such behavior should not be tolerated, and their argument should be strongly rejected.

### III.   CONCLUSION

As set forth above and in the Motion, Lead Plaintiff respectfully requests that the Court certify this Action as a class action pursuant to Rule 23, appoint Lead Plaintiff as Class Representative, and approve Bernstein Litowitz as Class Counsel.

- 10 -

Dated: June 23, 2023

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
*/s/ Lauren A. Ormsbee*
Salvatore J. Graziano (admitted *pro hac vice*)
Mark Lebovitch (admitted *pro hac vice*)
Michael D. Blatchley (admitted *pro hac vice*)
Lauren A. Ormsbee (admitted *pro hac vice*)
Alexander T. Payne (admitted *pro hac vice*)
Emily A. Tu (admitted *pro hac vice*)
Aasiya F. Mirza Glover (admitted *pro hac vice*)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
markl@blblgaw.com
michaelb@blbglaw.com
laureno@blbglaw.com
alex.payne@blbglaw.com
emily.tu@blbglaw.com
aasiya.glover@blbglaw.com

*Lead Counsel for Lead Plaintiff and the Class*

**DONNELLY, CONROY & GELHAAR LLP**
T. Christopher Donnelly (BBO #129930)
Peter E. Gelhaar (BBO #18830)
Peter K. Levitt (BBO #565761)
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
Telephone: (617) 720-2880
Facsimile: (617) 720-3554
tcd@dcglaw.com
peg@dcglaw.com
pkl@dcglaw.com

*Liaison Counsel for Lead Plaintiff*