**REDACTED VERSION FOR PUBLIC FILING**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re BOSTON SCIENTIFIC CORPORATION : 
SECURITIES LITIGATION                              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x     Master File No.: No. 1:20-cv-12225-ADB
                                                                             :
This Document Relates To:
                                                                             :
     ALL ACTIONS
                                                                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER

James R. Carroll
Alisha Q. Nanda
Yaw A. Anim
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
yaw.anim@skadden.com

*Counsel for Defendants
Boston Scientific Corporation,
Michael F. Mahoney, Joseph M.
Fitzgerald, Daniel J. Brennan, Shawn
McCarthy, Ian Meredith, Kevin Ballinger
and Susan Vissers Lisa*

Dated:  September 1, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT .........................................................................................................1

BACKGROUND ................................................................................................................................2

ARGUMENT .....................................................................................................................................4

I.      THE DISPUTED EMAILS ARE
        PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS ..........................................4

        A.      The Attorney-Client Privilege Protects Communications Sent
                To In-House Counsel In Connection With The Provision Of Legal Advice ..........4

        B.      The Disputed Emails Are Communications  Between Mr. Brandt, An
                Attorney, And Boston  Scientific Executives For The Purpose Of Securing
                Legal Advice ........................................................................................................... 7

II.     UNDER THE CONFIDENTIALITY ORDER, DEFENDANTS'
        INADVERTENT PRODUCTION DID NOT WAIVE ANY PRIVILEGE........................9

CONCLUSION.................................................................................................................................10

**TABLE OF AUTHORITIES**

**CASES**                                                                                                    **PAGE(S)**

*Avid Technologies, Inc. v. Media Gobbler, Inc.*,
    No. CV 14-13746-PBS, 2016 WL 696092 (D. Mass. Feb. 19, 2016) .......................5, 6

*East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*,
    No. 12-CV-517-LM, 2014 WL 4627262 (D.N.H. Sept. 16, 2014) ...........................9

*In re County of Erie*,
    473 F.3d 413 (2d Cir. 2007) ...................................................................................5

*In re Grand Jury Subpoena*,
    273 F. Supp. 3d 296 (D. Mass. 2017) .......................................................................4

*Lluberes v. Uncommon Productions, LLC*,
    663 F.3d 6 (1st Cir. 2011)...................................................................................5, 8

*Mississippi Public Employees' Retirement System v. Boston Scientific Corp.*,
    649 F.3d 5 (1st Cir. 2011)..............................................................................4, 5, 8

*Roth v. Aon Corp.*,
    254 F.R.D. 538 (N.D. Ill. 2009)................................................................................6

*Somers v. QVC, Inc.*,
    No. 19-CV-04773, 2021 WL 3487315 (E.D. Pa. Aug. 9, 2021) ...............................5, 6

*Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*,
    60 F.3d 867 (1st Cir. 1995).....................................................................................5

*Thomas & Betts Corp. v. New Albertson's, Inc.*,
    No. CV 10-11947-DPW, 2014 WL 11462825 (D. Mass. July 21, 2014)...................9

*Upjohn v. United States*,
    449 U.S. 383 (1981).................................................................................. 1, 4, 5, 8

*Vicor Corp. v. Vigilant Insurance Co.*,
    674 F.3d 1 (1st Cir. 2012).......................................................................................4

*Wier v. United Airlines, Inc.*,
    No. 19 CV 7000, 2021 WL 1517975 (N.D. Ill. Apr. 16, 2021).................................8, 9

## PRELIMINARY STATEMENT

This motion is necessitated by Plaintiff's challenge to Defendants' clawback of three emails that Boston Scientific executives sent on November 12, 2020, to Eric Brandt, an in-house lawyer at Boston Scientific. Those emails to Mr. Brandt are privileged attorney-client communications. Pursuant to the Confidentiality Order's clawback procedures, Defendants seek a protective order requiring Plaintiff to return or destroy the inadvertently produced emails.

As shown in his accompanying declaration, ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████ Mr. Brandt did not reply in writing to those emails, but that is not necessary. The "privilege . . . protect[s] not only the giving of professional advice to those who can act . . . but also [for] the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). That is the case here. The emails are privileged. Counsel for Boston Scientific has explained this to Plaintiff's counsel to no avail.

Plaintiff offers nothing but baseless speculation to challenge Defendants' privilege claim. Under the Confidentiality Order's clawback provision, Plaintiff should immediately return or destroy all copies of the inadvertently produced emails.

## BACKGROUND

In response to Plaintiff's broad requests for documents, Defendants collected and reviewed approximately 111,860 documents from 22 custodians and produced nearly 50,000 documents—totaling over 220,000 pages. Of that, only 746 documents were withheld or redacted for privilege. Within those 746 documents are 16 copies of a November 12, 2020 email chain among Boston Scientific executives and in-house counsel, Eric Brandt, regarding ███████

█████████████████████████████████████████████████████████

███████████ These emails (the "Disputed Emails") focus on ██████████████████

███████████████████████████████████████████████████████

██████████████████████████

All but two of the sixteen versions of this email chain were initially either produced with the Disputed Emails redacted for privilege or were withheld entirely. On July 20, 2023, Defendants learned that two of the sixteen versions had been inadvertently produced without redactions. The next day, Defendants notified Plaintiff that they intended to assert privilege over the Disputed Emails in those two copies, as they had for the other versions of the same chain, and that they were clawing back the two copies pursuant to the parties' Confidentiality Order. (*See* Transmittal Declaration of Alisha Q. Nanda, Esq. ("A. Nanda Decl."), Ex. A.) Defendants are prepared to provide the Court with unredacted versions of the two clawed-back documents for *in camera* review at the Court's request.

On July 28, 2023, Plaintiff's counsel challenged Defendants' effort to clawback the Disputed Emails on the ground that (1) the in-house attorney was only a recipient and did not

2

respond to the emails, and (2) ███████████████████████████████████████

███████████████████████████████████████████████████████████ (*See*

A. Nanda Decl., Ex. B.)  After an exchange of correspondence, the parties met and conferred

regarding the issue on August 9, 2023, but have been unable to reach an agreement with respect

to the Disputed Emails.[1]

Where, as here, there is an unresolved dispute regarding a claim of privilege for a

document subject to a clawback request, the parties' Confidentiality Order provides that the

producing party may seek a protective order.  (ECF No. 86 ¶ 38.)  The Confidentiality Order,

which adopts Federal Rule of Evidence 502(d), also provides that the inadvertent production of

privileged material does not constitute a waiver.  (ECF No. 86 ¶¶ 30-31.)  Plaintiff requested that

this issue be resolved by the Court.  (*See* ECF No. 131.)  Defendants bring the instant motion on

the schedule set by the Court.  (ECF No. 133.)

---

[1]    Specifically, counsel for the parties participated in a videoconference via WebEx on August 9, 2023, at approximately 4 p.m. ET.  Attorneys Mark Foster and Vasundhara Prasad of Skadden, Arps, Slate, Meagher & Flom LLP attended for Defendants, and attorneys Aasiya Glover, Michael Blatchley, Lauren Ormsbee, Alex Payne and Emily Tu of Bernstein Litowitz Berger & Grossmann LLP attended for Plaintiff.  The conference lasted for roughly 15 minutes, and the parties were not able to reach any agreements with respect to the Disputed Emails.

3

## ARGUMENT

I.   **THE DISPUTED EMAILS ARE PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS**

A.   **The Attorney-Client Privilege Protects Communications Sent To In-House Counsel In Connection With The Provision Of Legal Advice**

The attorney-client privilege "protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 649 F.3d 5, 30 (1st Cir. 2011) ("*Boston Scientific*") (quoting *Upjohn*, 449 U.S. at 394–95).  "By safeguarding communications between client and lawyer, the privilege encourages full and free discussion, better enabling the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues." *Id.*  (citations and quotations omitted).

To establish that attorney-client privilege applies, the person asserting the privilege must show:  "(1) that he was or sought to be a client of [the attorney]; (2) that [the attorney] in connection with the [document] acted as a lawyer; (3) that the [document] relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding; and (4) that the privilege has not been waived." *In re Grand Jury Subpoena*, 273 F. Supp. 3d 296, 301 (D. Mass. 2017) (alterations in original) (quoting *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 27–28 (1st Cir. 1989)).  Once the party asserting privilege has carried its initial burden of establishing grounds for asserting the privilege and that the privilege has not been waived, the burden shifts to the opposing party to establish any exceptions to the privilege. *Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012).

Importantly, the attorney-client privilege protects not only communications from an attorney to a client, but communications from the client to the attorney as well.  "If the communication contains only client confidences made in pursuit of legal advice — or legal

4

advice based on such client confidences — that communication, if intended to remain confidential, should be covered by the privilege, regardless of whether it came from the client, his attorney, or an agent of either one." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011); *accord Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867, 883 (1st Cir. 1995) ("The privilege protects 'not only the giving of professional advice to those who can act . . . but also [for] the giving of information to the lawyer to enable him to give sound and informed advice.'" (quoting *Upjohn*, 449 U.S. at 390)).  The privilege also "extends to communications between corporate officers and in-house counsel" that "relate to legal matters." *Avid Tech., Inc. v. Media Gobbler, Inc.*, No. 14-13746-PBS, 2016 WL 696092, at *3 (D. Mass. Feb. 19, 2016).

In a large corporation, in-house counsel often provide legal advice to business leaders regarding communications and regulatory compliance issues that are protected by the attorney-client privilege.  In *Boston Scientific*, for example, the First Circuit affirmed the denial of a motion to compel the production of emails between Boston Scientific attorneys and an internal Recall Investigation Working Group and rejected plaintiff's argument that the emails were unrelated to the provision of legal advice because they were focused on how to avoid recall issues in the future.  649 F.3d at 30.  In rejecting plaintiff's argument, the First Circuit reasoned that such information was "highly relevant to BSC's potential liability and consequently directly related to providing legal advice to BSC's management."  *Id.*  Other courts routinely sustain privilege assertions in connection with advice about legal or regulatory compliance.  *See, e.g.*, *In re Cnty. of Erie*, 473 F.3d 413, 421-22 (2d Cir. 2007) (holding that advice about compliance with legal obligations is legal in nature and not for a business purpose); *Somers v. QVC, Inc.*, No. 19-cv-04773, 2021 WL 3487315, at *4 (E.D. Pa. Aug. 9, 2021) (holding that in-house counsel

"emails that pertain to compliance with [FTC] regulations and assessment of legal risks associated with approving on-air claims for the Plaintiffs' nutritional supplements" are privileged); *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009) (holding that "[t]he determination of what information should be disclosed for compliance is not merely a business operation, but a legal concern").

Courts also uphold privilege protection in connection with legal advice regarding corporate communications.  For example, in *Avid Technology*, Magistrate Judge Kelley found that an in-house attorney who was advising corporate executives on whether to make changes to the company's website after receiving a license termination notice from a third party "was without question functioning as legal counsel to [the executive] with respect to these communications," even though the in-house attorney also acted a business consultant to the company at times.  2016 WL 696092, at *3.  Because the in-house attorney was acting as legal counsel in connection with those communications, the court found that they were undeniably privileged and denied a motion to compel the production of such communications.  *Id.*

**B.      The Disputed Emails Are Communications
Between Mr. Brandt, An Attorney, And Boston
Scientific Executives For The Purpose Of Securing Legal Advice**

Here, as in *Boston Scientific* and *Avid Technology*, Boston Scientific's in-house

attorney, Eric Brandt, was involved in providing legal advice regarding regulatory and

communication issues. On or around October 30, 2020, ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████ (Declaration of Eric Brandt,

Esq., submitted as A. Nanda Decl. Ex. C, ¶ 3.) ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ (*Id.*)

████████████████████████████ Mr. Brandt participated in a meeting on

November 10, 2020, with Brian Novak, the Vice President of Regulatory Affairs for the

Interventional Cardiology Division at Boston Scientific; Trish Backes, the Director of Business

Unit Communications; John Donohue, Vice President of Quality Assurance; and Karen Kelso,

Director of Regulatory for the EMEA region. (*Id.* ¶ 4.) ████████████████████

████████████████████████████████████ (*Id.*) ████████████

████████████████████████████████████████ (*Id.*)

████████████████████████ on November 12, 2020, the Disputed Emails were

sent to Mr. Brandt. In particular, Mr. Novak sent Mr. Brandt, Ms. Backes, and Nicole Pshon (a

Field Action Manager), an email, copying Dan Krause, the Director of Regulatory Affairs. (*Id.*

¶ 5.) Mr. Brandt received two additional, related emails from Ms. Backes and from Mr. Novak

on November 12, 2020. (*Id.*) ████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████  (*Id.* ¶ 6.)

As is evident from the face of the Disputed Emails, ████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████  Mr. Brandt understood that he was sent those

emails, in furtherance of issues discussed at the November 10 meeting, ███████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████  (*Id.* ¶¶ 6-7.)

As the Disputed Emails ████████████████████████████████████████

███████████████████████████████████████████████  they were

"directly related to providing legal advice to BSC's management," and so covered by attorney-

client privilege.  *Boston Scientific*, 649 F.3d at 31; *accord Lluberes,* 663 F.3d at 24.

That Mr. Brandt did not write advice in response to the emails does not matter.

The "privilege exists to protect not only the giving of professional advice to those who can act on

it but also to the giving of information to the lawyer to enable him to give sound and informed

advice."  *Upjohn*, 449 U.S. at 390.  *Upjohn*'s bedrock rule has been applied to communications in

which counsel is not a sender or recipient, which may be privileged if they reveal, directly or

indirectly, the substance of a confidential attorney-client communication.  *See Wier v. United*

*Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *3, *7 (N.D. Ill. Apr. 16, 2021).

In *Wier*, the plaintiff moved to compel the production of certain emails where

either (i) no attorney was a sender or recipient, or (ii) an attorney was one of multiple recipients,

"giving rise to the suspicion that the sender was not seeking legal advice, but was for all intents

and purposes simply adding the attorney to the correspondence in the manner of a copy." *Id.* at *5. The court denied the motion, observing that those arguments "ignore" that privilege "is not settled by authorship or participation." *Id.* at *6. In particular, the court held that privilege properly extends to emails "on which in-house counsel is copied or is one of multiple recipients" in connection with discussion of "terms of art" to "aid in the provision of legal services." *Id.* at *7. The Court should reach the same conclusion here, especially given that Plaintiff's challenge to the privilege attached to the Disputed Emails is, as in *Wier*, "based on mere speculation."

## II.    UNDER THE CONFIDENTIALITY ORDER, DEFENDANTS' INADVERTENT PRODUCTION DID NOT WAIVE ANY PRIVILEGE

The Confidentiality Order expressly "invokes the protections of Federal Rule of Evidence 502(d)," in providing "any inadvertent disclosure of privileged information . . . shall not be deemed to waive—in this litigation or in any other federal or state proceeding—any applicable privilege or immunity (including, without limitation, the attorney-client privilege)." (ECF No. 86 ¶ 31.) The Confidentiality Order also provides that "the provisions in Rule 502(b) will not apply . . . other than an intentional disclosure." (*Id.* ¶ 30.)

Clawback provisions like the one in the Confidentiality Order foreclose a finding of waiver. They "essentially undo a document production and allow the return of documents that a party belatedly determines are protected by the attorney-client privilege or work product immunity." *Thomas & Betts Corp. v. New Albertson's, Inc.*, No. 10-11947-DPW, 2014 WL 11462825, at *4 (D. Mass. July 21, 2014). There can be no waiver where, as here, an order "provides that no waiver occurs as a result of inadvertently-produced privileged documents, without regard to the measures a party takes to prevent disclosure." *East Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-cv-517-LM, 2014 WL 4627262, at *2 (D.N.H. Sept. 16, 2014) (holding "as the protective order provides, EastCoast did not waive its privilege").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion and order Plaintiff to (i) return or destroy all copies of the Disputed Emails and certify to Defendants that all such Disputed Emails have been returned or destroyed, (ii) refrain from any further use or disclosure of the Disputed Emails; and (iii) take reasonable steps in good faith to retrieve any copies of the Disputed Emails disclosed by Plaintiff prior to receiving notice.

Dated:  September 1, 2023
       Boston, Massachusetts

Respectfully submitted,

/s/ James R. Carroll
James R. Carroll (BBO #554426)
Alisha Q. Nanda (BBO #657266)
Yaw A. Anim (BBO #569512)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
james.carroll@skadden.com
alisha.nanda@skadden.com
yaw.anim@skadden.com

*Counsel for Defendants*
*Boston Scientific Corporation,*
*Michael F. Mahoney, Joseph M.*
*Fitzgerald, Daniel J. Brennan, Shawn*
*McCarthy, Ian Meredith, Kevin Ballinger*
*and Susan Vissers Lisa*

10