**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In re BOSTON SCIENTIFIC CORPORATION SECURITIES LITIGATION | Master File No. 1:20-cv-12225-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**
**AND APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT.................................................................................... 1

II.  BACKGROUND OF THE LITIGATION .......................................................... 3

III.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............................. 6

    A.  Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class .................................................................................... 7

    B.  The Settlement Is the Result of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator ........................................ 8

    C.  The Proposed Settlement Is Within the Range of Possible Approval................... 9

    D.  The Settlement Treats All Settlement Class Members Fairly ............................. 11

    E.  The Settlement Does Not Excessively Compensate Plaintiffs' Counsel ............ 12

    F.  Lead Plaintiff Has Identified All Agreements Made In Connection With The Settlement.................................................................................... 13

IV.  THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23............................... 13

    A.  The Settlement Class Satisfies the Requirements of Rule 23(a) ........................ 14

        1.  The Settlement Class Is So Numerous That Joinder Is Impracticable .... 14

        2.  There Are Common Questions of Law and Fact.................................... 15

        3.  Lead Plaintiff's Claims Are Typical of Those of the Settlement Class.... 16

        4.  Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Settlement Class .................................................................................... 16

    B.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3) .................... 17

        1.  Common Legal and Factual Questions Predominate .............................. 17

        2.  A Class Action Is Superior to Other Methods of Adjudication................ 18

V.  THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ........................ 19

VI.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS............................................ 20

VII.    CONCLUSION ............................................................................................................. 20

Appendix A .............................................................................................................................. 22

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Allergan PLC Sec. Litig.*,
  2021 WL 4077942 (S.D.N.Y. Sept. 8, 2021)..............................................................................18

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................................................17

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013)....................................................................................................................8, 18

*In re AVEO Pharms., Inc. Sec. Litig.*,
  2017 WL 5484672 (D. Mass. Nov. 14, 2017) .....................................................................15, 16

*Bacchi v. Mass. Mut. Life Ins. Co.*,
  2017 WL 5177610 (D. Mass. Nov. 8, 2017) ...........................................................................12

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)......................................................................................................................18

*In re Boston Sci. Corp. Sec. Litig.*,
  604 F. Supp. 2d 275 (D. Mass. 2009) .......................................................................... *passim*

*In re Credit Suisse-AOL Sec. Litig.*,
  253 F.R.D. 17 (D. Mass. 2008)....................................................................................................16

*Dahhan v. OvaScience, Inc.*,
  2020 WL 2602138 (D. Mass. May 8, 2020) ...........................................................................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011)......................................................................................................................18

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
  275 F.R.D. 382 (D. Mass. 2011)..................................................................................17, 18, 19

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .........................................................................13

*Hill v. State St. Corp.*,
  2015 WL 127728 (D. Mass. Jan. 8, 2015) ...........................................................................9, 20

*Hoff v. Popular Inc.*,
  2011 WL 13209610 (D.P.R. Nov. 2, 2011)...........................................................................12

*John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*,
  2004 WL 438790 (D. Mass. Mar. 9, 2004)............................................................................18

*In re Lupron Mktg. & Sales Practice Litig.*,
    228 F.R.D. 75 (D. Mass. 2005) .......................................................................................6

*Machado v. Endurance Int'l Grp. Holdings, Inc.*,
    2019 WL 4409217 (D. Mass. Sept. 13, 2019) ...............................................................12

*Medoff v. CVS Caremark Corp.*,
    2016 WL 632238 (D.R.I. Feb. 17, 2016) ........................................................................11

*In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*,
    2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) .....................................................................11

*New England Biolabs, Inc. v. Miller*,
    2022 WL 20583575 (D. Mass. Oct. 26, 2022) .................................................................7

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008) ..............................................................................................15

*Roberts v. TJX Companies, Inc.*,
    2016 WL 8677312 (D. Mass. Sept. 30, 2016) .................................................................9

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) .........................................................................................9

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ...............................................................17

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................................13

*Swack v. Credit Suisse First Boston*,
    230 F.R.D. 250 (D. Mass. 2005) ..............................................................................14, 15

*In re TelexFree Sec. Litig.*,
    475 F. Supp. 3d 15 (D. Mass. 2020) ..............................................................................20

*U.S. v. Comunidades Unidas Contra la Contaminacion*,
    204 F.3d 275, 280 (1st Cir. 2000) ....................................................................................6

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000) ..........................................................................................18

**STATUTES & RULES**

Private Securities Litigation Reform Act ("PSLRA"),
    15 U.S.C. § 78u-4 ....................................................................................................12, 20

Securities Exchange Act of 1934, Section 10(b)
    15 U.S.C. § 78j(b) ....................................................................................................3, 4, 17

Securities Exchange Act of 1934, Section 20(a)
    15 U.S.C. § 78t(a) .........................................................................................................3, 4

SEC Rule 10b-5,
    17 CFR 240.10b-5.............................................................................................................3

Fed. R. Civ. P. 23 .................................................................................................... *passim*

Lead Plaintiff Union Asset Management AG ("Lead Plaintiff") is pleased to report that it has reached an agreement with Defendants, subject to the Court's approval, to settle this securities class action (the "Action") in exchange for a cash payment of $38,500,000 for the benefit of the Settlement Class (the "Settlement").[1]

## I.     PRELIMINARY STATEMENT

After more than two and a half years of hard-fought litigation, Lead Plaintiff has reached an agreement with Defendants to resolve all claims asserted in the Action in exchange for $38,500,000 for the benefit of the Settlement Class.  The proposed Settlement is an all-cash, non-reversionary settlement: once the Court's approval of the Settlement becomes final, Defendants will have no right to return of Settlement Fund for any reason.[2]

The proposed Settlement is an excellent result for the Settlement Class in light of the risks of continued litigation and the range of possible outcomes at trial.  Lead Plaintiff faced substantial risks in proving that Defendants' alleged misstatements about Boston Scientific's Lotus Edge product were false and misleading when made, were made with scienter, and caused damages to the Settlement Class.  Defendants have vigorously contended that the Company's decision to discontinue its Lotus Edge medical device was not made until after the alleged misstatements, and that their statements about Lotus Edge were not otherwise false or misleading.  The significant risks in the litigation were highlighted by the fact that the SEC had initially brought an investigation into the same claims, but subsequently dropped the matter without taking any

---

[1] All capitalized terms that are not otherwise defined in this memorandum have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated December 14, 2023 (the "Stipulation"), attached to the accompanying Motion as Exhibit 1.

[2] *See* Stipulation ¶ 13 ("The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount . . . shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever . . .").

enforcement action. While a decision by the SEC to take no action is irrelevant to the merits of this Action, Defendants would nonetheless argue that the SEC's investigation did not uncover sufficient evidence that Boston Scientific or its officers had committed fraud. Notwithstanding these significant risks, Lead Plaintiff has obtained a proposed Settlement that represents a substantial portion of the maximum possible damages that could be proved at trial and will provide a meaningful recovery for injured investors.

The proposed Settlement was achieved following substantial motion practice, extensive discovery, and extended arm's-length negotiations, including two mediation sessions before James E. McGuire of JAMS, an experienced mediator. Over the course of the litigation, Lead Plaintiff conducted a detailed investigation into the claims, successfully opposed in part Defendants' motion to dismiss, and conducted substantial discovery, which included obtaining and reviewing more than 224,000 pages of documents, serving document subpoenas on third parties, and engaging in numerous meet-and-confers with Defendants and third parties. Lead Plaintiff also filed a motion for class certification with an accompanying expert report, produced more than 16,000 pages of documents to Defendants, and had its representative sit for a deposition. As a result of these extensive litigation efforts, Lead Plaintiff and Lead Counsel were well aware of the strengths and weaknesses of the claims in the Action at the time of the Settlement. Lead Plaintiff— a sophisticated institutional investor—actively oversaw the litigation and fully endorses the Settlement.

For these reasons and those discussed further below, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, attached to the Motion as Exhibit 2. Approval of a class action settlement is a two-step process. *See* Fed. R. Civ. P. 23(e)(1), (2). At this initial stage, Lead Plaintiff requests only that the Court grant preliminary approval of the

Settlement, which will begin the process of considering the proposed Settlement by allowing notice of the Settlement to be sent to potential members of the Settlement Class and scheduling the proposed final approval hearing (the "Settlement Hearing").  At the Settlement Hearing, the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate based on more detailed motion papers submitted in support of the proposed Settlement prior to that hearing.

## II.    BACKGROUND OF THE LITIGATION

The Action commenced in December 2020 with the filing of a class action complaint alleging that Boston Scientific and certain of its officers violated the federal securities laws.  On March 30, 2021, the Honorable Douglas P. Woodlock appointed Union Asset Management Holding AG as Lead Plaintiff for the Action under the PSLRA and approved its selection of Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel and Donnelly, Conroy & Gelhaar, LLP as Liaison Counsel for the putative class.  ECF No. 31.

On June 4, 2021, Lead Plaintiff filed and served its Amended Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint") asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against defendants Michael F. Mahoney, Joseph M. Fitzgerald, Daniel J. Brennan, Shawn McCarthy, Kevin Ballinger, Ian Meredith, and Susan Vissers Lisa under Section 20(a) of the Exchange Act.  ECF No. 44.  Lead Plaintiff alleged that Defendants made false and misleading statements to investors regarding the Lotus Edge medical device, a transcatheter aortic valve replacement device used to treat patients with heart disease, including about the Lotus Edge's ability to drive revenues and the safety of the device.  Lead Plaintiff further alleged that the price of Boston Scientific's common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements and declined when the truth was revealed.

On July 19, 2021, Defendants filed a motion to dismiss the Complaint.  ECF Nos. 53, 54.

The motion was fully briefed, and the Court heard argument on the motion on November 19, 2021.

On December 20, 2022, the Court entered its Order denying, in part, and granting, in part, Defendants' motion to dismiss the Complaint. ECF No. 74. Specifically, the Court denied the motion with respect to the Section 10(b) claims against Defendants Boston Scientific and Mahoney and as to the Section 20(a) claims and granted the motion with respect to Lead Plaintiff's Section 10(b) claims against Defendants Fitzgerald, Brennan, McCarthy, Ballinger, Meredith, and Lisa. As a result of the Court's dismissal of certain of the alleged misstatements in the action, the class period in the action was shortened to run from September 16, 2020 through November 16, 2020, inclusive (the "Class Period").

Discovery in the Action commenced after the resolution of the motion to dismiss. Lead Plaintiff proceeded to serve Defendants with extensive requests for production, seeking documents on all issues relevant to the Action. Lead Plaintiff also served three subpoenas on relevant third-party witnesses. In total, Defendants and third parties produced over 224,000 pages in response to Lead Plaintiff's document requests and subpoenas. Lead Counsel also met and conferred and exchanged numerous letters with Defendants over several months regarding the scope of their proposed objections to discovery and the adequacy of their responses and ultimate document productions. Lead Counsel noticed depositions of several Boston Scientific officers and employees to take place in October and November of 2023. Lead Counsel further prepared and served, and obtained responses to, comprehensive interrogatories on Defendants. The Parties also engaged in extensive discovery relating to class certification, with Lead Plaintiff responding to Defendants' interrogatories, producing more than 16,000 pages of documents, and appearing for a deposition of its representative with knowledge of the case and Lead Plaintiff's role in the case.

The Parties began exploring the possibility of a settlement in early 2023. The Parties

agreed to engage in private mediation and retained James E. McGuire of JAMS to act as mediator in the Action (the "Mediator"). On March 27, 2023, counsel for the Parties participated in a full-day mediation session before the Mediator. In advance of that session, the Parties exchanged and submitted detailed mediation statements to the Mediator. The mediation session ended without any agreement being reached.

On April 21, 2023, Lead Plaintiff filed its motion for class certification and appointment of class representative and class counsel (ECF Nos. 91, 92), which was accompanied by more than 200 pages of exhibits, including a 39-page report on market efficiency and a common damages methodology. Lead Counsel also defended Lead Plaintiff at its deposition. On May 26, 2023, Defendants filed their opposition to Lead Plaintiff's motion for class certification, which was accompanied by more than 200 pages of exhibits. On June 23, 2023, Lead Plaintiff filed its reply.

On June 28, 2023, the case was reassigned to the Honorable Allison D. Burroughs. ECF No. 123. On July 27, 2023, the Court heard oral argument on Lead Plaintiff's motion for class certification. ECF No. 127. Fact discovery was scheduled to conclude on November 21, 2023 (ECF No. 128), and, at the time the Parties reached their agreement to settle, the Parties were in the process of scheduling depositions for key individuals and Defendants, and five fact depositions had already been scheduled for October and November 2023.

After the Court heard arguments on the motion for class certification, the Parties renewed their settlement discussions and agreed to engage in a second full-day session before the Mediator on September 8, 2023. Prior to the mediation session, Lead Plaintiff again prepared a detailed mediation statement, accompanied by supporting exhibits produced during discovery, which Lead Plaintiff submitted to the Mediator and Defendants. Following the September 8, 2023 mediation session, the Parties reached an agreement in principle to settle the Action for $38,500,000. The

agreement's terms were memorialized in a term sheet executed on October 23, 2023.

On December 14, 2023, the Parties entered into the Stipulation, which sets forth the terms and conditions of the Settlement.  On the same day, Lead Plaintiff and Boston Scientific also entered into a confidential Supplemental Agreement, which gives Boston Scientific the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement in an amount that exceeds a threshold agreed to by Lead Plaintiff and Boston Scientific.

**III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

The Settlement readily meets the standards for preliminary approval.  This Settlement provides substantial benefits to investors and avoids the meaningful risks and delays that would otherwise accompany the Action.  The Settlement is the product of extensive, hard-fought litigation and arm's-length settlement negotiations overseen by an experienced mediator.

Federal Rule of Civil Procedure 23(e)(2) provides that a class action settlement warrants court approval if it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In the First Circuit, as a matter of public policy, settlement is a highly favored means of resolving disputes.  *See U.S. v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) (noting "the strong public policy in favor of settlements").[3]  This is especially so in the context of complex class action litigation.  *See In re Lupron Mktg. & Sales Practice Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("[T]he law favors class action settlements.").

As noted above, judicial approval of a class action settlement is a two-step process.  *First*, the Court preliminarily reviews the proposed settlement's term to determine whether to send notice of the settlement to the class.  *See* Fed. R. Civ. P. 23(e)(1).  Second, after notice has been provided

---

[3] Unless otherwise noted, all internal quotation marks and citations are omitted.

and a hearing has been held, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

A court should grant preliminary approval upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2) and certify the proposed class for purposes of the settlement. Fed. R. Civ. P. 23(e)(1)(B). "A proposed settlement of a class action may be given preliminary approval 'where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval.'" *New England Biolabs, Inc. v. Miller*, 2022 WL 20583575, at *2 (D. Mass. Oct. 26, 2022).

In considering ***final*** approval of the Settlement, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Because these factors are satisfied here, final approval of the Settlement is "likely," and preliminary approval of the Settlement is warranted. Fed. R. Civ. P. 23(e)(1)(B).

### A. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

In weighing approval of a proposed settlement, a court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A); *see also In re Boston Sci. Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 282 (D. Mass. 2009)

(the adequacy requirement "entails a two-part showing: 'The moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.'")

Here, there is no antagonism or conflict between the Lead Plaintiff and the Settlement Class. Lead Plaintiff, like the other Settlement Class Members, purchased Boston Scientific common stock during the Class Period, and was injured by the same alleged misstatements. If Lead Plaintiff were to prove its claims at trial, it would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013) (the investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions). Moreover, Lead Plaintiff and Lead Counsel have vigorously represented the Settlement Class both by prosecuting the Action for two and half years and by negotiating a favorable $38.5 million Settlement. Lead Counsel is well qualified and highly experienced in securities class action litigation, and has successfully prosecuted hundreds of securities class actions on behalf of damaged investors. *See* ECF 93-3 (Lead Counsel's firm resume).

### B.   The Settlement Is the Result of Good-Faith, Arm's-Length Negotiations Among Experienced Counsel and a Mediator

The Settlement was reached only after arm's-length negotiations between experienced and well-informed counsel with the assistance of James E. McGuire, a well-respected and experienced mediator. Lead Plaintiff's decision to settle this case was informed by a thorough investigation of the relevant claims; the filing of a detailed amended complaint; extensive motion practice and fact discovery; the seeking of class certification, which was supported by expert analysis and reports; consultation with multiple experts including on issues of medical device design and manufacturing, medical device regulations, and damages; and participation in extensive, hard-

fought mediations.  The Settlement is thus demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of Boston Scientific shareholders.

Here, the Settlement was achieved only after protracted arm's-length negotiations.  Given that the Parties had litigated the action for two-and-a-half years, engaged in extensive document discovery, and exchanged detailed written statements about the claims and defenses at issue, the Parties and their counsel were well-informed about the strengths and weaknesses of the claims and defenses.  Moreover, the judgment of the Parties' counsel—who are highly experienced in securities class action litigation—that the Settlement is a fair and reasonable resolution of the Litigation should be given considerable weight.  *See, e.g., Hill v. State St. Corp.*, 2015 WL 127728, at *7 (D. Mass. Jan. 8, 2015) ("The intensive multi-year litigation efforts in this case leave this court with no doubt that Lead Plaintiffs, who are sophisticated institutional investors, and Co–Lead Counsel, who are experienced in securities class action litigation, were well informed about the strengths and weaknesses of the case at the time the Settlement was achieved."); *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight.").

The fact that the Settlement was negotiated under the auspices of an experienced mediator further supports a finding that the settlement is fair and free of any collusion.  *See Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *6 (D. Mass. Sept. 30, 2016) (Burroughs, J.) ("the participation of an experienced mediator[] also supports the Court's finding that the Settlement is fair, reasonable, and adequate").

### C.    The Proposed Settlement Is Within the Range of Possible Approval

At the preliminary approval stage, the Court need only determine whether it will "likely be able" to approve the Settlement.  Fed. R. Civ. P. 23(e)(1)(B).  Because the proposed $38,500,000

9

Settlement represents an excellent recovery for the Settlement Class in light of the substantial risks the Settlement Class would face in establishing liability and damages, as well as the significant time and expense required to continue to pursue the claims against Defendants through the completion of discovery, summary judgment, trial, and appeals, the Settlement falls well within the range of possible approval.

Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit.  They recognize, however, that they faced substantial hurdles in establishing liability and damages in this Action.  Defendants have vigorously denied that they made any false or misleading statements and omissions regarding the Lotus Edge, including its design, manufacturing, and patient safety issues; revenue generation; and the future viability of the product.  Defendants have asserted that Boston Scientific had not decided to recall the Lotus Edge until after the alleged misstatements were made.  As a result, Defendants contend that their challenged statements were not false or misleading when made.  Lead Plaintiff also faced steep challenges in proving scienter for the remaining alleged misstatements and in establishing loss causation.

The significant risks in the litigation were highlighted by the fact that the SEC had initially brought an investigation into the same claims, including obtaining documents from Boston Scientific, but subsequently dropped the matter without taking any enforcement action.  While Lead Plaintiff, and many courts, do not give legal weight to a non-action decision, Defendants would undoubtedly argue that the SEC's decision suggests that the SEC did not uncover sufficient evidence that Boston Scientific or its officers had committed fraud in connection with the statements about Lotus Edge.

The Settlement is also reasonable in light of the maximum damages that could be reasonably established at trial.  Lead Plaintiff's damages expert has estimated that *maximum*

10

reasonably recoverable damages are approximately $176 million to $207 million (depending on whether class members' gains on sale of pre-Class Period holdings are offset against losses). Importantly, this estimated range assumes Lead Plaintiff's **complete success** in establishing Defendants' liability on the remaining claims, and further that the trier of fact would reject Defendants' loss causation and damages arguments.  The $38.5 million Settlement represents 18.5% to 22% of these maximum recoverable damages, which is many multiples above the median percentage recovery seen in comparable cases.  *See, e.g.*, *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (approving settlement recovering 5.33% of maximum damages and noting that it was "well above the median percentage of settlement recoveries in comparable securities class action cases"); *In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.,* 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (settlement representing 6.25% of estimated maximum damages was at the "higher end of the range of reasonableness of recovery in class action securities litigations").

The Settlement thus is an extraordinary result in light of the litigation risks in the case, and the fact that the SEC declined to take any action and recovered nothing for investors.

### D.    The Settlement Treats All Settlement Class Members Fairly

The Settlement does not improperly grant preferential treatment to Lead Plaintiff or any segment of the Settlement Class.  Rather, all Settlement Class Members will receive a distribution from the Net Settlement Fund in accordance with a plan of allocation to be approved by the Court.

At the final Settlement Hearing, Lead Plaintiff will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan," which is stated in full in the Notice). The Plan, which was developed by Lead Counsel in consultation with Lead Plaintiff's damages expert, provides for distribution of the Net Settlement Fund to Settlement Class Members on a *pro*

*rata* basis arising from losses in Boston Scientific common stock related to the alleged fraud.[4]

### E.    The Settlement Does Not Excessively Compensate Plaintiffs' Counsel

The proposed Settlement does not grant excessive compensation to Plaintiffs' Counsel. The Settlement does not contemplate any specific award to Plaintiffs' Counsel, and Plaintiffs' Counsel will be compensated solely out of the Settlement Fund after approval by the Court.

In its fee and expense application, to be filed 35 days before the Settlement Hearing, Lead Counsel will move for attorneys' fee for all Plaintiffs' Counsel in an amount not to exceed 20% of the Settlement Fund, which is well within the range of percentage awards that courts approve in comparable class actions.  *See, e.g.*, *Machado v. Endurance Int'l Grp. Holdings, Inc.*, 2019 WL 4409217, at *1 (D. Mass. Sept. 13, 2019) (awarding 33 1/3% of $18.65 million settlement); *Bacchi v. Mass. Mut. Life Ins. Co.,* 2017 WL 5177610, at *5 (D. Mass. Nov. 8, 2017) (awarding 25% of $37.5 million settlement); *Hoff v. Popular Inc.*, 2011 WL 13209610, at *1 (D.P.R. Nov. 2, 2011) (awarding 27% of $37.5 million settlement).  Lead Counsel will also seek payment of litigation expenses incurred in connection with the institution, prosecution, and resolution of the Action, in an amount not to exceed $700,000, which may include a request for reimbursement of costs and expenses of Lead Plaintiff under the PSLRA.

Lead Counsel's fee and expense application will be fully briefed in a motion filed in accordance with the Preliminary Approval Order.  By granting preliminary approval of the proposed Settlement, the Court does not in any way pass upon the reasonableness of the fee or expense application, which will be decided *de novo* at the Settlement Hearing.

---

[4] If any funds remain in the Net Settlement Fund after the distribution to eligible Claimants (due to returned or uncashed checks), the Claims Administrator will conduct additional distributions until doing so is no longer cost effective.  *See* Notice ¶ 93.  At that time, any remaining balance will be contributed to one or more non-sectarian, not-for-profit, 501(c)(3) organizations to be selected by Lead Counsel and approved by the Court.  *See id.*  There will be no reversion to Defendants.  *See* Stipulation ¶ 13.

**F.    Lead Plaintiff Has Identified All Agreements Made in Connection With The Settlement**

In addition to the Stipulation, Lead Plaintiff and Boston Scientific have entered into a confidential Supplemental Agreement regarding requests for exclusion from the Settlement Class. *See* Stipulation ¶ 37.  This agreement establishes the conditions under which Boston Scientific may terminate the Settlement if the "opt-outs" from the Settlement Class exceed an agreed-upon threshold.  "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020).  As is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact an individual settlement.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.").  In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

## IV.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

The Parties have stipulated to the certification of the Settlement pursuant to Rule 23(a) and 23(b)(3) for settlement purposes only.  Stipulation ¶ 2.  The Settlement Class that the Parties seek to certify is the same as the class that Lead Plaintiff sought to certify in its pending class certification motion (ECF No. 92).  Specifically, the Settlement Class consists of:

> all persons or entities who purchased or otherwise acquired Boston Scientific common stock during the period from September 16, 2020 through November 16, 2020, inclusive (the "Class Period"), and were damaged thereby.

13

Stipulation ¶ 1(tt).[5]  Certification of a settlement class is appropriate where the proposed class and class representative meet the requirements of Rules 23(a) and 23(b)(3).  At the preliminary approval stage, the Court need only determine whether it "will likely be able to" grant certification to the Settlement Class at final approval.  *See* Fed. R. Civ. P. 23(e)(1)(B)(ii).  As demonstrated below, the proposed Settlement Class satisfies all the requirements of Rules 23(a) and 23(b)(3).

### A.      The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).   The proposed Settlement Class satisfies these requirements.

### 1.      The Settlement Class Is So Numerous That Joinder Is Impracticable

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  Fed. R. Civ. P. 23(a).  "[C]ourts may draw reasonable inferences from the facts presented to find the requisite numerosity" and routinely find the numerosity requirement satisfied based on the number of shares that were outstanding and the average trading volume during the class period.  *See Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 258 (D. Mass. 2005); *see also Boston Sci.*, 604 F. Supp. 2d at 281.  The Settlement

---

[5] Excluded from the Settlement Class are: (i) Defendants; (ii) Immediate Family Members of any Individual Defendant; (iii) any person who was an Officer or director of Boston Scientific during the Class Period and any of their Immediate Family Members; (iv) any parent, subsidiary, or affiliate of Boston Scientific; (v) any firm, trust, corporation, or other entity in which any Defendant or any other excluded person or entity has, or had during the Class Period, a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest, or assigns of any such excluded persons or entities.  Also excluded from the Settlement Class are any persons who exclude themselves by submitting a request for exclusion that is accepted by the Court. Stipulation ¶ 1(tt).

14

Class easily satisfies numerosity. During the Class Period, there were roughly 1.3 billion shares of Boston Scientific common stock issued and outstanding, and an average of approximately 55.16 million shares traded weekly. *See* ECF No. 92 at 9; ECF No. 93-2 (Expert Report of Chad Coffman, CFA ("Coffman Rep.")) ¶ 28, Ex. 12. These metrics easily demonstrate numerosity.

### 2. There Are Common Questions of Law and Fact

Commonality under Rule 23(a)(2) is satisfied when there is "a *single* common legal or factual issue." *Swack,* 230 F.R.D. at 259. In securities class actions, courts have found commonality where "the statements Plaintiffs allege were misleading due to material omissions were made to all of the class members." *In re AVEO Pharms., Inc. Sec. Litig.*, 2017 WL 5484672, at *4 (D. Mass. Nov. 14, 2017); *see also Boston Sci.,* 604 F. Supp. 2d at 281 (common questions included falsity, scienter, and whether a presumption of reliance applied). The Rule 23(a)(2) commonality test has been described as a "low bar" and thus easily satisfied. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008).

The common questions of law and fact in this case are numerous and include: (i) whether Defendant Mahoney's statements were materially false and misleading when made; (ii) whether Mahoney and Boston Scientific acted with scienter; (iii) whether the price of Boston Scientific's common stock was artificially inflated during the Class Period due to these alleged misstatements; and (iv) whether these misrepresentations and omissions caused Settlement Class members to suffer economic losses when the truth was revealed. Courts routinely certify classes in securities fraud cases involving these common questions. *See, e.g., Dahhan v. OvaScience, Inc.,* 2020 WL 2602138, at *3 (D. Mass. May 8, 2020) (commonality established where statements and omissions were "distributed to all the class members during the class period resulting in an artificially inflated stock price"). Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

15

### 3. Lead Plaintiff's Claims Are Typical of Those of the Settlement Class

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Boston Sci.,* 604 F. Supp. 2d at 281-82.  A plaintiff "meet[s] this requirement by showing that its injuries arise from the same events or course of conduct as do the injuries of the class, and that its claims are based on the same legal theory as those of the class." *Id.* Ultimately, typicality is satisfied where "all members of the class are purchasers of [Defendants'] stock which they allege was inflated in price due to Defendants' material omissions and were harmed by the later revelations that cured the omission." *AVEO Pharms.,* 2017 WL 5484672, at *4; *see also OvaScience,* 2020 WL 2602138, at *4.

Here, Lead Plaintiff's claims arise from the same alleged course of conduct that gives rise to claims of other Settlement Class members, are based on the same legal theory, and would be proven by the same set of operative facts.  Further, damages can be calculated on a class-wide basis.  Coffman Rep. ¶ 86.  As such, typicality is satisfied.  *See Boston Sci.,* 604 F. Supp. 2d at 282 (finding typicality where plaintiff "purchased Boston Scientific stock at a time when the price was alleged to have been artificially inflated due to defendants' misleading statements, and was subsequently harmed by the drop in stock price"); *In re Credit Suisse-AOL Sec. Litig.,* 253 F.R.D. 17, 24 (D. Mass. 2008).

### 4. Lead Plaintiff Will Fairly and Adequately Protect the Interests of the Settlement Class

Adequacy is satisfied where a plaintiff demonstrates that it "will fairly and adequately protect the interests of the class." *AVEO Pharms.,* 2017 WL 5484672, at *4.  Adequacy requires a "two-part showing," where, first, the plaintiff's interests will not conflict with the interests of the class members, and second, the plaintiff's chosen counsel is qualified, experienced and able to vigorously conduct the proposed litigation.  *Boston Sci.,* 604 F. Supp. 2d at 282; *see also AVEO*

16

*Pharms.,* 2017 WL 5484672, at \*4 (same).  Both prongs are satisfied here.

As discussed above, Lead Plaintiff possesses the same interests as the other Settlement Class members, and no actual or potential conflicts exist, and Lead Plaintiff and Lead Counsel vigorously prosecuted this Action on behalf of the Settlement Class.  Lead Plaintiff also retained qualified counsel who have extensive experience and success in prosecuting securities litigation. *See* ECF No. 93-3 (Lead Counsel's firm resume).[6]  Accordingly, Rule 23(a)(4) is satisfied here.

### B.        The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if the Court finds that (i) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (ii) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The proposed Settlement Class satisfies both requirements.

### 1.        Common Legal and Factual Questions Predominate

As the Supreme Court has noted, predominance is a test "readily met" in cases alleging violations of the securities laws.  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 275 F.R.D. 382, 393 (D. Mass. 2011) (same); *see also Boston Sci.*, 604 F. Supp. 2d at 283 ("Most [§ 10(b)] elements are generally amenable to common proof.").  Indeed, as shown by the above analysis of Lead Plaintiff's claims

---

[6] Attached to the Motion as Exhibit 3 is a true and correct copy of an order issued in April 2021 in an unrelated action where BLB&G served as lead counsel for a different lead plaintiff and as class counsel for a certified class.  *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021).  This Order was previously submitted to the Court in connection with Lead Plaintiff's motion for class certification (ECF No. 93-4) and was discussed in the accompanying declaration (ECF No. 93, at ¶ 6).  Because the court in *Symantec* ordered BLB&G to bring the Order to the attention of any court in which BLB&G seeks appointment as class counsel and BLB&G seeks appointment as class counsel for the Settlement Class, BLB&G is again submitting the Order to the Court's attention.

17

under Rule 23(a)(2)'s commonality standard, there are numerous questions of law and fact common to the claims asserted and these questions predominate over any individual questions.

The elements of falsity, materiality, scienter, and loss causation are all subject to classwide proof and not required to be established at the class certification stage. *See Amgen*, 568 U.S. at 459 (materiality of misrepresentations and omissions "is a question common to all members of the class"); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (it is error to require securities plaintiff "to show loss causation as a condition of obtaining class certification"). Lead Plaintiff satisfies reliance through the presumption of reliance that the Supreme Court established under the *Basic* fraud-on-the-market theory. *See Basic Inc. v. Levinson,* 485 U.S. 224, 241 (1988); *see also* ECF No. 92 at 13-19 (discussing the fraud-on-the-market presumption of reliance).

### 2.     A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) also requires Lead Plaintiff to demonstrate that class resolution will be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Courts have long recognized that class actions are a desirable means for resolving claims based on securities laws," and find superiority is easily established. *In re Allergan PLC Sec. Litig.*, 2021 WL 4077942, at \*17 (S.D.N.Y. Sept. 8, 2021); *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (securities fraud cases are "particularly well-suited for class treatment"); *Evergreen*, 275 F.R.D. at 393 ("class actions are particularly appropriate for securities litigation because it may be the only practicable means of enforcing investor's rights."); *John Hancock Life Ins. Co. v. Goldman, Sachs & Co.*, 2004 WL 438790, at \*2 (D. Mass. Mar. 9, 2004) ("suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that Rule 23 of the Federal Rules of Civil Procedure has been liberally construed to effectuate that end").

18

Each of the factors courts consider in assessing superiority is satisfied here. First, the number of Settlement Class members is far too numerous, and the typical claim is too small, for each individual Settlement Class Member to have an interest in maintaining a separate action—a finding applied in another securities class action against Boston Scientific. *See Boston Sci.*, 604 F. Supp. 2d at 287-88; *see also Evergreen,* 275 F.R.D. at 393. Second, Lead Plaintiff is aware of no other action against Defendants relating to investors' purchases of Boston Scientific common stock during the Class Period. Third, the geographical dispersion of the Settlement Class Members makes it desirable to litigate Lead Plaintiff's claims in this forum, where Boston Scientific maintains its headquarters, and where much of the misconduct occurred. Finally, there are no management difficulties that would preclude this Action from being maintained as a class action.

In sum, the proposed Settlement Class meets all the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

## V.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator will mail by first-class mail and/or email the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, as well as post the Notice and the Claim Form on a website to be developed for the Settlement. The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of Allocation; and (iv) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice will also provide specifics on the date and time of the Settlement Hearing and set forth the procedures for opting out of the Settlement Class; objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and expenses; and submitting a

19

Claim Form.  In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *The Wall Street Journal* and transmitted over the *PR Newswire*.

The form and manner of providing notice to the Settlement Class satisfies the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).  The Notice and Summary Notice "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them.'"  *Hill*, 2015 WL 127728, at \*15; *see also In re TelexFree Sec. Litig.*, 475 F. Supp. 3d 15, 17 (D. Mass. 2020) (finding that notice given to settlement class "provided due and adequate notice of these proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice").  Accordingly, Lead Plaintiff respectfully submits that the proposed notice procedures are appropriate and should be approved.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiff respectfully proposes the schedule for Settlement-related events as set forth in Appendix A.  If the Court agrees with the proposed schedule, Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date 110 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled.

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court (i) preliminarily approve the proposed Settlement; (ii) approve the proposed form and manner of notice to putative Settlement Class Members; and (iii) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

20

Dated: December 15, 2023                    Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
**  & GROSSMANN LLP**

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano (admitted *pro hac vice*)
Michael D. Blatchley (admitted *pro hac vice*)
Lauren A. Ormsbee (admitted *pro hac vice*)
Aasiya F. Mirza Glover (admitted *pro hac vice*)
Emily A. Tu (admitted *pro hac vice*)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
michaelb@blbglaw.com
laureno@blbglaw.com
aasiya.glover@blbglaw.com
emily.tu@blbglaw.com

*Lead Counsel for Lead Plaintiff and the Class*

**DONNELLY, CONROY & GELHAAR, LLP**
T. Christopher Donnelly (BBO #129930)
Peter E. Gelhaar (BBO #18830)
Peter K. Levitt (BBO #565761)
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
Telephone: (617) 720-2880
Facsimile: (617) 720-3554
tcd@dcglaw.com
peg@dcglaw.com
pkl@dcglaw.com

*Liaison Counsel for Lead Plaintiff*

21

**Appendix A**

**Proposed Schedule of Settlement Events**

| Event | Proposed Timing | Example Date[7] |
|---|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 7(b)) | No later than 20 business days after entry of Preliminary Approval Order | January 24, 2024 |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7(d)) | No later than 10 business days after the Notice Date | February 7, 2024 |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and expenses (Preliminary Approval Order ¶ 28) | 35 calendar days before the date set for the Settlement Hearing | March 6, 2024 |
| Deadline for receipt of requests for exclusion or objections (Preliminary Approval Order ¶¶ 14, 18) | 21 calendar days before the date set for the Settlement Hearing | March 20, 2024 |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 28) | 7 calendar days before the Settlement Hearing | April 3, 2024 |
| Settlement Hearing (Preliminary Approval Order ¶ 5) | At the Court's earliest convenience at least 110 days after entry of the Preliminary Approval Order | April 10, 2024 |
| Postmark deadline for submitting Claim Forms (Preliminary Approval Order ¶ 11) | 120 calendar days after the Notice Date | May 23, 2024 |

---

[7] The example dates provided are based on the assumptions that the Court enters the Preliminary Approval Order on December 22, 2023, and schedules the Settlement Hearing for April 10, 2024.

22