**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re BOSTON SCIENTIFIC CORPORATION SECURITIES LITIGATION | Master File No. 1:20-cv-12225-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..........................................................................................................................4

I.      PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF
        ATTORNEYS' FEES FROM THE COMMON FUND.......................................................4

II.     THE REQUESTED FEE IS REASONABLE UNDER EITHER THE
        PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD ..............5

        A.      The Requested Fee Is Reasonable Under the Percentage Method..........................5

        B.      The Requested Attorneys' Fees Are Reasonable Under the Lodestar
                Method ..................................................................................................................7

III.    FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM
        THAT THE REQUESTED FEE IS FAIR AND REASONABLE...................................10

        A.      The Amount of the Recovery................................................................................10

        B.      The Skill and Experience of Counsel...................................................................12

        C.      The Complexity and Duration of the Litigation ...................................................12

        D.      The Fully Contingent Nature of the Representation.............................................13

        E.      The Amount of Time Devoted to the Litigation by Plaintiffs' Counsel ................15

        F.      Awards in Similar Cases......................................................................................16

        G.      Public Policy Considerations ...............................................................................16

        H.      Lead Plaintiff Has Approved the Requested Fee ..................................................17

        I.      The Reaction of the Settlement Class to Date .....................................................17

IV.     THE EXPENSES INCURRED ARE REASONABLE AND WERE
        NECESSARY TO ACHIEVE THE BENEFIT OBTAINED..........................................18

V.      LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS
        AND EXPENSES PURSUANT TO §78u-4(a)(4) OF THE PSLRA...............................19

CONCLUSION......................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahearn v. Credit Suisse First Boston LLC*,
No. 03-CV-10956 (JLT), slip op. (D. Mass. June 7, 2006) ......................................................20

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................................................12

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ...................................................................10

*Bacchi v. Mass. Mut. Life Ins. Co.*,
2017 WL 5177610 (D. Mass. Nov. 8, 2017) .........................................................................6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)...............................................................................................................16

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015)...........................................5

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980).................................................................................................................4

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
2021 WL 3080960 (D. Minn. July 21, 2022) .......................................................................14

*In re China Sunergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) .......................................................................11

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)...................................................................................................13

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd*, 607 F. App'x 73 (2d Cir.
2015) .......................................................................................................................................13

*Cohen v. Brown Univ.*,
2001 WL 1609383 (D.N.H. Dec. 5, 2001)..............................................................................8

*In re CVS Corp. Sec. Litig.*,
No. 01-11464 (JLT), slip op. (D. Mass. Sept. 7, 2005), ECF No. 195 .....................................6

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
989 F. Supp. 375 (D. Mass. 1997) ...........................................................................................5

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
No. 08-11064 (NMG), 2012 WL 6184269 (D. Mass. Dec. 10, 2012)................................6, 20

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018)....................................................................................6

*In re Fidelity/Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999)..................................................................................................18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).........................................................................17

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022).........................................................................6

*Fogarazzo v. Lehman Bros.*,
2011 WL 671745 (S.D.N.Y. Feb. 23, 2011)...........................................................................13

*Ford v, Takeda Pharms. U.S.A. Inc.*,
2023 WL 3679031 (D. Mass. Mar. 31, 2023).........................................................................9

*Gerneth v. Chiasma, Inc.*,
No. 1:16-cv-11082-DJC, slip op. (D. Mass. June 27, 2019), ECF No. 225 ..............................6

*Godinez v. Alere Inc.*,
No. 1:16-cv-10766-PBS, slip op. (D. Mass. June 6, 2019), ECF No. 283 ...........................6, 8

*In re Groupon, Inc. Sec. Litig.*,
2016 WL 3896839 (N.D. Ill. July 13, 2016)...........................................................................7

*Hatamian v. Advanced Micro Devices, Inc.*,
2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)...........................................................................6

*Hicks v. Morgan Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................................16

*Hill v. State St. Corp.*,
2015 WL 127728 (D. Mass. Jan. 8, 2015) ..................................................................... passim

*Hoff v. Popular Inc.*,
2011 WL 13209610 (D.P.R. Nov. 2, 2011)..............................................................................6

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009).....................................................................................10

*In re Intuniv Antitrust Litig.*,
2020 WL 8373393 (D. Mass. Dec. 9, 2020)............................................................................6

*re Kraft Heinz Sec. Litig.*,
  Case No. 1:19-cv-01339, slip op. (N.D. Ill. Sept. 19, 2023), ECF. No. 493 ...........................20

*In re Lernout & Hauspie Sec. Litig.*,
  138 F. Supp. 2d 39 (D. Mass. 2001) .....................................................................................17

*Levy v. Gutierrez*,
  Civil No. 14-cv-443-JL, slip op. (D.N.H. Aug. 27. 2020), ECF No. 266.................................8

*In re Lupron Mktg. & Sales Practices Litig.*,
  2005 WL 2006833 (D. Mass. Aug. 17, 2005) .............................................................5, 7, 10, 13

*Machado v. Endurance Int'l Grp. Holdings, Inc.*,
  Case No. 1:15-cv-11775-GAO, slip op. (D. Mass. Sept. 13, 2019), ECF No.
  98...............................................................................................................................................6

*In re Marsh & McLennan Cos. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .......................................................................20

*Medoff v. CVS Caremark Corp.*,
  2016 WL 632238 (D.R.I. Feb. 17, 2016)......................................................................... passim

*In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*,
  2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)............................................................................11

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)..................................................................................................................8

*In re Neurontin Mktg. & Sales Practices Litig.*,
  58 F. Supp. 3d 167 (D. Mass. 2014) .......................................................................................5

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
  2009 WL 2408560 (D. Mass. Aug. 3, 2009) ........................................................................7, 9

*In re Oracle Corp. Sec. Litig.*,
  Case No. 5:18-cv-04844-BLF, slip op. (N.D. Cal. Jan. 13, 2023), ECF. No.
  147...........................................................................................................................................20

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. Sept. 28, 2005)...........................................................................6, 9, 10

*Roberts v. TJX Companies, Inc.*,
  2016 WL 8677312 (D. Mass. Sept. 30, 2016) .....................................................................9, 14

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).......................................................................12

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196486 (S.D.N.Y. July 21, 2020) ..........................................................................14

*In re Silver Wheaton Corp. Sec. Litig.*,
    2020 WL 4581642 (C.D. Cal. Aug. 6, 2020)..............................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................................16

*In re Tezos Sec. Litig.*,
    2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ........................................................................6

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995)...............................................................................................4, 5, 7

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007)....................................................................................4, 7, 9

*Vataj v. Johnson*,
    2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .........................................................................11

*In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., and Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) ..........................................................................6

*In re WorldCom Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)......................................................................................7

**STATUTES**

Private Securities Litigation Reform Act ("PSLRA"),
    15 U.S.C. §78u-4 ...........................................................................................................1, 19, 20

**OTHER AUTHORITIES**

CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2023 REVIEW AND ANALYSIS (2024) ....................................................................................11

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ...............................17

S. Starykh & S. Boettrich, *Recent Trends in Securities Class Action Litigation*, NERA Economic Consulting (Jan. 29, 2018)..........................................................................7

Court-appointed Lead Counsel Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), having achieved a Settlement of $38.5 million in cash for the benefit of the Settlement Class, respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees in the amount of 20% of the Settlement Fund on behalf of all Plaintiffs' Counsel.[1]  Lead Counsel also seeks payment of expenses that were reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the Action, and an award pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for Lead Plaintiff's costs incurred in representing the Settlement Class.

## PRELIMINARY STATEMENT

The proposed $38.5 million Settlement represents an excellent result for the Settlement Class.  Lead Plaintiff faced major challenges to proving both liability and damages from the outset of the case, which posed serious risks of no recovery, or of a much smaller recovery, and there was no assurance that Lead Plaintiff and the class would recover anything.  That reality was unscored by the fact that, while the parties were briefing Defendants' motion to dismiss, the SEC dropped its investigation into Defendants' alleged misconduct and declined to bring an enforcement action.  *See* ¶¶ 28, 96.  The Settlement was achieved without the benefit of any government enforcement action, and only through the skill, tenacity, and hard work of Plaintiffs' Counsel, who vigorously litigated this case for three years on an entirely contingent fee basis against top-tier defense counsel.

---

[1] "Plaintiffs' Counsel" consist of Lead Counsel and Liaison Counsel, Donnelly, Conroy & Gelhaar, LLP.  All capitalized terms not otherwise defined have the meanings set forth in the Stipulation and Agreement of Settlement, dated December 14, 2023 (ECF No. 152-1) (the "Stipulation") or in the Declaration of Salvatore J. Graziano in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for Attorneys' Fees and Expenses (the "Graziano Declaration" or "Graziano Decl."), filed herewith.  Citations to "¶ __" in this memorandum refer to paragraphs in the Graziano Declaration and citations to "Ex. __" refer to exhibits to the Graziano Declaration.

As discussed in the accompanying Graziano Declaration and Settlement Memorandum, the proposed Settlement is an excellent result for the Settlement Class in light of the risks of continued litigation and the range of possible outcomes at trial.  Lead Plaintiff faced substantial risks in proving that Defendants' alleged misstatements about Boston Scientific's Lotus Edge product were false when made, were made with scienter, and caused damages to the Settlement Class.  Defendants strongly contended that the Company's decision to discontinue its Lotus Edge medical device was not made until after the alleged misstatements, that the statements at issue were not otherwise false or misleading, and that they could not have known they were false.

Notwithstanding these significant risks, as a result of Plaintiff's Counsel's efforts, Lead Plaintiff was able to achieve a proposed Settlement that represents a substantial portion of the maximum possible damages that could be proved at trial and will provide a meaningful recovery for injured investors.  Specifically, the $38.5 million Settlement represents approximately 18.5% to 22% of the maximum damages that could be reasonably proven at trial, which is many multiples above the median percentage recovery seen in comparable cases.

To achieve this significant Settlement, Plaintiffs' Counsel devoted a significant amount of time, effort and resources to pursuing this litigation over the last three years, as detailed in the accompanying Graziano Declaration.[2]  Among other things, Plaintiffs' Counsel: (i) conducted an extensive investigation into the claims asserted, which included reviewing and analyzing a large volume of publicly available documents and interviewing over 140 former employees of Boston Scientific; (ii) prepared a detailed consolidated complaint (the "Complaint") based on that

---

[2] The Graziano Declaration is an integral part of this submission and, for the sake of brevity, Lead Counsel respectfully refers the Court to it for a detailed description of, *inter alia*, the history of the Action (¶¶ 14-85); the nature of the claims asserted (¶¶ 12-13, 22); the negotiations leading to the Settlement (¶¶ 78-84); the risks and uncertainties of continued litigation (¶¶ 86-120); and a description of the work that Plaintiffs' Counsel performed for the benefit of the Settlement Class (¶¶ 3, 14-85, 142).

2

investigation; (iii) opposed Defendants' motion to dismiss through detailed briefing and oral argument; (iv) conducted substantial fact discovery, which included serving multiple sets of document requests on Defendants and document subpoenas on third parties, engaging in numerous meet-and-confers, obtaining over 224,000 pages of documents from Defendants and third parties, reviewing and analyzing the documents produced, and preparing witness kits in connection with expected depositions; (v) drafted and filed Lead Plaintiff's motion for class certification, worked with an expert to prepare an accompanying report on market efficiency and class-wide damages in support of the motion, defended the deposition of Lead Plaintiff's representative, drafted and filed a reply brief in further support of class certification, and defended the motion at oral argument; (vi) consulted extensively with Lead Plaintiff's experts regarding the medical device industry, medical device regulation, damages, market efficiency, and loss causation issues; and (vii) engaged in extensive settlement negotiations and mediation efforts, which included the preparation of mediation briefs and two full-day mediation sessions with a highly experienced mediator. *See* ¶¶ 17-84.

Lead Counsel undertook these significant efforts on a fully contingent basis. As compensation for their efforts and the high-quality results they achieved for the Settlement Class, Lead Counsel now request a fee award equal to 20% of the Settlement Fund, and payment of $391,399.98 in litigation expenses that were reasonably incurred by Plaintiffs' Counsel in the course of the litigation. As discussed below, the requested 20% fee is well within the range of fees awarded in class actions that have settled for comparable amounts in this Circuit, whether considered as a percentage of the Settlement or in relation to Plaintiffs' Counsel's lodestar. Indeed, as noted above, the reasonableness of the requested fee is underscored because it represents a ***discount*** from Plaintiffs' Counsel's lodestar, resulting in a "negative" lodestar multiplier of 0.9. This is well below the typical range of multipliers in such actions, which

generally award a positive multiplier of counsel's lodestar to account for the significant contingency fee risks in these cases.

Lead Plaintiff Union Asset Management Holding AG ("Union"), a sophisticated institutional investor that has been actively involved in overseeing the Action on behalf of the class for the past three years, fully endorses the settlement and requested fee. *See* Declaration of Jochen Riechwald, Assistant General Counsel of Union Asset Management Holding AG (Ex. 1), at ¶¶ 2-9. An experienced institutional investor that has overseen the prosecution of numerous other securities class actions, Union believes the fee request as fair and reasonable in light of the result obtained, the risks of the litigation, and the work performed by counsel. *Id.* ¶ 9. In addition, while the deadline for Settlement Class Members to object to the requested attorneys' fees and expenses has not yet passed, to date, no objections to the requested fee and expenses have been received. *See* Graziano Decl. ¶ 126.

For all the reasons set forth below, Lead Counsel respectfully requests that the Court approve the application for an award of attorneys' fees and payment of expenses.

<u>**ARGUMENT**</u>

**I.    PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND**

The Supreme Court and First Circuit have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995). An award of reasonable attorneys' fees from a common fund "encourages capable plaintiffs' attorneys to aggressively litigate complex, risky cases like this one" and spread the costs of the litigation "proportionately among those benefitted by the suit." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007).

## II.    THE REQUESTED FEE IS REASONABLE UNDER EITHER THE PERCENTAGE-OF-THE-FUND METHOD OR THE LODESTAR METHOD

Fees awarded to counsel from a common fund can be determined under either the percentage-of-the-fund method or the lodestar method.  *See Thirteen Appeals*, 56 F.3d at 307. Under either the percentage or the lodestar method, the requested fee is fair and reasonable.

### A.    The Requested Fee Is Reasonable Under the Percentage Method

The First Circuit has approved of the percentage method in common fund cases, noting that it is the prevailing method and "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." *Thirteen Appeals*, 56 F.3d at 308.  As one court in this District has also noted, the percentage method "appropriately aligns the interests of the class with the interests of the class counsel[,] . . . is 'less burdensome to administer than the lodestar method,' . . . 'enhances efficiency' and does not create a 'disincentive for the early settlement of cases.'"  *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997) (citations omitted).

The requested fee of 20% is well within the range of percentage fees awarded in this Circuit in comparable class actions.  *See In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 171-72 (D. Mass. 2014) (noting that "nearly two-thirds of class action fee awards based on the percentage method were between 25% and 35% of the common fund."); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 349 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("Within the First Circuit, courts generally award fees in the range of 20-30%, with 25% as 'the benchmark.'"); *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *5 (D. Mass. Aug. 17, 2005) ("Courts in the First Circuit have recognized that fee awards in common fund cases typically range from 20 to 30 percent.").

A review of attorneys' fees awarded in securities class actions with comparably sized settlements in this Circuit strongly supports the reasonableness of the 20% fee request.  *See, e.g.*,

*Machado v. Endurance Int'l Grp. Holdings, Inc.*, Case No. 1:15-cv-11775-GAO, slip op. at 2 (D. Mass. Sept. 13, 2019), ECF No. 98 (Ex. 7A) (awarding 33.3% of $18.65 million settlement, 1.77 multiplier); *Gerneth v. Chiasma, Inc.*, No. 1:16-cv-11082-DJC, slip op. at 1 (D. Mass. June 27, 2019), ECF No. 225 (Ex. 7B) (awarding 30% of $18.75 million settlement, 1.5 multiplier); *Godinez v. Alere Inc.*, No. 1:16-cv-10766-PBS, slip op. at 1 (D. Mass. June 6, 2019), ECF No. 283 (Ex. 7C) (awarding 28% of $20 million settlement); *Bacchi v. Mass. Mut. Life Ins. Co.,* 2017 WL 5177610, at *5 (D. Mass. Nov. 8, 2017) (awarding 25% of $37.5 million settlement, 1.3 multiplier); *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *9 (D.R.I. Feb. 17, 2016) (awarding 30% of $48 million settlement); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 2012 WL 6184269, at *1 (D. Mass. Dec. 10, 2012) (awarding 24% of $25 million settlement, 1.3 multiplier); *Hoff v. Popular Inc.*, 2011 WL 13209610, at *1 (D.P.R. Nov. 2, 2011) (awarding 27% of $37.5 million settlement; 3.13 multiplier); *In re CVS Corp. Sec. Litig.*, No. 01-11464 (JLT), slip op. at 7 (D. Mass. Sept. 7, 2005), ECF No. 195 (Ex. 7D) (awarding 25% of $110 million settlement; 3.27 multiplier); *see also In re Intuniv Antitrust Litig.,* 2020 WL 8373393, at *4 (D. Mass. Dec. 9, 2020) (Burroughs, J.) (awarding 33.3% of a $19.9 million settlement, net of expenses, in an antitrust class action); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 80-82 (D. Mass. Sept. 28, 2005) (awarding 33.3% of $75 million settlement, 2.02 multiplier, in antitrust class action).[3]

---

[3] The requested 20% fee is also well within the range of percentage fee awards that have been granted in comparable securities class actions in other Circuits. *See, e.g.*, *Fleming v. Impax Lab'ys Inc*., 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.3% of $25 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Volkswagen "Clean Diesel" Mktg, Sales Pracs., and Prods. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 415-18 (S.D.N.Y. 2018) (awarding 25% of $35 million settlement); *Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *1-2

Independent research furthers confirm that 25% is the median percentage fee awarded by courts nationally in federal securities actions that have settled for comparable amounts, and thus the 20% requested here is significant below that standard. *See* Edward Flores & Svetlana Starykh, RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2023 FULL YEAR REVIEW, at 29 (NERA Economic Consulting, Jan. 23, 2024) (Ex. 7E) (finding that, for the period 2014 to 2023, the median percentage fee awarded in securities class actions that settled for between $25 and $100 million was 25%). The same report found that the median fee was also 25% for cases recovering between $100 million and $500 million and was 27.5% for cases settling for between $10 and $25 million. *Id.* Accordingly, the 20% request here is substantially below the norm.

**B.      The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method**

If fees are awarded on a percentage basis, the lodestar approach may be used as a check on the appropriateness of the percentage fee, but it is not required. *See Thirteen Appeals*, 56 F.3d at 307; *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *1 (D. Mass. Aug. 3, 2009); *Lupron*, 2005 WL 2006833, at *3.

When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Tyco*, 535 F. Supp. 2d at 270 (quoting *Thirteen Appeals*, 56 F.3d at 307); *see also In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (when the lodestar is used as a cross-check on the percentage method of determining reasonable attorneys' fees, "the hours documented by counsel need not be exhaustively scrutinized by the district court"). In this case, the lodestar

_____

(N.D. Cal. Mar. 2, 2018) (awarding 25% of $29.5 million settlement); *In re Groupon, Inc. Sec. Litig.*, 2016 WL 3896839, at *4 (N.D. Ill. July 13, 2016) (awarding 30% of $45 million settlement).

method—whether used directly or as a "cross-check" on the percentage method—strongly confirms the reasonableness of the requested fee.

Here, Plaintiffs' Counsel spent a total of 17,064.1 hours of attorney and para-professional support time prosecuting the Action from its inception through December 14, 2023 (the date the Stipulation was signed).  ¶ 141.  Based on the Plaintiffs' Counsel's 2023 rates, their collective lodestar for this period is $8,550,922.50.[4]  *Id*.  The requested 20% fee, which amounts to $7,700,000 (before interest) is less than Plaintiffs' Counsel's lodestar, representing a "negative" multiplier of 0.9.

Plaintiffs' Counsel's lodestar is based on their standard hourly rates, which range from $750 to $1,250 for partners and senior counsel, from $475 to $650 for associates, and from $400 to $450 for staff attorneys.  Notably, Lead Counsel's rates have been approved in other securities class actions and shareholder litigation, and are consistent with rates charged by other law firms practicing in the area of securities class action litigation, including the defense firms that Plaintiffs' Counsel routinely litigate against.  *See, e.g., Godinez v. Alere, Inc.*, No. 1:16-cv-10766-PBS, slip op. at 1 (D. Mass. June 6, 2019), ECF No. 283 (Ex. 7C) (awarding 28% of $20 million settlement, based on application using BLB&G 2019 rates in lodestar); *Levy v. Gutierrez*, Civil No. 14-cv-443-JL, slip op. at 28-29 (D.N.H. Aug. 27. 2020), ECF No. 266 (Ex. 7F) (approving fee using BLB&G 2018 rates in lodestar cross-check); *see also* Ex. 5A, at ¶ 5 (listing cases approving fees based on BLB&G's 2023 rates).

The reasonableness of Plaintiffs' Counsel's rates is further underscored by the significantly higher rates charged by Defendants' Counsel in this case.  According to a recent

---

[4] The Supreme Court and courts in this Circuit approve of using current hourly rates to calculate the base lodestar figure as it helps compensates counsel for the delay in receiving payment and lost interest.  *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Cohen v. Brown Univ.*, 2001 WL 1609383, at *1 (D.N.H. Dec. 5, 2001).

filing by Skadden, counsel for Defendants here, its partners' hourly rates range from $1,395 to $1,976; counsel and of counsel rates range from $1,174 to $1,553; rates for associates admitted to the bar range from $774 to $1,251; and paraprofessional rates range from $244 to $486. *See In re Endo Int'l, plc*, Case No. 22-22549 (JLG), Fourth Interim Fee Application of Skadden, Arps, Slate, Meagher & Flom LLP (Bankr. S.D.N.Y. Feb. 14, 2024), ECF No. 3672 (Ex. 7G) (reporting blended hourly rate for all timekeepers of $1,247.90). These rates are substantially higher—at all levels—than the rates used by Plaintiffs' Counsel to calculate their lodestar.

The requested 0.9 multiplier on Plaintiffs' Counsel's lodestar is at the low end of the range of multipliers commonly awarded in securities and other complex class actions. Indeed, in class actions with significant contingency risks, fees representing a ***positive*** multiplier on the base lodestar are typically awarded to reflect those risks and meritorious work. *See, e.g.*, *Ford v. Takeda Pharms. U.S.A. Inc.*, 2023 WL 3679031, at *2 (D. Mass. Mar. 31, 2023) ("[t]o compensate for the risk of non-payment and to reflect the scale of the results achieved by prevailing counsel, a multiplier of the lodestar rate may be used" and applying a multiplier of 2.41, which the court noted was "well within the range of multipliers approved by district courts in the First Circuit"); *New England Carpenters*, 2009 WL 2408560, at *2 (awarding fee representing 8.3 multiplier); *Tyco*, 535 F. Supp. 2d at 271 (2.7 multiplier); *Relafen*, 231 F.R.D. at 82 (2.02 multiplier); *Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) (1.96 multiplier). In addition, Lead Counsel will continue to expend additional hours following the approval of the Settlement, overseeing the Claims Administrator's processing of claims received and the distribution to eligible claimants, but will not seek any further fees— which will only further reduce Plaintiffs' Counsel's effective multiplier.

Numerous courts have recognized that when counsel is seeking a fee below their lodestar, this supports the reasonableness of the fee request. *See, e.g.*, *CVS Caremark Corp.*, 2016 WL

632238, at \*9 (approving a 30% fee as reasonable where it represented a "a discount from the lodestar value"); *Hill v. State St. Corp.*, 2015 WL 127728, at \*18 (D. Mass. Jan. 8, 2015) (the "fact that counsel are seeking fees below the amount of class counsel's lodestar . . . support[s] the reasonableness of the requested fee"); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at \*9 (C.D. Cal. Oct. 25, 2016) ("[C]ourts have recognized that a percentage fee that falls below counsel's lodestar strongly supports the reasonableness of the award."); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (finding that there was "no real danger of overcompensation" given that the requested fee represented a discount to lodestar).

In sum, whether calculated as a percentage of the recovery or under the lodestar method, the requested fee is well with—indeed, on the on the lower end of—the range of fees awarded by courts in securities class actions; and is fair and reasonable.

## III.    FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

Although the First Circuit has not set forth a definitive list of factors to be considered in evaluating a fee request under the percentage-of-the-fund method, District Courts within this Circuit have typically assessed the reasonableness of proposed fees by considering the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*See State St.*, 2015 WL 127728, at \*17; *Lupron*, 2005 WL 2006833, at \*3; *Relafen*, 231 F.R.D. at 79. Consideration of these factors further confirms that the fee requested here is reasonable.

### A.    The Amount of the Recovery

The $38.5 million Settlement is a significant recovery for the Settlement Class, which is more than 2.7 times the size of the median securities class-action settlement in the First Circuit

from 2014 to 2023 ($14.1 million).  *See* CORNERSTONE RESEARCH, SECURITIES CLASS ACTION SETTLEMENTS: 2023 REVIEW AND ANALYSIS (2024) (Ex. 3), at 20.  Moreover, the $38.5 million Settlement is also a very favorable result when it is considered in relation to the maximum amount of damages that could be reasonably established at trial.  Assuming Lead Plaintiff prevailed on all liability issues, its damages expert had determined that that ***maximum*** reasonably recoverable damages at trial would be approximately $176 million to $207 million (depending whether class members' gains on their sales of shares purchased before the Class Period are offset against their losses on shares purchased during the Class Period).  ¶ 118.

Accordingly, the Settlement here represents roughly 18.5% to 22% of maximum recoverable damages—a level of recovery that is many multiples above the typical percentage recoveries seen in comparable cases*.  See, e.g., CVS Caremark*, 2016 WL 632238, at *6 (approving settlement recovering 5.33% of maximum damages and noting that it was "well above the median percentage of settlement recoveries in comparable securities class action cases"); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("average settlement amounts in securities fraud class actions where investors sustained losses over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses"); *In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (settlement representing 6.25% of estimated maximum damages was at the "higher end of the range of reasonableness of recovery in class action securities litigations").

In sum—and particularly in light of the substantial litigation risks discussed below—the

11

Settlement achieved by Lead Counsel here represents an excellent recovery for the Settlement Class, and strongly supports the reasonableness of the requested 20% fee.

### B. The Skill and Experience of Counsel

This was a complex case involving a number of distinct factual and legal issues. Given the many contested issues, it took highly skilled counsel to represent the class and achieve such a substantial recovery. Lead Counsel respectfully submits that its firm resume (Ex. 5A-3) confirms that BLB&G is among the nation's leading securities class action firms, and Liaison Counsel are highly credentialed and experienced litigators (Ex. 5B-3). Plaintiffs' Counsel's skill, experience, and commitment to the litigation were critical to obtaining the favorable Settlement.

Courts also recognize that the quality of the opposing counsel is also a factor in assessing the quality of plaintiffs' counsel's performance. Here, Defendants were represented by Skadden, Arps, Slate, Meagher & Flom LLP, a top-tier defense firm, which vigorously defended the Action from the outset. Despite this formidable opposition, Lead Counsel's thorough investigation, successful opposition to Defendants' motion to dismiss, and significant discovery efforts positioned Lead Plaintiff to achieve a favorable recovery for the Settlement Class. Thus, this factor also strongly supports the requested fee. *See, e.g.*, *In re Am. Apparel, Inc. S'holder Litig.,* 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("the court should . . . consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) (plaintiffs' counsel's success in obtaining favorable settlement in the case of "formidable legal opposition" confirmed the superior quality of their representation).

### C. The Complexity and Duration of the Litigation

There can be no dispute that this litigation was complex and vigorously litigated by both Lead Plaintiff and Defendants. Courts have long recognized that securities class actions are

generally complex and difficult.  *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*16 (S.D.N.Y. May 9, 2014) ("the complex and multifaceted subject matter involved in a securities class action such as this supports the fee request"), *aff'd*, 607 F. App'x 73 (2d Cir. 2015); *Fogarazzo v. Lehman Bros.*, 2011 WL 671745, at \*3 (S.D.N.Y. Feb. 23, 2011) ("in general, securities actions are highly complex").  This case was certainly no exception.  Thus, this factor also supports the fee requested.

### D.      The Fully Contingent Nature of the Representation

The fully contingent nature of Plaintiff's Counsel's fees and the litigation's substantial risks are also important factors supporting the requested fee.  "Many cases recognize that the risk [of non-payment] assumed by an attorney is perhaps the foremost factor in determining an appropriate fee award."  *Lupron*, 2005 WL 2006833, at \*4.  Indeed, "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

As noted above and in the Graziano Declaration (¶¶ 86-120), from the outset it was apparent that Lead Counsel faced major challenges to establishing liability and damages.  Indeed, many of these risks were realized when the Court dismissed the majority of the alleged misstatements and one alleged corrective disclosure in ruling on the motion to dismiss.  The remaining statements in the Action were two statements by Defendant Mahoney in September and October 2020 that Lotus Edge remained an "important growth driver" for the Company and that the Company was pursuing a "two-valve strategy " (i.e., continuing the Lotus Edge product simultaneously with another heart valve).  ¶ 98.    Defendants vigorously denied that the statements were false or misleading statements when made because (among other things) Boston Scientific had not decided to recall and discontinue the Lotus Edge until after these statements

13

were made, and Lead Plaintiff would face real challenges in proving their falsity and materiality at trial.  ¶¶ 98-99.  Lead Plaintiff also faced steep challenges in proving scienter for the remaining alleged misstatements and in establishing loss causation—including because, as Defendants argued throughout this case, the ultimate decision to terminate Lotus was not made until after the last alleged misstatement.  ¶¶ 102-105.

The significant risks in the litigation were highlighted by the fact that the SEC had initially brought an investigation into the same claims, issued two sets of document requests from Boston Scientific, reviewed those materials, and then subsequently dropped the matter without taking any enforcement action.  ¶ 28.  While Lead Plaintiff would argue the SEC's prosecution decision was irrelevant and inadmissible at trial, Defendants would likely continue to argue—as they did at the motion to dismiss—that the SEC's non-prosecution supported their defense.  ¶ 96.  *See, e.g., In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196486, at *7 (S.D.N.Y. July 21, 2020) (noting lack of SEC investigation); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2021 WL 3080960, at *9 (D. Minn. July 21, 2022) (noting lack of SEC or DOJ investigation).

Despite these significant risks, Lead Counsel devoted enormous resources to the vigorous and effective prosecution of the case on a wholly contingent basis, knowing that the litigation could last for years and would require them to advance significant litigation costs—all with no assurance of any compensation.  Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee.  *See CVS Caremark*, 2016 WL 632238, at *9 ("Where, as here, lead counsel undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel."); *TJX*, 2016 WL 8677312, at *13 (fact that "Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case" strongly supported the fee

14

award).    Indeed, courts typically award a substantial multiplier on counsel's lodestar to compensate them for facing this contingency risk, but here the requested 20% fee is *less* than counsel's lodestar.  In sum, the contingent risk factor also strongly supports the requested fee.

### E.    The Amount of Time Devoted to the Litigation by Plaintiffs' Counsel

The extensive time and effort expended by Plaintiffs' Counsel on this case also supports the requested fee.  *See State St.*, 2015 WL 127728, at \*19.  The Graziano Declaration details how Plaintiff's Counsel, among other things:

- conducted an extensive factual investigation into the allegedly fraudulent misrepresentations made by Defendants, including (i) a thorough review of publicly available information such as SEC filings, press releases, analyst reports, and news articles, (ii) identifying, locating and interviewing more than 140 former Boston Scientific employees with possible knowledge as to the claims asserted; and (iii) consulting with experts to assist in drafting the pleadings (¶¶ 17-21);

- drafted the highly detailed, 135-page consolidated Complaint based on this investigation (¶ 22);

- researched, drafted briefing, and argued before the Court in opposition to Defendants' motion to dismiss (¶¶ 23-28);

- engaged in substantial fact discovery, which included: drafting and propounding multiple sets of document requests and interrogatories; conducting numerous meet-and-confers and protracted negotiations over the scope of discovery and use of search terms to identify responsive documents; and preparing four document subpoenas on third parties (¶¶ 32-64);

- obtained over 224,000 pages of documents from Defendants and third parties, reviewed and analyzed that production, and began preparing for multiple depositions (¶¶ 48-56, 61-64);

- prepared and filed a motion for class certification, together with an accompanying expert report from Chad Coffman, Lead Plaintiff's expert on damages and market efficiency issues; defended the deposition of Lead Plaintiff's representative; prepared and filed a reply brief in further support of class certification; and argued the class certification motion before the Court (¶¶ 70-76);

- worked extensively with experts in the areas of the cardiac medical device industry, medical device regulatory agencies, and financial economics (including damages, loss causation, and market efficiency) (¶¶ 19-21, 65-69); and

- engaged in extensive arm's-length settlement negotiations and mediation efforts, which involved the preparation of opening and supplemental mediation briefs and two full-day mediation sessions with James E. McGuire (¶¶ 78-84).

    In total, Plaintiffs' Counsel expended more than 17,000 hours, with a total lodestar value

15

of over $8.5 million, on the investigation, litigation, and resolution of this action through December 14, 2023. ¶ 141. This undeniably significant effort, which culminated in the excellent result embodied in the Settlement, further confirms that the requested fee is fair and reasonable.

### F.    Awards in Similar Cases

As discussed above in Part II, a 20% fee is well within (if not below) the range of fee awards in class actions in this Circuit and across the country with comparable recoveries, and equates to a "negative" lodestar multiplier of 0.9 that is *below* the norm for such cases. *See* Part II, *supra*. Thus, this factor strongly supports the reasonableness of the requested fee.

### G.    Public Policy Considerations

Public policy also supports rewarding firms that bring successful securities class actions. For example, the Supreme Court has repeatedly stated that such actions are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (such actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"). Compensating plaintiffs' counsel for the risks they take in bringing such actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

Accordingly, public policy also favors granting the requested fee here. *See CVS Caremark*, 2016 WL 632238, at *9 ("public policy supports rewarding counsel for prosecuting securities class actions, especially where counsel's dogged efforts [were] undertaken on a wholly contingent basis); *State St.*, 2015 WL 127728, at *19 ("public policy favors granting reasonable attorneys' fees . . . that will adequately compensate [counsel] for their efforts and the risks they

undertook"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (to carry out the "important public policy" of enforcing the securities laws, "courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook").

## H.    Lead Plaintiff Has Approved the Requested Fee

Lead Plaintiff Union, an experienced, sophisticated institutional investor that has successfully prosecuted numerous securities class actions, was actively involved in supervising this Action and has approved the fee request as fair and reasonable based on the results obtained despite significant litigation risk. *See* Riechwald Decl. ¶ 9. Lead Plaintiff's approval of the fee request further confirms the fairness and reasonableness of the requested fee. The PSLRA sought to encourage institutional investors, as Union is here, to become active as lead plaintiffs to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at *32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731. Congress believed that these institutions, which have a substantial financial stake in the action, would be in a strong position to monitor the ongoing prosecution of the litigation and to assess the reasonableness of counsel's fee request. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001).

Accordingly, Lead Plaintiff's approval further supports the requested fee. *See CVS Caremark*, 2016 WL 632238, at *9 (lead plaintiffs' approval supported finding that fee request was reasonable); *State St.*, 2015 WL 127728, at *19 (same).

## I.    The Reaction of the Settlement Class to Date

The reaction of the Settlement Class to date also supports the fee request. As of March 15, 2024, the Claims Administrator, JND Legal Administration ("JND"), has disseminated the

17

Notice to 126,685 potential Settlement Class Members and nominees informing them of Lead Counsel's intention to apply to the Court for an award of attorneys' fees not to exceed 20% of the Settlement Fund and payment of Litigation Expenses up to $700,000.  *See* Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion Received to Date (Ex. 4), at ¶ 9, and Ex. A at ¶¶ 5, 57.  In addition, on February 6, 2024, JND caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *PR Newswire*.  *See id.* ¶ 10.  Although the time to object does not expire until April 2, 2024, to date no objections to the request for attorneys' fees and expenses have been received.  Graziano Decl. ¶¶ 151, 162.  Lead Counsel will address any objections that may be received in their reply papers to be filed with the Court on April 16, 2024.

**IV.    THE EXPENSES INCURRED ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED**

Lead Counsel's fee application includes a request for payment of $391,399.98 in litigation expenses incurred by Plaintiffs' Counsel that were reasonably incurred and necessary to the prosecution of the Action.  *See* ¶ 153.  These expenses are properly recoverable.  *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund . . . expenses, reasonable in amount, that were necessary to bring the action to a climax"); *State St.*, 2015 WL 127728, at *20 ("Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation.").

The types of expenses for which Lead Counsel seeks payment are routinely charged to both classes in contingent litigation as well as to clients billed by the hour.  These expenses include, among others, costs and fees for experts, on-line legal and factual research, filing fees,

18

court-reporting services, costs related to the production and storage of electronic discovery, travel costs, working meals, and mediation fees. ¶¶ 155-160. Moreover, from the outset, Lead Counsel knew that it might not recover any of these expenses or, at the very least, would not recover anything until the Action was successfully resolved. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize these expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action. ¶ 154.

The Notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of litigation expenses for all Plaintiffs' Counsel in an amount not to exceed $700,000. The amount of expenses requested, $465,649.98 (including $391,399.98 in Litigation Expenses incurred by Plaintiffs' Counsel and $74,250 sought by Lead Plaintiff), is below the amount listed in the Notice and, to date, there has also been no objection. ¶ 162.

## V.    LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS AND EXPENSES PURSUANT TO §78u-4(a)(4) OF THE PSLRA

The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4).

As detailed in the declaration submitted from Union's assistant general counsel, Lead Plaintiff Union seeks a PSLRA award in the amount of $74,250 in reimbursement for the value of the time that Union's employees dedicated to the Action. Here, Lead Plaintiff took a very active role in the litigation and has been fully committed to pursuing the class's claims. Among other things, Union's employees (i) participated in numerous discussions with Lead Counsel about the prosecution of the case and the strengths of the claims; (ii) reviewed significant pleadings and briefs; (iii) participated in discovery, including time-consuming efforts to locate and produce documents responsive to Defendants' discovery requests; (iv) traveled, prepared for, and sat for a deposition; and (v) were closely involved in mediation efforts and approving

19

settlement strategies. *See* Riechwald Decl. ¶ 7. The time spent by Union's employees on these activities was time that these employees could not engage in their normal duties and, thus, represented a cost to Union. *Id*. ¶ 14. Efforts such as these are the very types of activities that courts routinely find to support PSLRA awards to class representatives. *See, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at \*21 (S.D.N.Y. Dec. 23, 2009) (awarding over $200,000 to lead plaintiffs to compensate them for employees' time, as their efforts reflected "precisely the types of activities" that merited PSLRA awards).

Union thus respectfully requests that the Court award $74,250 to Lead Plaintiff for its expenses incurred in representing the Settlement Class. *See, e.g. State St.*, 2015 WL 127728, at \*21 (awarding $40,436 in PSLRA award to lead plaintiffs); *Evergreen*, 2012 WL 6184269, at \*2 (reimbursing institutional lead plaintiffs a total of $54,626 for time their employees spent on the case); *Ahearn v. Credit Suisse First Boston LLC*, No. 03-CV-10956 (JLT), slip op. at 5-6 (D. Mass. June 7, 2006), ECF No. 82 (Ex. 7H) (awarding total of $35,000 to two lead plaintiffs); *see also In re Kraft Heinz Sec. Litig.*, Case No. 1:19-cv-01339, slip op. at 3 (N.D. Ill. Sept. 19, 2023), ECF. No. 493 (Ex. 7I) (awarding PLSRA award of $73,950 to Lead Plaintiff Union); *In re Oracle Corp. Sec. Litig.*, Case No. 5:18-cv-04844-BLF, slip op. at 3 (N.D. Cal. Jan. 13, 2023), ECF. No. 147 (Ex. 7J) (awarding PLSRA award of $64,750 to Lead Plaintiff Union).

## CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court award (i) attorneys' fees to Plaintiffs' Counsel of 20% of the Settlement Fund, or $7,700,000, plus interest accrued at the same rate as earned by the Settlement Fund; (ii) payment of $391,399.98 in Plaintiffs' Counsel's litigation expenses; and (iii) $74,250 to Lead Plaintiff Union pursuant to 15 U.S.C. § 78u-4(a)(4).

20

Dated: March 19, 2024                                    Respectfully submitted,

                                                         **BERNSTEIN LITOWITZ BERGER**
                                                           **& GROSSMANN LLP**

                                                         */s/ Salvatore J. Graziano*
                                                         Salvatore J. Graziano (admitted *pro hac vice*)
                                                         Michael D. Blatchley (admitted *pro hac vice*)
                                                         Lauren A. Ormsbee (admitted *pro hac vice*)
                                                         Aasiya F. Mirza Glover (admitted *pro hac vice*)
                                                         Emily A. Tu (admitted *pro hac vice*)
                                                         1251 Avenue of the Americas, 44th Floor
                                                         New York, NY 10020
                                                         Telephone: (212) 554-1400
                                                         Facsimile: (212) 554-1444
                                                         salvatore@blbglaw.com
                                                         michaelb@blbglaw.com
                                                         lauren@blbglaw.com
                                                         aasiya.glover@blbglaw.com
                                                         emily.tu@blbglaw.com

                                                         *Lead Counsel for Lead Plaintiff*
                                                         *and the Settlement Class*


                                                         **DONNELLY, CONROY & GELHAAR, LLP**
                                                         T. Christopher Donnelly (BBO #129930)
                                                         Peter E. Gelhaar (BBO #18830)
                                                         Peter K. Levitt (BBO #565761)
                                                         260 Franklin Street, Suite 1600
                                                         Boston, Massachusetts 02110
                                                         Telephone: (617) 720-2880
                                                         Facsimile: (617) 720-3554
                                                         tcd@dcglaw.com
                                                         peg@dcglaw.com
                                                         pkl@dcglaw.com

                                                         *Liaison Counsel for Lead Plaintiff*

21