# Exhibit 7

# Exhibit 7A

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER MACHADO, and MICHAEL RUBIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ENDURANCE INTERNATIONAL GROUP HOLDINGS, INC., HARI RAVICHANDRAN, and TIVANKA ELLAWALA, <br><br> Defendants. | Case No. 1:15-cv-11775-GAO |

## ORDER AWARDING ATTORNEYS' FEES
## AND REIMBURSEMENT OF LITIGATION EXPENSES

This matter came on for hearing on September 13, 2019 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *Investor's Business Daily* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated July 6, 2018 (ECF No. 77-1) (the "Stipulation") and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3. Notice of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses was given to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7)), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 33 1/3 % of the Settlement Fund and $ 155,370.34 in reimbursement of Plaintiffs' Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects the contributions of such counsel to the institution, prosecution and settlement of the Action. In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)    The Settlement has created a fund of $18,650,000 million in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

(b)    Copies of the Postcard Notice were mailed to over 30,000 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not exceed 33 1/3% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $225,000. There were no objections to the requested attorneys' fees and expenses;

(c)    Lead Counsel has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(d)    The Action raised a number of complex issues;

(e)    Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Settlement Class may have recovered less or nothing from Defendants;

(f)    Plaintiff's Counsel devoted 7,433.15 hours, with a lodestar value of approximately $3,508,288.75 to achieve the Settlement;

(g)    The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases; and

6.    Lead Plaintiff Christopher Machado is hereby awarded $ 5,000             from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to his representation of the Settlement Class.

7.      Named Plaintiff Michael Rubin is hereby awarded $ 2,000                from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to his representation of the Settlement Class.

8.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

9.      Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

10.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

11.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.


Dated:    September 13, 2019


/s/ George A. O'Toole, Jr.
HON. GEORGE A. O'TOOLE
UNITED STATES DISTRICT JUDGE

4

# Exhibit 7B

# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN J. GERNETH, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>CHIASMA, INC., et al.,<br><br>    Defendants. | No. 1:16-cv-11082-DJC<br><br>CLASS ACTION<br><br>[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §77z-1(a)(4) |

4835-7295-0426.v1

This matter having come before the Court on June 27, 2019, on Lead Counsel's motion for an award of attorneys' fees and expenses ("Fee Motion"), the Court, having considered all papers filed and proceedings conducted herein, having found the settlement of this class action (the "Litigation") to be fair, reasonable and adequate, and otherwise being fully informed in the premises and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.     All of the capitalized terms used herein shall have the same meanings as set forth in the Stipulation of Settlement ("Stipulation" or "Settlement") filed with the Court. *See* ECF No. 197.

2.     This Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all Members of the Class who have not timely and validly requested exclusion.

3.     Notice of Lead Counsel's Fee Motion was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the Fee Motion met the requirements of Rules 23 and 54 of the Federal Rules of Civil Procedure, 15 U.S.C. §77z-1(a)(7), the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.     The Court hereby awards Lead Counsel attorneys' fees of 30% of the $18,750,000 Settlement Amount, plus expenses in the amount of $133,501.54, together with the interest earned on such amounts for the same time period and at the same rate as that earned by the Settlement Fund. The Court finds that the amount of fees awarded is appropriate, fair, and reasonable under the "percentage-of-recovery" method.

- 1 -

5.　　The fees and expenses shall be allocated among Lead Plaintiff's Counsel in a manner which, in Lead Counsel's good-faith judgment, reflects the contributions of such counsel to the prosecution and settlement of the Litigation.

6.　　The awarded attorneys' fees and expenses shall be paid immediately to Lead Counsel subject to the terms, conditions, and obligations of the Stipulation.

7.　　In making the award to Lead Counsel of attorneys' fees and litigation expenses to be paid from the recovery, the Court has considered and found that:

(a)　　The Settlement has created a common fund of $18,750,000 in cash and that numerous Class Members who submit acceptable Proofs of Claim will benefit from the Settlement created by the efforts of Lead Counsel;

(b)　　The requested attorneys' fees and payment of litigation expenses have been approved as fair and reasonable by the Lead Plaintiff;

(c)　　Notice was disseminated to Class Members stating that Lead Counsel would be moving for attorneys' fees not to exceed 30% of the Settlement Amount and payment of litigation expenses in an amount not to exceed $250,000, plus interest earned on both amounts;

(d)　　Lead Counsel have expended substantial time and effort pursuing the Litigation on behalf of the Class;

(e)　　Lead Counsel pursued the Litigation on a contingent basis, having received no compensation during the Litigation, and any fee award has been contingent on the result achieved;

(f)　　The Litigation involves complex factual and legal issues and, in the absence of the Settlement, would involve lengthy proceedings whose resolution would be uncertain;

(g)　　Lead Counsel conducted the Litigation and achieved the Settlement with skillful and diligent advocacy;

- 2 -

(h)     Public policy concerns favor the award of reasonable attorneys' fees in securities class action litigation;

(i)     The amount of attorneys' fees awarded is fair and reasonable and consistent with awards in similar cases within the First Circuit; and

(j)     Lead Plaintiff's Counsel devoted 6,237 hours, with a lodestar value of $3,785,640.00 to achieve the Settlement.

8.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fee and expense application shall in no way disturb or affect the finality of the Judgment entered with respect to the Settlement.

9.      Pursuant to 15 U.S.C. §77z-1(a)(4), the Court awards $10,000.00 to Lead Plaintiff Laurent Sberro in connection with his representation of the Class.

10.     In the event that the Settlement is terminated or does not become Final or the Effective Date does not occur in accordance with the terms of the Stipulation, this Order shall be rendered null and void to the extent provided by the Stipulation and shall be vacated in accordance with the Stipulation.

IT IS SO ORDERED.

DATED: _June 27, 2019_____      _____
                                    THE HONORABLE DENISE J. CASPER
                                    UNITED STATES DISTRICT JUDGE

4835-7295-0426.v1

# Exhibit 7C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JUDITH GODINEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALERE INC., *et al.*,<br><br>    Defendants. | Civil Action No. 1:16-cv-10766-PBS |

[PROPOSED] **ORDER AWARDING ATTORNEYS' FEES AND EXPENSES AND APPROVING COMPENSATORY PAYMENT TO LEAD PLAINTIFFS**

Lead Counsel's Motion for Award of Attorneys' Fees Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Compensatory Award for Lead Plaintiffs (ECF No. 273) is GRANTED as follows:

1.     The Court hereby awards Class Counsel 28% of the Settlement Fund ($5,600,000) in attorneys' fees.  The Court also awards Class Counsel reimbursement of $792,081.56 of expenses in the aggregate.  These awards are to be allocated in the sole discretion of Class Counsel.

2.     The Court hereby awards Class Plaintiffs OFI and Glazer reimbursement of $30,000 each for the time and expenses they incurred in prosecuting this action.

2.     The attorneys' fees and expenses approved by the Court herein shall be payable from the Settlement Fund to Class Counsel within seven (7) days after entry of this Order, notwithstanding the existence of any potential appeal or collateral attack on this Order or the on the Court's Judgment Approving Class Action Settlement.  The reimbursement awards approved by the Court herein shall be payable from the Settlement Fund to the respective Class Plaintiffs within seven (7) days after the Effective Date.

SO ORDERED this _____6_____ day of _____June_____, 2019.

Patti B. Saris
Chief United States District Judge

2

# Exhibit 7D

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

————————————————————————x
                                     :

IN RE CVS CORPORATION SECURITIES   :   C.A. No. 01-11464 (JLT)
LITIGATION                                 :
                                       :
————————————————————————x

## ORDER AND FINAL JUDGMENT

This matter came before the Court for hearing pursuant to an Order dated June 8, 2005 (the "Preliminary Approval Order"), on the application of the parties for approval of the settlement provided for in the Stipulation and Agreement of Compromise, Settlement and Release of Securities Action dated June 6, 2005 (the "Securities Stipulation"); and

Due and adequate notice having been given to members of the Class (as defined below), as required in the Preliminary Approval Order, and following such notice, a hearing having been held before this Court on September 7, 2005 (the "Settlement Hearing") to determine the matters contemplated herein; and

The Court having considered all papers and filings had herein and otherwise being fully informed of the premises and good cause appearing therefore; and

All capitalized terms herein having the same meanings defined in the Securities Stipulation.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Court has jurisdiction over the subject matter of the Securities Action, Lead Plaintiff, all members of the Class and the Defendants.

2.    For the reasons set forth in the Court's Order dated October 16, 2003, the Court finds that the prerequisites for a class action under Federal Rules of Civil Procedure 23 (a) and (b)(3) have been satisfied in that:  (a) the number of members of the Class are so numerous that joinder of all members in the Class is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Class Representative are typical of the claims of the Class it seeks to represent; (d) the Class Representative has and will fairly and adequately represent the interests of the Class; (e) the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members of the Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby finally certifies this action as a class action on behalf of a plaintiff class (the "Class") consisting of all persons or entities who purchased the common stock of CVS Corporation ("CVS") between February 6, 2001 and October 30, 2001, inclusive, and who were allegedly damaged thereby.  Excluded from the Class are the Defendants, all of the officers, directors and partners thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any of the foregoing have or had a controlling interest.  Also excluded from the Class are the persons and/or entities who previously excluded themselves from the Class by filing a request for exclusion in response to the Notice of Pendency, as listed on Exhibit 1 annexed hereto.

4.      The Notice of the Proposed Settlement of Class Action, Motion For Attorneys' Fees, and Settlement Fairness Hearing, which was previously approved by the Court, was given to all members of the Class who could be identified with reasonable effort. The Court finds that the form of notice specified in the Court's Preliminary Approval Order has been given. The form and method of notice as so provided constituted the best notice practicable under the circumstances, satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. 78u-4(a)(7) as amended, and due process, and constituted due and sufficient notice to all persons and entities entitled thereto.

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby approves the settlement set forth in the Securities Stipulation (the "Settlement") and finds that the Settlement is, in all respects, fair, reasonable and adequate to members of the Class. The parties are authorized and directed to consummate the Settlement in accordance with the terms and provisions of the Securities Stipulation.

6.      Except as to any individual claim of those persons who have validly and timely requested exclusion from the Class, the Court hereby dismisses the Securities Action with prejudice and without costs (except as otherwise provided in the Securities Stipulation) as to any and all Settled Claims, including Unknown Claims, that were or could have been asserted in the Securities Action by or on behalf of Lead Plaintiff and the Class Members.

7.      All Class Members and the successors and assigns of any of them, are hereby permanently barred and enjoined from instituting, commencing or prosecuting

3

any and all claims, whether known or unknown (including Unknown Claims), and whether arising under federal, state, or any other law, against the Released Parties, which have been, or could have been, asserted in the Securities Action or in any court or forum, relating to or arising from the acts, facts, transactions and circumstances that were alleged in the Complaint and which relate to or arise from the purchase or sale of CVS common stock during the Class Period (the "Settled Claims"). The "Released Parties" are any of the Defendants, and any of the families, heirs, executors, trustees, personal representatives, estates or administrators, attorneys, counselors, insurers, financial or investment advisors of any such Defendant who is a natural person, and the affiliates, partners, subsidiaries, predecessors, successors or assigns, past or present officers, directors, associates, controlling persons, representatives, employees, attorneys, counselors, insurers, financial or investment advisors, dealer managers, consultants, accountants, investment bankers, commercial bankers, engineers, advisors or agents of CVS, all in their capacities as such. The Settled Claims are hereby compromised, settled, released, discharged and dismissed as against the Released Parties on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment. "Settled Claims" do not include any claims against the Released Parties arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") that are the subject of another class action pending in the United States District Court, District of Massachusetts, Fescina v. CVS Corp., et al., Civil Action No. 04-12309-JLT, other than claims that the price of CVS common stock purchased on the open market during the Class Period was artificially inflated as alleged in the Complaint.

4

8. Upon the Effective Date, Lead Plaintiff and all Class Members shall be deemed to have covenanted not to sue any of the Released Parties in any individual, class or other representative capacity with respect any Settled Claim.

9. The Defendants, the successors and assigns of any of them, and, to the extent of their authority to act on behalf of the Released Parties, the Released Parties, are hereby permanently barred and enjoined from instituting, commencing or prosecuting all claims, whether known or unknown (including Unknown Claims), and whether arising under federal, state, or any other law, which have been, or could have been, asserted in the Securities Action or in any court or forum, by the Defendants or any of them or the successors and assigns of any of them against any of the Plaintiffs, Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Securities Action (except for claims to enforce the Securities Stipulation or the Settlement) (the "Settled Defendants' Claims"). The Settled Defendants' Claims are hereby compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

10. This Order and Final Judgment, the Securities Stipulation and its exhibits, the terms and provisions thereof, and any of the negotiations or proceedings connected with them, and any of the documents or statements referred to therein shall not be:

(a) offered or received against any of the Defendants or other Released Parties as evidence of or a presumption, concession, or admission by any Defendant or other Released Party of the truth of any fact alleged by any of the plaintiffs or the validity of any claim that has been or could have been asserted in the Securities Action or in any

5

litigation, or the deficiency of any defense that has been or could have been asserted in the Securities Action or in any litigation, or of any liability, negligence, fault, or wrongdoing on the part of any of the Defendants or other Released Parties;

(b) offered or received against any of the Defendants or other Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant or Released Party;

(c) offered or received against any of the Defendants or other Released Parties as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants or Released Parties, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Securities Stipulation; provided, however, that the Defendants and the Released Parties may refer to it to effectuate the liability protection granted them hereunder;

(d) construed against the Defendants or other Released Parties as an admission or concession that the consideration to be given hereunder represents the amount which could or would have been recovered after trial in the Securities Action; or

(e) construed as or received in evidence as an admission, concession or presumption against plaintiffs or any of the Class Members that any of their claims are without merit, or that any defenses asserted by the Defendants have any merit, or that damages recoverable under the Complaint would not have exceeded the Settlement Fund.

11.     The Plan of Allocation is approved as fair and reasonable, and Lead Plaintiff's Co-Lead Counsel and the Claims Administrator are directed to administer the Settlement in accordance with its terms and provisions.

12.     The Court finds that all parties and their counsel have complied with each requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

13.     Plaintiffs' Counsel are hereby awarded _25_% of the Settlement Fund in attorneys' fees, which sum the Court finds to be fair and reasonable, and $_2,472,092.30_ in reimbursement of expenses, which amounts shall be paid to Lead Plaintiff's Co-Lead Counsel from the Settlement Fund with interest from the date such Settlement Fund was funded to the date of payment at the same net rate that the Settlement Fund earns.  The award of attorneys' fees shall be allocated among Plaintiffs' Counsel in the Securities Action in a fashion which, in the opinion of Lead Plaintiff's Co-Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions in the prosecution of the Securities Action.  Attorneys' fees and expenses awarded by the court in the Derivative Action to derivative plaintiff's counsel in the amount up to $750,000 shall be payable from the award to Lead Plaintiff's Co-Lead Counsel in the Securities Action.

14.     In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

(a)     the Settlement has created a fund of $110 million in cash (which is already on deposit), plus interest thereon, and that numerous Class Members who submit

7

acceptable Proofs of Claim will benefit from the Settlement created by Lead Plaintiff's Co-Lead Counsel;

(b)     Over 320,000 copies of the Settlement Notice were disseminated to putative Class Members indicating that Plaintiffs' Counsel were moving for attorneys' fees from the Settlement Fund in an amount of up to twenty-five percent (25%) of the Settlement Fund and for reimbursement of their expenses in the approximate amount of $2,700,000 and two (2) objections were filed against the terms of the proposed Settlement or the ceiling on the fees and expenses requested by Plaintiffs' Counsel contained in the Notice;

(c)     Lead Plaintiff's Co-Lead Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(d)     The Securities Action involves complex factual and legal issues and was actively prosecuted over almost four years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

(e)     Had Lead Plaintiff's Co-Lead Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the Class may have recovered less or nothing from the Defendants; and

(f)     The amount of attorneys' fees awarded and expenses reimbursed from the Settlement Fund are consistent with awards in similar cases.

8

15. Without affecting the finality of this Judgment in any way, the Court hereby retains jurisdiction over (a) implementation of the Settlement and any award or distribution from the Settlement Fund; (b) disposition of the Settlement Fund; (c) any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Class; and (d) over the parties and Class Members for all matters relating to this Securities Action, including the administration, interpretation, effectuation or enforcement of the Securities Stipulation and this Order and Final Judgment.

16. Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Securities Stipulation.

17. There is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54 (b) of the Federal Rules of Civil Procedure.

SO ORDERED this 27 day of ___September___, 2005.

_____
U.S.D.J.

# Exhibit 1

Case 1:04-cv-01224-BJLT Document 16-9 Filed 09/07/04 Page 26 of 148

MSGF
MSGF228

**CVS SECURITIES LITIGATION TIMELY EXCLUSION**
CVS SECURITIES LITIGATION REPS

Page 1 of 24
19-May-05 2:38 PM

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 2046866 | LINDA L AALTO TTEE<br>MARY KOHR-AALTO REV LIV TRUST<br>FBO MARY KOHR-AALTO 4/29/99<br>7512 SPRINGRIDGE RD<br>BAINBRIDGE ISLAND, WA 98110-3644 | Tax ID: 999999999<br>Account Number: | |
| 12602 | MEGAN ACHESON<br>5312 RUE ST DENIS<br>MONTREAL QC H2J 2M3<br>CA | Tax ID: 999999999<br>Account Number: | |
| 12598 | CHARLES K ADAMS<br>500 N HILLCREST<br>FORT BRANCH, IN 47648 | Tax ID: 999999999<br>Account Number: | |
| 12579 | SHARON AFTON<br>10771 TALL PINE LANE<br>ALLENDALE, MI 49401 | Tax ID: 999999999<br>Account Number: | |
| 12567 | MICHAEL D ALLEN<br>23872 CALLE HOGAR<br>MISSION VIEJO, CA 92691 | Tax ID: 999999999<br>Account Number: | |
| 12584 | LUIS A ANDRADE<br>P.O. BOX 17 07 8738<br>QUITO ECUADOR<br>EC | Tax ID: 999999999<br>Account Number: | |
| 12559 | SEBASTIAN ARENA<br>MARA ARENA EXECUTOR<br>125 GREENWOOD ROAD<br>PITTSBURGH, PA 15238-2017 | Tax ID: 999999999<br>Account Number: | |
| 2001690 | CHARLOTTE HOBBS BARNES<br>6150 DEANNA DR<br>SYKESVILLE, MD 21784-8653 | Tax ID: 999999999<br>Account Number: | |

Count 208

Case 1:01-cv-11225-JLT Document 169-5 Filed 09/07/05 Page 2 of 34

MSGF
MSGF228

**CVS SECURITIES LITIGATION TIMELY EXCLUSION**
CVS SECURITIES LITIGATION REPS

Page 2 of 24
19-May-05 2:38 PM

| Nme IdNo | Name/Address | | |
|----------|--------------|--|--|
| 11904 | JAMES F BENNETT<br>1035 JANET AVE<br>YPSILANTI, MI 48198 | Tax ID: 999999999<br>Account Number: | |
| 11915 | H LAMAR BIFFLE AND<br>CAROL BIFFLE<br>60 STOKES DRIVE<br>STOCKBRIDGE, GA 30281 | Tax ID: 999999999<br>Account Number: | |
| 12604 | JENNY LOU BLACKWELL<br>7915 JACKSTONE<br>HOUSTON, TX 77049 | Tax ID: 999999999<br>Account Number: | |
| 11935 | MICHAEL K BLOOM<br>C/O CVS PHARMACY<br>ONE CVS DRIVE<br>PO BOX E<br>WOONSOCKET, RI 02895 | Tax ID: 999999999<br>Account Number: | |
| 2156 | CHRISTOPHER A BOS<br>713 PEACH TREE LN<br>MILFORD, MI 48381 | Tax ID: 999999999<br>Account Number: | |
| 11921 | CAROL BOSARGE<br>4008 NW 23 CIRCLE<br>GAINESVILLE, FL 32605 | Tax ID: 999999999<br>Account Number: | |
| 11906 | BARBARA BOWMAN<br>6645 S APACHE DR<br>LITTLETON, CO 80120 | Tax ID: 999999999<br>Account Number: | |
| 11925 | EDMUND C BRAAK<br>2853 DEVEREAUX WAY<br>SALT LAKE CITY, UT 84109 | Tax ID: 999999999<br>Account Number: | |
| 12550 | KERRIE BRADY<br>P.O. BOX 671<br>NEW MILFORD, CT 06776 | Tax ID: 999999999<br>Account Number: | |

Count 208

Case 1:01-cv-11225-NG Document 169-5 Filed 09/07/04 Page 28 of 148

MSGF

MSGF228

**CVS SECURITIES LITIGATION TIMELY EXCLUSION**

CVS SECURITIES LITIGATION REPS

Page  3  of  24

19-May-05  2:38 PM

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 12641 | WILLIAM L BROWN<br>PO BOX 75<br>13384 TUNICA TRACE<br>WEYANOKE, LA 70787 | Tax ID: 999999999<br>Account Number: | |
| 12603 | JANE MCMULLEN BROWNE<br>1521 DAIRY RD<br>CHARLOTTESVILLE, VA 22903-1303 | Tax ID: 999999999<br>Account Number: | |
| 1009834 | KEVIN DEAN BUSH &<br>MICHELLE SUZETTE BUSH<br>1349 S RIDGE LAKE CIR<br>LONGWOOD, FL 32750 | Tax ID: 999999999<br>Account Number: | |
| 11940 | VIRGINIA H BUTLER<br>2 HALLMARK DRIVE<br>WALLINGFORD, CT 08492 | Tax ID: 999999999<br>Account Number: | |
| 12544 | ALLEN B BYERLEY &<br>JANICE BYERLEY<br>4508 COUNTRY CLUB VIEW<br>BAYTOWN, TX 77521 | Tax ID: 999999999<br>Account Number: | |
| 2033549 | ROBERT W BYERS &<br>ELLEN D BYERS<br>1522 BISMARCK LANE<br>BRENTWOOD, CA 94513-6903 | Tax ID: 999999999<br>Account Number: | |
| 2067642 | CARL J CALICO<br>3525 CORINNE AVE<br>CHALMETTE, LA 70043-2601 | Tax ID: 999999999<br>Account Number: | |
| 12592 | LEE CARDWELL<br>PO BOX 3073<br>CORDOVA, TN 38088-3073 | Tax ID: 999999999<br>Account Number: | |

Count   208

| MSGF | **CVS SECURITIES LITIGATION TIMELY EXCLUSION** | Page 4 of 24 |
|------|-----------------------------------------------|--------------|
| MSGF228 | CVS SECURITIES LITIGATION REPS | 19-May-05  2:38 PM |

| Nme IdNo | Name/Address | | |
|----------|--------------|---|---|
| 2028737 | DIONYSIA M CASTELINO TTEE<br>DIONYSIA M CASTELINO REV LIV<br>TRUST U/A/D 07/15/93<br>IDS BALANCED<br>7600 HOLIDAY DRIVE EAST<br>INDIANAPOLIS, IN 46260-3615 | Tax ID: 999999999<br>Account Number: | |
| 12583 | MARJORIE H CATLIN TTEE<br>5300 W 96TH STREET #D5<br>INDIANAPOLIS, IN 46268 | Tax ID: 999999999<br>Account Number: | |
| 12561 | ALEXANDRA CHAFFERS<br>45 SOUNDVIEW DRIVE<br>PORT WASHINGTON, NY 11050 | Tax ID: 999999999<br>Account Number: | |
| 12591 | WILLIAM B CHARTER &<br>MARGUERITE F CHARTER<br>4026 MAXANNE DR NW<br>KENNESAW, GA 30144 | Tax ID: 999999999<br>Account Number: | |
| 11896 | MR HARVEY T CHRISTENSEN &<br>RUTH LARAINE CHRISTENSEN - TTEES<br>CHRISTENSEN FAMILY TRUST<br>U/A DTD 01/23/96<br>8020 EAST KEATS AVE #323<br>MESA, AZ 85208 | Tax ID: 999999999<br>Account Number: | |
| 2035686 | BILLIE B COKER<br>CGM IRA CUSTODIAN<br>604 WEST QUITMAN<br>IUKA, MS 38852-1431 | Tax ID: 999999999<br>Account Number: | |
| 11536 | KENNETH L COLVIN<br>9794 FERRY ROAD<br>WAYNESVILLE, OH 48068 | Tax ID: 999999999<br>Account Number: | |
| 12582 | EILEEN H COMBS<br>8613 BOONE HALL CT<br>KNOXVILLE, TN 37923 | Tax ID: 999999999<br>Account Number: | |

Count    208

Case 1:01-cv-11225-RBJLTD Document 16:09-9   Filed 09/07/04   Page 30 of 148

**Nme IdNo**     **Name/Address**

11543    ELEANOR CONKLIN TTEES      Tax ID: 999999999
FBO GEORGE & ELEANOR CONKLIN TF    Account Number:
1353 CASSULOT COURT
PALM HARBOR, FL 34684-2442

11936    DIANNE M CONLAN      Tax ID: 999999999
10 KAY STREET    Account Number:
CUMBERLAND, RI 02864

11545    HOWARD S CONNER      Tax ID: 999999999
3440 WHITE MOUNTAIN COURT    Account Number:
RENO, NV 89511

1199    DEBRA CONSTANTINE      Tax ID: 999999999
29 SMITH COURT    Account Number:
WEST NEWTON, MA 02465-1411

11548    HEATHER CORKERY &      Tax ID: 999999999
ROBERT CORKERY    Account Number:
35 ROYAL CREST DRIVE
DOUGLAS, MA 01516

11927    ELLEN-VIRGINIA D COYNE      Tax ID: 999999999
10100 CYPRESS CORE DRIVE #101    Account Number:
FT MYERS, FL 33908

12542    WINNIFRED S CROWDUS      Tax ID: 999999999
604 ROYAL OAK    Account Number:
INGRAM, TX 78025-3559

12600    NIKKI CURENTON      Tax ID: 999999999
10464 CLARION RIVER DR    Account Number:
LAS VEGAS, NV 89135

2007539    ALICE C DALLAM &      Tax ID: 999999999
DAVID L DALLAM    Account Number:
1625 CONOWINGO RD
RISING SUN, MD 21911-1433

Count    208

**Nme IdNo**       **Name/Address**

12578   DAN WESLEY INGLIS FAMILY TRUST          Tax ID:  999999999
        SHIRLEY ANN INGLIS TTEE
        4701 WOOD SPRINGS CT                     Account Number:
        ARLINGTON, TX 76017


1018364  NOELIA DAVILA                          Tax ID:  999999999
         45 OHIO
         NEW BRAUNFELS, TX 78130-8105           Account Number:


115     DOROTHY A DAVIS TOD                     Tax ID:  999999999
        HELEN R DICK
        SUBJECT TO STA TOD RULES                Account Number:
        4636 POINT LOMA AVE
        SAN DIEGO, CA 92107


11546   SUE N ROWEN EXECUTOR                    Tax ID:  999999999
        FBO ESTATE OF FRANCES E DAVIS
        33075 WOODLEIGH ROAD                    Account Number:
        PEPPER PIKE, OH 44124


838     MARY C DAY                              Tax ID:  999999999
        228 EAGLE BLUFF DR
        OAKWOOD, IL 61858-6210                  Account Number:


12531   MANUEL F DE LA TORRIENTE               Tax ID:  999999999
        1450 MADRUGA AVENUE # 311
        CORAL GABLES, FL 33146                  Account Number:


12574   RICHARD DELGROSSO                      Tax ID:  999999999
        336 EDMUNTON DRIVE L-12
        N BABYLON, NY 15203                     Account Number:


12589   ROBERT DELGROSSO                       Tax ID:  999999999
        23 BEACH RD
        PORT JEFFERSON, NY 11777               Account Number:


11916   VICKI K DENT                           Tax ID:  999999999
        25637 HANOVER STREET
        DEARBORN HTS, MI 48125                 Account Number:


Count   208

Case 1:01-cv-11222-JLT Document 1609-5 Filed 09/07/04 Page 7 of 24 148

MSGF

MSGF228

# CVS SECURITIES LITIGATION TIMELY EXCLUSION

CVS SECURITIES LITIGATION REPS

Page 7 of 24

19-May-05 2:38 PM

| Nme IdNo | Name/Address | |
|---|---|---|
| 11897 | OPHELIA DENTON<br>3006 LUARA LN<br>LITHIA SPRINGS, GA 30122 | Tax ID: 999999999<br>Account Number: |
| 12594 | GEORGE DEO &<br>JACQUELINE DEO<br>107 CHURCH RD<br>MILFORD, NJ 08848 | Tax ID: 999999999<br>Account Number: |
| 12540 | RUTH S DEWALD TTEE<br>9405 ASTON GARDENS CT #103<br>PARKLAND, FL 33076 | Tax ID: 999999999<br>Account Number: |
| 2061974 | MARY DURANTE<br>340 WEST 57TH ST<br>APT 21<br>NEW YORK, NY 10019-3706 | Tax ID: 999999999<br>Account Number: |
| 12596 | DOROTHY DURRSCHMIDT<br>815 E GOLDENROD ST<br>PHOENIX, AZ 85408 | Tax ID: 999999999<br>Account Number: |
| 12577 | DOT S EASTERLING<br>P.O. BOX 13052<br>JECKYLL ISLAND, GA 31527 | Tax ID: 999999999<br>Account Number: |
| 3838 | ELIZABETH V ELLIOTT<br>4627A OXFORD ST<br>LYNCHBURG, VA 24502-5103 | Tax ID: 999999999<br>Account Number: |
| 11922 | RUTH A EMERY<br>1718 LAKECREST DRIVE<br>PORT ARTHUR, TX 77642 | Tax ID: 999999999<br>Account Number: |
| 3885 | LISA A EPPERSON<br>512 HICKORY STICK CR<br>BLOOMINGTON, IN 47401-4691 | Tax ID: 999999999<br>Account Number: |

Count 208

Case 1:04-cv-01264-BJL TD Document 1609-9 Filed 09/07/24 Page 33 of 148

**Nme IdNo**     **Name/Address**

12546    M J FAHLGREN KARRIKER TTEE          Tax ID: 999999999
RONALD W FAHLGREN RESIDUAL         Account Number:
TRUST
U/A DTD 11/3/94 PAS/RORE
46 MAGNOLIA LANE
CROSSVILLE, TN 38555


11911    MICHAEL J FEALY                    Tax ID: 999999999
1800 COUNTRY ROAD 310              Account Number:
BEEVILLE, TX 78102-8277


11903    BARBARA FESTOFF                    Tax ID: 999999999
18 NO CAMBRIDGE AVE               Account Number:
VENTNOR, NJ 08406


1003817  MIGUEL A NAZARIO FRANCO &          Tax ID: 999999999
ANA BRICENO DE NAZARIO            Account Number:
CALLE GARITA D-17
PASEO SAN JUAN
URB. LOS PASEOS
SAN JUAN, PR 00926


4318     NOELIA R FREITAS                   Tax ID: 999999999
9940 NOB HILL CT #3               Account Number:
SUNRISE, FL 33351


11910    BRUCE E GALBRAITH                  Tax ID: 999999999
206 LAKEWOOD DRIVE               Account Number:
TULLAHOMA, TN 37388


12532    MANUEL GANI                        Tax ID: 999999999
7 INDEPENDENCE                    Account Number:
BROCTON, MA 02467


2068014  HELEN D GAUNT                      Tax ID: 999999999
1222 CHIPPENHAM DR                Account Number:
BATON ROUGE, LA 70808-5623


Count   208

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 4494 | RAYMOND H GAUTHIER & PAULINE C GAUTHIER JTTEN 221 PALM DRIVE LABELLE, FL 33935-9435 | Tax ID: 999999999 Account Number: | |
| 12595 | MARY M GEFELL 45 SEAFORD DRIVE ROCHESTER, NY 14617 | Tax ID: 999999999 Account Number: | |
| 4549 | CYNTHIA A GERWIG 856 COUNTY RD 801 ASHLAND, OH 44805-9575 | Tax ID: 999999999 Account Number: | |
| 11905 | AUDREY A GLICK 1408 KENDON DR ST LOUIS, MO 63131 | Tax ID: 999999999 Account Number: | |
| 11946 | WILLIS B GLOVER XX, NY 11747 | Tax ID: 999999999 Account Number: | |
| 11537 | RUSSELL GOLDBAUM 7807 ROCKFORD ROAD BOYNTON BEACH, FL 33437 | Tax ID: 999999999 Account Number: | |
| 1010879 | JACK GOLDIN & FLORENCE S GOLDIN PO BOX 2909 GULFPORT, MS 39505 | Tax ID: 999999999 Account Number: | |
| 11923 | SUSAN H GOODIS 408 ALPINE VILLAGE DRIVE MONROEVILLE, PA 15146 | Tax ID: 999999999 Account Number: | |
| 1016768 | LAURIE L GORMAN-VASQUEZ LAURIE GORMAN VASQUEZ TRUST 5435 PARKFORD CIRCLE GRANITE BAY, CA 95746 | Tax ID: 999999999 Account Number: | |

Count   208

Case 1:20-cv-11225-BLT Document 1609-5 Filed 09/07/04 Page 35 of 148

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 11529 | IRWIN GOTBAUM<br>IRA DTD 10/18/00<br>2104 N RIVERSIDE DR<br>POMPANO BEACH, FL 33062 | Tax ID: 999999999<br>Account Number: | |
| 11924 | JACK B GRUBB<br>823 HARMONY LN<br>MANDEVILLE, LA 70471-8912 | Tax ID: 999999999<br>Account Number: | |
| 12642 | WALTER C GUSTAFON &<br>MELBA E GUSTAFSON<br>3812 W 57TH ST<br>EDINA, MN 55410 | Tax ID: 999999999<br>Account Number: | |
| 12555 | AUDREY HALL<br>UNKNOWN<br>UNKNOWN, NY 11111 | Tax ID: 999999999<br>Account Number: | |
| 2069107 | HELENA HAMMER<br>1419 SW BRIDLEWOOD DR<br>DALLAS, OR 97338-2325 | Tax ID: 999999999<br>Account Number: | |
| 12601 | DAVID M HAMPTON AND/OR<br>CATHERINE D HAMPTON<br>114 WEST N STREET<br>BENICIA, CA 94510 | Tax ID: 999999999<br>Account Number: | |
| 11920 | WILLIAM A HARRIS &<br>FRANCELLA S HARRIS<br>319 LUCK AVENUE<br>ZANESVILLE, OH 43701-4217 | Tax ID: 999999999<br>Account Number: | |
| 12575 | HELEN LEE HAYES<br>P.O. BOX 2506<br>BORREGO SPRINGS, CA 92004-2506 | Tax ID: 999999999<br>Account Number: | |
| 5331 | JANET S HEWGLEY<br>460 COUNTY RD 603<br>ATHENS, TN 37303 | Tax ID: 999999999<br>Account Number: | |

Count   208

Case 1:01-cv-11225-RBJLTD Document 16099   Filed 09/07/04   Page 21 of 34 148

MSGF

MSGF228

**CVS SECURITIES LITIGATION TIMELY EXCLUSION**

CVS SECURITIES LITIGATION REPS

Page 11 of 24

19-May-05  2:38 PM

**Nme IdNo**       **Name/Address**

11894   MITCHELL K HOBISH, PH D
350 LOCKABOUT LANE
PO BOX 632
MANHATTAN, MT 59741

Tax ID: 999999999

Account Number:

12581   BARBARA G HOCHSTEDLER
SHANNONDALE OF MARYVILLE
804 SHANNONDALE WAY # 322
MARYVILLE, TN 37803-5970

Tax ID: 999999999

Account Number:

11929   D PAULINE HOEL
1015 IBIS ROAD
JACKSONVILLE, FL 32216

Tax ID: 999999999

Account Number:

2025084   WALTER HOFF
1431 GARMON FERRY ROAD
ATLANTA, GA 30327-3839

Tax ID: 999999999

Account Number:

204   RONALD C HOPPING &
LIBBY A HOPPING JT TEN
39 GILLANDER AVE
AUBURN, ME 04210-4507

Tax ID: 999999999

Account Number:

11898   HOPE M HRYSENKO
2453 BRAZILIA DR #61
CLEARWATER, FL 33763

Tax ID: 999999999

Account Number:

5552   JOHANNA M HUBER &
HERBERT J HUBER JT TEN
65 SUNBRIAR DR
WEST SENECA, NY 14224-3418

Tax ID: 999999999

Account Number:

5556   LISA A HUBERT
50 CHESTNUT ST
HELLERTOWN, PA 18055

Tax ID: 999999999

Account Number:

5557   E RAYMOND HUCK
1141 GOODMAN ST
PITTSBURGH, PA 15218-1116

Tax ID: 999999999

Account Number:

Count   208

Case 1:01-cv-11225-JLT Document 109 Filed 09/07/05 Page 23 of 34 Case 1:04-cv-11464-BJL Document 160-9 Filed 09/07/04 Page 32 of 48

| Nme IdNo | Name/Address | | |
|----------|--------------|---|---|
| 5584 | JEANNENE H ALLEN<br>8750 HARBOR CIRCLE<br>TERRELL, NC 28682-9743 | Tax ID: 999999999<br>Account Number: | |
| 11534 | HILARY JACOBSON<br>2848 TORREY PINES ROAD<br>LA JOLLA, CA 92037 | Tax ID: 999999999<br>Account Number: | |
| 12557 | ELIZABETH M JAMESON<br>19 RIDGE LANE<br>MILL VALLEY, CA 94941 | Tax ID: 999999999<br>Account Number: | |
| 11530 | BETTY M JENSEN TTEE<br>FBO JENSEN FAMILY TRUST<br>UA DTD 10/27/94<br>13844 N SUTHERLAND WASH WAY<br>TUCSON, AZ 85737-4718 | Tax ID: 999999999<br>Account Number: | |
| 11533 | DONALD W JOHNSON &<br>PATRICIA B JOHNSON<br>6873 AUCKLAND DRIVE<br>AUSTIN, TX 78749 | Tax ID: 999999999<br>Account Number: | |
| 2068151 | BRIAN KEBIS<br>2508 PEARTREE LANE<br>SPARKS, NV 89434 | Tax ID: 999999999<br>Account Number: | |
| 2078573 | BETTY KELLER IRA<br>6853 CAROLYNCREST DR<br>DALLAS, TX 75214 | Tax ID: 999999999<br>Account Number: | |
| 243 | PIERRETTE KELLY<br>124 RIVERSIDE DR<br>WRENTHAM, MA 02093 | Tax ID: 999999999<br>Account Number: | |
| 11934 | RAYMOND J KISSEL<br>5500 W ST JOSEPH ROAD<br>EVANSVILLE, IN 47720 | Tax ID: 999999999<br>Account Number: | |

Count   208

Case 1:01-cv-11225-NG Document 169-5 Filed 09/07/04 Page 23 of 34

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 2047397 | MICHAEL F KLICH<br>1754 N OAKWOOD RD<br>OSHKOSH, WI 54904-8447 | Tax ID: 999999999<br>Account Number: | |
| 11933 | ELZIABETH A KOPPERUD<br>78 32ND AVE N<br>FARGO, ND 58102 | Tax ID: 999999999<br>Account Number: | |
| 12537 | IRIS KRUG<br>576 AUGUSTA BLVD<br>NAPLES, FL 34113 | Tax ID: 999999999<br>Account Number: | |
| 2062549 | CHARLOTTE KUKLA<br>241 ASHFORD AVE<br>DOBBS FERRY, NY 10522-1908 | Tax ID: 999999999<br>Account Number: | |
| 12572 | ARTHUR KUNZ<br>P.O.BOX 468<br>FRANKSTON VIC 3199<br>AUSTRALIA<br>AU | Tax ID: 999999999<br>Account Number: | |
| 11939 | DENNIS C KURTZ<br>3210 HILLSIDE DRIVE<br>HIGHLAND VILLAGE, TX 75077 | Tax ID: 999999999<br>Account Number: | |
| 11547 | JOANNA LANE<br>18655 W BERNARDO DRIVE<br>APT #379<br>SAN DIEGO, CA 92127-3019 | Tax ID: 999999999<br>Account Number: | |
| 12538 | DAVID A LATACKI<br>80 PLAZA DRIVE<br>ROCHESTER, NY 14617 | Tax ID: 999999999<br>Account Number: | |
| 12558 | KATHRYN LATOUREETE<br>11 REYNOLDS ROAD<br>WEBSTER, NY 14580 | Tax ID: 999999999<br>Account Number: | |

Count   208

Case 1:01-cv-11222-NG Document 169-5 Filed 09/07/04 Page 39 of 148

MSGF

MSGF228

**CVS SECURITIES LITIGATION TIMELY EXCLUSION**

CVS SECURITIES LITIGATION REPS

Page 14 of 24

19-May-05 2:38 PM

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 11908 | ALVIN D S LAU TTEE<br>FBO ALVIN DA LAU REV LIVING TRUST<br>DTD 11/18/92<br>45-316 LEHUULLA ST<br>KANEOHE, HI 96744-2323 | Tax ID: 999999999<br>Account Number: | |
| 12566 | WILLIAM S LEACH JR.<br>UNKNOWN<br>UNKNOWN, NY 11111 | Tax ID: 999999999<br>Account Number: | |
| 12552 | WILLIAM R LEE JR &<br>KENT W LEE<br>8676 MEMPHIS ARLINGTON ROAD<br>MEMPHIS, TN 38133 | Tax ID: 999999999<br>Account Number: | |
| 11531 | BERNICE S LEITNER<br>11277 OLA AVENUE<br>BOYNTON BEACH, FL 33437 | Tax ID: 999999999<br>Account Number: | |
| 2038418 | LAUREL LEE LEMARIE TTEE<br>FBO SEP EST OF LAUREL L LEMARIE<br>PO BOX 1031<br>RANCHO SANTA FE, CA 92067-1031 | Tax ID: 999999999<br>Account Number: | |
| 11901 | M KENT LEMARIE<br>PO BOX 1031<br>RANCHO SANTA FE, CA 92067-1031 | Tax ID: 999999999<br>Account Number: | |
| 12548 | CECILE A LEMIEUX<br>9 CAMP STREET<br>CUMBERLAND, RI 02684 | Tax ID: 999999999<br>Account Number: | |
| 11943 | LMWW CUSTODIAN FBO<br>RONALD P LIVINGSTON SEP IRA<br>2804 TAMARACK TRAIL<br>APOPKA, FL 32703-4938 | Tax ID: 999999999<br>Account Number: | |

Count 208

Case 1:01-cv-11225-JLT Document 160-9    Filed 09/07/04    Page 25 of 34

MSGF
MSGF228

**CVS SECURITIES LITIGATION TIMELY EXCLUSION**

CVS SECURITIES LITIGATION REPS

Page  15   of   24

19-May-05   2:38 PM

| Nme IdNo | Name/Address | |
|---|---|---|
| 11892 | MERCELENA V LLOYD<br>43 HARDING DRIVE<br>SEARCY, AR 72143-5704 | Tax ID: 999999999<br>Account Number: |
| 1003908 | BERTRAND LOY<br>2 SETTLEMENT WAY<br>ACTON, MA 01720 | Tax ID: 999999999<br>Account Number: |
| 12560 | CLIFFORD MASTERSON<br>4386 LAKE P.O. BOX 122<br>BRIDGMAN, MI 49106 | Tax ID: 999999999<br>Account Number: |
| 11941 | ARLINGTON BLISS MC CRUMB TTEE<br>THE MC CRUMB REVOCABLE TRUST<br>UAD 8/8/91<br>22 BATTERY STREET # 800<br>SAN FRANCISCO, CA 09411 | Tax ID: 999999999<br>Account Number: |
| 7371 | J L MCCLAIN<br>16040 HIGHWAY 80<br>MINDEN, LA 71055 | Tax ID: 999999999<br>Account Number: |
| 11918 | VERDA MCMULLEN<br>20127 N HORSE TRAIL DRIVE<br>SURPRISE, AZ 85374-4611 | Tax ID: 999999999<br>Account Number: |
| 11528 | EDWARD D MILLS<br>2093 IMPERIAL CIRCLE<br>NAPLES, FL 34110 | Tax ID: 999999999<br>Account Number: |
| 11930 | ANTHONY J MONER<br>1510 IMPERIAL GOLF COURSE BLVD #<br>114<br>NAPLES, FL 34110 | Tax ID: 999999999<br>Account Number: |
| 11913 | FRANCINE MOSKOVITZ<br>930 INEZ WAY<br>SACREMENTO, CA 95822 | Tax ID: 999999999<br>Account Number: |

Count    208

Case 1:01-cv-11225-JLTD Document 1609-5 Filed 09/07/05 Page 26 of 34 148

MSGF
MSGF228

**CVS SECURITIES LITIGATION TIMELY EXCLUSION**

CVS SECURITIES LITIGATION REPS

Page 16 of 24

19-May-05 2:38 PM

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 7961 | HELEN M MOUNT<br>43050 BLALOCK RD<br>NEW LONDON, NC 28127 | Tax ID: 999999999<br>Account Number: | |
| 11932 | ROBERT MURELL<br>488 ALLEYPAN<br>RIVES, TN 38253 | Tax ID: 999999999<br>Account Number: | |
| 1012345 | WALTER P NAAB<br>3982 NORTHWOODS TRAIL<br>WAUTOMA, WI 54982 | Tax ID: 999999999<br>Account Number: | |
| 2080272 | SUSAN NEAVILLE & ROBERT HALL<br>TTEES<br>FBO MARY ELIZABETH HALL TRUST<br>104 SEA GARDEN CT<br>SAINT AUGUSTINE, FL 32807 | Tax ID: 999999999<br>Account Number: | |
| 12539 | BERNADETTE NENTWICK<br>21218 E GLEN HAVEN CIRCLE<br>NORTHVILLE, MI 48167-2468 | Tax ID: 999999999<br>Account Number: | |
| 2058454 | JAMES P OBRIEN<br>5009 MARILAKE CIR<br>KETTERING, OH 45429-5416 | Tax ID: 999999999<br>Account Number: | |
| 11902 | EARL F OCONNOR<br>7434 S SHERMAN DR<br>INDIANAPOLIS, IN 46237 | Tax ID: 999999999<br>Account Number: | |
| 8291 | ARSHAG OHANIAN &<br>ALICE OHANIAN JT TEN<br>12 BURNHAM RD<br>WENHAM, MA 01984-1907 | Tax ID: 999999999<br>Account Number: | |
| 11914 | BARBARA ANN OLSEN<br>1252 TILMAN ROAD<br>CHARLOTTESVILLE, VA 22901 | Tax ID: 999999999<br>Account Number: | |

Count 208

Case 1:04-cv-11224-BJLTD Document 16-9   Filed 09/07/04   Page 27 of 34 148

**Nme IdNo**      **Name/Address**

12536   WARREN J OLSON
704 S JACKSON STREET
FAIRBURY, IL 61739

Tax ID: 999999999

Account Number:

2002870   MARY PANARO
3025 SE MORNINGSIDE BLVD
PORT SAINT LUCIE, FL 34952-5905

Tax ID: 999999999

Account Number:

12543   MONIE C PARKER
194 W JOLIET ROAD
VALPARASIO, IN 46385-5942

Tax ID: 999999999

Account Number:

12593   JOSEPH PATRICK
5471 VICKSBURG DR
INDIANAPOLIS, IN 46254

Tax ID: 999999999

Account Number:

11544   LOUIS PELZEL JR
DIANA PELZEL
123 TYLER TERRACE
SAN ANGELO, TX 76905-8207

Tax ID: 999999999

Account Number:

8881   SHIRLEY M PRESCOTT
8941 ETIWANDA AVE
NORTHRIDGE, CA 91325-2710

Tax ID: 999999999

Account Number:

12576   RUTH R QUINTANILLA
90 BIG BEAR PLACE NW
ISSAQUAH, WA 98027

Tax ID: 999999999

Account Number:

12590   MUHAMMAD USMAN QURESHI &
MUHAMMAD FARHAN QURESHI &
ANIS FATIMA
8907 SHASTA SPRINGS DR
HOUSTON, TX 77034

Tax ID: 999999999

Account Number:

12585   DAWN RACZHOWSKI
509 ANN ELANE
FAIRLESS HILLS, PA 19030

Tax ID: 999999999

Account Number:

Count   208

Case 1:04-cv-11224-BJLTD Document 1609 Filed 09/07/24 Page 28 of 34148

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 11895 | ALFRED J RAYMOND & DOLORES RAYMOND 133 COLE ST SEEKONK, MA 02771 | Tax ID: 999999999 Account Number: | |
| 11541 | JOSEF M REESE 553 FRANKLIN WAY WEST CHESTER, PA 19380 | Tax ID: 999999999 Account Number: | |
| 11539 | NORA L RESCH 4325 AEGEAN DRIVE APT 124B TAMPA, FL 33611-2405 | Tax ID: 999999999 Account Number: | |
| 11909 | STEVEN RICHARDS 11392 SEMINOLE REDFORD, MI 48239 | Tax ID: 999999999 Account Number: | |
| 9193 | GENE A RICHMOND JR 3012 SANSOM CT MILTON, WV 25541-1033 | Tax ID: 999999999 Account Number: | |
| 11945 | EDNA E RIPMAN XX, NY 11747 | Tax ID: 999999999 Account Number: | |
| 12535 | ROCHARD ROBINSON 3927 DUNN STREET GORVES, TX 77619 | Tax ID: 999999999 Account Number: | |
| 11899 | SHEILA H ROGERS 13520 VICTORY BLVD #9 VAN NUYS, CA 91401 | Tax ID: 999999999 Account Number: | |
| 12565 | ANN M RUDOLPH 311 INVERNESS CLOSE WESTMINSTER, MD 21158 | Tax ID: 999999999 Account Number: | |

Count 208

Case 1:01-cv-11222-BJLT Document 1609 Filed 09/07/04 Page 29 of 34 148

MSGF
MSGF228

**CVS SECURITIES LITIGATION TIMELY EXCLUSION**

CVS SECURITIES LITIGATION REPS

Page  19  of  24

19-May-05  2:38 PM

| Nme IdNo | Name/Address | | |
|----------|--------------|--|--|
| 1025009 | JAMES RYAN &<br>ANGELA RYAN<br>1142 VIA BOLZANO<br>SANTA BARBARA, CA 93111-1054 | Tax ID: 999999999<br>Account Number: | |
| 12553 | LAWRENCE W RYAN<br>1550 N MAIN STREET<br>LOT 107<br>MANSFIELD, TX 76069 | Tax ID: 999999999<br>Account Number: | |
| 2050491 | HILARY R SCHERMER OR<br>FBO MARILYN S TESSMER TRUST<br>169-F TREASURE WAY<br>SAN ANTONIO, TX 78209-2107 | Tax ID: 999999999<br>Account Number: | |
| 2052136 | DOROTHY SCHLAGEL<br>950 70TH ST SE<br>DE GRAFF, MN 56271-9066 | Tax ID: 999999999<br>Account Number: | |
| 2049558 | JON K SCHMUKE &<br>JOANN E SCHMUKE JTWROS<br>861 KEIFER TRAILS DR<br>BALLWIN, MO 63021-6079 | Tax ID: 999999999<br>Account Number: | |
| 1027851 | ALEXIS M SCHOENTHAL<br>C/O A G EDWARDS & SONS INC<br>ROLLOVER IRA ACCOUNT<br>PAS/RITTENHOUSE<br>4225 ABBEYDALE DRIVE<br>CHARLOTTE, NC 28205-4607 | Tax ID: 999999999<br>Account Number: | |
| 11944 | EVELYN SHILLING<br>XX, NY 11747 | Tax ID: 999999999<br>Account Number: | |
| 9990 | TERRY A SHORT<br>9 WHIPPLE AVENUE<br>WARWICK, RI 02889-4725 | Tax ID: 999999999<br>Account Number: | |

Count   208

Case 1:01-cv-11225-RJLT Document 1609-5   Filed 09/07/05   Page 30 45 of 34 148

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 10027 | EDWIN A SILVER & <br> ELAINE B SILVER JT TEN <br> 11003 LOMBARDY RD <br> SILVER SPRING, MD 20901-1638 | Tax ID: 999999999 <br> Account Number: | |
| 11907 | EUGENE M SINISI <br> 4214 CROWNWOOD DRIVE <br> SEABROOK, TX 77586-4108 | Tax ID: 999999999 <br> Account Number: | |
| 11938 | ROGER D SKINNER <br> 1020 COVINGTON ROAD <br> LOS ALTOS, CA 94024-5003 | Tax ID: 999999999 <br> Account Number: | |
| 2018812 | MURRAY J SMIDT <br> 5518 LINCOLN RD <br> MARTINSVILLE, IN 46151-9136 | Tax ID: 999999999 <br> Account Number: | |
| 2074825 | EDWARD J SMITH & <br> DOROTHY M SMITH <br> 3421 CLEARWELL ST <br> AMARILLO, TX 79109-4122 | Tax ID: 999999999 <br> Account Number: | |
| 1020816 | WILLIAM A SMITH <br> 1100 HEMLOCK <br> BORGER, TX 79007-5716 | Tax ID: 999999999 <br> Account Number: | |
| 11926 | J.M. SMYKLA <br> P.O. BOX 516 <br> CONWAY, NH 03818-0516 | Tax ID: 999999999 <br> Account Number: | |
| 12547 | LEA SOLOMON <br> 17518 HIDDEN FOREST CIRCLE <br> SPRING, TX 77379-8926 | Tax ID: 999999999 <br> Account Number: | |
| 2071380 | EDWARD L SOULE (DECEASED) <br> ROMANO M SOULE EXECUTOR <br> PO BOX 54099 <br> REDONDO, WA 98054-0099 | Tax ID: 999999999 <br> Account Number: | |

Count   208

Case 1:01-cv-11225-RBJLTD Document 16095 Filed 09/07/04 Page 146 of 148

MSGF
MSGF228

**CVS SECURITIES LITIGATION TIMELY EXCLUSION**
CVS SECURITIES LITIGATION REPS

Page 21 of 24
19-May-05  2:38 PM

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 12534 | LISA SPENCER<br>3037 MASTERS POINT DR<br>CASTLE ROCK, CO 80104 | Tax ID: 999999999<br>Account Number: | |
| 12545 | KAREN STEIB<br>3903 DORAL DRIVE<br>TAMPA, FL 33634 | Tax ID: 999999999<br>Account Number: | |
| 11532 | RICHARD J STORTI &<br>KIA D STORTI<br>1 LACROIX DRIVE<br>WEST WARWICK, RI 02893 | Tax ID: 999999999<br>Account Number: | |
| 2017559 | MALVERNE N SULLIVAN<br>585 LINDEN AVE<br>ELMHURST, IL 60126-4028 | Tax ID: 999999999<br>Account Number: | |
| 11542 | JOAN C SUMMERHAYS<br>50 SMITH ROAD<br>DENVILLE, NJ 07834 | Tax ID: 999999999<br>Account Number: | |
| 12533 | THERESA M TALBOTT<br>RR4 BOX 4169<br>STROUDSBURG, PA 18360 | Tax ID: 162420579<br>Account Number: | |
| 1000139 | ROBERT A TAMPLIN<br>959 ABERDEEN CT<br>CONCORD, NC 28027-6451 | Tax ID: 999999999<br>Account Number: | |
| 11928 | SHIRLEY TARTER<br>810 W TOBAY<br>LODI, CA 95240 | Tax ID: 999999999<br>Account Number: | |
| 11919 | MARLON R TAYLOR<br>3741 E 48TH STREET<br>TULSA, OK 74135 | Tax ID: 999999999<br>Account Number: | |

Count  208

Case 1:04-cv-11225-RBJLTD Document 169-5    Filed 09/07/054    Page 32 47 34 148

| Nme IdNo | Name/Address | |
|---|---|---|
| 11535 | HARRY THOMSEN<br>3492 HILL CIRCLE<br>COLORADO SPRINGS, CO 80904 | Tax ID: 999999999<br>Account Number: |
| 12597 | JUNE TOST<br>1080 PINE DRIVE<br>ENUMCLAW, WA 98022 | Tax ID: 999999999<br>Account Number: |
| 2077042 | PAUL R TOTTEN<br>A/C 87000760 LARGE CAP CORE<br>425 BEECH PARK DR<br>GREENWOOD, IN 46142-4055 | Tax ID: 999999999<br>Account Number: |
| 11008 | BETTY J TRICKLER<br>305 FIELDSTONE DR<br>LA PORTE, IN 46350-6654 | Tax ID: 999999999<br>Account Number: |
| 12586 | PAUL TUCKER<br>30 ELKTON COURT<br>LAFAYETTE, IN 47905 | Tax ID: 999999999<br>Account Number: |
| 12599 | JENNIE F TUMINO<br>PO BOX 675<br>MILLBROOK, NY 12545 | Tax ID: 999999999<br>Account Number: |
| 11540 | LOUISE B TYRER<br>549 LAKESHORE DRIVE<br>#7<br>INCLINE VILLAGE, NV 89451 | Tax ID: 999999999<br>Account Number: |
| 1004689 | JOHN E UHL<br>7 ANVIL DR<br>CUMBERLAND, RI 02864 | Tax ID: 999999999<br>Account Number: |
| 2054641 | CHESTER IVAN UTLEY<br>(FINANCIAL COUNSELORS IRA)<br>3832 W 134TH PL<br>HAWTHORNE, CA 90250-6106 | Tax ID: 999999999<br>Account Number: |

Count   208

Case 1:01-cv-11464-BJLT Document 1609-5 Filed 09/07/05 Page 34 of 48 148

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 11900 | LOIS VANKERHOVEN<br>R9252 CTY HWY J<br>SCHOFIELD, WI 54476-9701 | Tax ID: 999999999<br>Account Number: | |
| 2052604 | BEVERLY VASSALLO<br>6967 PAMPAS WAY<br>FAIR OAKS, CA 95628-3258 | Tax ID: 999999999<br>Account Number: | |
| 12570 | VERA M WACHOWSKI<br>9957 LIVE OAK COURT<br>AFFTON, MO 63123 | Tax ID: 999999999<br>Account Number: | |
| 12549 | WASHMON FAMILY PARTNERSHIP<br>LTD 2<br>ATTN: DOROTHY B WASHMON<br>2101 TREASRE HILLS BLVD<br>SITE 527<br>HARLINGER, TX 78550 | Tax ID: 999999999<br>Account Number: | |
| 12580 | NANCY ELAINE WATKINS<br>246 KIDARE DR<br>PEARLAND, TX 77581 | Tax ID: 999999999<br>Account Number: | |
| 12541 | WILLIAM H WEAKLEY &<br>CLAIRE L WEAKLEY JTWROS<br>15618 OLDRIDGE DRIVE<br>HOUSTON, TX 77084 | Tax ID: 999999999<br>Account Number: | |
| 11538 | JASON E WEBB<br>133 FORD DRIVE<br>NORTH SYRACUSE, NY 13212-2107 | Tax ID: 999999999<br>Account Number: | |
| 1030936 | JOHN R WEBB &<br>JACQUELYN H WEBB JTWROS<br>P O BOX 364<br>FOUNTAIN CITY, IN 47341-0364 | Tax ID: 999999999<br>Account Number: | |

Count    208

Case 1:01-cv-11225-JLT Document 1609-5 Filed 09/07/05 Page 49 of 148

MSGF
MSGF228

**CVS SECURITIES LITIGATION TIMELY EXCLUSION**
CVS SECURITIES LITIGATION REPS

Page 24 of 24
19-May-05 2:38 PM

| Nme IdNo | Name/Address | | |
|---|---|---|---|
| 12569 | HIPPOLYTE WEINUM<br>1025 LINCOLN ROAD<br>WEST HEMPSTEAD, NY 11552 | Tax ID: 999999999<br>Account Number: | |
| 1010725 | ANN RUDD WELTNER &<br>DOUGLAS G WELTNER<br>7777 FERNVALE RD<br>FAIRVIEW, TN 37062 | Tax ID: 999999999<br>Account Number: | |
| 12571 | ROBERT B WERDE<br>1034 SANDE STREET<br>NEENAH, WI 54956 | Tax ID: 999999999<br>Account Number: | |
| 12530 | BERNITA B WHITE<br>4453 BLACHLEYVILLE RD<br>WOOSTER, OH 44691 | Tax ID: 999999999<br>Account Number: | |
| 2026161 | DR. JOE T. WILLS, MD<br>SMITH BARNEY PROTOTYPE PS PLAN<br>INVESCO NAM FLEX ACCOUNT<br>DR. JOE T. WILLS TTEE<br>1707 MATTOX CREEK DRIVE<br>THOMSON, GA 30824-7647 | Tax ID: 999999999<br>Account Number: | |
| 3334 | FRANCES ANDREWS WINESETTE<br>PO BOX 54<br>BETHEL, NC 27812-0054 | Tax ID: 999999999<br>Account Number: | |
| 1030782 | BILLY H WINTERS<br>P O BOX 656<br>HAMPTON, GA 30228-0656 | Tax ID: 999999999<br>Account Number: | |
| 12568 | JAMES H WRIGHT &<br>SHERRY L WRIGHT<br>14924 SEVEN LEAGUE ROAD<br>TYLER, TX 75703 | Tax ID: 999999999<br>Account Number: | |

Count 208

# Exhibit 7E

# NERA

# RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION:
## 2023 FULL-YEAR REVIEW

By Edward Flores and Svetlana Starykh[1]

23 January 2024

# FOREWORD

I am excited to share NERA's "Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review" with you. This year's edition builds on work carried out over more than three decades by many of NERA's securities and finance experts. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts, we hope you will contact us if you want to learn more about our research or our work in securities litigations. On behalf of NERA's securities and finance experts, I thank you for taking the time to review this year's report and hope you find it informative.

**DAVID TABAK, PhD**
Senior Managing Director

# INTRODUCTION

There were 228 new federal securities class action suits filed in 2023, ending a four-year decline in filings seen from 2019 to 2022. The increase in filings was mainly driven by an increase in the number of suits alleging Rule 10b-5 violations. Fueled by turmoil in the banking industry, filings in the finance sector more than doubled in 2023, comprising 18% of new filings. The number of filings related to the environment quadrupled in 2023 compared to 2022.

For the sixth consecutive year, there was a decline in the number of resolutions. There were 190 cases resolved in 2023, consisting of 90 settlements and 100 dismissals, marking the lowest recorded level of resolutions in the last 10 years. More than half of the decline in resolutions was driven by a decrease in the number of settled cases with Rule 10b-5, Section 11, and/or Section 12 claims.

Aggregate settlements totaled $3.9 billion in 2023, with the top 10 settlements of the year accounting for over 66% of this amount. Aggregate plaintiffs' attorneys' fees and expenses totaled $972 million, accounting for 24.9% of the 2023 aggregate settlement value. The average settlement value increased by 17% in 2023 to $46 million, though this was largely driven by the presence of a $1 billion settlement. The median settlement value for 2023 was $14 million, a nominal 7% increase from the inflation-adjusted median settlement value in 2022.



# TRENDS IN FILINGS

From 2019 to 2022, there was a decline in the number of federal filings. In 2023, there were 228 new cases filed, an increase from the 206 cases filed in 2022 (see Figure 1).[2] Standard cases, which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12, accounted for most new filings with 206.[3] In particular, filings involving only Rule 10-5 claims increased by 34% from 137 in 2022 to 184 in 2023. On the other hand, there were only seven merger-objection suits filed in 2023, marking a 10-year low. There was also a decline in filings involving crypto unregistered securities, dropping to 11 in 2023 from the 16 observed in 2022.[4] See Figure 2.

Figure 1.  Federal Filings and Number of Companies Listed in the United States
January 1996–December 2023



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data obtained from World Federation of Exchanges (WFE). The 2023 listings data are as of October 2023.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 2. **Federal Filings by Type**
January 2014–December 2023



Excluding merger-objection and crypto unregistered securities cases, the electronic technology and technology services sector accounted for 22% of new filings, the largest proportion of any sector. After hitting a five-year low in 2022, there was a resurgence in filings in the finance sector in 2023, accounting for 18% of new filings. This is more than double the percentage in 2022 and was partly due to the banking crisis in early 2023. On the other hand, the percentage of suits in the health technology and services sector declined from 27% in 2022 to 19% in 2023, partially driven by a decline in COVID-19-related suits. See Figure 3.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 3.  **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2019–December 2023



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

The Second, Third, and Ninth Circuits continue to be the jurisdictions with the most cases filed, together accounting for 155 of the 210 non-merger-objections, non-crypto unregistered securities filings. The Ninth Circuit witnessed 66 new filings, marking a 22% increase from 2022. The number of filings in the Second Circuit declined by 24% to 54, marking a five-year low. The Third Circuit accounted for 35 filings, more than double the number of cases in 2022. Elsewhere, there were 14 cases filed in the Eleventh Circuit, marking a five-year high. See Figure 4.

Figure 4. **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2019–December 2023



Among filings of standard cases, 31% included an allegation related to missed earnings guidance and 29% included an allegation related to misled future performance.[5] Meanwhile, the percentage of standard cases containing an allegation related to merger-integration issues declined by one-third to 11%, partially driven by a decline in SPAC-related filings. See Figure 5.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 5.  **Allegations**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2019–December 2023



# FILINGS AGAINST FOREIGN COMPANIES

Historically, foreign companies with securities listed on US exchanges have been targeted with securities class action suits at a higher rate than their proportion of US listings, though this trend has reversed over the past two years.[6] In 2023, 18.9% of filings of standard cases were against foreign companies, compared to 24.1% of US listings represented by foreign companies. See Figure 6.

In 2023, there were 39 standard suits filed against foreign companies, a slight increase from 2022 (see Figure 7). Suits against companies in Asia accounted for 19 filings, while another 14 filings were against European companies. Nearly 36% of cases involving foreign companies had an allegation related to regulatory issues, compared to 23% for US companies. See Figure 8.

Figure 6. **Foreign Companies: Share of Filings and Share of Companies Listed on US Exchanges**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2014–December 2023



Figure 7.  **Filings Against Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, or Section 12 by Region
January 2014–December 2023



Note: Foreign issuer status determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 8.  **Allegations by US and Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2023–December 2023



# EVENT-DRIVEN AND OTHER SPECIAL CASES

In this section, we summarize trends in filings in potential development areas that we have identified for securities class actions over the past five years (see Figures 9 and 10). Due to the small number of cases in some categories, the findings summarized here may be driven by one or two cases.

## Crypto Cases

Since 2020, there have been at least 10 crypto-related federal filings each year, comprised of cases involving unregistered securities and shareholder suits involving companies operating in or adjacent to the cryptocurrency sector. In 2023, there were 16 crypto-related federal filings, a 28% decline from the 26 filings observed in 2022.

Figure 9.  **Number of Crypto Federal Filings**
January 2016–December 2023



## 2023 Banking Turmoil

The first securities class action suit alleging problems in the banking industry was filed on 7 December 2022 against bank holding company Silvergate Capital Corporation, which provided a banking platform through its subsidiary, Silvergate Bank.[7] Silvergate Bank's voluntary liquidation on 8 March 2023 started a rapid chain of bank failures that intensified during the spring, which saw the collapse of Silicon Valley Bank, Signature Bank, and First Republic Bank,[8] and continued through 3 November 2023, when Citizens Bank of Sac City was closed by the Iowa Division of Banking.[9] Between December 2022 and October 2023, there were 12 securities class action suits filed against banking institutions. Of those, 11 cases were filed in 2023, representing nearly 30% of all filings in the finance sector. Four of the 11 cases were filed against Credit Suisse Group AG, after Credit Suisse, the second-largest bank in Switzerland, collapsed in March 2023 and was bought by rival UBS Group AG.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

## Environment

In recent years, there has been an increased focus by governments and regulators on issues related to the environment, fossil fuel emissions, quality of drinking water, and climate change. During the past five years, there have been 20 environment-related securities class action suits filed. Eight of these cases were filed in 2023, quadruple the number from the two cases filed in 2022. Among the cases filed in 2023 include a suit against Hawaiian Electric Industries, Inc. in connection with wildfires in Hawaii, two cases related to train derailments with severe environmental consequences against Norfolk Southern Corporation, and three cases involving telecommunication companies AT&T, Verizon Communications, and Lumen Technologies for ownership of thousands of miles of lead-covered cables.

## Cannabis

In 2019, there were 13 securities class action suits filed against defendants in the cannabis industry. The number of filings has declined in subsequent years, with only one suit filed per year in each of 2022 and 2023.

## Money Laundering

In each of 2019 and 2020, three cases were filed with claims related to money laundering. In 2021, there were no such cases filed, while in 2022 and 2023, only one such suit was filed in each year.

## Cybersecurity and Customer Privacy Breach

Since 2019, there have been at least three securities class action suits filed each year related to a cybersecurity and/or customer privacy breach. While there were seven such filings in 2021, there were only three filings in 2023.

## COVID-19

Since March 2020, there have been 85 securities class actions filed with claims related to the COVID-19 pandemic. Of these, 33 cases were filed in 2020. In 2021 and 2022, the number of suits declined to 20 each year, while in 2023, there were only 12 such filings.

## SPAC

Filings related to special purpose acquisition companies (SPACs) peaked in 2021 with 31 securities class action suits filed that year. Since then, new federal filings related to SPACs have declined each year to 24 in 2022 and 14 in 2023.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 10.   Event-Driven and Other Special Cases by Filing Year
             January 2019–December 2023



# TRENDS IN RESOLUTIONS

In 2023, the number of resolved cases declined by 15% to 190 from 223 in 2022, continuing a
six-year decline in resolutions seen since 2018 and marking the lowest recorded level of resolutions
in the last 10 years. Of these resolved cases, 90 were settlements and 100 were dismissals.[10]
While resolutions declined across all categories of cases, more than half of this decline was due to

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

a reduction in the number of settled standard cases, which had a record-setting year in 2022. The number of merger-objection cases resolved declined to nine in 2023, consistent with the reduced number of filings of such cases in recent years. See Figure 11.

Since 2015, more cases filed have been dismissed than settled. This is consistent with historical trends, which indicate that dismissals tend to occur earlier in the litigation cycle and settlements occur later (see Figure 12). For cases filed in 2023, 5% of cases have been dismissed while 95% remain pending as of December 2023.

For cases filed and resolved over the past 20 years, over two-thirds were resolved within three years of the filing of the first complaint, while 16% of cases take longer than four years to resolve (see Figure 13). The median time to resolution is 2.1 years.

**Figure 11.  Number of Resolved Cases: Dismissed or Settled**
January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 12.  **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2014–December 2023



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

The number of resolved cases decreased by 15% to 190 from 223 in 2022, continuing a six-year decline in resolutions seen since 2018 and marking the lowest recorded level of resolutions in the last 10 years.

Figure 13.  Time from First Complaint Filing to Resolution
Excluding Merger Objections and Crypto Unregistered Securities
Cases Filed January 2004–December 2019 and Resolved January 2004–December 2023



# ANALYSIS OF MOTIONS

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the 2014–2023 period in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

## Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. A decision was reached in 74% of these cases, while 17% were voluntarily dismissed by plaintiffs, 8% settled before a court decision was reached, and 1% of motions were withdrawn by defendants. Among the cases in which a decision was reached, 60% of motions were granted (with or without prejudice) while 40% were denied either in part or in full. See Figure 14.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 14.  Filing and Resolutions of Motions to Dismiss
Cases Filed and Resolved January 2014–December 2023



## Motion for Class Certification

A motion for class certification was filed in only 18% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 60% of the cases in which a motion for class certification was filed, while nearly all remaining 40% of cases were resolved with a settlement. Among the cases in which a decision was reached, the motion for class certification was granted (with or without prejudice) in 86% of cases. See Figure 15.

Approximately 64% of decisions on motions for class certification occur within three years of the filing of the first complaint, with nearly all decisions occurring within five years (see Figure 16). The median time is about 2.7 years.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 15.  Filing and Resolutions of Motions for Class Certification
Cases Filed and Resolved January 2014–December 2023



Figure 16.  Time from First Complaint Filing to Class Certification Decision
Cases Filed and Resolved January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TRENDS IN SETTLEMENT VALUES[11]

Aggregate settlements for 2023 totaled $3.9 billion, which marks a slight decline from the inflation-adjusted total of $4.2 billion from 2022.[12]  In 2023, the average settlement value was approximately $46 million, a 17% increase over the 2022 inflation-adjusted average settlement value of $39 million and the second consecutive year that this value has increased (see Figure 17). The increase in the average settlement value is largely driven by a $1 billion settlement by Wells Fargo & Company.[13]

Figure 17.  **Average Settlement Value**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2014–December 2023



When excluding settlements of $1 billion or higher, the average settlement value was $34 million, a decrease of 12% from the $39 million inflation-adjusted amount in 2022 (see Figure 18). The median settlement value was $14.4 million, which is a slight increase from the $13.5 million inflation-adjusted value seen in 2022 (see Figure 19). Aside from a decrease in the percentage of settlements between $10 and $19.9 million and a roughly similar increase in the percentage of settlements between $20 to $49.9 million in 2023, the distribution of settlement values in 2023 looks similar to that of 2022 (see Figure 20).

Figure 18.  **Average Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities,
and Settlements for $0 to the Class
January 2014–December 2023



When excluding settlements of $1 billion or higher, the average settlement value was $34 million in 2023, a decrease of 12% from the $39 million inflation-adjusted amount in 2022.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 19.  **Median Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities,
and Settlements for $0 to the Class
January 2014–December 2023



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 20.  **Distribution of Settlement Values**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2019–December 2023



Aggregate settlements for 2023 totaled $3.9 billion, which marks a slight drop relative to the inflation-adjusted total of $4.2 billion from 2022.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# TOP SETTLEMENTS

The 10 largest settlements in 2023 ranged from $90 million to $1 billion and together accounted for over 66% of the $3.9 billion aggregate settlement amount reached in 2023. Wells Fargo & Company appears twice on this list, taking the top spot in a $1 billion settlement in a case involving misrepresentations regarding its progress in overhauling its internal controls[14] as well as the third-highest spot in a $300 million settlement in a matter involving allegations of misconduct in its auto insurance practices.[15] The Second, Seventh, and Ninth circuits accounted for nine of the top 10 settlements.

Table 1.  **Top 10 2023 Securities Class Action Settlements**

| Rank | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Wells Fargo & Company (2020) (S.D.N.Y.) | 11 Jun 2020 | 8 Sep 2023 | $1,000.0 | $181.1 | 2nd | Finance |
| 2 | The Kraft Heinz Company (N.D. Ill.) | 24 Feb 2019 | 12 Sep 2023 | $450.0 | $92.7 | 7th | Consumer Non-Durables |
| 3 | Wells Fargo & Company (2018) | 14 Feb 2019 | 17 Aug 2023 | $300.0 | $77.0 | 9th | Finance |
| 4 | Exelon Corporation (2019) | 16 Dec 2019 | 7 Sep 2023 | $173.0 | $45.3 | 7th | Utilities |
| 5 | McKesson Corporation | 25 Oct 2018 | 2 Jun 2023 | $141.0 | $36.3 | 9th | Distribution Services |
| 6 | Alexion Pharmaceuticals, Inc. (D. Conn.) | 17 Nov 2016 | 20 Dec 2023 | $125.0 | $32.8 | 2nd | Health Technology |
| 7 | Cardinal Health, Inc. (2019) | 1 Aug 2019 | 11 Sep 2023 | $109.0 | $33.4 | 6th | Distribution Services |
| 8 | Micro Focus International plc (S.D.N.Y.) (SEC 11) | 28 Mar 2018 | 27 Jul 2023 | $107.5 | $36.7 | 2nd | Technology Services |
| 9 | Grupo Televisa S.A.B. | 5 Mar 2018 | 8 Aug 2023 | $95.0 | $29.6 | 2nd | Communications |
| 10 | The Allstate Corporation | 10 Nov 2016 | 19 Dec 2023 | $90.0 | $27.1 | 7th | Finance |
| | **Total** | | | **$2,590.0** | **$591.9** | | |

Table 2 lists the 10 largest federal securities class action settlements through 31 December 2023. Since the Valeant Pharmaceuticals partial settlement of $1.2 billion in 2020, this list has remained unchanged, with settlements ranging from $1.1 to $7.2 billion.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Table 2.  **Top 10 Federal Securities Class Action Settlements (As of 31 December 2023)**

| Rank | Defendant | Filing Date | Settlement Year(s) | Total Settlement Value ($Million) | Financial Institutions Value ($Million) | Accounting Firms Value ($Million) | Plaintiffs' Attorney's Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 2001 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 2002 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 1998 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 2002 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.-Petrobras | 8 Dec 2014 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 July 2002 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 2009 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 2002 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Valeant Pharmaceuticals International, Inc.* | 22 Oct 2015 | 2020 | $1,210 | $0 | $0 | $160 | 3rd | Health Technology |
| 10 | Nortel Networks | 2 Mar 2001 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
| | **Total** | | | $32,334 | $13,249 | $1,017 | $3,358 | | |

\* Denotes a partial settlement, which is included here due to its sizeable amount. Note that this case is not included in any of our resolution or settlement statistics.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# NERA-DEFINED INVESTOR LOSSES

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[16]

A statistical review reveals that while settlement values and NERA-Defined Investor Losses are highly correlated, the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses. For instance, in cases with less than $20 million in Investor Losses, the median settlement value comprises 23% of Investor Losses, while in cases with more than $50 million in Investor Losses, the median settlement value is less than 4% of Investor Losses. See Figure 21.

Since 2014, annual median Investor Losses have ranged from a low of $358 million to a high of $984 million. For cases settled in 2023, the median Investor Losses were $923 million, a 6% decline from 2022 and the second highest recorded value during the 2014–2023 period. Since 2021, the median ratio of settlement amount to Investor Losses has remained stable at 1.8%. See Figure 22.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 21.   Median Settlement Value as a Percentage of NERA-Defined Investor Losses
By Level of Investor Losses
Cases Settled January 2014–December 2023



The median Investor Losses were $923 million, a 6% decline relative to 2022 and the second highest recorded value during the 2014–2023 period.

Figure 22.  Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year
January 2014–December 2023



NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;

- The market capitalization of the issuer immediately after the end of the class period;

- The types of securities (in addition to common stock) alleged to have been affected by the fraud;

- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);

- The stage of litigation at the time of settlement; and

- Whether an institution or public pension fund is named lead plaintiff (see Figure 23).

Among cases settled between January 2012 and December 2023, these factors in NERA's statistical model can explain over 70% of the variation observed in actual settlements.

Figure 23.  **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index
Cases Settled January 2012–December 2023



# TRENDS IN PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

Over the past 10 years, annual aggregate plaintiffs' attorneys' fees and expenses have ranged from a low of $489 million in 2017 to a high of $1.6 billion in 2016. In 2023, aggregate plaintiffs' attorneys' fees and expenses totaled $972 million, a slight decline from the $1.0 billion seen in 2022 (see Figure 24). Plaintiffs' attorneys' fees and expenses comprised roughly 24.9% of the $3.9 billion aggregate settlement value in 2023.

A historical analysis of plaintiffs' attorneys' fees and expenses for cases that have settled since the passage of the PSLRA in 1996 reveals that fees and expenses as a percentage of the settlement amount decline as the settlement size increases. For instance, for cases settled during the 2014–2023 period, median percent fees and expenses ranged from 36.1% in settlements of $5 million or lower to 18.6% in settlements of $1 billion or higher.

In the past 10 years, median percent attorneys' fees have increased for settlements under $5 million and for settlements over $500 million relative to the 1996–2013 period. This increase is more pronounced for settlements of $1 billion or higher, although this is partly due to this category having only five cases in the post-2013 period (see Figure 25).

Figure 24.   Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size
January 2014–December 2023



Plaintiffs' attorneys' fees and expenses comprised roughly 24.9% of the $3.9 billion aggregate settlement value in 2023.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 25.   Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class



Note: Component values may not add to total value due to rounding.

# CONCLUSION

In 2023, federal filings increased by 11% from 206 in 2022 to 228 in 2023, ending a four-year period of annual declines in filings from 2019 to 2022. Of the 228 cases filed in 2023, 206 were standard cases with alleged violations of Rule 10b-5, Section 11, and/or Section 12, and 18.9% of standard cases were against foreign companies. Filings against companies in the information technology and technology services, health technology and services, and the finance sectors accounted for 59% of non-merger objections, non-crypto unregistered securities filings.

The number of resolved cases declined by 15% from 223 in 2022 to 190 in 2023. There were 90 settlements and 100 dismissals, marking the lowest level of both settlements and dismissals in the last 10 years. Excluding the presence of settlements of $1 billion or higher, the average settlement value for 2023 was $34 million and the median settlement value was $14 million. Aggregate settlements totaled $3.9 billion in 2023, with aggregate plaintiffs' attorneys' fees and expenses accounting for $972 million, or 24.9%, of the 2023 aggregate settlement value. Over the last 10 years, the median plaintiffs' attorneys' fees and expenses as a percentage of settlement value has ranged from 18.6% for settlements of $1 billion or higher to 36.1% for settlements of $5 million or lower.

# NOTES

1   This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, Janeen McIntosh, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Vlad Lee, Daniel Klotz, and other of NERA's securities and finance researchers for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to federal case filings and resolutions.

2   NERA tracks securities class actions that have been filed in federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports. IPO laddering cases are presented only in Figure 1.

3   Federal securities class actions that allege violations of Rule 10b-5, Section 11, and/or Section 12 have historically dominated federal securities class action dockets and have often been referred to as "standard" cases. In the analyses of this report, standard cases involve registered securities and do not include cases involving crypto unregistered securities, which will be considered as a separate category.

4   In this study, crypto cases consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/ American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

5   Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

6   In our analysis, a company is defined as a foreign company based on the location of its principal executive office.

7   Class Action Complaint for Violations of the Federal Securities Laws, *In re Silvergate Capital Corporation Securities Litigation*, 7 December 2023.

8   Madeleine Ngo, "A Timeline of How the Banking Crisis Has Unfolded," *The New York Times*, 1 May 2023, available at https://www.nytimes.com/2023/05/01/business/banking-crisis-failure-timeline.html.

9   "Iowa Trust & Savings Bank, Emmetsburg, Iowa, Assumes All of the Deposits of Citizens Bank, Sac City, Iowa," FDIC Press Release, 3 November 2023, available at https://www.fdic.gov/news/press-releases/2023/pr23091.html.

10  "Dismissed" is used here as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, or an ultimately unsuccessful motion for class certification.

11  Unless otherwise noted, the analyses in this section exclude the 2020 partial settlement involving Valeant Pharmaceuticals.

12  For our analysis, NERA includes settlements that have had the first settlement-approval hearing. We do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the 2020 Valeant Pharmaceuticals partial settlement in Table 2 due to its settlement size, this case is not included in any of our resolution, settlement, or attorney fee statistics.

13  While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger-objection and non–crypto unregistered securities cases with settlements of more than $0 to the class.

14  Jon Hill and Jessica Corso, "Wells Fargo Inks $1B Deal to End Investors' Compliance Suit," *Law360.com*, 16 May 2023, available at https://www.law360.com/articles/1677976/.

15  Lauren Berg, "Wells Fargo Investors Ink $300M Deal in Auto Insurance Suit," *Law360.com*, 7 February 2023, available at https://www.law360.com/articles/1573911/.

16  NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

## RELATED EXPERTS



**Edward Flores**
Senior Consultant
New York City: +1 212 345 2955
edward.flores@nera.com



**Svetlana Starykh**
Associate Director, Securities Class Actions Database
New York City: +1 914 448 4123
svetlana.starykh@nera.com



SUBSCRIBE

To receive publications, news, and insights from NERA, please visit **www.nera.com/subscribe**.

*The opinions expressed herein do not necessarily represent the views of NERA or any other NERA consultant.*

## ABOUT NERA

Since 1961, NERA has provided unparalleled guidance on the most important market, legal, and regulatory questions of the day. Our work has shaped industries and policy around the world. Our field-leading experts and deep experience allows us to provide rigorous analysis, reliable expert testimony, and data-powered policy recommendations for the world's leading law firms and corporations as well as regulators and governments. Our experience, integrity, and economic ingenuity mean you can depend on us in the face of your biggest economic and financial challenges.



www.nera.com

© Copyright 2024
National Economic Research Associates, Inc.
All rights reserved. Printed in the USA.

# Exhibit 7F

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Adam S. Levy, et al.</u>

      v.                                    Civil No. 14-cv-443-JL

<u>Thomas Gutierrez, et al.</u>

## MEMORANDUM ORDER GRANTING FINAL APPROVAL OF APPLE SETTLEMENT AND CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES

This securities law class action concerns allegedly untrue or misleading statements made to investors about an agreement to manufacture sapphire for the screen of the Apple iPhone. On March 3, 2020, this court preliminarily approved a Stipulation and Agreement between court-appointed class representatives Douglas Kurz and Palisade Strategic Master Fund (Cayman) and the last remaining defendant, Apple Inc. ("Apple Settlement"), which resolves all claims against Apple in exchange for a $3.5 million cash payment ("Apple Settlement Fund").[1] On May 11, 2020, Kurz and Palisade moved for final approval of the Apple Settlement.[2] In filing that motion, lead counsel for the class, Bernstein Litowitz Berger & Grossman LLP, also moved for an order awarding plaintiffs' counsel their attorneys' fees and the reimbursement of expenses for litigating this case.[3]

This court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal questions) and § 1332(d) (class actions). After conducting a fairness hearing on these motions and independently assessing the plaintiffs' requests for relief, the court grants final approval of the Apple Settlement, but denies in part the requests for fees and costs.

---

[1] Doc. no. 252-1.

[2] Doc. no. 256.

[3] Doc. no. 257.

## I.  **Background**

The court has provided a more thorough accounting of the factual allegations underlaying this class action in prior orders, including its order granting in part and denying in part the defendants' motions to dismiss and its order granting class certification.[4]  The following draws from those prior accounts, restating the facts most pertinent to the current motions, and also recounts the pertinent procedural history.

### A.  **Commencement of this action**

In October 2014, investors of the New Hampshire-based manufacturer GT Advanced Technologies Inc. ("GTAT") began filing putative securities class action complaints against GTAT's officers, its securities underwriters, and Apple, for allegedly untrue or misleading statements made about GTAT's ability to produce sapphire materials exclusively for Apple.  Three days before plaintiffs began filing complaints, GTAT filed for Chapter 11 bankruptcy, which prevented it from being named as a defendant.[5]  Although Apple did not make any of the alleged false statements to investors, the class plaintiffs alleged that Apple, through its relationship with GTAT, exerted control over GTAT's officers, making it statutorily liable as a "control person."

In early 2015, the court consolidated the resulting litigations into one proceeding, appointed Kurz as lead plaintiff for the putative class, and approved Bernstein Litowitz as lead counsel for the putative class.[6]  In July 2015, Kurz filed and served a consolidated class action complaint asserting violations of the Securities Act of 1933 ("Securities

---

[4] See doc. nos. 150 and 245.

[5] In March 2016, GTAT emerged from bankruptcy as a restructured entity.  As part of GTAT's bankruptcy plan, the bankruptcy court deemed all claims against GTAT prior to March 2016, including claims arising in this action, to be satisfied, discharged, and released in full.

[6] Consolidation Order (doc. no. 72); Order Granting Mot. for Appointment of Lead Plaintiff, Approval of Selection of Lead Counsel, and Consolidation of All Related Actions (doc. no. 77).

Act"), the Securities Exchange Act of 1934 ("Exchange Act"), and SEC Rule 10b-5, see 17 C.F.R. § 240.10b–5.

In October 2015, Apple and the other defendants filed multiple motions to dismiss the consolidated complaint.[7]  Before the court issued an order on these motions, Kurz, Palisade, and former-named plaintiff Highmark Ltd. reached a settlement in principle with the underwriter defendants agreeing to resolve all class claims against the underwriter defendants with prejudice in exchange for a $9.7 million cash payment. (These parties did not file their memorandum of understanding with the court.)

In May 2017, the court entered an order granting in part and denying in part the individual defendants and Apple's motions to dismiss and denying the underwriter defendants' motion to dismiss.  Following this order, the then-putative class plaintiffs retained seven claims: (1) untrue statement claims against the individual defendants under Section 10(b) of the Exchange Act; (2) control person claims against the individual defendants under Section 20(a) of the Exchange Act; (3) a control person claim against Apple under Section 20(a) of the Exchange Act; (4) false registration statement claims against the individual and underwriter defendants under Section 11 of the Securities Act; (5) false registration statement claims against the underwriter defendants under Section 12(a)(2) of the Securities Act; (6) control person claims against the individual defendants under Section 15 of the Securities Act; and (7) a control person claim against Apple under Section 15 of the Securities Act.

**B.      Settlements with the individual and underwriter defendants**

In August 2017, Kurz, Palisade, Highmark, and the underwriter defendants finalized their settlement in principle in a Stipulation and Agreement, which they filed

---

[7] Doc. no. 87.

3

with the court.[8]  Then, in October 2017, lead counsel for the then-putative class, counsel for the individual defendants, and counsel for Apple participated in a full day mediation session before retired U.S. District Judge Layn R. Phillips.  As a result of this arm's-length mediation session, Kurz and the individual defendants reached an agreement in principle to settle all claims against the individual defendants for $27 million in cash.  In January 2018, these parties (which excluded Apple) entered into a Stipulation and Agreement of Settlement setting forth the final terms and conditions of the individual-defendant settlement.[9]  The court preliminarily approved both the individual- and underwriter-defendant settlements in February 2018,[10] and entered final judgments approving both the individual- and underwriter-defendant settlements in July 2018.[11]

### C.    Discovery

In March 2018, the class plaintiffs and Apple commenced fact discovery on class and merits issues, which included extensive productions and reviews of documents, as well as the taking of multiple fact and expert witness depositions.[12]  The class representatives represent that: the plaintiffs' class "sought, received, and reviewed" over 400,000 documents from Apple and GTAT (a non-party), totaling over 2.3 million pages; produced over 20,000 documents, totaling nearly 200,000 pages in response to Apple's discovery requests; and, with Apple, collectively deposed more than 20 fact witnesses,

---

[8] Doc. no. 158 (filed in September 2017, after the parties conducted due diligence discovery).

[9] Doc. no. 176.

[10] Doc. no. 179.

[11] Doc. nos. 193-94.

[12] See also Ormsbee Decl. (doc. no. 258-5) ¶¶ 47-62 (thoroughly recounting the parties' discovery efforts and disputes).

including current and former employees of GTAT and Apple involved with the sapphire manufacturing project.[13]  The parties substantially completed discovery in April 2019.

## D.     Class certification

In September 2018, Kurz, as lead plaintiff, and Palisade, as a Securities Act plaintiff, together moved for certification of the proposed Apple Class, appointment of themselves as class representatives, and approval of Bernstein Litowitz as counsel for the certified class.  Apple opposed the motion with an objection, to which the plaintiffs replied, and surreply.  The court held oral argument on the motion in July 2019, after the parties completed their briefing.  In September 2019, the court granted the motion, and thus certified the Apple class under Fed. R. Civ. P. 23(b)(3), appointed Kurz and Palisade as class representatives, and appointed Bernstein Litowitz as class counsel.[14]

## E.     Settlement negotiation

The same month, Apple moved for summary judgment and filed two memoranda challenging GTAT's control person and primary liability theories under federal securities laws.[15]  Apple also filed a related motion to exclude the opinions of the class plaintiffs' damages expert.[16]  Opposition to these motions were due on November 25, 2019.

Before this response deadline, however, the class representatives reached an agreement with Apple under which they would settle all claims in this action against

---

[13] Pls. Mot. for Preliminary Approval of Apple Settlement (doc. no. 252) at 6; see also Ormsbee Decl. ¶¶ 9-11.

[14] Doc. no. 245.

[15] Doc. no. 243.

[16] Doc. no. 244.

Apple in exchange for a cash payment of $3.5 million.[17]  This proposed settlement would be in addition to the two prior settlements approved by the court for $27 million and $9.7 million, resulting in an aggregate cash recovery of $40.2 million for the plaintiff class. Class counsel maintains that if the court approves the Apple Settlement, the combined settlements in this case "will result in the third-largest securities class action recovery in the history of the District of New Hampshire."[18]

**F.     Preliminary approval and notice provided to class members**

In March 2020, the court preliminarily approved the class plaintiffs and Apple's stipulation and agreement resolving this case and approved the plaintiffs' notice to the class.  Thereafter, class counsel supervised the provision of notice to potential class members, informing them of the proposed settlement terms and class counsel's intent to apply for an award of attorneys' fees not to exceed 20% of the Apple Settlement Fund, as well as reimbursement of expenses not to exceed $800,000.  The notice also apprised potential class members of their right to object to the proposed Apple Settlement and the request for fees and expenses, as well as their right to request exclusion from the class and thus the prejudicial effects of the Apple Settlement and related judgments.

As outlined in the preliminary approval order, the court-approved claims administrator, Epiq, mailed more than 212,000 copies of the Apple Settlement Notice to all potential class members who were identifiable with reasonable effort, including class members identified during the process and distribution of the earlier class settlements in

---

[17] Doc. no. 247.  On November 22, the class representatives and Apple filed a joint notice of settlement and motion to stay summary judgment schedule, pending the filing of their stipulation and agreement in January 2020.  Id.

[18] Pls. Mot. for Final Approval of Apple Settlement Mem. (doc. no. 256-1) at 2.

this action.[19]  A summary settlement notice, which informed readers of the proposed settlement and how to obtain copies of the full settlement notice, was also published in Investor's Business Daily and over the PR Newswire.[20]  Downloadable versions of the full settlement notice, as well as other important documents for the litigation, were posted on this litigation's website: www.gtatsecuritieslitigation.com.[21]

Under the court's preliminary approval order, persons intending to object to the proposed settlement or opt out of the class were required to do so by May 25, 2020.  To date, Epiq has received only nine requests for exclusion from individual investors who collectively purchased approximately .003% of the estimated affected GTAT shares during the class period.[22]  Additionally, class counsel represents that no late objections or requests for exclusions have been filed.

### G.      Reaction of the Class

The court received one objection to the proposed settlement with Apple from Mr. John Huddleston, an individual class member who purchased 17.4652 shares of GTAT common stock during the Class Period.[23]  Huddleston contends that Apple should "recompense all stock holders who lost money when GTAAT became Apple company" by paying GTAT investors shares of Apple stock equal in amount to their shares of GTAT stock "with no consideration of the GTAT price per share at the time . . . just shares for

---

[19] In March 2018, Epiq established a case-specific, toll-free telephone helpline, 1-866-562-8790, to accommodate potential Class Members with questions about this action and the earlier settlements.  On March 31, 2020, Epiq updated the helpline to include information regarding the Apple Settlement.  Firenze Decl. (doc. no. 258-3) ¶ 9.

[20] Firenze Decl. ¶ 8.

[21] Id. ¶ 10.

[22] Supp. Firenze Decl. (doc. no. 264-2) ¶ 5.

[23] See Apr. 21, 2020 Ltr. Obj. from John Huddleston (doc. no. 255).

shares . . . ."[24]  No individual or institutional class members expressed any objection to class counsel's motion for attorneys' fees and reimbursement of litigation expenses.

## H.  Fairness Hearing

On June 15, 2020, the court held a fairness hearing on the class plaintiffs' motion for final approval of the class action settlement and class counsel's motion for attorneys' fees.  This hearing was conducted via the court's online video conferencing platform due to health and safety restrictions imposed on in-person hearings by the COVID-19 pandemic.  Class counsel and counsel for Apple virtually appeared, as did several non-participating class members and interested parties.

## II.  <u>Applicable legal standard</u>

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval."  Before granting such approval, the parties and the court must comply with the following procedures.

First, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."  Id. 23(e)(1)(A).  If the parties show that "the court will likely be able to approve the proposal," then "[t]he court must direct notice in a manner to all class members would be bound by the proposal." Id. (e)(1)(B).

"If the proposal would bind class members, the court may approve [a proposed settlement] only after a hearing and only on finding," in its sound discretion, that the proposed settlement "is fair, reasonable, and adequate."  Id. 23(e)(2); see also City P'Ship Co. v. Atlantic Acquisition Ltd. P'Ship, 100 F.3d 1041, 1043 (1st Cir. 1996) (noting that

---

[24] Id.

this determination is within the sound discretion of the trial court). "Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." Id. 23(e)(5).

"In a certified class action," like the case here, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Id. 23(h). The following procedures apply:

(1)     A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2)     A class member, or a party from whom payment is sought, may object to the motion.

(3)     The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

Id.

III.    **Analysis**

This Order incorporates by reference the definitions in the January 10, 2020 Apple Settlement. All capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Apple Settlement.

A.     **Final Settlement Approval**

The class plaintiffs seek final approval of the proposed Apple Settlement, which, if approved, will resolve all outstanding claims in this case with prejudice. Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of

9

class action claims. Fed. R. Civ. P. 23(e). A court may approve a proposed class action settlement only after finding that the proposed settlement is "fair, reasonable, and adequate" and that the plaintiffs have complied with all applicable notice requirements. See id. 23(e)(2). The court considers each requirement in turn.

### 1. Adequacy of the settlement

"The First Circuit [Court of Appeals] has not established a fixed test for evaluating the fairness of a settlement." New England Carpenters Health Benefits Fund v. First Databank, Inc., 602 F. Supp. 2d 277, 280 (D. Mass. 2009) (Saris, J.); see also In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249 (D.N.H. 2007) (Barbadoro, J.) (noting that the court's review "relies on neither a fixed checklist of factors nor any specific litmus test). Many courts in the First Circuit look to the Second Circuit Court of Appeal's Grinnell factors in conducting a fairness analysis:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

First Databank, 602 F. Supp. 2d at 280-81 (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974)); In re StockerYale, Inc. Sec. Litig., No. 1:05-cv-177, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007) (McAullife, J.) (same); In re Relafen Antitrust Litig., 231 F.R.D. 52, 72 (D. Mass. 2005) (Young, C.J.) (same).

Other courts in this Circuit have considered smaller, modified versions of the Grinnell factors. In Tyco, for example, Judge Barbadoro found that a more concise list of factors—specifically, "(1) risk, complexity, expense and duration of the case;

(2) comparison of the proposed settlement with the likely result of continued litigation; (3) reaction of the class to the settlement; (4) stage of the litigation and the amount of discovery completed; and (5) quality of counsel and conduct during litigation and settlement negotiations"—"best fit[] the facts of the case." 535 F. Supp. 2d at 259-60. See also In re Compact Disc Minimum Advertised Price Antitrust Litig., 216 F.R.D. 197, 203 (D. Me. 2003) (Hornby, J.) (using a similar list of factors).

In 2018, the Supreme Court amended Rule 23 to include a separate, but somewhat overlapping list of criteria for courts to consider, including whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D). The advisory committee notes indicate that the goal of the 2018 amendment was "not to displace any factor" developed by any circuit, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."

11

The court, in its discretion, finds the list of considerations in the Federal Rules suitable. As such, it focuses on those four considerations in addition to a more concise list of the Grinnell factors that best fits this case.

### Adequacy of representation

In determining whether to approve a class action settlement, the court should consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A); see also Tyco, 535 F. Supp. 2d at 259-60 (assessing quality of counsel). As noted by the court in its order granting class certification, class representatives Kurz and Palisade have actively participated in this litigation and share the common goal of all class members of maximizing recovery.[25] Class counsel, in turn, is qualified and well-versed in prosecuting and resolving complex securities litigation, including the prior settlements reached in this case. As such, the court repeats its previous class certification finding that the class representatives and class counsel have adequately represented, and will continue to adequately represent, the Apple class.

### Arm's-length negotiation

Rule 23 calls on the court to consider the procedural fairness of the settlement, that is, whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Courts have found "the absence of any indicia of collusion" to be an "important indici[um] of the propriety of settlement negotiations." See Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982). Relatedly, courts applying the Grinnell factors, or a modified version thereof, have also considered counsel's understanding of the strengths and weaknesses of the case in negotiating the settlement amount.

---

[25] Order Granting Motion to Certify (doc. no. 245) at 42.

12

Here, the parties reached a settlement after extensive discovery and motion practice, including full briefing on class certification and partial briefing on a motion for summary judgment against the class. Class counsel represents that it has conducted "an extensive investigation into the alleged fraud by, among other things, reviewing the voluminous public record (including relevant SEC filings, earnings announcements and press releases, transcripts of analyst conference calls, investor presentations, and news articles), and conducting interviews with multiple potential witnesses (including 132 former GTAT employees)."[26] After reaching a settlement with the GTAT-individual and underwriter defendants, class counsel (and Apple) engaged in extensive discovery, consisting of the production and review of millions of pages of documents, the taking or defending of 28 fact, class, and expert depositions, and the preparation of several expert reports. At this advanced stage, the parties "have most of the crucial facts in their possession, making them well-positioned to understand the merits of their case[s]" and negotiate a fair and reasonable settlement that accounts for the risks of further litigation. Tyco, 535 F. Supp. 2d at 261.

Additionally, the court finds no indicia of collusion between the parties. In October 2017, class counsel and counsel for Apple and the individual defendants participated in a full-day mediation before retired U.S. District Court Judge Layn R. Phillips. While the plaintiffs were able to reach an agreement with the individual defendants, they did not achieve a settlement with Apple, thus launching an additional two years of vigorous pre-trial litigation. Class counsel represents that they began exploring the possibility of settlement in September 2019—after the close of discovery and in the same month this court certified the Apple class and Apple moved for summary

---

[26] Pls. Mot. for Final Approval of Apple Settlement Mem. (doc. no. 256-1) at 9.

13

judgment.  See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005)

(a class action settlement is entitled to a "presumption of fairness, adequacy, and

reasonableness" when "reached in arms' length negotiations between experienced,

capable counsel after meaningful discovery") (citation omitted).  The parties reached an

agreement at least two months later, in November 2019, on the eve of the class plaintiffs'

deadline to oppose Apple's motion for summary judgment.  See Bussie v. Allmerica Fin.

Corp., 50 F. Supp. 2d 59, 77 (D. Mass. 1999) (Gorton, J.) ("settlement negotiations . . .

conducted at arms' length over several months . . . support 'a strong initial presumption'

of the Settlement's substantive fairness" (internal citation omitted)).  Had the parties not

agreed on the proposed settlement, they likely would have fully briefed the motion for

summary judgment and (assuming the plaintiffs' case survived) begun preparation for a

civil jury trial.  The court thus finds that the proposed settlement is the result of arm's-

length negotiations.

Adequacy of relief

Under Rule 23, the court should also consider whether "the relief provided for the

class is adequate, taking into account" among other factors, "the costs, risks, and delay of

trial and appeal."[27]  Fed. R. Civ. P. 23(e)(2)(C).  In doing so, this court also considers

many of the Grinnell and modified-Grinnell factors, including the complexity, expense,

---

[27] Rule 23(e)(2)(C) provides three other factors for considering the adequacy of the relief.  The second and fourth factors—the effectiveness of proposed distribution methods and whether the agreement restricts further opt-outs—are neutral factors in this case.  See Order Preliminarily Approving the Apple Settlement (doc. no. 254) (approving the plaintiffs' distribution plan); Hefler v. Wells Fargo & Co., No. CV-02-1510, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) (finding that side agreements setting forth conditions for termination, like the Supplemental Agreement between the class plaintiffs and Apple, have no negative impact on the fairness of a settlement).  And for the third factor—the terms of any proposed award of attorney's fees—the court finds below that class counsel's request for fees is reasonable.  See Part III.B, infra, at 22.

14

and duration of the case and a comparison of the proposed settlement with the likely result of continued litigation.  See Tyco, 535 F. Supp. 2d at 259-60.  It finds the relief adequate.

From the outset, the class plaintiffs' "control-theory" claims against Apple presented several risks in terms of proving their case.  Securities litigation presents an ever-changing legal environment, as evidenced by multiple recent Supreme Court decisions in the area, creating risk and uncertainty for plaintiffs.  See, e.g., Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, 575 U.S. 175 (2015); Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258 (2014).  Few securities cases in the First Circuit have resulted in substantial trial verdicts for plaintiffs.  See Backman v. Polaroid Corp., 910 F.2d 10, 13 (1st Cir. 1990) (en banc) (reversing a jury verdict of $40 million after eight years of litigation).  And even fewer federal courts, if any, have sustained control person claims against companies, like Apple, who are unrelated to the securities issuer at the core of a complaint.

In order to prove the control person theory asserted against Apple, class representatives would have to establish at least three things:  First, they would have to establish the primary liability of the individual GTAT defendants—specifically that they knowingly or recklessly made statements to investors and in securities registration statements that were materially false.  See, e.g., ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008) (discussing elements of a primary violation of Section 10(b) of the Exchange Act); Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002) (articulating three-part test).  Second, they would need to establish loss causation and damages with respect to one or both of the "corrective disclosures" that allegedly revealed the truth regarding the alleged fraud.  See Bricklayers & Trowel Trades Int'l

15

Pension Fund v. Credit Suisse First Bos., 853 F. Supp. 2d 181, 193 (D. Mass. 2012) (Gorton, J.). Finally, if the class plaintiffs established both primary liability and loss causation and damages, they would still need to prove that Apple exercised sufficient control over GTAT to be found liable for GTAT's misrepresentations, and that in doing so, Apple did not act in good faith. See Aldridge, 284 F.3d at 85.

As noted in the motion for final approval and supporting affidavits, the class representatives faced difficult challenges from Apple on all three of these fronts.[28] For example, on the issue of primary liability, Apple contends that GTAT and the individual defendants fully disclosed the risks of the Apple-GTAT venture, that the allegedly false and misleading statements were not false when made, and that at the time the venture was formed, GTAT's directors genuinely believed that GTAT could fulfill the terms of the GTAT-Apple Agreement.[29] If the court at summary judgment or a jury at trial embraced any of these defenses, the class plaintiffs would receive no damages award whatsoever.

Similar challenges would arise in establishing loss causation and damages throughout the Class Period. In its motion for summary judgment, Apple credibly argues that a rational factfinder likely would not conclude that GTAT and Apple intended for their agreement to fail from day one, and would likely find that GTAT's bankruptcy filing was a manifestation of known risks about GTAT's performance rather than a corrective disclosure of a concealed fact.[30] If the jury, when faced with conflicting expert testimony about GTAT's performance and disclosures, chose to embrace a more conservative estimation of loss causation and damages, the jury could have awarded damages less than the amounts agreed to in the combined settlements in this case. Apple has raised further

---

[28] See Pls. Mot for Final Approval of Apple Settlement Mem. (doc. no. 256-1) at 13-18.

[29] See Apple Mot. for Summ. J. Mem. re: Primary Liability (doc. no. 243-1) at 2-3.

[30] See id. at 11-16.

16

defenses as to their actual control, which if believed, could have resulted in only a small apportion, if any, of the proportionate liability for the alleged securities law violations.[31]

In addition, continued litigation would impose substantial costs and delay of recovery that might not be justifiable given the risks identified by the class plaintiffs. While fact and expert discovery is complete in this action, class plaintiffs would still have to fully oppose summary judgment, engage in substantial pre-trial practice include Daubert motions and motions in limine, convince a jury, and also litigate any post-trial motions for relief or appeals to the First Circuit Court of Appeals, all before recovering a possible judgment against Apple. At each of these stages, the class representatives would have faced significant risks related to proving their case. The cost and length of this process, when combined with the uncertainty of any result, thus weighs in favor of approving the Apple Settlement.

Equitable treatment of class members

Rule 23(e)(2)(D) requires that the proposed Apple Settlement "treats class members equitably relative to each other." The proposed settlement satisfies this criterium.

Under the terms of the Apple Settlement, eligible members of the Apple Class that previously submitted or now submit claims approved for payment will receive a pro rata share of the Apple Settlement based on their transactions in GTAT Securities during the Class Period. Claims of the Apple Class will be calculated in the same manner as under the allocation plan approved by the court for members of the Individual Defendant Settlement Class.[32] And the class representatives will receive the same level of pro rata

---

[31] See Apple Mot. for Summ. J. Mem. re: Control Liability (doc. no. 243-2) at 1-3.

[32] See doc. no. 191, at ¶ 9(a).

17

recovery based on their Recognized Claims before factoring in their requested reimbursements for reasonable expenses, which the court grants below.[33]

Reaction of the class to the settlement

In addition to the Rule 23(e)(2) factors, the court also considers the reaction of the class as an important factor in evaluating the fairness and adequacy of the proposed Apple Settlement. See, e.g., Hill v. State St. Corp., No. 09-cv-12146, 2015 WL 127728, at *8 (D. Mass. Jan. 8, 2015) (O'Toole, J.) (finding that the "favorable reaction of class to settlement, albeit not dispositive, constitutes strong evidence of fairness of proposed settlement and supports judicial approval" (internal citation omitted)); Tyco, 535 F. Supp. 2d at 259-60.

As discussed below, class counsel and the independent claims administrator have employed a sweeping direct-mail, print-and-audio-media, and digital-notice program, which was the "best notice" practicable under the circumstances. See Part 2, infra, at 19. To date, the court has been made aware of only one objection to the Apple Settlement and nine requests for exclusion from individual investors.

In April 2020, Objector John Huddleston submitted a handwritten objection to the fairness of the Apple Settlement. In his view of the case, "Apple did not want to risk investing in the R&D" for sapphire materials "so they used investor's money, then just dumped the GTAT (shell) company at stock holders['] expence (sic)."[34] He further asks "[i]f this is what happen (sic), and it is true, why not insist that Apple recompense all stock holders who lost money when GTAT became Apple company" by paying GTAT investors shares of Apple stock equal in amount to their shares of GTAT stock "with no

---

[33] See Part III.B.3, infra, at 30.

[34] Doc. no. 255.

18

consideration of the GTAT price per share at the time . . . just shares for shares . . . ."[35] Huddleston did not appear at the fairness hearing. Class counsel has orally represented that Huddleston relayed he would not be attending and had nothing further to add.

Huddleston's objection is overruled for two reasons. First, Huddleston's request for shares, by its plain terms, assumes that certain underlying facts, which have not been proven at this stage of the litigation, are in fact true. Additionally, the court cannot force Apple to agree to settlement terms other than the one proposed by the parties. The court thus finds that the class's reaction to the Apple Settlement supports the proposed negotiated resolution.

2.    *Notice of settlement*

Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable means," for any class certified under Rule 23(b)(3). Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (viii) the binding effect of a class judgment on members under Rule 23(c)(3)." Id.

In addition to Rule 23, Due Process similarly requires that notice be sent in a manner "reasonably calculated to reach potential class members." Tyco, 535 F. Supp. 2d at 249; see also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 174 (1974); Compact Disc,

---

[35] Id.

19

216 F.R.D. at 203. The Private Securities Litigation Reform Act ("PSLRA") separately requires that in private securities litigation, the notice of settlement state the amount of the settlement proposed to be distributed, the potential outcome of the case had the plaintiff prevailed, the amount of any attorneys' fees or costs sought, contact information for plaintiffs' counsel, and a brief explanation of the reasons for settlement. 15 U.S.C. § 78u–4(a)(7).

Here, class counsel and the third-party claims administrator employed an effective notice program involving direct mail, publications in relevant financial media, and the establishment of a class litigation website that provided potential class members with information concerning the Apple settlement.[36] The court-approved Apple Settlement Notice includes all the information required by Rule 23(c)(2)(B) and the PLSRA. And the plaintiffs have regularly updated the website with downloadable copies of important case documents, including the Apple Settlement Notice, the Apple Settlement, the court's order preliminarily approving the Apple settlement, and the court-approved plans of allocation and claim forms previously mailed in connection with the earlier settlements in this case.[37]

This combination of individual mailing, supplemented by publication in widely-circulated media and on a litigation website, tracks closely with the notice programs previously approved by this court in this case, and compares favorably with programs employed in other securities litigations. See, e.g., In re Advanced Battery Techs., Inc.

---

[36] In its Order Preliminarily Approving the Apple Settlement, the court found that these procedures for distribution and publication of notice and the form of such notice constituted the best notice practicable under the circumstances. See doc. no. 254.

[37] The court also observes that class counsel continued to monitor the phone numbers listed in the class notice after the outbreak of COVID-19 by forwarding these numbers to their personal cellular devices, to the extent they could no longer work in the office due to the pandemic.

Sec. Litig., 298 F.R.D. 171, 182-83 (S.D.N.Y. 2014) (approving a notice program for a relatively small settlement administered through post-card mailings, publication over PR Newswire and in Investor's Business Daily); Schwartz v. TXU Corp., No. 3:02-cv-2243-K, 2005 WL 3148350, at *10-11 (N.D. Tex. Nov. 8, 2005) (finding that notice by first-class mail to all members identifiable by reasonable effort, supplemented by publication on settlement website and in a national newspaper "more than satisfie[d]" notice requirements); In re Cabletron Sys., Inc. Sec. Litig., 239 F.R.D. 30, 35-36 (D.N.H. 2006) (approving a notice program that distributed notice packets to individual investors and nominees, published a summary notice in one national newspaper, and provided a toll-free telephone hotline). The notice program thus met or exceeded all relevant notice requirements.

**B.     Attorneys' fees and litigation expenses**

Class counsel also seek an award of attorneys' fees in the amount of 20% of the $3.5 million Apple Settlement Fund, $700,000 in total, as well as $596,646.05 in reimbursements for litigation expenses. They also ask that the court approve a $6,937.50 incentive payment from the Apple Settlement Fund to Kurz to reimburse his reasonable costs and expenses directly related to his representation of the Apple Class, and a $24,713.75 incentive payment to Palisade for similarly incurred costs and expenses. As discussed herein, the court grants counsel's request for reasonable attorneys' fees and grants in part and denies in part its request for reimbursed costs and expenses.

*1.     Notice*

"In a certified class action," notice of a motion for attorneys' fees and nontaxable costs by class counsel "must be . . . directed to class members in a reasonable manner."

Fed. R. Civ. P. 23(h)(1). As discussed above,[38] the court finds that the notice of the Apple Settlement, which included class counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, was sent to all class members who could be identified with reasonable effort. It also finds that the form and method of notifying the Apple Class of the motion for an award of attorneys' fees and expenses (1) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the PSLRA, as amended, and all other applicable law and rules, (2) constituted the best notice practicable under the circumstances, and (3) constituted due and sufficient notice to all persons and entities entitled thereto.

2.      *Reasonableness of requested fees*

        "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client" may be "entitled to a reasonable attorney's fee from the fund as a whole."  Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980); see In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56 F.3d 295, 305 (1st Cir. 1995); Tyco, 535 F. Supp. 2d at 265.  In assessing the reasonableness of fees awarded from a common fund, courts may employ either a percentage-of-the-fund ("POF") method or a "lodestar" method.[39]  See Thirteen Appeals, 56 F.3d at 307.  The court finds that the requested POF fee is reasonable when cross-checked with the lodestar approach.  See Tyco 535 F. Supp. 2d at 265.

---

[38] See Part III.A.2 supra.

[39] The lodestar ordinarily is calculated by multiplying the number of hours reasonably incurred by the reasonable hourly rate for the services rendered.  Gisbrecht v. Barnhart, 535 U.S. 789, 802 (2002).  "Using a lodestar cross-check ensures that the fees are also reasonable in light of the actual amount of work performed."  Tyco, 535 F. Supp. 2d at 265 (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002)).

Both the Supreme Court and the Court of Appeals have approved of the POF method in common fund cases, noting that, as the prevailing method, it "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." Id. at 308; see also Blum v. Stenson, 465 U.S. 886, 900 n.16 (1984). District courts in the First Circuit have "extremely broad" latitude to determine an appropriate fee award under the POF method. Id. at 309.

"Unlike the Second and Third Circuits, the First Circuit [Court of Appeals] does not require courts to examine a fixed laundry list of factors." Tyco, 535 F. Supp. 2d at 256-66 (citing Thirteen Appeals, 56 F.3d at 307–09; In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305–06 (3d Cir.2005); Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000)). As such, the court "draw[s] loosely" on the factors employed by other circuits that are most relevant here, including: "fee awards in similar cases, the complexity, duration, and risk involved in the litigation, . . . the reaction of the class, and public policy considerations," if any. See Tyco, 535 F. Supp. 2d at 266 (original numeration omitted).

Comparison to similar cases

Class counsel contends that "a review of attorneys' fees awarded in securities class actions with comparably sized settlements in the District of New Hampshire strongly supports the reasonableness of the 20% fee request." In Braun v. GT Solar Int'l., Inc., for example, this court awarded attorneys' fees in the amount of 25% of a $10.5 million settlement.[40] Similarly, in Sloman v. Presstek, Inc., the court awarded 30% of a $1.25 million settlement as attorneys' fees.[41] See also StockerYale, 2007 WL 4589772, at *6-7

---

[40] See Order and Final Judgment (doc. no. 139), No. 1:08-cv-312-JL, at *3 (D.N.H. Sept. 27, 2011).

[41] Judgment (doc. no. 139), No. 06-cv-377-JL, at *7 (D.N.H. July 20, 2009).

23

(awarding 33% of $3.4 million settlement); In re Cabletron Sys., Inc. Sec. Litig., 239 F.R.D. 30, 45 (D.N.H. 2006) (Smith, J., by designation) (awarding 21.5% of $10.5 million settlement).

The court also observes that in 2018, it approved counsel's free request for 22% of the $36.7 million aggregate amount reached under the then-putative class plaintiffs' settlements with the GTAT individual defendant and underwriter defendants.[42] The court approved such a fee request towards the beginning of fact discovery and well-before the parties litigated the motion for class certification. When compared with the POF awards in these similar cases, class counsel's current request for a fee of 20% "does not stand out as unusual." Tyco, 535 F. Supp. 2d at 268.

Complexity, duration, and risk

The parties to this litigation litigated a considerably complex case, for which counsel assumed substantial risk in pursuing. To succeed in their claims against Apple, class plaintiffs would have to prove the primary liability of the individual defendants, who have already settled, and the fact that Apple "controlled" these defendants' actions. In sustaining the class plaintiffs' control person claims at the Rule 12(b) stage, the court found the plaintiffs allegations against Apple were "thin" and "barely sufficient" to withstand Apple's motion to dismiss.[43] Additionally, in Apple's motion for summary judgment, it asserted multiple defenses against the merits of the class plaintiffs' case, which presented additional difficulties for proving the merits of the class plaintiffs' claims.[44]

---

[42] See Order awarding attorneys' fees (doc. no. 196) (awarding nearly $8 million in total fees).

[43] Doc. no. 150 at 74.

[44] See Apple Mot. for Summ. J. Mems. (doc. nos. 243-1 & 243-2).

24

Plaintiffs' counsel conducted the litigation and achieved the Apple Settlement with skill, perseverance, and diligent advocacy. In connection with the prosecution and settlement of the claims against Apple, class counsel, among other things:

- successfully moved for certification of the Apple Class;[45]

- obtained, reviewed, and analyzed nearly half a million documents totaling over two million pages produced in discovery by Apple and multiple non-parties subpoenaed by class counsel, including GTAT;[46]

- conducted, defended, or actively participated in 28 fact, class, and expert depositions, including depositions of the Lead Plaintiff and three employees of the Securities Act Plaintiff, numerous Apple executives, former GTAT employees, directors, and executives, and expert witnesses;[47] and

- negotiated, at arms-length, the final terms of the Apple Settlement with Apple's Counsel and filed the related Settlement documents.[48]

As discussed in greater detail both above and in the class plaintiffs' filings, the class plaintiffs' case faced substantial risks with respect to liability, loss causation and damages. While class counsel maintains that it had sufficient responses and evidence to rebut each of Apple's arguments, it also faced many uncertainties regarding the outcome of the case. Had counsel not achieved the Apple Settlement, there would remain a significant risk that the Apple Class may have recovered less than the $3.5 million proposed settlement or worse, nothing, from Apple in this Action. Counsel's extensive litigation in the face of these risks, coupled with its assumption of a contingency fee providing no guarantee of compensation, support the reasonableness of the requested fee. See CVS, 2016 WL 632238, at *9 ("Where, as here, lead counsel undertook this action

---

[45] Decl. ¶¶ 4, 37-47.

[46] Decl. ¶¶ 4, 9-10, 54-56.

[47] Decl. ¶¶ 4, 11, 40, 42, 57-58.

[48] Ormsbee Decl. (doc. no. 258) ¶ 70-71.

25

on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel."); see also In re OCA, Inc. Sec. & Derivative Litig., No. 05-2165, 2009 WL 512081, at *22 (E.D. La. Mar. 2, 2009) (where counsel faced challenges in establishing scienter and loss causation and in proving liability and damages at trial, "the risk plaintiffs' counsel undertook in litigating this case on a contingency basis must be considered in its award of attorneys' fees, and thus an upward adjustment is warranted"); Maley v. Del Glob. Techs. Corp., 186 F. Supp. 2d 358, 372 (S.D.N.Y. 2002) ("Class counsel undertook a substantial risk of absolute non-payment in prosecuting this action, for which they should be adequately compensated." (internal quotation marks and citation omitted)).

Reaction of the class to date

According to class counsel, the claims administrator has disseminated over 200,000 copies of the Apple Settlement Notice to potential class members informing them, among other things, of class counsel's intention to apply for an award of attorneys' fees not to exceed 20% of the Apple Settlement Fund and reimbursement of up to $800,000 in litigation expenses.[49]  Copies of class counsel's motion for attorneys' fees and supporting documents are also available on the class litigation website.  Class counsel reports that it has received only nine requests for exclusion from the class.

The court accepts that the fee sought by class counsel has been reviewed and approved as reasonable by the court-appointed class representatives, who have overseen the prosecution and resolution of the claims asserted against in the Action against Apple, on behalf of the Apple Class.  Moreover, it finds that to date, neither class counsel nor the court have received objections to the amount of fees and expenses requested.  The lack of

---

[49] Ormsbee Decl. re: Fees (doc. no. 258-5) ¶¶119, 129.

objections from class members to date weighs in favor of approving the requested award. See Roberts v. TJX Cos., Inc., No. 13-cv-13142, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016) (Burroughs, J.); CVS, 2016 WL 632238, at *9; Tyco, 535 F. Supp. 2d at 261. The absence of objections by institutional investors further bolsters the case for approving the fee request. See In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 305 (3d Cir. 2005) ("Moreover, . . . a significant number of investors in the class were 'sophisticated' institutional investors that had considerable financial incentive to object had they believed the requested fees were excessive. The District Court did not abuse its discretion in finding the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request.").

### Public policy considerations

The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" Bateman, 472 U.S. at 310 (citation omitted); see also Medoff v. CVS Caremark Corp., No. 09-cv-554-JNL, 2016 WL 632238, at *9 (D.R.I. Feb. 17, 2016) ("[P]ublic policy supports rewarding counsel for prosecuting securities class actions, especially where counsel's dogged efforts—undertaken on a wholly contingent basis—result in satisfactory resolution for the class." (citing Tyco, 535 F. Supp. 2d at 270)); In re Flag Telecom Holdings, Ltd. Sec. Litig., No. 02-cv-3400 CM PED, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Class Counsel for the value of their efforts, taking into account the enormous risks they undertook"). Accordingly, the court finds that granting

27

class counsel's application for fees and expenses furthers public policies favoring private enforcement of federal securities laws.

Lodestar cross-check

Class counsel's fee request also appears reasonable when cross-checked under the lodestar approach. "The lodestar approach (reasonable hours spent times reasonable hourly rates, subject to a multiplier or discount for special circumstances, plus reasonable disbursements) can be a check or validation of the appropriateness of the percentage-of-funds fee, but is not required." New England Carpenters, 2009 WL 2408560, at *1 (citation omitted); accord Thirteen Appeals, 56 F.3d at 307.

Several circuit courts have encouraged district judges to use the lodestar method as a cross-check on proposed POF awards.[50] See, e.g., Rite Aid, 396 F.3d at 305; Vizcaino, 290 F.3d at 1043; Goldberger, 209 F.3d at 43. "When the lodestar is used in this way, the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." Tyco, 535 F. Supp. 2d at 270 (citing Thirteen Appeals, 56 F.3d at 307. Such a results-oriented focus "lessens the possibility of collateral disputes [regarding time records] that might transform the fee proceeding into a second major litigation." Thirteen Appeals, 56 F.3d at 307.

Here, class counsel represents that it has spent a total of 7,574.60 hours of attorney and other professional support time prosecuting and resolving the claims asserted against

---

[50] See also MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.122, at 193 (2004) ("[T]he lodestar is . . . useful as a cross-check on the percentage method by estimating the number of hours spent on the litigation and the hourly rate, using affidavits and other information provided by the fee applicant. The total lodestar estimate is then divided into the proposed fee calculated under the percentage method. The resulting figure represents the lodestar multiplier to compare to multipliers in other cases.").

28

Apple from May 19, 2018—the date the court last approved fees in this case—through and including April 30, 2020.[51] They further contend that, based on counsel's 2018 hourly rates (approved by the court in connection with the 2018 fee award), their collective lodestar for their present motion for fees is $4,035,034.25[52]—an amount greatly exceeding the value of class counsel's $700,000 POF request. In light of class counsel's detailed submissions, the courts familiarity with the work this case required, and the court's prior findings for the 2018 Fee Award, the court finds that hours and hourly rates asserted in class counsel's fee application are reasonable.

Taking the lodestar amount as an accurate indication of the work reasonably necessary to produce the Apple Settlement, the resulting lodestar multiplier of 0.17 reflects that counsel have assumed a very significant discount on the value of their time.[53] This "negative" multiplier is significantly below multipliers commonly awarded in securities class actions and comparable litigations. See, e.g., In re Comverse Tech., Inc. Sec. Litig., No. 06-CV-1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) (awarding fee representing a 2.78 multiplier and noting that, "[w]here, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar") (citation omitted); New England Carpenters, 2009 WL 2408560, at *2 (awarding 8.3 multiplier); Tyco, 535 F. Supp. 2d at 271 (awarding 2.7 multiplier). The fact the multiplier is negative, that is, below 1, also shows the requested POF fee is reasonable. See, e.g., In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.,

---

[51] See Ormsbee Decl. re: Fees (doc. no. 258-5) ¶ 110.

[52] Id. (Bernstein Litowitz, counsel for Kurz); Savett Decl. (doc. no. 258-6) (Berger Montague PC, counsel for Palisade); Eber Decl. (doc. no. 258-7) (Orr & Reno, as local counsel); Summary of Lodestar and Expenses (doc. no. 258-4).

[53] The 0.17 lodestar multiple results from dividing the $700,000 POF request by the $4,035,034.25 in total lodestar fees.

29

909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving fee with negative multiplier and noting that the negative multiplier was a "strong indication of the reasonableness of the [requested] fee"); FLAG Telecom, 2010 WL 4537550, at *26 ("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request.").

3.      *Expenses*

Class counsel has also requested reimbursement of $596,646.05 in expenses. "[D]istrict courts enjoy wide latitude in shaping the contours of such awards." In re Fid./Micron Sec. Litig., 167 F.3d 735, 736–37 (1st Cir. 1999) (citing Thirteen Appeals, 56 F.3d at 309). "Such awards are permissible in 'common fund' cases—but the district court, called upon to make awards of fees and/or expenses in such a case, functions as a quasi-fiduciary to safeguard the corpus of the fund for the benefit of the plaintiff class." Id. (internal citation omitted). "Consequently, a reviewing court has the right, if not the obligation, to view skeptically efforts by attorneys to charge substantial expenses to that account." Id.

In the exhibits to its fee and expense request, class counsel has provided detailed breakdowns of their expenses, including summary tables, breaking the expenses down by category. According to the tables, it seeks reimbursement for legal research, travel and lodging, printing, court reporting, experts, online document hosting, and certain other miscellaneous expenses. No class members have objected to the expense request. Given the legitimate needs arising from the size and complexity of this case, these expense requests are generally reasonable. See Fid./Micron, 167 F.3d at 737 ("[L]awyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund . . . expenses, reasonable in amount,

30

that were necessary to bring the action to a climax."); Latorraca  v. Centennial Techs. Inc., 834 F. Supp. 2d 25, 28 (D. Mass. 2011) (Gorton, J.) ("In addition to attorneys' fees, lawyers who recover a common fund for a class are entitled to reimbursement of out-of-pocket expenses incurred during the litigation." (citation omitted)).

The court expresses reservation, however, at the amount of expenses requested in light of the size of the Apple Settlement Fund and class counsel's request for fees. Counsel's request for reimbursement of nearly $600,000 in expenses approaches the pre-interest value of its $700,000 request for attorneys' fees.  When combined, these requests—totaling nearly $1.3 million—comprise over 37% of the $3.5 million in funds obtained from Apple for the benefit of members of the Apple Class.[54]  Thus, while class counsel's request for reimbursement, at first glance, appears reasonable given the number of depositions taken and the expert issues at play, the court finds that the request, when viewed in context of this case, "promises to yield an unreasonable," or at the very least, an inequitable result and must be "trimmed back."  Fid./Micron, 167 F.3d at 737.

For these reasons, the court, in its discretion, approves a capped reimbursement of $400,000 from the Apple Settlement Fund for class counsel's litigation expenses.  This reduced reward, when combined with awarded attorneys' fees, totals $1.1 million or nearly 31.5% of the Apple Settlement Fund—a division the court finds more equitably treats the interests of the Apple Class.  Additionally, the capped reimbursement award is reasonable when viewed in combination with the total settlements and fee awards

---

[54] The court also observes that as part of the prior settlements reached with the individual and underwriter defendants, it awarded class counsel attorneys' fees in the amount of 22% of the aggregate $40.2 million settlement fund, and only $227,402.76 in reimbursement of litigation expenses from the settlement funds.

achieved in this litigation—by this court's math, $43.7 million and $10.17 million respectively.

Finally, the court finds that the requests for reimbursements for class representatives Kurz and Palisade's costs and expenses directly related to their representation of the Apple Class is reasonable and thus, approves the reimbursements in the amounts requested by class counsel's motion.

## IV. **Conclusion**

For the above-stated reasons, the court:

▪ overrules the sole objection to the proposed Apple Settlement;

▪ approves the Apple Settlement (consisting of the terms and conditions of the Stipulation and Agreement dated January 10, 2020) and the plan of allocation;

▪ approves an award of attorneys' fees in the amount of 20% of the Apple Settlement Fund, plus $400,000 in reimbursement of litigation expenses;

▪ approves incentive awards in the amounts of $6,937.50 and $24,713.75 from the Apple Settlement Fund to class representatives Kurz and Palisade, respectively;

▪ grants the motion for final approval of the Apple Settlement;[55] and

▪ grants in part and denies in part class counsel's motion for fees and costs.[56]

The court shall retain exclusive jurisdiction over the Settling Parties and the "Class Members," as defined in the Apple Settlement, for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Apple Settlement and this Order.

---

[55] Doc. no. 256.

[56] Doc. no. 257.

Class counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which it, in good faith, believes reflects their respective contributions to the initiation, prosecution, and settlement of the claims asserted in the Action against Apple.

In the event that the Apple Settlement is terminated or the Effective Date of the Apple Settlement otherwise fails to occur, this Order and any subsequent judgment shall be rendered null and void to the extent provided by the Apple Settlement.

A separate judgment as against Apple shall follow.


**SO ORDERED.**

Joseph N. Laplante
United States District Judge


Dated: August 27, 2020

cc: Counsel of record

33

# Exhibit 7G

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul D. Leake
Lisa Laukitis
Shana A. Elberg
Evan A. Hill
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc,** *et al.,* | **Case No. 22-22549 (JLG)** |
| **Debtors.**[1] | **(Jointly Administered)** |

**FOURTH INTERIM FEE APPLICATION OF
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP FOR
COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD
FROM SEPTEMBER 1, 2023 THROUGH AND INCLUDING DECEMBER 31, 2023**

| *General Information* | |
|---|---|
| Name of Applicant: | Skadden, Arps, Slate, Meagher & Flom LLP |
| Authorized to Provide Services to: | Endo International plc, *et al*. |

---

[1] The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

| | |
|---|---|
| Petition Date: | August 16, 2022 |
| Date of Retention: | September 30, 2022, *nunc pro tunc* to August 16, 2022 |

### Summary of Fees and Expenses Sought in the Application

| | |
|---|---|
| This is a/an: | ___ monthly application |
| | _x_ interim application |
| | ___ final application |
| Period for Which Compensation and Expense Reimbursement is Sought: | September 1, 2023 through and including December 31, 2023 |
| Amount of Actual, Reasonable and Necessary Compensation Attributable to this Application Period: | $18,864,576.48[2] |
| Amount of Expense Reimbursement Requested as Actual, Reasonable and Necessary: | $6,369.87 |
| Voluntary Fee Waiver and Expense Reduction in this Application Period: | $270,538.17 |
| Total Compensation and Expense Reimbursement attributable to this Application Period: | $18,870,946.35[3] |

### Summary of Fees, Professionals, Rates and Staffing

| | |
|---|---|
| Compensation Sought in this Application Already Sought Pursuant to Monthly Fee Applications but Not Yet Allowed: | $15,091,661.18[4] [80% Fee Amount] |

---

[2]   This amount includes the 20% holdback for the Application Period, the payment of half of which is being sought at this time.

[3]   Skadden submitted monthly fee statements for the months covered by this Application Period on various dates through throughout the Application Period. This amount includes the 20% holdback for the Application Period.

[4]   Pursuant to the Compensation Procedures Order (as defined below), and including amounts received in connection with services rendered during the First Interim Application Period, the Second Interim Application Period and the Third Interim Application Period (each as defined below), Skadden has already received payments for compensation and expenses totaling $74,095,029.43 as of January 31, 2024. This amount does not reflect payment of $3,844,707.90 in fees and $592.80 in expenses for December 2023 (*i.e.*, 80% of fees and 100% of expenses included in the December monthly fee statement). Skadden anticipates that these sums will be paid pursuant to the Compensation Procedures Order prior to a hearing on this Application.

*(cont'd)*

| | |
|---|---|
| Expenses Sought in this Application Already Sought Pursuant to Monthly Fee Applications but Not Yet Allowed: | $6,369.87 |
| Blended Rate in this Application for All Attorneys: | $1,283.24 |
| Blended Rate in this Application for All Timekeepers: | $1,247.90 |
| Number of Professionals and Paraprofessionals Included in this Application: | 128 |
| Number of Professionals and Paraprofessionals Who Billed Fewer than 15 Hours to these Cases: | 66[5] |

_____
*(cont'd from previous page)*

[5]     This number does not include partners and counsel who billed fewer than one hour and associates and paraprofessionals who billed fewer than three hours in any given month.  Skadden voluntarily reduced its requested fees by writing off time for such professionals in advance of filing the applicable monthly fee statements.

| Increase in Rates: | None during the Application Period. Effective September 1, 2023, Skadden implemented firm-wide step increases to reflect class on class progression and promotions of certain Skadden professionals. These increases constituted annual "step increases," as defined in section B.2.d of the U.S. Trustee Guidelines (defined below), determined by Skadden in the ordinary course regarding attorneys and other billers throughout the firm due to advancing seniority and promotion.  Pursuant to the U.S. Trustee Guidelines, such "step increases" do not constitute "rate increases." |
|---|---|
| | On January 1, 2024, after the Application Period, Skadden implemented firm-wide rate increases applicable generally to clients in both bankruptcy and non-bankruptcy matters. Pursuant to Skadden's retention order [Docket No. 319], Skadden provided advance notice of these increases to the Debtors, the United States Trustee, the official committee of unsecured creditors, the official committee of opioid claimants, and any party that had requested notice pursuant to Bankruptcy Rule 2002 [Docket No. 990]. |

## PRIOR FEE STATEMENTS OF
## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

| Date Filed | Docket Number | Period Covered | Fees Requested[6] | Expenses Requested | Fees Authorized | Expenses Authorized |
|---|---|---|---|---|---|---|
| 11/1/2022 | 547 | 8/16/22 – 8/31/22* | $2,578,051.27 (80% of $3,222,564.09) | $164,395.29 | $2,578,051.27 (80% of $3,222,564.09) | $164,395.29 |
| | | 9/1/22 – 9/30/22* | $4,807,091.952 (80% of $6,008,864.90) | $96,662.95 | $4,807,091.952 (80% of $6,008,864.90) | $96,662.95 |
| 11/30/2022 | 794 | 10/1/22 – 10/31/22* | $4,978,106.75 (80% of $6,222,633.44) | $74,598.90 | $4,978,106.75 (80% of $6,222,633.44) | $74,598.90 |
| 12/30/2022 | 1115 | 11/1/22 – 11/30/22* | $5,889,231.85 (80% of $7,362,231.85) | $77,935.22 | $5,889,231.85 (80% of $7,362,231.85) | $77,935.22 |
| 1/30/2023 | 1270 | 12/1/22 – 12/31/22* | $3401,912.31 (80% of $4,252,390.39) | $41,256.83 | $3401,912.31 (80% of $4,252,390.39) | $41,256.83 |
| 2/28/2023 | 1413 | 1/1/23 – 1/31/23** | $5,095,219.22 (80% of $6,369,024.02) | $136,194.50 | $5,095,219.22 (80% of $6,369,024.02) | $136,194.50 |
| 3/31/2023 | 1762 | 2/1/23 – 2/28/23** | $4,465,042.66 (80% of $5,581,303.33) | $17,117.08 | $4,465,042.66 (80% of $5,581,303.33) | $17,117.08 |
| 4/30/2023 | 1850 | 3/1/23 – 3/31/23** | $4,676,649.85 (80% of $5,845,812.31) | $22,155.70 | $4,676,649.85 (80% of $5,845,812.31) | $22,155.70 |
| 5/31/2023 | 2137 | 4/1/23 – 4/30/23** | $2,884,236.99 (80% of $3,605,296.24) | $3,734.55 | $2,884,236.99 (80% of $3,605,296.24) | $3,734.55 |
| 6/30/23 | 2364 | 5/1/23- 5/31/23*** | $3,866,305.76 (80% of $4,832,882.20) | $10,346.50 | $3,866,305.76 (80% of $4,832,882.20) | $10,346.50 |

---

[6]  Pursuant to informal discussions with David Klauder, the court appointed Fee Examiner (as defined below), (1) Skadden agreed to voluntarily reduce its fees sought in connection with the First Interim Application in the amount of $112,388.10 and its expenses sought in the amount of $12,914.66, aggregating a total reduction of fees and expenses in the amount of $125,302.76; (2) Skadden agreed to voluntarily reduce its fees sought in connection with the Second Interim Application in the amount of $54,000; and (3) Skadden agreed to voluntarily reduce its fees sought in connection with the Third Interim Application in the amount of $53,000 and its expenses in the amount of $500, aggregating a total reduction of fees and expenses in the amount of $53,500.

| Date Filed | Docket Number | Period Covered | Fees Requested[6] | Expenses Requested | Fees Authorized | Expenses Authorized |
|---|---|---|---|---|---|---|
| 7/30/23 | 2553 | 6/1/23-6/30/23*** | $3,821,734.25 (80% of $4,777,167.81) | $18,516.79 | $3,821,734.25 (80% of $4,777,167.81) | $18,516.79 |
| 8/30/23 | 2750 | 7/1/23-7/31/23*** | $4,980,928.05 (80% of $6,226,160.06) | $59,287.61 | $4,980,928.05 (80% of $6,226,160.06) | $59,287.61 |
| 9/29/23 | 2987 | 8/1/23-8/31/23*** | $3,906,526.77 (80% of $4,883,158.46) | $59,847.90 | $3,906,526.77 (80% of $4,883,158.46) | $59,847.90 |
| 10/30/23 | 3080 | 9/1/23-9/30/23 | $3,242,126.94 (80% of $4,052,658.67) | $1,104.74 | $3,242,126.94 (80% of $4,052,658.67) | $1,104.74 |
| 11/30/23 | 3295 | 10/1/23-10/31/23 | $3,857,654.80 (80% of $4,822,068.50) | $1,023.40 | $3,857,654.80 (80% of $4,822,068.50) | $1,023.40 |
| 12/29/23 | 3489 | 11/1/23-11/30/23 | $4,147,171.55 (80% of $5,183,964.44) | $3,648.93 | $4,147,171.55 (80% of $5,183,964.44) | $3,648.93 |
| 1/30/24 | 3595 | 12/1/23-12/31/23 | $3,844,707.90 (80% of $4,805,884.87) | $592.80 | $3,844,707.90 (80% of $4,805,884.87) | $592.80 |

* Skadden previously filed its first interim fee application (the "First Interim Application") pertaining to these monthly fee periods (the "First Interim Application Period") [Docket No. 1337], which has been approved [Docket No. 1868], subject to continued 10% holdbacks.

** Skadden previously filed its second interim fee application (the "Second Interim Application") pertaining to these monthly fee periods (the "Second Interim Application Period") [Docket No. 2224], which has been approved [Docket No. 2992], subject to continued 10% holdbacks.

*** Skadden previously filed its third interim fee application (the "Third Interim Fee Application") pertaining to these monthly fee periods (the "Third Interim Application Period") [Docket No. 3031], which has been approved [Docket No. 3370], subject to continued 10% holdbacks.

**TIME SUMMARY TO FOURTH INTERIM FEE APPLICATION OF
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
SEPTEMBER 1, 2023 – DECEMBER 31, 2023**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Asset Dispositions (PSA) | 261.4 | $306,639.00 |
| Asset Dispositions (RSA/363 Process) | 196.7 | $225,289.35 |
| Automatic Stay (Relief Actions) | 0.5 | $776.25 |
| Business Operations / Strategic Planning | 494.9 | $752,630.40 |
| Case Administration | 128.8 | $98,919.90 |
| Claims Admin. (General) | 181.2 | $212,740.20 |
| Creditor Meetings / Statutory Committees | 20.9 | $33,737.85 |
| Disclosure Statement / Voting Issues | 748.9 | $745,809.75 |
| Employee Matters (General) | 198.3 | $258,031.80 |
| Executory Contracts (Personalty) | 223.3 | $269,014.95 |
| Financing (DIP and Emergence) | 106.9 | $119,184.75 |
| Foreign/Cross-Border | 2,399.9 | $3,003,405.30 |
| Future Claims Representative | 5.8 | $7,782.75 |
| General Corporate Advice | 365.1 | $501,899.40 |
| Government Affairs | 4.4 | $5,158.80 |
| Insurance | 80.6 | $106,649.55 |
| Intellectual Property | 26.8 | $21,628.80 |
| Leases (Real Property) | 1.9 | $2,103.30 |
| Liquidation / Feasibility | 35.7 | $46,498.95 |
| Litigation (General) | 434.2 | $609,633.45 |
| Litigation (Opioid) | 280.5 | $305,863.98 |
| Litigation (Opioid) – Canada | 13.2 | $14,060.25 |
| Mediation | 3,907.7 | $5,007,705.30 |
| NY Attorney General Assurance of Discontinuance | 15.4 | $7,507.50 |
| Post Emergence Finance | 147.7 | $202,697.10 |
| Preliminary Injunction | 0.8 | $1,375.20 |
| Regulatory and SEC Matters | 269.6 | $360,737.55 |
| Reorganization Plan / Plan Sponsors | 3,239.4[7] | $4,131,049.50 |
| Retention / Fee Matters (SASM&F) | 486.7 | $450,797.85 |
| Retention / Fee Matters / Objections (Other) | 63.9 | $49,432.50 |

---

[7]   In Skadden's monthly fee statement covering the period from November 1, 2023 through November 30, 2023 [Docket No. 3489], hours billed to this matter were inadvertently listed as 1588.1 hours, rather than 1584.0 hours. This error did not impact any other figures in such fee statement (including total hours or any rates described therein) and it has been corrected in this Application as necessary.

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Tax Matters | 430.2 | $590,937.30 |
| TLC Adversary Proceeding | 342.6 | $411,669.45 |
| Vendor Matters | 3.1 | $3,208.50 |
| **TOTAL** | **15,117.0** | **$18,864,576.48** |

A-8

## SUMMARY OF SERVICES RENDERED BY PROFESSIONAL BY SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
### SEPTEMBER 1, 2023 – DECEMBER 31, 2023

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| PARTNER | | | | |
| John Adebiyi | 1993 | $1,764.00 | 1.5 | $2,646.00 |
| Faiz Ahmad | 2002 | $1,764.00 | 1.6 | $2,822.40 |
| Richard T. Bernardo | 1988 | $1,470.00*** | 50.9 | $74,823.00 |
| | | $1,764.00 | 0.1 | $176.40 |
| Abby Davis | 2013 | $1,674.00 | 176.7 | $295,795.80 |
| Frederic Depoortere | 1998 | $1,764.00 | 1.2 | $2,116.80 |
| Shana A. Elberg | 2002 | $1,764.00 | 683.6 | $1,205,870.40 |
| Bruce Goldner | 1993 | $1,764.00 | 2.7 | $4,762.80 |
| Edward E. Gonzalez | 1980 | $1,976.00 | 1.9 | $3,753.45 |
| Evan A. Hill | 2012 | $1,294.00*** | 0.8 | $1,035.01 |
| | | $1,553.00 | 781.9 | $1,213,899.75 |
| Albert L. Hogan III | 1997 | $1,764.00 | 11.5 | $20,286.00 |
| Lisa Laukitis | 2000 | $1,470.00*** | 0.3 | $441.00 |
| | | $1,764.00 | 467.5 | $824,670.00 |
| Paul Leake | 1989 | $1,845.00 | 670.8 | $1,237,626.00 |
| Danielle Li | 2006 | $1,674.00 | 28.4 | $47,541.60 |
| Maxim Mayer-Cesiano | 2006 | $1,674.00*** | 24.8 | $41,515.20 |
| | | $1,764.00 | 53.8 | $94,903.20 |
| James A. McDonald | 1999 | $1,764.00 | 1.4 | $2,469.60 |
| Steven Messina | 1998 | $1,764.00 | 1.8 | $3,175.20 |
| Peter Newman | 2005 | $1,764.00 | 57.5 | $101,430.00 |
| Nina R. Rose | 2006 | $1,395.00 | 1.8 | $2,511.00 |
| Erica Schohn | 2004 | $1,764.00 | 9.7 | $17,110.80 |
| David E. Schwartz | 1994 | $1,845.00 | 8.2 | $15,129.00 |
| Nicole Stephansen | 2009 | $1,674.00 | 219.6 | $367,610.40 |
| Royce L. Tidwell | 2007 | $1,764.00 | 2.4 | $4,233.60 |
| Brandon Van Dyke | 2003 | $1,845.00 | 89.5 | $165,127.50 |
| Clive Wells | 1991 | $1,764.00 | 5.0 | $8,820.00 |
| B. Chase Wink | 2008 | $1,764.00 | 188.2 | $331,984.80 |
| Geoffrey M. Wyatt | 2005 | $1,470.00*** | 21.4 | $31,458.00 |
| | | $1,764.00 | 13.6 | $23,990.40 |
| Michael J. Zeidel | 1996 | $1,845.00 | 29.0 | $53,505.00 |
| **TOTAL PARTNER** | | | 3,609.10 | $6,203,240.11 |

A-9

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| OF COUNSEL | | | | |
| Andrew J. Brady | 1996 | $1,553.00 | 16.5 | $25,616.25 |
| **TOTAL OF COUNSEL** | | | 16.5 | $25,616.25 |
| COUNSEL | | | | |
| F. Joseph Ciani-Dausch | 2008 | $1,409.00 | 0.3 | $422.55 |
| James D. Falconer | 2014 | $1,409.00 | 578.8 | $815,239.80 |
| Thomas E. Fox | 1984 | $1,174.00 | 7.2 | $8,451.03 |
| Nicole L. Grimm | 1999 | $1,409.00 | 187.6 | $264,234.60 |
| Milli Kanani Hansen | 2012 | $1,174.00 | 36.5 | $42,841.95 |
| Wentian Huang | 2012 | $1,409.00 | 44.5 | $62,678.25 |
| Jason M. Liberi | 2003 | $1,409.00 | 262.4 | $369,590.40 |
| Peter Luneau | 2004 | $1,499.00 | 61.7 | $92,457.45 |
| Patricia A. McNulty | 1986 | $1,174.00 | 90.3 | $105,989.84 |
| Rui Qi | 2015 | $1,409.00 | 3.5 | $4,929.75 |
| Michael A. Wiseman | 2015 | $1,409.00 | 51.4 | $72,396.90 |
| **TOTAL COUNSEL** | | | 1,324.2 | $1,839,232.52 |
| REGIONAL COUNSEL | | | | |
| Damian R. Babic | 2016 | $1,319.00 | 1.5 | $1,977.75 |
| Inara V. Blagopoluchnaya | 2005 | $1,319.00 | 32.5 | $42,851.25 |
| **TOTAL REGIONAL COUNSEL** | | | 34.0 | $44,829.00 |
| ASSOCIATE/LAW CLERK/TRAINEE SOLICITOR | | | | |
| Zeinab Bakillah | 2021 | $1,035.00 | 11.7 | $12,109.50 |
| John J. Battaglia | 1996 | $1,251.00 | 3.6 | $4,503.60 |
| Douglas A. Bresnick | 2021 | $1,035.00 | 140.9 | $145,831.50 |
| Jamie S. Brumberger | 2021 | $1,107.00 | 770.9 | $853,386.30 |
| Vincent J. Cannizzaro III | 2014 | $1,251.00 | 3.3 | $4,128.30 |
| Robin L. Caskey | 2019 | $1,107.00 | 14.4 | $15,940.80 |
| Ambra Casonato | 2003 | $774.00 | 12.6 | $9,752.40 |
| Sydney Cogswell | 2022 | $918.00 | 5.7 | $5,232.60 |
| Jackie Dakin | 2019 | $1,107.00 | 23.5 | $26,014.50 |
| Matthew S. DeLuca | 2020 | $1,107.00 | 151.0 | $167,157.00 |
| Graham Dench | 2009 | $1,251.00 | 18.4 | $23,018.40 |
| Liz Downing | 2012 | $1,251.00 | 723.8 | $905,473.80 |
| Anna E. Drootin | 2023 | $774.00 | 66.8 | $51,703.20 |
| Guodong Fu | 2023 | $774.00 | 8.9 | $6,888.60 |

A-10

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| David Gross* | * | $563.00 | 161.2 | $90,675.00 |
| Nicholas S. Hagen | 2019 | $1,148.00 | 397.4 | $456,016.50 |
| Brianna N. Henderson | 2019 | $1,148.00 | 73.1 | $83,882.25 |
| Angeline J. Hwang | 2018 | $1,193.00 | 794.4 | $947,322.00 |
| Emily E. Jensen* | * | $469.00 | 13.6 | $6,375.01 |
| Anthony Joseph | 2018 | $1,107.00*** | 1.4 | $1,549.80 |
| | | $1,148.00 | 189.7 | $217,680.75 |
| Daniel C. Kennedy | 2020 | $1,107.00 | 547.7 | $606,303.90 |
| Jason N. Kestecher | 2015 | $1,251.00 | 531.3 | $664,656.30 |
| Robert J. Kiernan* | * | $563.00 | 32.0 | $18,000.00 |
| Jaclyn F. Kleban | 2021 | $1,035.00 | 545.1 | $564,178.50 |
| Parker Kolodka | 2021 | $1,035.00 | 22.2 | $22,977.00 |
| Harry P. Koulos | 2015 | $1,251.00 | 2.4 | $3,002.40 |
| Rosemary Laflam | 2019 | $1,148.00 | 40.5 | $46,473.75 |
| Arista Lai** | ** | $423.00 | 10.9 | $4,610.70 |
| Justin Lau | 2018 | $1,193.00 | 3.3 | $3,935.25 |
| Eva Lee | 2013 | $941.00 | 3.0 | $2,821.50 |
| Jacob G. Lefkowitz | 2016 | $1,251.00 | 73.6 | $92,073.60 |
| Jason Lese | 2023 | $774.00 | 79.1 | $61,223.40 |
| Julia N. Lim | 2019 | $1,148.00 | 7.0 | $8,032.50 |
| Teresa Lotufo | 2018 | $918.00 | 183.0 | $167,994.00 |
| Rose Ma* | * | $563.00 | 197.1 | $110,868.75 |
| Rebekah J. Mott | 2012 | $1,251.00 | 9.9 | $12,384.90 |
| Olivia Moul** | ** | $486.00 | 3.0 | $1,458.00 |
| Kelly J. Nabaglo | 2021 | $1,035.00 | 17.0 | $17,595.00 |
| Yelena L. Nersesyan | 2011 | $1,251.00 | 14.3 | $17,889.30 |
| Simon M. Parmeter | 2018 | $1,035.00 | 325.5 | $336,892.50 |
| Nick Peiffer* | * | $563.00 | 12.7 | $7,143.75 |
| Zizi Petkova | 2017 | $1,251.00 | 105.0 | $131,355.00 |
| Raphaella Ricciardi | 2015 | $1,193.00 | 233.0 | $277,852.50 |
| Emily D. Safko | 2018 | $1,193.00 | 14.1 | $16,814.25 |
| Benjamin Salzer | 2018 | $1,193.00 | 5.2 | $6,201.00 |
| Joshua Shainess | 2015 | $1,251.00 | 3.5 | $4,378.50 |
| Catrina A. Shea | 2019 | $1,193.00 | 325.8 | $388,516.50 |
| Eric H. Silverstein | 2023 | $774.00 | 164.4 | $127,245.60 |
| Elizabeth A. Simon | 2014 | $1,043.00*** | 8.2 | $8,548.50 |
| | | $1,251.00 | 0.9 | $1,125.90 |
| Luke Sperduto | 2019 | $1,148.00 | 415.7 | $477,015.75 |
| Bram A. Strochlic | 2015 | $1,043.00*** | 12.5 | $13,031.25 |

A-11

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|------|-------------------|------|-------|--------|
| | | $1,251.00 | 594.6 | $743,844.60 |
| Evan L. Wadler* | * | $563.00 | 6.2 | $3,487.50 |
| Mason E. Walther | 2023 | $774.00**** | 92.3 | $71,440.20 |
| | | $563.00 | 100.3 | $56,418.75 |
| Chambliss Williams | 2019 | $1,148.00 | 657.3 | $754,251.75 |
| Clark L. Xue | 2016 | $1,251.00 | 413.0 | $516,663.00 |
| Furong Yang | 2019 | $1,148.00 | 11.0 | $12,622.50 |
| **TOTAL ASSOCIATE/LAW CLERK/TRAINEE SOLICITOR** | | | 9,409.9 | $10,415,969.86 |
| STAFF ATTORNEY/STAFF LAW CLERK | | | | |
| Brian Baggetta | 2005 | $488.00*** | 15.4 | $7,507.50 |
| | | $585.00 | 0.4 | $234.00 |
| **TOTAL STAFF ATTORNEY/STAFF LAW CLERK** | | | 15.8 | $7,741.50 |
| INTERNATIONAL VISITING ATTORNEY | | | | |
| Neta Brenner | 2020 | $653.00 | 72.6 | $47,371.50 |
| **TOTAL INTERNATIONAL VISITING ATTORNEY** | | | 72.6 | $47,371.50 |
| CLIENT SPECIALIST | | | | |
| Sarah Efroymson | N/A | $566.00 | 32.5 | $18,403.25 |
| Robert Hochberg | N/A | $480.00*** | 7.2 | $3,456.00 |
| | | $576.00 | 2.3 | $1,324.80 |
| **TOTAL CLIENT SPECIALIST** | | | 42.0 | $23,184.05 |
| PARAPROFESSIONALS | | | | |
| Scarlett Bach | N/A | $378.00 | 173.7 | $65,658.60 |
| Andrea T. Bates | N/A | $486.00 | 269.0 | $130,734.00 |
| Emily Furfaro | N/A | $270.00 | 6.4 | $1,728.00 |
| Sage Geyer | N/A | $270.00 | 4.9 | $1,323.00 |
| Christopher M. Heaney | N/A | $486.00 | 7.2 | $3,499.20 |
| John Kim | N/A | $423.00 | 13.4 | $5,668.20 |
| Wendy K. LaManna | N/A | $486.00 | 19.4 | $9,428.40 |
| Maximilian M. Rief | N/A | $486.00 | 3.4 | $1,652.40 |
| Stella Chan | N/A | $419.00 | 8.5 | $3,557.25 |
| Damion Fallon | N/A | $419.00 | 8.2 | $3,431.70 |
| David B. Gautschy | N/A | $419.00 | 6.2 | $2,594.70 |
| Eric R. Gilde | N/A | $419.00 | 4.7 | $1,966.95 |
| Matthew L. Hostetler | N/A | $419.00 | 4.7 | $1,966.95 |
| Teresa A. Kelsey | N/A | $419.00 | 3.5 | $1,464.75 |

A-12

| NAME | YEAR OF ADMISSION | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| Ann Link | N/A | $419.00 | 4.3 | $1,799.55 |
| Wandy Liu | N/A | $244.00 | 10.5 | $2,559.39 |
| Aaron Matteson | N/A | $419.00 | 7.3 | $3,055.05 |
| Shauna Miles | N/A | $419.00 | 3.1 | $1,297.35 |
| John J. O'Connor, Jr. | N/A | $419.00 | 3.4 | $1,422.90 |
| Nancy Peters | N/A | $419.00 | 3.3 | $1,381.05 |
| Kyle Schaefer | N/A | $419.00 | 3.3 | $1,381.05 |
| Jessica H. Sherwood-Noguchi | N/A | $419.00 | 3.0 | $1,255.50 |
| Michaline M. Siera | N/A | $311.00 | 6.5 | $2,018.25 |
| Mark P. Sullivan | N/A | $419.00 | 4.0 | $1,674.00 |
| Brian Wallace | N/A | $486.00 | 4.0 | $1,944.00 |
| Jess Watkins | N/A | $419.00 | 4.0 | $1,674.00 |
| Paul Zablocki | N/A | $419.00 | 3.0 | $1,255.50 |
| **TOTAL PARAPROFESSIONALS** | | | 592.9 | $257,391.69 |
| **GRAND TOTAL** | | | **15,117.0** | **$18,864,576.48** |

\*  Law clerks are law school graduates who are not presently admitted to practice.
\*\*  Trainee Solicitors are law school graduates who are not presently admitted to practice working in Skadden's London office.
\*\*\*  Rate reduced by 25% due to time billed to matter 44 - Litigation (Opioid) or matter 47 - Litigation (Opioid) – Canada.
\*\*\*\*  Increased rate due to admission to the Bar.

A-13

# Exhibit 7H

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBERT AHEARN and ALMAR SALES COMPANY, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>CREDIT SUISSE FIRST BOSTON LLC,<br><br>        Defendant. | No. 03-CV-10956 (JLT) |

## FINAL JUDGMENT

**WHEREAS**, the parties to the above-described action (the "Action") entered into a Settlement Agreement dated as of March 13, 2006 (the "Settlement"); and

**WHEREAS,** on March 14, 2006 the Court entered an Order of Preliminary Approval which, inter alia: (i) preliminarily approved the Settlement; (ii) confirmed the Action has been certified as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (iii) approved the forms of notice of the Settlement to the Class Members; (iv) directed that appropriate notice of the Settlement be given to the Class; and (v) set a hearing date for final approval of the Settlement; and

**WHEREAS,** notice of the Settlement was mailed to Class Members and the Summary Notice of the Settlement was published in the national edition of The Wall Street Journal, as attested to in the Affidavit of the Claims Administrator filed herein; and

**WHEREAS,** on June 7, 2006, a hearing was held on whether the Settlement was fair, reasonable, adequate, and in the best interests of the Class ("Settlement Hearing"); and

**WHEREAS,** based on the foregoing, having heard the statements of counsel for the parties and of such persons as chose to appear at the Settlement Hearing, having considered all of the pleadings and proceedings in the Action, and being otherwise fully advised,

**IT IS HEREBY ORDERED** that:

1.      This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including Class Members.

2.      The form, content, and method of dissemination of the notice given to the Class, including both published notice and individual notice to all Class Members who could be identified through reasonable effort, was adequate and reasonable, and constituted the best notice practicable under the circumstances.

3.      The notice, as given, complied with the requirements of 15 U.S.C. § 78u-4(a)(7) and of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth therein.

4.      The Plan of Distribution described in the notice to Class Members is fair and reasonable and it is hereby approved.

5.      The Representative Plaintiffs have fairly and adequately represented the interests of the Class Members in connection with the Settlement.

6.      The Representative Plaintiffs and the Class Members, and all and each of them, are hereby bound by the terms of the Settlement set forth in the Settlement Agreement.

7.      The provisions of the Settlement Agreement, including definitions of the terms used therein, are hereby incorporated by reference as though fully set forth herein.

2

8. All parties and counsel appearing herein have complied with their obligations under Rule 11(b) of the Federal Rules of Civil Procedure.

9. This action is certified as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, as previously determined by this Court in its Order dated August 17, 2005. The Class consists of all persons or entities who during the period from January 5, 2001 through April 5, 2001, inclusive ("Class Period"), purchased common stock of Winstar Communications, Inc. ("Winstar"), and were damaged thereby. Excluded from the Class are Credit Suisse First Boston, LLC ("CSFB" or "Defendant"); any parent, subsidiary, affiliate, officer or director of the Defendant; any former officer or director of Winstar; any entity in which any of the above has a controlling interest; and the legal representatives, heirs, successors, predecessors in interest, affiliates, or assigns of any of the above (the "Class").

10. There have been no requests for exclusion from the class.

11. The Settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class, and it shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

12. Judgment shall be, and hereby is, entered dismissing the Action with prejudice and without taxation of costs in favor of or against any party except as provided in the Settlement Agreement.

13. The Representative Plaintiffs and all Class Members are hereby conclusively deemed to have released the Defendant, and its past and present parents, subsidiaries, and affiliated corporations and entities, the predecessors and successors in interest of any of them, and all of their respective past and present officers, directors, employees, agents

3

and assigns (the "Released Parties"), from any and all Settled Claims (the "Settled Claims"). As defined in the Settlement Agreement, "Settled Claims" means any and all claims, actions, causes of action, demands, suits, rights or liabilities, whether arising out of state or federal law, including Unknown Claims, of any Class Members, which exist or may exist against the Released Parties, by reason of any matter, event, cause or thing of any nature whatsoever arising out of, relating to, or in any way connected with: (a) the purchase, acquisition, sale, holding or disposition of any Winstar Securities during the Class Period; or (b) any of the facts, circumstances, transactions, events, occurrences, acts, omissions, or failures to act that have been alleged or could have been alleged by any Lead Plaintiff or other Class Member.

14. The Representative Plaintiffs and all Class Members are hereby barred and permanently enjoined from instituting, asserting or prosecuting, either directly, representatively, derivatively or in any other capacity, any and all Settled Claims which they or any of them had, have or may have against the Released Parties.

15. The Court appoints the law firms of Shapiro Haber & Urmy LLP and Berger & Montague as Class Counsel for purposes of administration of the Settlement.

16. The Plan of Distribution of the Settlement Fund as described in the notice to Class Members is hereby approved, subject to modification by further order of this Court. Any order or proceedings relating to the Plan of Distribution or amendments thereto shall not operate to terminate or cancel the Settlement Agreement or affect the finality of this Order approving the Settlement Agreement.

17. The Court hereby decrees that neither the Settlement Agreement nor this Final Judgment nor the fact of the Settlement is an admission or concession by the

4

Defendant of any liability or wrongdoing. This Final Judgment is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Neither the Settlement Agreement nor this Final Judgment nor the fact of Settlement nor the settlement proceedings nor the settlement negotiations nor any related documents shall be offered or received in evidence as an admission, concession, presumption or inference against the Defendant in any proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement.

18. The parties to the Settlement Agreement, their agents, employees, and attorneys, and the Claims Administrator and the Escrow Agent, shall not be liable for anything done or omitted in connection with these proceedings, the entry of this Final Judgment, or the administration of the payments to Authorized Claimants as provided in the Settlement Agreement and this Order, except for their own willful misconduct. No Class Member shall have any claim against Lead Plaintiff or Lead Counsel based on distributions made substantially in accordance with the Distribution Plan and orders of the Court. No Class Member shall have any further rights or recourse against the Defendant for any matter related to the Plan of Allocation, distributions thereunder, or the claims process generally.

19. Class Counsel are awarded attorneys' fees in the amount of $ 2,640,000.00 and reimbursement of expenses, including experts' fees and expenses, in the amount of $ 339,440 , such amounts to be paid from out of the Settlement Fund. Representative Plaintiff Robert Ahearn is awarded the sum of $ 25,000 and Representative Plaintiff Almar Sales Company is awarded the sum of $ 10,000 , as reasonable

5

costs and expenses directly relating to the representation of the Class as provided in 15 U.S.C. § 78u-4(a)(4), such amounts to be paid from out of the Settlement Fund.

20. Such Fees and Expenses shall be payable from the Settlement Fund within seven (7) business days after entry of this Order (subject to the repayment provisions of the Settlement Agreement), notwithstanding the existence of any potential appeal or collateral attack on this Order.

21. The Court hereby retains and reserves jurisdiction over implementation of this Settlement and any distribution to Authorized Claimants under the terms and conditions of the Settlement Agreement and pursuant to further orders of this Court.

22. There being no just reason for delay, the Clerk of Court is hereby directed to enter final judgment forthwith pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The direction of the entry of final judgment pursuant to Rule 54(b) is appropriate and proper because this judgment fully and finally adjudicates the claims of the Plaintiffs and the Class against the Defendants in this Action, it allows consummation of the Settlement, and it will expedite the distribution of the Settlement proceeds to the Class Members.

Dated: June 7, 2006

Honorable Joseph L. Tauro
United States District Judge

6

# Exhibit 7I

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE KRAFT HEINZ SECURITIES LITIGATION | Case No. 1:19-cv-01339 |
| | Honorable Jorge L. Alonso |

**ORDER AWARDING ATTORNEYS' FEES**
**AND LITIGATION EXPENSES**

This matter is before the Court on Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses. The Court having considered all matters submitted to it; and it appearing that notice substantially in the form approved by the Court, which advised of Lead Counsel's request for an award of attorneys' fees and Litigation Expenses, was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice substantially in the form approved by the Court was published in *The Wall Street Journal* and transmitted over *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated as of May 2, 2023 (ECF No. 475-3) ("Stipulation"), and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2. The Court has jurisdiction to enter this Order and over the subject matter of the Action and all Parties to the Action, including all Settlement Class Members.

3.      Notice of Lead Counsel's motion for an award of attorneys' fees and Litigation Expenses was given to all Settlement Class Members who or which could be identified with reasonable effort. The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and Litigation Expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.      Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of 20% of the Settlement Fund and $2,656,091.93 in payment of Plaintiffs' Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded among Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution, and settlement of the Action.

5.      In making this award of attorneys' fees and payment of expenses from the Settlement Fund, the Court has considered and found that:

A.      The Settlement has created a fund of $450,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Plaintiffs' Counsel;

B.      The fee sought has been reviewed and approved as reasonable by Plaintiffs, sophisticated investors that actively supervised the Action;

C.     Over 1.6 million Postcard Notices and 5,600 Notice Packets (i.e., the Notice and Claim Form) were mailed to potential Settlement Class Members and Nominees stating that Lead Counsel would apply for an award of attorneys' fees in the amount of 20% of the Settlement Fund and for payment of Litigation Expenses in an amount not to exceed $3,200,000, and only two objections to the requested attorneys' fees have been received, which the Court has consider and rejected;

D.     Plaintiffs' Counsel conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

E.     The Action raised a number of complex issues;

F.     Had Lead Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the other members of the Settlement Class may have recovered less or nothing from Defendants;

G.     Plaintiffs' Counsel devoted over 112,000 hours, with a lodestar value of $52,985,816.50, to achieve the Settlement; and

H.     The amount of attorneys' fees awarded and expenses to be paid from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.     Plaintiffs are hereby awarded reimbursement for their reasonable costs and expenses directly related to their representation of the Settlement Class in the following amounts: (i) $12,780.00 to Sjunde AP-Fonden; (ii) $73,950.00 to Union Asset Management Holding AG; and (iii) $27,610.00 to Booker Enterprises Pty Ltd.

7.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

3

8.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

9.      There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.


SO ORDERED this 19th day of September, 2023.


_____
The Honorable Jorge L. Alonso
United States District Judge

# Exhibit 7J

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| *In re Oracle Corporation Securities Litigation* | CLASS ACTION<br><br>Case No. 5:18-cv-04844-BLF<br><br>**[PROPOSED] ORDER**<br>**AWARDING ATTORNEYS' FEES**<br>**AND LITIGATION EXPENSES**<br><br>Dept.:    Courtroom 3, 5th Floor<br>Judge:   Honorable Beth Labson Freeman<br><br>Hearing Date:<br>January 12, 2023 at 9:00 a.m. |

This matter came on for hearing on January 12, 2023 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and payment of Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement dated June 23, 2022 (ECF No. 128-1) (the "Stipulation") and all terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.      The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Class Members.

ORDER AWARDING ATTORNEYS'
FEES AND EXPENSES
Case No. 5:18-cv-04844-BLF

1

3. Notice of Lead Counsel's motion for an award of attorneys' fees and payment of Litigation Expenses was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4(a)(7)), due process, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4. Lead Counsel is hereby awarded attorneys' fees in the amount of 20% of the Settlement Fund (including interest earned at the same rate as the Settlement Fund). Lead Counsel is also hereby awarded $795,465.17 for payment of its litigation expenses. These attorneys' fees and expenses shall be paid from the Settlement Fund and the Court finds these sums to be fair and reasonable. The Court overrules the objection to the motion for attorneys' fees and expenses submitted by Scott Noyes.

5. In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered and found that:

a. The Settlement has created a fund of $17,500,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Class Members who submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

b. The fee sought is based on a retainer agreement entered into by Lead Counsel and Lead Plaintiff at the outset of the litigation and the requested fee has been again reviewed and approved as reasonable by Lead Plaintiff, a sophisticated institutional investor that actively supervised the Action, at the conclusion of the Action;

c. Copies of the Notice were mailed to over 979,000 potential Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not exceed 20% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $900,000 and only one objection to the requested award of attorneys' fees or Litigation Expenses was submitted (which the Court finds to lack merit and overrules);

ORDER AWARDING ATTORNEYS'
FEES AND EXPENSES
Case No. 5:18-cv-04844-BLF

2

d.      Lead Counsel conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

e.      The Action raised a number of complex issues;

f.      Had Lead Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiff and the other members of the Class may have recovered less or nothing from Defendants;

g.      Lead Counsel devoted over 17,900 hours, with a lodestar value of approximately $9.1 million, to achieve the Settlement; and

h.      The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases.

6.      Lead Plaintiff Union Asset Management Holding AG is hereby awarded $64,750 from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Class.

7.      Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

8.      Exclusive jurisdiction is hereby retained over the parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

9.      In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

10.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this __13___ day of __January_____, 2023.

_____
The Honorable Beth Labson Freeman
United States District Judge