**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In re BOSTON SCIENTIFIC CORPORATION SECURITIES LITIGATION | Master File No. 1:20-cv-12225-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED**
**<u>MOTION FOR APPROVAL OF DISTRIBUTION PLAN</u>**

Dated:  February 14, 2025

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      BACKGROUND ...................................................................................................2

II.     CLAIMS ADMINISTRATION..............................................................................3

        A.      No Disputed Claims.....................................................................................5

        B.      Late Claims and Final Cut-Off Date.............................................................5

III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ..............................6

IV.     DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND .....................8

        A.      Initial Distribution of the Net Settlement Fund ...........................................8

        B.      Additional Distribution(s) of the Net Settlement Fund.................................10

V.      RELEASE OF CLAIMS.........................................................................................12

VI.     CONCLUSION......................................................................................................13

## TABLE OF AUTHORITIES

CASES                                                                                                PAGE(S)

*In re Eletrobras Sec. Litig.*,
    467 F. Supp. 3d 149 (S.D.N.Y. 2020)......................................................................13

*Levy v. Gutierrez, et al.,*
    No. 1:14-cv-00443 (D.N.H. May 25, 2021), ECF No. 271 .................................9, 12

*Machado v. Endurance Int'l Group Holdings, Inc.,*
    2021 WL 283406 (D. Mass. Jan. 27, 2021)...........................................................13

*In re Signet Jewelers Ltd. Sec. Litig.,*
    2021 WL 5357468 (S.D.N.Y. Nov. 17, 2021)........................................................11

*In re Vale S.A. Sec. Litig.*,
    2021 WL 3287343 (S.D.N.Y. July 30, 2021)........................................................11

*Perkins v. Am. Nat'l Ins. Co.*,
    2012 WL 2839788 (M.D. Ga. July 10, 2012).........................................................12

OTHER AUTHORITIES

Memorandum in Support of Lead Plaintiff's Unopposed Motion for Approval of
    Second Distribution of Earlier Settlements and Apple Settlement Distribution
    Plan, *Levy v. Gutierrez, et al.,* No. 1:14-cv-00443 (D.N.H. May 4, 2021), ECF
    No. 267-2 ..............................................................................................................9, 12

Lead Plaintiff Union Asset Management Holding AG ("Lead Plaintiff" or "Union"), on behalf of itself and the Settlement Class, respectfully moves for entry of the proposed Order Approving Distribution Plan ("Class Distribution Order") authorizing distribution of the proceeds of the Settlement in the above-captioned securities class action ("Action"). The Distribution Plan is included in the accompanying Declaration of Luiggy Segura ("Segura Declaration" or "Segura Decl."), submitted on behalf of the Court-approved Claims Administrator, JND Legal Administration ("JND").[1]

Lead Plaintiff agreed to settle the Action in exchange for a cash payment of $38.5 million, which has been deposited into an escrow account and is earning interest for the benefit of the Settlement Class. The Settlement was approved by the Court on April 23, 2024 following a rigorous notice program and without objection to any aspect of the Settlement by any class members. Following the Court's approval, Lead Plaintiff and Lead Counsel have overseen the Court-authorized claims administration process, in which JND carefully reviewed the Claims received and provided any Claimants with deficiencies in their Claims a chance to cure those defects. The number of damaged shares of Boston Scientific stock included in the valid Claims received equaled approximately 100% of the number estimated by the Lead Plaintiff's damages expert, attesting to the robust participation of the Settlement Class. The Claims Administrator has now completed processing the Claims received for the Settlement and, through this motion, Lead Plaintiff seeks the Court's approval to distribute the Net Settlement Fund to Settlement Class Members who submitted eligible Claims.

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Segura Declaration or the Stipulation and Agreement of Settlement dated as of December 14, 2023 (ECF No. 152-1) ("Stipulation").

There are no disputed Claims by any Settlement Class Member requiring Court review. Pursuant to the terms of the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 18, 22, 24; *see also* Notice ¶¶ 49, 94. Further, Defendants' Counsel have reviewed the motion and informed us that defendants take no position on it.

The Class Distribution Order will, upon being entered by the Court, permit JND to make an Initial Distribution of the Settlement proceeds to eligible Claimants. Among other things, the Class Distribution Order will: (i) approve JND's administrative determinations accepting and rejecting Claims submitted in connection with the Settlement; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by JND as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise; and (iii) approve JND's fees and expenses incurred and estimated to be incurred in the administration of the Settlement and the Initial Distribution. Granting that relief is entirely appropriate and proper, and will ensure that class members receive the settlement proceeds to which they are entitled.

As set forth below, in light of the fact that the motion is unopposed and there are no disputed claims or other issues requiring Court resolution, Lead Counsel respectfully submits that the motion is ripe for consideration by the Court and may be decided on the papers.

## I.     **BACKGROUND**

On April 23, 2024, the Court entered the Judgment Approving Class Action Settlement (ECF No. 164) approving the $38.5 million all-cash Settlement of this Action and entered an Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 165) approving the Plan of

Allocation for the Net Settlement Fund. The Settlement's "Effective Date" under paragraph 32 of the Stipulation has now occurred, and accordingly the Net Settlement Fund may now be distributed to Authorized Claimants. In accordance with paragraph 27 of the Stipulation, Lead Plaintiff respectfully requests that the Court enter the Class Distribution Order and approve the Distribution Plan.

In accordance with the Court's Order Preliminarily Approving Settlement and Authorizing Dissemination of Notice of Settlement (ECF No. 155) ("Preliminary Approval Order"), JND mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Settlement Class Members, and other nominees. Segura Decl. ¶ 2. JND has disseminated 128,819 Notice Packets to potential Settlement Class Members, and nominees. *Id*. ¶ 4. The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form postmarked no later than May 28, 2024. *Id*. ¶ 7.

## II.    CLAIMS ADMINISTRATION

As set forth in the Segura Declaration, through February 7, 2025, JND received and processed 105,103 Claims. Segura Decl. ¶ 7. All Claims received through February 7, 2025, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*see id*.), and JND has worked with Claimants to help them perfect their Claims. *See id.* ¶¶ 19-32. Many of the Claims were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by JND. *Id*. ¶¶ 19, 22.

If JND determined a Claim to be defective or ineligible, JND sent a letter (if the Claimant or filer filed a paper Claim) or an email (if the Claimant or filer filed an electronic Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20, 22. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or JND would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Examples of the Deficiency Notices are attached as Exhibits A, B, and C to the Segura Declaration.

Of the 105,103 Claims that are the subject of this motion, JND has determined that 37,959 Claims are acceptable in whole or in part, and that 67,144 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund. Segura Decl. ¶¶ 39-42. The rejected Claims were invalid for various reasons, including, for example, that the Claim did not result in a Recognized Claim, the Claim was made by or on behalf of a person or entity who was not a Settlement Class Member, or the Claim was a duplicate or withdrawn. *Id*. ¶ 42.[2] The Claims recommended for acceptance include over 96 million damaged shares of Boston Scientific common stock, *see id*. ¶ 40-41, which is in line with the total number of damaged shares as estimated by Lead Plaintiff's damages expert—demonstrating that the notice and claims processing procedures here were highly successful. Lead Plaintiff respectfully requests that the

---

[2] The great majority of the rejected Claims were made by persons or entities that were not Settlement Class Members or who did not possess Recognized Claims under the Plan of Allocation. *See* Segura Decl. ¶ 42. Given the relative ease with which electronic Claims can be made given modern technology, one noticeable recent trend is that many potential Claimants will submit a Claim without carefully checking whether they are a class member or qualify for payment in the Settlement, just to err on the side of caution. This trend likely contributed to the large number of rejected Claims here. *Id*.

Court approve JND's administrative determinations accepting and rejecting Claims as set forth in the Segura Declaration.

### A.    No Disputed Claims

JND carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. *Id*. ¶¶ 21, 26. Consistent with paragraph 25(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of the right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of JND's administrative determination of the Claim. *Id*. ¶¶ 20, 23, and Exhibits A and B.

With respect to the fully processed Claims, JND received two (2) requests for Court review of its administrative determinations. To resolve these disputes without necessitating the Court's intervention, JND contacted the Claimants requesting Court review and attempted to answer all questions, to explain JND's administrative determination of the Claim's status, and to facilitate the submission of missing information or documentation where applicable. *Id*. ¶ 32. As a result of these efforts, one Claimant resolved the deficiencies in his Claim and his Claim is now recommended for approval. *Id*. The other disputing Claimant withdrew his request for Court review after receiving further explanation of the reasons for JND's determination. *Id*. Therefore, there are no disputed Claims requiring Court review.

### B.    Late Claims and Final Cut-Off Date

The 105,103 Claims received through February 7, 2025, include 1,203 Claims that were postmarked or received after May 28, 2024, the Court-approved Claim submission deadline. *Id*. ¶¶ 33, 41. Those late Claims have been fully processed, and 386 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 386 Claims were

late, they were received while the processing of timely Claims was ongoing. *Id*. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. *Id*. ¶ 33. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Preliminary Approval Order ¶ 11; Notice ¶ 51. Lead Plaintiff respectfully submits that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiff respectfully requests that the Court order that any ***new*** late Claims (and any requested adjustments to previously-filed Claims that would result in an increased Recognized Claim Amount) received after February 7, 2025, shall be barred (*see also* Segura Decl. ¶ 45(f)) – subject to the proviso that if Lead Counsel later determines that an additional distribution is not cost-effective (*see* Segura Decl. ¶ 45(e)), then any post-February 7, 2025 Claimants may, at the discretion of Lead Counsel (and to the extent possible after paying remaining administrative fees and expenses owed), be paid on their new (or adjusted) Claims on a *pro rata* basis so as to bring them into parity with other Authorized Claimants who have cashed their distribution checks.

## III.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-approved Claims Administrator for the Settlement, JND, was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and

distributing the Net Settlement Fund to Authorized Claimants. Segura Decl. ¶ 2. Consistent with the Stipulation, JND provided notice to over 120,000 potential Settlement Class Members and received and processed over 100,000 Claims. The Stipulation and the Preliminary Approval Order entered by the Court expressly contemplated that "all reasonable Notice and Administration Costs actually incurred" including "the actual costs of printing and mailing the Notice, publishing the Summary Notice, reimbursements to nominee owners for identifying beneficial owners or forwarding the Notice to beneficial owners, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and administering the Settlement" would be paid from the Settlement Fund. Stipulation ¶ 14; *see also* Stipulation ¶¶ 1(ee), 9; Preliminary Approval Order ¶ 23. JND's fees and expenses for its work performed through January 31, 2025, are $664,563.53, and its estimated fees and expenses for work to be performed in connection with the Initial Distribution are $73,321.99, which together total $737,885.52. Segura Decl. ¶ 44. Lead Counsel has reviewed JND's fees and expenses for accuracy and has overseen JND's work to ensure it was completed in accordance with the Stipulation and Preliminary Approval Order.

Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id*. The brokerage firms and nominees charged JND another $106,951.74 for their work providing names and addresses to potential Settlement Class Members and forwarding notices to their clients, an expense which is customarily included in the claims administrator's reimbursable expenses. *Id*.[3] To date, JND has

---

[3] *See also* Stipulation ¶ 14 ("Notice and Administration Costs" include "reimbursements to nominee owners for identifying beneficial owners or forwarding the Notice to beneficial owners").

received payment of $600,000.00 for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of $244,837.26 payable to JND, which amount includes the estimated fees and expenses to be incurred by JND in connection with the Initial Distribution. *Id*. Lead Counsel reviewed JND's invoices and respectfully requests on behalf of Lead Plaintiff that the Court approve all of JND's fees and expenses.

## IV.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A.    Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, JND will distribute 95% of the Net Settlement Fund after deducting: (i) all payments previously allowed, (ii) payments approved by the Court on this motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (i.e., the Initial Distribution). *See* Segura Decl. ¶ 45(a). In the Initial Distribution, JND will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *Id*. ¶ 45(a)(1). JND will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. JND will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by JND. *Id*. ¶ 45(a)(2). JND will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id*. ¶ 45(a)(3). This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id*. Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full Distribution Amount in

the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 45(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 45(a)(5).

The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*. The use of a reserve in the distribution of class settlement funds in a case like this is common and has been approved by courts in the First Circuit. *See, e.g.*, Memorandum in Support of Lead Plaintiff's Unopposed Motion for Approval of Second Distribution of Earlier Settlements and Apple Settlement Distribution Plan, *Levy v. Gutierrez, et al.,* No. 1:14-cv-00443 (D.N.H. May 4, 2021), ECF No. 267-2 & Order Approving Second Distribution of Earlier Settlements and Apple Settlement Distribution Plan, *Levy v. Gutierrez, et al.,* No. 1:14-cv-00443 (D.N.H. May 25, 2021), ECF No. 271, attached hereto as Exhibit 1 (approving the establishment of a 5% reserve from the Net Settlement Fund for the purposes of addressing tax liability and/or claims administration-related contingencies).

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiff proposes that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 45(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 45(b) of the Segura Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be

redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 45(c).

### B.    Additional Distribution(s) of the Net Settlement Fund

After JND has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than seven (7) months after the Initial Distribution, JND will, after consulting with Lead Counsel, conduct the Second Distribution of the Net Settlement Fund. *Id*. ¶ 45(d). In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid in Full) who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*. If any funds remain in the Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at six-month intervals. *Id*. When Lead Counsel, in consultation with JND, determines that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after February 7, 2025, JND will process those Claims. *Id*. ¶ 45(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after February 7, 2025, may be paid in accordance with paragraph 45(f) of the Segura Declaration. *Id*. If any funds remain in the Net Settlement Fund after payment of these Claims and any unpaid fees or expenses, Lead Counsel proposes that such remaining funds (if there are any) be contributed to the National Consumer Law Center ("NCLC"). Lead Counsel proposes that the NCLC be designated as the "non-sectarian, not-for-profit, 501(c)(3) organization to be recommended by Lead Counsel" referenced in the Court-approved Plan of Allocation. *See* Notice ¶ 93.

10

NCLC is a private, non-sectarian, non-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *Financials*, National Consumer Law Center, https://nclc.org/about-us/financials/ (last visited Feb. 12, 2025). For over 50 years, NCLC has worked to build and strengthen a legal network to provide legal services addressed to two main goals: improving access to the legal system for all people and enabling advocates to seek remedies for low-income people where needed. *See History*, National Consumer Law Center, https://nclc.org/about-us/history/ (last visited Feb. 12, 2025). NCLC's lawyers provide policy analysis, advocacy, litigation, expert-witness services, and training for consumer advocates throughout the United States. *See Mission,* National Consumer Law Center, https://nclc.org/about-us/mission/ (last visited Feb. 12, 2025). "NCLC uses its unmatched expertise in consumer law to protect consumers from exploitation and expand access to fair credit by advocating for laws, rules, and regulations that benefit real people: those with low incomes, older people, students, people of color, and others who have been abused, deceived, discriminated against, or left behind in our economy." *About Us*, National Consumer Law Center, https://nclc.org/about-us/ (last visited Feb. 12, 2025). NCLC has received "the highest ratings from charity watchdogs" and "welcomes *cy pres* designations of unclaimed settlement funds from class action lawsuits, which are used to support our consumer rights work advancing the core interests of underlying class members." *History*, National Consumer Law Center, https://nclc.org/about-us/history/ (last visited Feb. 12, 2025), & *Cy Pres*, National Consumer Law Center, https://nclc.org/get-involved/ways-to-give/cy-pres/ (last visited Feb. 12, 2025). Federal courts have approved NCLC as a *cy pres* recipient of residual balances of net settlement funds in other comparable settlements. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, 2021 WL 5357468, at *2 (S.D.N.Y. Nov. 16, 2021); *In re Vale S.A. Sec. Litig.*, 2021 WL 3287343, at *2 (S.D.N.Y. July 30, 2021); Lead Plaintiff's Unopposed Motion for

Approval of Second Distribution of Earlier Settlements and Apple Settlement Distribution Plan, *Levy v. Gutierrez, et al.,* No. 1:14-cv-00443 (D.N.H. May 4, 2021), ECF No. 267-2 & Order Approving Second Distribution of Earlier Settlements and Apple Settlement Distribution Plan, *Levy v. Gutierrez, et al.,* No. 1:14-cv-00443 (D.N.H. May 25, 2021), ECF No. 271, attached hereto as Exhibit 1; *Perkins v. Am. Nat'l Ins. Co.*, 2012 WL 2839788, at *5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

## V.    **RELEASE OF CLAIMS**

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of Claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 29. Accordingly, Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized

12

Claimants.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, *In re Eletrobras Sec. Litig.*, 467 F.Supp.3d 149, 151 (S.D.N.Y. 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of such involvement, and all members of the Settlement Class . . . [.]"); *Machado v. Endurance Int'l Group Holdings, Inc.,* 2021 WL 283406, at *2 (D. Mass. Jan. 27, 2021) (approving substantially similar language in order authorizing distribution of settlement proceeds).

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant its Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated: February 14, 2025                        Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano (admitted *pro hac vice*)
Michael D. Blatchley (admitted *pro hac vice*)
Aasiya F. Mirza Glover (admitted *pro hac vice*)
Emily A. Tu (admitted *pro hac vice*)
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
michaelb@blbglaw.com
aasiya.glover@blbglaw.com
emily.tu@blbglaw.com

13

*Lead Counsel for Lead Plaintiff*
*and the Settlement Class*

**DONNELLY, CONROY & GELHAAR, LLP**
T. Christopher Donnelly (BBO #129930)
Peter E. Gelhaar (BBO #18830)
Peter K. Levitt (BBO #565761)
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
Telephone: (617) 720-2880
Facsimile: (617) 720-3554
tcd@dcglaw.com
peg@dcglaw.com
pkl@dcglaw.com

*Liaison Counsel for Lead Plaintiff*

14