# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| ADAM S. LEVY on behalf of himself and all others similarly situated, | No. 1:14-cv-00443-JL |
| Plaintiff, | |
| v. | ECF CASE |
| THOMAS GUTIERREZ, RICHARD J. GAYNOR, RAJA BAL, J. MICHAL CONAWAY, KATHLEEN A. COTE, ERNEST L. GODSHALK, MATTHEW E. MASSENGILL, MARY PETROVICH, ROBERT E. SWITZ, NOEL G. WATSON, THOMAS WROE, JR., MORGAN STANLEY & CO. LLC, GOLDMAN, SACHS & CO., CANACCORD GENUITY INC., AND APPLE, INC. | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SECOND DISTRIBUTION OF EARLIER SETTLEMENTS AND APPLE SETTLEMENT DISTRIBUTION PLAN**

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ............................................................................................................. 2

II.     CLAIMS ADMINISTRATION FOR EARLIER SETTLEMENTS .................................. 5

III.    CLAIMS ADMINISTRATION FOR THE APPLE SETTLEMENT ............................... 5

      A.      No Disputed Claims.................................................................................... 6

      B.      Late Claims – and Final Cut-Off Date for the Apple Initial
Distribution ................................................................................................. 7

IV.     FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ........................................... 8

V.      DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUNDS ................................. 9

VI.     SUBSEQUENT DISTRIBUTION(S) OF THE NET SETTLEMENT
FUNDS ....................................................................................................................... 13

VII.    RELEASE OF CLAIMS.............................................................................................. 15

VIII.   CONCLUSION........................................................................................................... 16

Lead Plaintiff and Class Representative Douglas Kurz ("Lead Plaintiff") respectfully moves for entry of the proposed Order Approving Second Distribution of Earlier Settlements and Apple Settlement Distribution Plan (the "Class Distribution Order") for the proceeds of the settlements with the Individual Defendants and Underwriter Defendants (the "Earlier Settlements")[1] and with Defendant Apple (the "Apple Settlement") in the above-captioned action (the "Action").[2] The Distribution Plan is included in the accompanying Declaration of Stephanie Amin-Giwner in Support of Lead Plaintiff's Unopposed Motion for Approval of Second Distribution of Earlier Settlements and Apple Settlement Distribution Plan (the "Amin-Giwner Declaration" or "Amin-Giwner Decl."), submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq").[3]

If entered by the Court, the Class Distribution Order would, among other things, (i) approve Epiq's administrative recommendations accepting, adjusting, and rejecting Claims submitted in the Action; (ii) direct the Earlier Settlements Second Distribution of the Earlier Settlements Net

---

[1] "Earlier Settlements" means the Individual Defendant Settlement and Underwriter Defendant Settlement, which were approved by the Court by judgments entered on July 27, 2018 (ECF Nos. 192, 193) (and together with the Apple Settlement, the "Settlements").

[2] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the accompanying Amin-Giwner Declaration or in the Stipulation and Agreement of Settlement with Defendant Apple Inc. dated as of January 10, 2020 (ECF No. 252-1) (the "Apple Stipulation"). The Apple Stipulation sets forth the terms and conditions of Lead Plaintiff's settlement with Apple for $3.5 million in cash.

[3] The Court approved Garden City Group, LLC ("GCG"), as Claims Administrator. GCG was acquired by Epiq on June 15, 2018, and now is continuing operations as part of Epiq. "Epiq [ ] is the successor to Garden City Group, LLC, which the Court previously authorized Class Counsel to retain to supervise and administer the notice procedure in connection with the Earlier Settlements and any other settlement or recovery achieved in this Action and to process Claims received in the action." Order Preliminary Approving Settlement with Defendant Apple Inc. and Providing for Notice (ECF No. 254) ¶ 5.

1

Settlement Funds to Claimants whose Claims are accepted by Epiq as valid and approved by the Court, including the Late Adjusted Claims; (iii) direct the Apple Initial Distribution of the Apple Net Settlement Fund to Claimants whose Claims are accepted by Epiq as valid and approved by the Court, while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise; (iv) approve Epiq's fees and expenses incurred and estimated to be incurred in the administration of the Settlements; (v) release claims related to the administration process; and (vi) authorize the destruction of Proofs of Claim and supporting documents at an appropriate time.

Defendants do not oppose this motion.[4] There are no disputed Claims by any Class Member requiring Court review. As such, the motion is ripe for determination.

## I.      **BACKGROUND**

By the Order Approving Distribution Plan entered January 13, 2020 (ECF No. 253) (the "Distribution Order"), the Court directed Epiq to conduct the initial distribution of the Earlier Settlements Net Settlement Funds to Authorized Claimants (the "Earlier Settlements Initial Distribution"). *See* Distribution Order ¶ 3(c). Pursuant to the Distribution Order, checks and wire transfers from the Earlier Settlements Net Settlement Funds were issued to Authorized Claimants beginning on February 20, 2020, and the Earlier Settlements Initial Distribution was completed on February 27, 2020. *See* Amin-Giwner Decl. ¶ 2. The Court ordered that any Claims received or adjusted after November 6, 2019, be processed and presented to the Court in connection with Lead

---

[4] Defendants have no role in or responsibility for the administration of the Settlement Funds or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Funds. *See* Apple Stipulation ¶¶ 22, 28, Stipulation and Agreement of Settlement

Counsel's motion for a second distribution of the Earlier Settlements. *See* Distribution Order ¶ 3(g). Epiq has completed processing all Claims received through January 22, 2021, in accordance with the terms of the Court-approved Plan of Allocation,[5] and hereby submits its administrative determinations accepting, adjusting, and rejecting the Claims received or adjusted after November 6, 2019, in preparation for the Earlier Settlements Second Distribution to Authorized Claimants. *See* Amin-Giwner Decl. ¶ 2.

The Court has approved the Apple Stipulation entered into by Lead Plaintiff, on behalf of himself and the other members of the Apple Class, and the settling Defendant Apple in the Action. *See* Order Preliminarily Approving Settlement with Defendant Apple Inc. and Providing for Notice (ECF No. 254) (the "Preliminary Approval Order"). The Apple Stipulation sets forth the terms of the Apple Settlement, which represents a complete resolution of the claims against Apple in this Action in return for a payment of $3.5 million in cash, which Apple will pay or cause to be paid for the benefit of Apple Class Members. *See* Apple Stipulation ¶¶ 1(ddd), 8.

In accordance with the Preliminary Approval Order entered by the Court, Epiq has mailed the Notice of (I) Certification of Class; (II) Proposed Settlement with Apple Inc.; (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; and (IV) Settlement Fairness Hearing (the "Apple Settlement Notice") and the Proof of Claim and Release Form (the "Claim Form", and together with the Apple Settlement Notice, the "Notice Packet") to potential Apple Class Members, brokers, and other nominees. *See* Amin-Giwner Decl. ¶ 3. As stated in the Amin-Giwner

---

with Individual Defendants (ECF No. 178-1) ¶¶ 23, 28, Stipulation and Agreement of Settlement with Settling Underwriter Defendants and the Supplement thereto (ECF No. 178-2) ¶¶ 21, 27.

Declaration, Epiq has disseminated 212,864 Notice Packets to potential Apple Class Members and nominees. *See id.* ¶ 9. The Notice informed Apple Class Members that if they wished to be eligible to participate in the distribution of the Apple Net Settlement Fund, they were required to submit a properly executed Claim Form so that it would be received or postmarked no later than June 29, 2020. *See id.* ¶ 12.

On August 27, 2020, the Court issued its Memorandum Order Granting Final Approval of Apple Settlement and Class Counsel's Motion for Attorneys' Fees (ECF No. 266) (the "Final Approval Order"), which approved the Apple Settlement (consisting of the terms and conditions of the Apple Stipulation) and the Plan of Allocation.[6] The Effective Date of the Apple Settlement has occurred. *See* Apple Stipulation ¶ 37. Accordingly, the Apple Net Settlement Fund may be distributed to Authorized Claimants. In accordance with paragraph 31 of the Apple Stipulation, Lead Plaintiff respectfully asks the Court to enter the Class Distribution Order approving the Distribution Plan.[7]

---

[5] *See* Appendix A to the Notice, Proposed Plan of Allocation (ECF No. 188-6), as approved in the Court's Order Approving Plan of Allocation of Net Settlement Funds dated July 27, 2018 (ECF No. 191).

[6] *See* Final Approval Order at 17 ("Claims of the Apple Class will be calculated in the same manner as under the allocation plan approved by the court for members of the Individual Defendant Settlement Class."); *see also* Apple Stipulation ¶ 1(tt) ("'Plan of Allocation' means the Plan of Allocation approved by the Court by Order dated July 27, 2018 (ECF No. 191), which has been utilized for determining the allocation of the net proceeds of the Earlier Settlements and will also be utilized for determining the allocation of the Net Apple Settlement Fund.").

[7] "The court shall retain exclusive jurisdiction over the Settling Parties and the 'Class Members,' as defined in the Apple Settlement, for all matters relating to this Action, including the administration, interpretation, effectuation, or enforcement of the Apple Settlement and this Order." Final Approval Order at 32.

## II.    CLAIMS ADMINISTRATION FOR EARLIER SETTLEMENTS

The Court directed Epiq to conduct the Earlier Settlements Initial Distribution of the Earlier Settlements Net Settlement Funds to Authorized Claimants. *See* Distribution Order ¶ 3(c). Pursuant to the Distribution Order, checks and wire transfers from the Earlier Settlements Net Settlement Funds were issued to Authorized Claimants beginning on February 20, 2020, in an amount totaling $27,042,316.94. *See* Amin-Giwner Decl. ¶ 6. As of April 1, 2021, $26,969,843.71 has been negotiated by recipients, and $298,974.67 remains in the account ready for distribution. *See id.* ¶ 8.

## III.    CLAIMS ADMINISTRATION FOR THE APPLE SETTLEMENT

As detailed in the accompanying Amin-Giwner Declaration, from November 6, 2019, through January 22, 2021, Epiq received and processed 2,399 Claims to the Apple Settlement ("Apple Claims"). *See id.* ¶ 12. All Claims received through January 22, 2021, have been fully processed in accordance with the Apple Stipulation and the Court-approved Plan of Allocation included in the Notice (*see id.*), and Epiq has worked with Claimants to help them perfect their Claims (*see id.* ¶¶ 24-31).[8]

As discussed in the Amin-Giwner Declaration, many of the Apple Claims were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by Epiq. *See id.* ¶¶ 24, 30. If Epiq determined a Claim to be defective or ineligible, a letter (if the Claimant filed a paper Claim) (the "Deficiency Notice") or an email (if the Claimant filed an electronic Claim) (the "Status Email" and "Status Spreadsheet") was sent by Epiq to the Claimant or filer, as applicable,

describing the defect(s) or condition(s) of ineligibility in the Claim and what was necessary to cure any curable defect(s) in the Claim. *See id.* ¶¶ 25, 27-30. The Deficiency Notice or Status Email advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within 20 days from the date of the Deficiency Notice or Status Email or Epiq would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *See id.* ¶¶ 25, 28. An example of the Deficiency Notice is attached as Exhibit A to the Amin-Giwner Declaration and examples of the Status Email and Status Spreadsheet are attached thereto as Exhibits B and C, respectively.

As shown in the Amin-Giwner Declaration, of the 2,399 Apple Claims that are the subject of this motion, Epiq has determined that 1,033 (including the 45 Late But Otherwise Eligible Claims discussed below) are acceptable in whole or in part, and that 1,366 should be wholly rejected because they are ineligible for payment from the Apple Net Settlement Fund. *See id.* ¶¶ 40-41, 43. Lead Plaintiff respectfully requests that the Court approve Epiq's administrative determinations accepting and rejecting the Apple Claims as stated in the Amin-Giwner Declaration.

A.    **No Disputed Claims**

Epiq carefully reviewed Claimants' and filers' responses to the Deficiency Notices and Status Emails and worked with them to resolve deficiencies where possible. *See id.* ¶¶ 24, 26-27, 31. As noted above and consistent with paragraph 29(e) of the Apple Stipulation, the Deficiency Notices and Status Emails specifically advised the Claimants or filers of the right, within 20 days after the

---

[8] In order to allow a proportional allocation of the Apple Net Settlement Fund, and so that a distribution to eligible Claimants would not be delayed, Claims received after January 22, 2021, have not been processed. *See* Amin-Giwner Decl. ¶ 36.

mailing or emailing of the notice, to contest the rejection of the Claim and request Court review of the administrative determination of the Claim. *See id.* ¶¶ 25, 28, 32, and Exhibits A and B.

With respect to the fully processed Apple Claims, Epiq received five (5) requests for a review by the Court of its administrative determinations. *See id.* ¶ 33. To resolve the disputes without necessitating the Court's intervention, Epiq contacted all persons requesting Court review, and with respect to those Claimants who were reached, Epiq answered all their questions, fully explained Epiq's determination of the Claim's status, and facilitated the submission of missing information or documentation where applicable. *See id.* As a result of these efforts, all Claims for which Court review had been requested have either been cured or the Claimant withdrew the request for Court review. *See id.* There are no disputed Claims to the Apple Settlement requiring Court review.

**B.      Late Claims – and Final Cut-Off Date for the Apple Initial Distribution**

The 2,399 Apple Claims received through January 22, 2021, include 171 that were postmarked or received after the Court-approved Claim-filing deadline of June 29, 2020, but that were received before January 22, 2021. *See id*. ¶¶ 34, 41. Those late Claims have been fully processed, and 45 of them are, but for the late submission, otherwise eligible. *See id.* Although these 45 Claims were late, they were received while the processing of timely Claims was ongoing. *See id.* ¶ 34. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Apple Net Settlement Fund. *See id.* The Court has discretion to accept Claims

7

received after the filing deadline.[9] Lead Plaintiff respectfully submits that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the Apple Net Settlement Fund solely because it was received after the Court-approved Claim-filing deadline if it was submitted while timely Claims were still being processed.

To facilitate an efficient Apple Initial Distribution, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiff respectfully requests that this Court order that any new Claims received after January 22, 2021, and any adjustments to previously filed Claims made after May 4, 2021, that would result in an increased Recognized Claim amount, be barred from payment in the Apple Initial Distribution, while permitting Claims received after January 22, 2021, or adjusted after May 4, 2021, to be eligible to participate in subsequent distributions subject to the provisions of paragraphs 47(e) of the Amin-Giwner Declaration.[10]

## IV.    FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with Epiq's agreement with Lead Counsel to act as the Claims Administrator for the Settlements, Epiq was responsible for, among other things, disseminating notice of the Apple Settlement to the Apple Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Apple Net Settlement Fund to Authorized Claimants. *See* Amin-Giwner Decl. ¶ 3. As stated in the accompanying Amin-Giwner Declaration,

---

[9] *See* Preliminary Approval Order ¶ 9(b)(iv) (*"Unless the Court orders otherwise*, all Claim Forms submitted in connection with the Apple Settlement must be postmarked no later than ninety (90) calendar days after the Notice Date. Notwithstanding the foregoing, Class Counsel may, at their discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Apple Net Settlement Fund to Authorized Claimants.") (emphasis added).

[10] Should an adjustment be received that results in a lower Recognized Claim amount, that adjustment will be made, and the Recognized Claim amount will be reduced accordingly prior to a distribution to that Claimant. Amin-Giwner Decl. ¶ 36.

Epiq's fees and expenses for its work performed on behalf of the Apple Class as well as additional work in connection to the Earlier Settlements and its estimate to complete the Apple Initial Distribution and Earlier Settlements Second Distribution are $630,048.23.[11] *See id.* ¶ 45. To date, Epiq has received payment in the amount of $94,421.17 for these fees and expenses. *See id.* Accordingly, there is an outstanding balance of $535,627.06 payable to Epiq, which includes the estimated fees and expenses to be incurred by Epiq in connection with the Apple Initial Distribution and Earlier Settlements Second Distribution. *See id.* Lead Counsel reviewed Epiq's invoices and respectfully request on behalf of Lead Plaintiff that the Court approve all of Epiq's fees and expenses.

## V.    **DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUNDS**

The Earlier Settlements Net Settlement Funds are ready to be distributed in a second distribution. Pursuant to the Distribution Order, after Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks from the Earlier Settlements Initial Distribution, but not earlier than nine (9) months after the Earlier Settlements Initial Distribution, Lead Counsel shall seek Court approval to conduct the Earlier Settlements Second Distribution in which any amount remaining in the Earlier Settlements Net Settlement Funds after the Earlier Settlements Initial Distribution, including from the reserve and the funds from all void stale-dated checks, after deducting Epiq's fees and expenses incurred in administering the Settlements for which it has not yet been paid, including Epiq's estimated costs of the Earlier Settlements Second

---

[11] Should the estimate of fees and expenses to conduct the Apple Initial Distribution exceed the actual cost to conduct the distribution, the excess will be returned to the Apple Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. Amin-Giwner Decl. ¶ 45 n.9.

9

Distribution, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Earlier Settlements Initial Distribution who cashed their distribution check. *See* Distribution Order ¶ 3(f); *see also* Plan of Allocation ¶ 53. In addition, the Apple Net Settlement Fund is ready to be distributed in an initial distribution. Lead Plaintiff respectfully moves the Court for entry of an order approving Epiq's determinations concerning acceptance, adjustment, and rejection of the Claims that are included in the present motion, including the Late Adjusted Claims to the Earlier Settlements Net Settlement Funds and the Late But Otherwise Eligible Claims to the Apple Net Settlement Fund, and approving the proposed plan for the distribution of the Net Settlement Funds as stated in the Amin-Giwner Declaration (the "Distribution Plan").

Under the proposed Distribution Plan, Epiq will conduct the Earlier Settlements Second Distribution and the Apple Initial Distribution (together, the "Settlements Distribution") in which 100% of the Earlier Settlements Net Settlement Funds and approximately 95% of the Apple Net Settlement Fund will be distributed to Authorized Claimants, after deducting all payments previously allowed and the payments approved by the Court on this motion, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees. *See* Amin-Giwner Decl. ¶ 47(a). For the purposes of executing the Distribution Plan for both the Earlier Settlements Net Settlement Funds and the Apple Net Settlement Fund, Epiq has developed a proprietary "calculation module" that would calculate an Exchange Act Recognized Claim or a Securities Act Recognized Claim (when combined referred to as the Claimant's Recognized Claims)

pursuant to the Court-approved Plan of Allocation for both the Earlier Settlements Net Settlement Funds and the Apple Net Settlement Fund, as stated in the Apple Notice.[12] *See id.* ¶ 13.

To conduct the Settlements Distribution, Epiq will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Funds based upon the Claimant's Recognized Claims, calculating award amounts for all Authorized Claimants as if the entire Net Settlement Funds were to be distributed now.[13] *Id.* ¶ 47(a)(1). In accordance with the Court-approved Plan of Allocation, Epiq will calculate each Authorized Claimant's: (a) *pro rata* share of the Individual Defendant Net Settlement Fund based on the amount of the Authorized Claimant's Exchange Act Recognized Claim in comparison to the total Exchange Act Recognized Claims of all Authorized Claimants; (b) *pro rata* share of the Underwriter Defendant Net Settlement Fund based on the amount of the Authorized Claimant's Securities Act Recognized Claim in comparison to the total Securities Act Recognized Claims of all Authorized Claimants; and (c) *pro rata* share of the Apple Net Settlement Fund based on the amount of the Authorized Claimant's Exchange Act Recognized Claim in comparison to the total Exchange Act Recognized Claims of all Authorized Claimants.[14] *Id.*

---

[12] "Under the terms of the Apple Settlement, eligible members of the Apple Class that previously submitted or now submit claims approved for payment will receive a *pro rata* share of the Apple Settlement based on their transactions in GTAT Securities during the Class Period. Claims of the Apple Class will be calculated in the same manner as under the allocation plan approved by the court for members of the Individual Defendant Settlement Class." Final Approval Order at 17.

[13] *See* Plan of Allocation ¶¶ 37-38, *"Calculation of Claimant's 'Exchange Act Recognized Claim':* A Claimant's 'Exchange Act Recognized Claim' will be the sum of his, her or its Exchange Act Recognized Loss Amounts as calculated above with respect to all GTAT Securities" and *"Calculation of Claimant's 'Securities Act Recognized Claim':* A Claimant's 'Securities Act Recognized Claim' will be the sum of his, her or its Securities Act Recognized Loss Amounts as calculated above with respect to all GTAT Common Stock Offering Shares and GTAT Senior Notes."

[14] *See id.* ¶¶ 50-51, *Allocation of the Individual Defendant Net Settlement Fund* and *Allocation of the Underwriter Defendant Net Settlement Fund*.

In accordance with the Court-approved Plan of Allocation and given the costs of making payments, Epiq will eliminate from the Settlements Distribution any Authorized Claimant whose combined *pro rata* shares of the Individual Defendant Net Settlement Fund, Underwriter Defendant Net Settlement Fund, and Apple Net Settlement Fund calculate to less than $10.00,[15] as these Claimants will not receive any payment from the Net Settlement Funds and will be so notified by Epiq. *Id*. ¶ 47(a)(2). After eliminating Claimants who would have received less than $10.00 from the Net Settlement Funds, Epiq will recalculate the *pro rata* shares of the Individual Defendant Net Settlement Fund, the Underwriter Defendant Net Settlement Fund, and the Apple Net Settlement Fund for all Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim to each Net Settlement Fund in comparison to the total Recognized Claims for all Authorized Claimants to each Net Settlement Fund who would have received $10.00 or more in the previous calculations. *Id.* ¶ 47(a)(3). The sum of these *pro rata* shares is the Authorized Claimant's "Distribution Amount."[16] *Id*. Authorized Claimants whose Distribution Amount calculates to less than $100.00 will be paid their full Distribution Amount ("Claims Paid in Full"). *Id*. ¶ 47(a)(4). These Authorized Claimants will receive no additional funds from the Net Settlement Funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Apple Net Settlement Fund and 100% of the remaining balance of each Earlier Settlements Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $100.00 or more. *Id.* ¶ 47(a)(5). The remaining 5% of the Apple Net Settlement Fund will be held in reserve (the "Reserve") to address any tax

---

[15] *See id.* ¶ 52, *Distribution Amount.*

[16] *See id.*

liability and claims administration-related contingencies that may arise. *Id.* To the extent the Reserve is not depleted, the remainder will be distributed in the Second Settlements Distribution described in subparagraph 47(d) of the Amin-Giwner Declaration. *Id.*

In order to encourage Authorized Claimants to cash their checks promptly, the distribution checks will bear the notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id.* ¶ 47(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 47(b) footnote 13 of the Amin-Giwner Declaration will irrevocably forfeit all recovery from the Settlements, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in any subsequent distribution, as described below. *See id.* ¶ 47(c).

## VI.    SUBSEQUENT DISTRIBUTION(S) OF THE NET SETTLEMENT FUNDS

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, but not earlier than nine (9) months after the Settlements Distribution, Epiq will, after consulting with Lead Counsel, conduct the Second Settlements Distribution. *See* Amin-Giwner Decl. ¶ 47(d). In the Second Settlements Distribution, any amounts remaining in the Net Settlement Funds, including from the Reserve and the funds from all void stale-dated checks, after deducting Epiq's fees and expenses incurred in connection with administering the Settlements for which it has not yet been paid, including the estimated costs of the Second Settlements Distribution, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Settlements Distribution who cashed their distribution checks and who would receive at least $10.00 from such distribution based upon their *pro rata* share of the remaining funds. *See id.*

13

If any funds remain in the Net Settlement Funds after the Second Settlements Distribution, because of uncashed checks or otherwise, then after Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, and if cost-effective, subsequent distributions of the funds remaining in the Net Settlement Funds, after deduction of costs and expenses as described above and subject to the same conditions, will take place at six-month intervals thereafter. *See id.* ¶ 48. When Lead Counsel, in consultation with Epiq, determine that further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after January 22, 2021, Epiq will process those Claims. *See id.* ¶ 47(e). Any of these Claims that are otherwise valid, as well as any Claims received before January 22, 2021, for which an adjustment was received after May 4, 2021, and which resulted in an increased Recognized Claim, may be paid in accordance with paragraph 47(e) of the Amin-Giwner Declaration. *See id.* If any funds remain in the Net Settlement Funds after payment of these late or late-adjusted Claims, the remaining balance of the Net Settlement Funds, after payment of any unpaid fees or expenses incurred in administering the Net Settlement Funds and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s) to be recommended by Lead Counsel and approved by the Court. *See id.* ¶ 49.

Lead Counsel requests that the Court approve the National Consumer Law Center ("NCLC") to be the recipient of the remaining settlement funds. NCLC is a private, non-sectarian, not-for-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See About Us*, National Consumer Law Center, nclc.org/about-us/about-us.html (last visited Mar. 29, 2021). NCLC was founded in 1969 through a federal grant to provide legal services addressed to two main goals: improving the access of low-income people to the legal system and enabling advocates to seek

remedies where needed. *See Our Story*, National Consumer Law Center, nclc.org/about-us/our-story.html (last visited Mar. 29, 2021). Today, NCLC continues to advocate for low-income consumers and provides many resources to civil legal aid and private attorneys representing low-income consumers. *See id.* NCLC's lawyers provide policy analysis, advocacy, litigation, expert-witness services, and training for consumer advocates throughout the United States. *See id.* "NCLC works to ensure a fair marketplace and access to justice for all consumers, including low-income people, older Americans, students, military service members and veterans," and its "work covers a broad range of consumer issues, including consumer protection, fair credit, debt collection, student loans, mortgages and foreclosures, financial services, bankruptcy, [and] unfair and deceptive acts and practices. . . ." *See Cy Pres Awards*, National Consumer Law Center, nclc.org/about-us/cy-pres-awards.html (last visited Mar. 29, 2021). Federal courts have approved NCLC as a *cy pres* recipient of residual balances of net settlement funds in other settlements.[17]

## VII.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Apple Net Settlement Fund and Earlier Settlements Net Settlement Funds, it is necessary to bar any further claims against the Net Settlement Funds beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlements, or who are otherwise

---

[17] *See, e.g.*, *In re Nu Skin Enters., Inc., Sec. Litig.*, No. 14-cv-00033-JNP-BCW, ECF Nos. 152-154 (D. Utah Aug. 30, 2018); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016), *appeal dismissed*, 2016 WL 9778633 (9th Cir. Nov. 7, 2016); *Perkins v. Am. Nat'l Ins. Co.*, 2012 WL 2839788, at *5 (M.D. Ga. July 10, 2012) ("The Court is also satisfied that The National Consumer Law Center's mission, reputation and established track record will ensure that it will be a good steward of the grant award made to it.").

involved in the administration or taxation of the Settlements, be released and discharged from all claims arising out of that involvement. Accordingly, Lead Plaintiff respectfully requests that the Court enter the Class Distribution Order, which will release and discharge all such claims.

## VIII.   **CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully submits that Lead Plaintiff's Unopposed Motion for Approval of Second Distribution of Earlier Settlements and Apple Settlement Distribution Plan should be granted, and the [Proposed] Order Approving Distribution Plan should be entered.

Dated: May 4, 2021                                      Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER**
 **& GROSSMANN LLP**

*/s/ John C. Browne*
John C. Browne (admitted *pro hac vice*)
Lauren Ormsbee (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Lead Counsel for Plaintiffs*

**ORR & RENO, P.A.**

*/s/ Jennifer A. Eber*
Jennifer A. Eber N.H. Bar No. 8775
Jeffrey C. Spear N.H. Bar No. 14938
45 S. Main Street, PO Box 3550
Concord, NH 03302-3550
Tel: (603) 224-2381
Fax: (603) 224-2318
jeber@orr-reno.com jspear@orr-reno.com

*Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May 2021, the above Memorandum in Support of

Lead Plaintiff's Unopposed Motion for Approval of Second Distribution of Earlier Settlements and

Apple Settlement Distribution Plan was electronically served through ECF on all registered attorneys

in the case under Civil Action No. 14-cv-00443-JL.

/s/ Jennifer A. Eber
Jennifer A. Eber N.H. Bar No. 8775
**ORR & RENO, P.A.**
45 S. Main Street, PO Box 3550
Concord, NH 03302-3550
Tel: (603) 224-2381
Fax: (603) 224-2318
jeber@orr-reno.com
jspear@orr-reno.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| ADAM S. LEVY on behalf of himself and all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>THOMAS GUTIERREZ, RICHARD J. GAYNOR, RAJA BAL, J. MICHAL CONAWAY, KATHLEEN A. COTE, ERNEST L. GODSHALK, MATTHEW E. MASSENGILL, MARY PETROVICH, ROBERT E. SWITZ, NOEL G. WATSON, THOMAS WROE, JR., MORGAN STANLEY & CO. LLC, GOLDMAN, SACHS & CO., AND CANACCORD GENUITY INC., AND APPLE, INC.<br><br>   Defendants. | No. 1:14-cv-00443-JL<br><br><br>ECF CASE |

**ORDER APPROVING SECOND DISTRIBUTION OF EARLIER SETTLEMENTS AND APPLE SETTLEMENT DISTRIBUTION PLAN**

Lead Plaintiff moved this Court for an order approving a distribution plan for the Net Settlement Funds in the above-captioned class action (the "Action"). Having reviewed and considered all the materials and arguments submitted in support of the motion, including the Memorandum in Support of Lead Plaintiff's Unopposed Motion for Approval of Second Distribution of Earlier Settlements and Apple Settlement Distribution Plan and the Declaration of Stephanie Amin-Giwner in Support of Lead Plaintiff's Unopposed Motion for Approval of Second Distribution of Earlier Settlements and Apple Settlement Distribution Plan (the "Amin-Giwner Declaration"),

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.     This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement with Defendant Apple Inc. dated as of January 10, 2020 (ECF No. 252-1) (the "Apple

1

Stipulation"), and the Amin-Giwner Declaration, and all terms used in this Order shall have the same meanings as defined in the Apple Stipulation or in the Amin-Giwner Declaration.

2. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Apple Class Members and Settlement Class Members of the Earlier Settlements.

3. Lead Plaintiff's plan for distribution of the Net Settlement Funds to Authorized Claimants is **APPROVED**. Accordingly:

(a) The administrative recommendations of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), to accept the Timely Eligible Claims to the Apple Settlement, as stated in Exhibit D to the Amin-Giwner Declaration, the Late But Otherwise Eligible Claims to the Apple Settlement, as stated in Exhibit E to the Amin-Giwner Declaration, and the Late Adjusted Claims submitted in connection with the Earlier Settlements, as stated in Exhibit F to the Amin-Giwner Declaration, are adopted;

(b) The Claims Administrator's administrative recommendations for the Rejected Claims as wholly ineligible Claims to the Apple Settlement, as stated in Exhibit G to the Amin-Giwner Declaration, are adopted;

(c) Epiq is directed to conduct the Settlements Distribution, which shall consist of the Earlier Settlements Second Distribution together with the Apple Initial Distribution, after deducting all payments previously allowed and the payments approved by this Order, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, while maintaining a 5% reserve from the Apple Net Settlement Fund to address any tax liability and claims administration-related contingencies that may

arise in the Apple Initial Distribution. Specifically, as stated in paragraph 47(a) of the Amin-Giwner Declaration: (1) Epiq will calculate each Authorized Claimant's: (a) *pro rata* share of the Individual Defendant Net Settlement Fund based on the amount of the Authorized Claimant's Exchange Act Recognized Claim in comparison to the total Exchange Act Recognized Claims of all Authorized Claimants; (b) *pro rata* share of the Underwriter Defendant Net Settlement Fund based on the amount of the Authorized Claimant's Securities Act Recognized Claim in comparison to the total Securities Act Recognized Claims of all Authorized Claimants; and (c) *pro rata* share of the Apple Net Settlement Fund based on the amount of the Authorized Claimant's Exchange Act Recognized Claim in comparison to the total Exchange Act Recognized Claims of all Authorized Claimants; (2) Epiq will eliminate from the Settlements Distribution any Authorized Claimant whose combined *pro rata* shares of the Individual Defendant Net Settlement Fund, Underwriter Defendant Net Settlement Fund, and Apple Net Settlement Fund calculate to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Funds and will be so notified by Epiq; (3) After eliminating Claimants who would have received less than $10.00 from the Net Settlement Funds, Epiq will recalculate the *pro rata* shares of the Individual Defendant Net Settlement Fund, the Underwriter Defendant Net Settlement Fund, and the Apple Net Settlement Fund for all Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim to each Net Settlement Fund in comparison to the total Recognized Claims for all Authorized Claimants to each Net Settlement Fund who would have received $10.00 or more in the previous calculations. The sum of these *pro rata* shares is the Authorized Claimant's "Distribution Amount"; (4) Authorized Claimants whose Distribution Amount calculates to less than $100.00 will be

3

paid their full Distribution Amount ("Claims Paid in Full"). These Authorized Claimants will receive no additional funds from the Net Settlement Fund in subsequent distributions; (5) After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Apple Net Settlement Fund and 100% of the remaining balance of each Earlier Settlements Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $100.00 or more. The remaining 5% of the Apple Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Settlements Distribution described in subparagraph (h) below;

(d)    In order to encourage Authorized Claimants to cash their checks promptly, all distribution checks will bear the following notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." Lead Counsel and Epiq are authorized to take appropriate action to locate and contact any Authorized Claimant who has not cashed his, her, or its distribution check within said time as detailed in paragraph 47(b) footnote 13 of the Amin-Giwner Declaration;

(e)    Authorized Claimants who do not cash their distribution checks within the time allotted or on the conditions stated in paragraph 47(b) footnote 13 of the Amin-Giwner Declaration will irrevocably forfeit all recovery from the Settlements, and the funds allocated to all such stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution;

(f)    After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, as provided in paragraph 47(b) footnote 13 of the

4

Amin-Giwner Declaration, but not earlier than nine (9) months after the Settlements Distribution, Epiq will, after consulting with Lead Counsel, conduct an additional distribution of the Net Settlement Funds (the "Second Settlements Distribution"). Any amounts remaining in the Net Settlement Funds after the Settlements Distribution, including from the Reserve and the funds from all void stale-dated checks, after deducting Epiq's fees and expenses incurred in connection with administering the Settlements for which it has not yet been paid, including Epiq's estimated costs of the Second Settlements Distribution, and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Settlements Distribution who cashed their distribution check and who would receive at least $10.00 from such distribution based on their *pro rata* share of the remaining funds;

(g)     No new Claims may be accepted after January 22, 2021, and no further adjustments to Claims received on or before January 22, 2021, that would result in an increased Recognized Claim amount may be made for any reason after May 4, 2021, subject to the following exception: At such time as Lead Counsel, in consultation with Epiq, determines that further distribution of the funds remaining in the Net Settlement Funds is not cost-effective, and after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Funds and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, if sufficient funds remain to warrant the processing of Claims received after January 22, 2021, such Claims will be processed, and any such Claims that are otherwise valid as well as any earlier received Claims for which an adjustment was received after May 4, 2021, and which resulted in an increased Recognized Claim, at the discretion of Lead Counsel, may be paid the distribution

5

amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible;

(h)     If Lead Counsel, in consultation with Epiq, determines that a further distribution of the Net Settlement Funds is cost-effective, Epiq will conduct a "Third Settlements Distribution" of remaining funds in the Net Settlement Funds. Additional re-distributions from the Net Settlement Funds to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 from such additional re-distributions may occur thereafter in six-month intervals if Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlements, including for such re-distributions, would be cost-effective;

(i)     When Lead Counsel, in consultation with the Claims Administrator, determines that additional re-distributions are not cost-effective, if any funds remain in the Net Settlement Funds after payment of the late or late-adjusted Claims, the remaining balance of the Net Settlement Funds, after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Funds and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be contributed to the National Consumer Law Center ("NCLC");

(j)     The Court finds that the administration of the Settlements and the proposed distributions of the Net Settlement Funds comply with the terms of the Stipulations and the Plan of Allocation approved by this Court and that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims

6

submitted, or who are otherwise involved in the administration or taxation of the Settlements, are hereby released and discharged from any and all claims arising out of that involvement, and all Apple Class Members, Settlement Class Members of the Earlier Settlements, and other Claimants, whether or not they receive payment from the Net Settlement Funds, are hereby barred from making any further claims against the Net Settlement Funds, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Funds or the Net Settlement Funds, or any other person released under the Settlements beyond the amounts allocated to Authorized Claimants;

(k)     All of Epiq's fees and expenses incurred in the administration of the Settlements and estimated to be incurred in connection with the Settlements Distribution as stated in the invoices attached as Exhibit H to the Amin-Giwner Declaration are approved, and Lead Counsel is directed to pay the outstanding balance of $535,627.06 out of the Settlement Funds to Epiq; and

(l)     Unless otherwise ordered by the Court, Epiq may destroy the paper copies of the Claims submitted for the Apple Settlement and all supporting documentation one year after the Settlements Distribution and may destroy electronic copies of the same one year after all funds have been distributed.

4.     This Court retains jurisdiction to consider any further applications concerning the administration of the Settlements, and any other and further relief that this Court deems appropriate.

SO ORDERED this 25 day of   May   2021.

The Honorable Joseph N. Laplante
United States District Judge

8